

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT GROUP, INC., a
Florida Corporation, and LOCHMERE REALTY,
INC., a Florida Corporation,

       Plaintiffs,

v.

EIGER FUND I, L.P. a Delaware Limited Partnership,
EIGER, INC. a Delaware Corporation, EIGER
PARTNERS, L.P., a Delaware Limited Partnership,
DAVID LANE, an individual, BARNETT LANE
INVESTMENTS, INC, a Texas Corporation, JTL
CAPITAL, L.L.C., a Texas limited liability company,
H.D. ASSOCIATES, L.P., a Delaware Limited
Partnership, BANKBOSTON, N.A., a national
association, PAUL E. ROWSEY, III, an individual, C.
TODD MILLER, an individual, DAVID M. JACOBS,
and individual and WILIAM S. BUCHANAN, an
individual

       Defendants.

_____/

CASE NO. 3:00-CV-1026-T-27B

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants DAVID LANE, BARNETT LANE INVESTMENTS, INC. and JTL
CAPITAL, L.L.C., by and through their undersigned counsel, hereby file a Notice of
Supplemental Authority in connection with their Motion to Dismiss or Alternative Motion to
Stay Proceedings and the Memorandum of Law in Support served on May 3, 2001.

Attached hereto is the Opinion of the Texas Court of Appeals, Fifth District at Dallas,
issued April 19, 2001, in <u>Lochmere Development Group, Inc. and Lochmere Realty, Inc.,
Appellants v. Eiger, Inc., Eiger Fund, I, L.P., Eiger Partners, L.P., H.D. Associates, L.P., Paul E.</u>

Rowsey, III, C. Todd Miller, David M. Jacobs, and William S. Buchanan, Appellees, No. 05-00-01332-CV, on appeal from the 192d Judicial District Court, Dallas County, Texas, Trial Court Cause No. DV99-05629. As the Court will note, the Texas appellate court has overruled Lochmere's sole point of error on appeal and affirmed the trial court's order denying the special appearances. In other words, the Texas appellate court has now affirmed the District Court's ruling that Texas has sufficient minimum contacts with the Lochmere entities and with the transaction at issue so as to exercise jurisdiction under the Texas long-arm statute consistent with notions of fair play, substantial justice, and due process. Thus, any possible impediment to proceeding with the Texas state court action as described in the instant Motion to Dismiss or Alternative Motion to Stay has been removed.

Respectfully submitted,

ALAN M. GERLACH, ESQ.
BROAD AND CASSEL
Florida Bar. No. 199134
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
P.O. Box 4961 (32802)
Telephone: (407) 839-4200
Fax: (407) 425-8377

- and -

JOHN W. GREENE, ESQ.
HILL GILSTRAP
1400 West Abram Street
Arlington, Texas 76013
Telephone: (817) 261-2222
Fax: (817) 861-4685
Attorneys for Defendants David Lane,
Barnett Lane Investments, Inc. and JTL
Capital, L.L.C

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this ⟶day of May, 2001 to: Gregory J. Orcutt, Esq., Bricklemyer, Smolker & Bolves, P.A., 500 E. Kennedy Blvd., Suite 200, Tampa, Florida 33602; Daniel F. Molony, Esq., Shook, Hardy & Bacon, L.L.P., 201 E. Kennedy Blvd., Suite 601, Tampa, Florida 33602; Alan S. Loewinsohn, Esq., Pezzulli & Loewinsohn, L.L.P., 18383 Preston Road, Suite 110, Dallas, Texas 75252 and Dora Kaufman, Esq., Halley, Sinagra & Perez, 100 S.E. 3rd Avenue, Suite 1900, Fort Lauderdale, Florida 33394.

Alan M. Gerlach, Esquire

3

ORL1\LABOR\382784.1
26544/0001 AMG rw 5/22/01 11:42 AM



AFFIRMED; Opinion issued April 19, 2001



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-00-01332-CV

### LOCHMERE DEVELOPMENT GROUP, INC. AND LOCHMERE REALTY, INC., Appellants

### V.

### EIGER, INC., EIGER FUND, I, L.P., EIGER PARTNERS, L.P., H.D. ASSOCIATES, L.P., PAUL E. ROWSEY, III, C. TODD MILLER, DAVID M. JACOBS, AND WILLIAM S. BUCHANAN, Appellees

On Appeal from the 192nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DV99-05629

## OPINION

Before Justices Lagarde, Kinkeade, and Wright
Opinion By Justice Lagarde

In this interlocutory appeal, Lochmere Development Group, Inc. and Lochmere Realty, Inc. appeal the trial court's denial of their special appearances. In one point of error, appellants contend the trial court erred in denying the special appearances because the trial court did not have specific jurisdiction over them. Appellees raise one cross-point, contending that appellants waived the special appearances by conducting discovery before the trial court ruled on the special appearances. For reasons that follow, we overrule appellants' sole point of error, overrule appellees' cross-point, and affirm the trial court's order denying the special appearances.

## Factual and Procedural Background

Appellants are Florida corporations that maintain their principal place of business in Florida. Lochmere Development Group, Inc. is in the business of acquiring, developing, managing, and marketing real estate properties in Florida. Lochmere Realty, Inc. is a real estate brokerage company that represents owners and/or purchasers in transactions involving real estate properties in Florida. In November 1997, Farallon Capital Management, L.L.C. ("Farallon") notified Robert D. Evans, president of the Lochmere Entities,[1] that an upper scale residential community known as "Hammock Dunes" ("Florida property") would soon be for sale. Farallon, a California corporation and the intended capital source for the purchase of the Florida property, was working with David Lane to acquire and develop the property. Farallon enlisted Lochmere's help in evaluating the existing conditions of the property and future development opportunities. Appellants agreed to perform due diligence and evaluate future development opportunities.

After spending between six and eight months gathering information, Farallon told Evans and Lane that it would be unable to proceed with the purchase. Lane assured Evans that he would find replacement capital for the project. Lane subsequently met with Eiger, Inc., a Delaware corporation with its principal place of business in Dallas, Texas. Paul Rowsey represented Eiger, Inc. in the meeting with Lane. Lane informed Evans that Eiger was interested in replacing Farallon as the capital source. According to appellants, on March 24, 1999, at Lane's request, they sent information about the Florida property to the Eiger parties.[2] Over the next fourteen months, Evans communicated frequently with the Eiger parties in Texas regarding the Florida property and

---

[1] For purposes of appeal, the Lochmere entities are the appellants, Lochmere Development Group, Inc. and Lochmere Realty, Inc.

[2] For purposes of appeal, the Eiger parties are Eiger, Inc., Eiger Fund, L.L.P., Eiger Partners, L.P., and H.D Associates, L.P. The alleged agreement was with H.D Associates but was negotiated with Rowsey as representative for the Eiger parties. We will address the alleged agreement as being an agreement between appellants and the Eiger parties.

-2-

continued to perform due diligence on the Florida property. These actions included meeting with the owner of the property, recommending a Florida land use attorney, and recommending a Florida civil engineering firm. Evans met with Rowsey, as Eiger's representative, in Florida on at least six occasions. Evans visited Texas on three occasions to meet with the Eiger parties and initiated more than thirty calls to the Eiger parties in Texas. Evans provided the Eiger parties with preliminary site plans for the Florida property, and he provided a draft of the Master Development Budget proposed for the development, marketing and management of the Florida property. During these meetings and phone calls, appellants negotiated with the Eiger parties to determine the terms of what appellants now claim was an agreement for the management and development of the Florida property.

Appellants contend that two of the three meetings held in Texas were convened at the request of Lane or Rowsey. But the final meeting, held on June 10, 1999, was called at Evans's request. Appellants also contend it was Lane, not the Lochmere entities, who initiated the contacts with Texas. Appellees disagree. Appellees contend they did not solicit any information from appellants. Appellants initiated the relationship by sending appellees information regarding the Florida property. This relationship culminated in June 1999. On June 9, 1999, Evans received a letter from Rowsey that indicated he was interviewing a CEO who would be in charge of the development of the Florida property. This concerned Evans, because the letter indicated to Evans that the CEO, not Lochmere, would take over certain marketing and management duties that Lochmere intended to perform in Florida. Evans called Rowsey and arranged a meeting for the next day. Evans met with Rowsey on June 10, 1999 in Dallas to discuss Lochmere's specific role with the future of the Florida property. At the meeting, Evans provided Rowsey with the most recent Master Development Budget, as well as a proposed management, development, and marketing agreement. Appellants contend the written proposal was the basis of an oral or implied contract formed following that meeting. However, the

-3-

8172773249   HILL GILSTRAP                              459 P05    MAY 22 '01   07:28

parties never executed the written proposal. The Eiger parties subsequently informed appellants that they would not honor any agreement.

Appellants informed appellees that the Master Development Budget and work product generated by appellants was proprietary and demanded that the proprietary information be returned and not used by appellees. After receiving this demand, appellees filed suit in Texas, seeking a declaratory judgment that they did not possess proprietary information and owed no contractual duties to appellants. Appellants filed special appearances with the trial court in Texas. Nine months later, appellants filed suit in Florida against appellees. The Texas trial court denied appellants' special appearances and this appeal followed.

### Waiver of Special Appearances

Appellees contend appellants waived the special appearances by filing an "application for Commission for Issuance of Subpoena Duces Tecum" in Georgia after filing the special appearances in Texas. Specifically, appellees contend filing the application for subpoena duces tecum constitutes discovery on the merits of the case and violates rule 120a(1) of the Texas Rules of Civil Procedure. We disagree. The express language of rule 120a(1) states that use of the discovery process does not constitute a waiver of a previously filed special appearance. *See* TEX. R. CIV. P. 120a(1). Appellees rely on supreme court dicta in *Dawson-Austin v. Austin*, 968 S.W.2d 319, 323 (Tex. 1998) to support their contention that rule 120a(1) bars all discovery into the merits of the case until after the special appearance is resolved. In *Dawson-Austin*, the supreme court stated that Dawson-Austin was entitled "to seek a postponement of the special appearance hearing until she could complete discovery, as expressly permitted by rule 120a, and she was entitled to ask for more time for discovery on her motion to quash, *provided she did not attempt to take that discovery before the special appearance was decided.*" *Id.* (emphasis added). Appellees contend that this sentence

-4-

"clearly and unequivocally" shows that rule 120a limits discovery to matters relating to the special appearance until the special appearance is resolved. At oral argument, appellees also relied on footnote three of Justice Baker's dissent in *Dawson-Austin*, in which Baker stated that he agreed with Austin that rule 120a only allows a continuance for discovery about the disputed issue of personal jurisdiction.

We decline to follow the dicta in *Dawson-Austin*, and instead follow the plain language of the statute. This holding follows the analysis of other Texas courts that have addressed this issue since the supreme court decided *Dawson-Austin*. *Minucci v. Sogevalor*, 14 S.W.3d 790, 800 (Tex. App.–Houston [1st Dist.] 2000, no pet.) (declining to follow the *Dawson-Austin* dicta and holding that filing a notice of oral hearing on a motion to dissolve writ of garnishment and asking a deposition witness questions relating to the writ of garnishment did not waive special appearance); *Case v. Grammar*, 31 S.W.3d 304, 311 (Tex. App.–San Antonio 2000, no pet. h.) (following plain language of rule 120a and holding that seeking discovery that exceeds the scope of the jurisdiction issue did not waive special appearance). Nothing in rule 120a limits discovery to matters relating to the special appearance. As such, the use of the discovery process does not constitute a waiver of special appearance. In this case, appellants did not waive the special appearances by filing an application for subpoena duces tecum. Appellants have no other motions on file with the court and did not ask the court for affirmative relief in the application for subpoena duces tecum. Moreover, appellants made their application "subject to" the special appearances. Accordingly, we hold that appellants did not waive the special appearances by filing the application for subpoena duces tecum and we overrule appellees' cross-point.

## Special Appearances

In appellants' sole point of error, they contend the trial court erred in denying the special

appearances because the trial court lacked specific jurisdiction over appellants. Specifically, appellants contend they are not amenable to process in Texas because (1) they do not have minimum contacts with Texas and (2) allowing Texas to exercise jurisdiction would not comport with traditional notions of fair play and substantial justice.

A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal guarantees of due process. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-045 (Vernon 1997); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990); *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 674 (Tex. App.–Dallas 1993, writ dism'd by agr.). The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident that does business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex 1991). In addition to other acts that may constitute doing business, a nonresident does business in Texas if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas; (2) commits a tort in whole or in part in Texas; or (3) recruits Texas residents, directly or through an intermediary located in Texas, for employment inside or outside Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). The broad language of the Texas long-arm statute has been interpreted to reach as far as the federal constitutional requirements of due process will permit. *Guardian Royal Exch*, 815 S.W.2d at 226; *Schlobohm*, 784 S.W.2d at 357.

Federal due process requirements mandate that the defendant must have purposefully established minimum contacts with Texas such that the nonresident could reasonably anticipate being sued in Texas. *Nat'l Indus Sand Assoc. v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995). We

determine whether (1) the nonresident defendant has purposefully established "minimum contacts" with Texas and, if so, (2) the exercise of jurisdiction comports with "notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *Guardian Royal Exch.*, 815 S.W.2d at 226.

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). General jurisdiction exists when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* General jurisdiction requires a showing that the defendant conducted substantial activities within the forum. *Id.* In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to its contacts within the forum. *Id.* Here, both parties concede that the trial court did not have general jurisdiction over appellants. Accordingly, we will address only the question of specific jurisdiction.

### Burden of Proof

The plaintiff has the initial burden of pleading facts sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 633 (Tex. App.–Dallas 1993, writ denied). When a nonresident defendant challenges a trial court's exercise of personal jurisdiction through a special appearance, it carries the burden of negating all bases for personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985).

### Standard of Review

The exercise of personal jurisdiction requires the trial judge to resolve any factual disputes before applying the jurisdictional formula. *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.

–7–

8172773249   HILL GILSTRAP                                      459 P09    MAY 22 '01   07:30

App.–Dallas 1994, pet. denied). When, as here, the trial judge fails to make findings of fact and conclusions of law, we view the trial court's judgment as impliedly finding all the necessary facts to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We must affirm if the judgment can be upheld on any legal theory supported by the evidence. *Zac Smith & Co., Inc. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987), *cert. denied*, 484 U.S. 1063 (1988).

On appeal, the appropriate standard of review of the trial court's order sustaining or denying a special appearance is a de novo review, applying the supreme court's jurisdictional formula. *Craig*, 993 S.W.2d at 120. We apply a factual sufficiency review to all of the evidence before the trial judge on the question of jurisdiction. *Id.*; *KPMG Peat Marwick*, 847 S.W.2d at 632; *see also Guardian Royal Exch.*, 815 S.W.2d at 231-32. Once all factual disputes are resolved, or if the facts are undisputed, we examine de novo whether the facts negate all bases for personal jurisdiction. *Craig*, 993 S.W.2d at 121.

### Specific Jurisdiction

Appellants contend specific jurisdiction does not exist in this case because (1) appellants' contacts with Texas were not for the purpose of conducting any activity in Texas; (2) the cause of action does not arise from or relate to appellants' contacts with Texas; and (3) subjecting appellants to personal jurisdiction in Texas would not comport with traditional notions of fair play and substantial justice. We disagree.

### 1. Minimum Contacts

Specific jurisdiction is established if the nonresident defendant purposefully established minimum contacts with Texas, and the defendant's alleged liability arises from or is related to its contacts within the forum. *CSR Ltd.*, 925 S.W.2d at 525. Appellants contend that all of their

contacts with Texas involved the negotiation of a contract to be performed in Florida. Appellants cite various cases to support their contention that their negotiations with appellees in Texas are insufficient to find that they purposefully directed actions at Texas. *See Craig*, 993 S.W.2d at 121 (holding that actions taken by law firm to represent a Texas entity in matters concerning a Jamaican resort are not actions purposefully directed toward Texas); *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 910 (Tex. App.–Austin 2000, pet. denied) (holding that an unexecuted proposed formal partnership agreement, which provided for performance in Nevada, and the history of the parties' negotiations, were insufficient to support a finding of purposeful conduct directed at Texas); *Magnolia Gas Co. v. Knight Equipment & Mfg. Corp.*, 994 S.W.2d 684, 692 (Tex. App.–San Antonio 1998, no pet.) (holding that partial performance of a contract in Texas was not sufficient to support jurisdiction where purpose of the contract was for the construction of a plant in Arkansas). Although it is generally true that negotiating a contract with a Texas entity is not enough to establish minimum contacts, this case is distinguishable from the cases appellants rely on because this cause of action relates directly to appellants' contacts with Texas.

Here, the underlying cause of action deals with the formation of a contract, not the performance or breach of an executed contract. Appellants contend that the alleged contract was formed following the June 10, 1999 meeting in Texas. Appellants requested this meeting and brought various documents and a proposed agreement with them to Texas in order to finalize the Florida property transaction. Appellees' declaratory judgment action relates entirely to that alleged contract. Appellees dispute that a contract exists and seek a declaratory judgment that they owe no contractual duties to appellants. Appellees' cause of action also directly relates to appellants' delivery of allegedly proprietary information to the Eiger parties in Texas. Appellees contend the Master Development Budget was not proprietary and that none of the work product given to them

-9-

8172773249   HILL GILSTRAP                                459 P11    MAY 22 '01   07:31

by appellants was proprietary. These contentions clearly arise from appellants' visits to Texas and appellants' efforts to solicit appellees to take part in the Florida property transaction.

This case is strikingly similar to *Fish v. Tandy Corp.*, 948 S.W.2d 886 (Tex. App.–Fort Worth 1997, writ denied). In *Fish*, the court held that Fish had established minimum contacts with Texas by negotiating and contracting with Tandy Corporation in Fort Worth, even though the distributorship agreement was for the distribution of Tandy products in Russia. *Id.* at 894-95. In *Fish*, the underlying suit arose when the parties began disagreeing over their rights and duties under the distributorship agreement. *Id.* at 895. The *Tandy* court held that the contractual dispute arose from Fish's contacts with Texas because the questions about the parties rights and duties under the agreement were directly linked to Fish's negotiations with Tandy in Texas. *Id.* This case, like *Fish*, involves the negotiation of a contract that was to be performed outside of Texas. Both cases involve disputes over the parties rights and duties under those agreements. Although it is true that the purpose behind the alleged contract in this case was to develop and manage residential property in Florida, the current dispute concerns whether a contract was ever formed and whether information provided to appellees during negotiations was proprietary. The alleged contract was formed in Texas, following Evans's trip to Texas to finalize the agreement. Moreover, according to Rowsey, Texas was the "command center" concerning the transaction because all the decisions went through the Eiger parties in Texas and were ultimately made in Dallas. The proprietary information claims arose out of appellants' purposefully providing the documents to appellees in Texas. Because this cause of action relates directly to and arises from appellants' contacts with Texas, those contacts are sufficient to establish specific jurisdiction over appellants.

## 2. *Fair Play and Substantial Justice*

Because we hold that a Texas court's exercise of jurisdiction in these circumstances withstands a minimum contacts analysis, we next determine whether this exercise of jurisdiction comports with fair play and substantial justice. *See Burger King*, 471 U.S. at 476. Appellants contend that asserting jurisdiction over them would not comport with traditional notions of fair play and substantial justice. Specifically, appellants contend that defending a lawsuit in Texas would be unduly burdensome because Evans, as president and sole shareholder of the Lochmere entities, handles the majority of appellants' work by himself in Florida. As such, it would be costly and time-consuming for Evans to travel to Texas to defend this suit. Appellants also contend that Florida has a greater interest than Texas in adjudicating this suit because the underlying contract would be performed in Florida by Florida corporations. These arguments lack merit.

To avoid being haled into a foreign court, the defendants must present "a *compelling* case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477 (emphasis added). To determine if the exercise of personal jurisdiction comports with fair play and substantial justice, a court should consider the following factors, where appropriate: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*; *Guardian Royal Exch.*, 815 S.W.2d at 231. When the defendant has established minimum contacts with the forum state, the exercise of jurisdiction rarely fails the test of fair play and substantial justice. *Id.*

Here, appellants have failed to present a compelling case that exercising jurisdiction would

–11–

be unreasonable. The mere fact that appellants are not physically present in Texas is not persuasive when deciding personal jurisdiction. *Burger King*, 471 U.S. at 476. Distance alone is ordinarily insufficient to defeat jurisdiction because "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Guardian Royal Exch* , 815 S.W.2d at 231 (citing *Mcgee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Here, Evans's three trips to Texas negotiating the contract, and subsequent trip to Texas to attend the hearing on the special appearances, indicate that traveling to Texas does not present an undue hardship for him. Although appellants make the conclusory assertion that defending a suit in Texas would be substantially burdensome and inconvenient, we have found no evidence in the record to support that contention. An examination of the other factors also supports the exercise of jurisdiction over appellants. Five of the appellees are residents of Texas. Moreover, Texas has a substantial interest in this litigation because the alleged agreement was formed in Texas following appellants' solicitation of a Texas corporation. Much of the negotiations of the alleged contract occurred in Texas as a result of appellants' active solicitation of appellees' participation in the Florida property transaction. It is not unreasonable to require appellants to defend a suit based on their contacts with Texas. We hold that the exercise of jurisdiction over appellants does not offend traditional notions of fair play and substantial justice. Accordingly, we overrule appellants' sole point of error.

For all the foregoing reasons, we overrule appellants' sole point of error, overrule appellees'

Case 8:00-cv-01026-JDW   Document 51   Filed 05/24/01   Page 16 of 16 PageID 895

cross-point, and affirm the trial court's order denying appellants' special appearances.

SUE LAGARDE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
001332F.U05