

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.,

        Plaintiffs,

                                        Case No.: 8:00-cv-1026-T-27B

v.

EIGER FUND I, L.P., et al.

        Defendants.

_____/

## MEMORANDUM IN SUPPORT OF DEFENDANT FLEET NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

Defendant Fleet National Bank f/k/a Bankboston, N.A. ("Fleet" or "the Bank"), pursuant to Local Rule 3.01(a), M.D. Fla. Rules, submits this Memorandum of Law in Support of their Motion for Summary Judgment against Plaintiffs Lochmere Development Group, Inc. ("Lochmere Development") and Lochmere Realty, Inc. ("Lochmere Realty") (collectively "Lochmere").

## I.    INTRODUCTION

Plaintiffs have asserted the following claims against Fleet in their First Amended Complaint: (1) Unjust Enrichment/Quantum Meruit (Count XXIII); (2) Violation of Florida's Uniform Trade Secret Act (Count XXX); (3) Conversion (Count XXXVII); and (4) Civil Conspiracy (Count XXXVIII). Fleet seeks summary judgment as to all of Plaintiffs' claims.[1]

---

1.    With the exception of Fleet, all of the other parties to this action are also parties to a declaratory judgment action in Texas which relates to the transaction at issue here.( See Lane Defendants' Motion to Dismiss or Stay of May 3, 2001). Assuming, arguendo, that the present motion is successful, there will be a complete identity of parties in the Texas case.
(continued...)

5257.3

## II.   STATEMENT OF FACTS

Plaintiffs' claims arise out of the sale and development of a real estate project known as Hammock Dunes, located in Palm Coast, Florida. (Am. Compl. ¶ 23). Fleet acted as a lender to H.D. Associates, L.P. and Dunes Operating Company, L.P. in connection with their purchase of Hammock Dunes. (Am. Compl. ¶¶ 109, 112; Avil Aff. ¶ 2 ). As part of the loan evaluation process, Lochmere voluntarily provided Fleet with a series of spreadsheets entitled "Master Development Budget." (Am. Compl. ¶ 82; Avil Aff. ¶ 3). Lochmere did not apply for or receive any loan from Fleet. (Avil Aff. ¶ 4).

Prior to the filing of the Complaint herein, neither the Plaintiffs, nor any other person or entity (including Bob Evans), ever requested or indicated to Fleet that the Bank was expected to pay for any information furnished by the Plaintiffs. (Avil Aff. ¶ 5; Whiting Dep. at 104). On or about July 12, 1999, Lochmere sent a letter to Fleet demanding return of the documentation. (Am. Compl. ¶ 102; Avil Aff. ¶ 6 ). Fleet returned the documentation as requested by Lochmere. (Am. Compl. ¶ 110; Avil Aff. ¶ 6). After returning the documentation to Lochmere, Fleet did not make any further use of this documentation. (Avil Aff. ¶ 7).

## III.   ARGUMENT

### A.   The Court Should Enter Summary Judgment on Plaintiffs' Unjust Enrichment/Quantum Meruit Claims in Count XIII.

#### 1.   None of the Elements For Unjust Enrichment/Quantum Meruit Are Satisfied.

---

1.   (...continued)
Under the circumstances, the Bank submits that it would be appropriate for the court to enter summary judgment in its favor and subsequently dismiss or stay this lawsuit.

In their unjust enrichment/quantum meruit claim, Plaintiffs assert that they have conferred a "substantial benefit" upon Fleet by providing to Fleet "substantial skills, creativity and proprietary information without compensation." (Am. Compl. ¶ 303). Plaintiffs further assert that Fleet has been unjustly enriched because Fleet "obtained and used information and data collected by Lochmere for use in the Project in violation of Florida's Trade Secret Act, and is benefitting financially in the marketplace at the financial expense of Lochmere." (Am. Compl. ¶ 304).

Lochmere's unjust enrichment/quantum meruit claim is without merit. This Court has held that quantum meruit is not available against a defendant where it is undisputed that the plaintiff did not intend to seek compensation from the defendant for his services at the outset of the relationship. See Cherokee Oil Co. v. Union Oil Co., 706 F. Supp 826, 830 (M.D. Fla. 1989). Here, Plaintiffs provided the Master Development Budget to Fleet in the hopes of entering into a business relationship with the other Defendants. This is evidenced by the fact that plaintiffs never kept or submitted any bills for their services to Fleet and did not have an hourly rate. (Evans Dep. IV at 464). Finally, prior to the filing of the Complaint herein, neither the Plaintiffs, nor any other person or entity (including Bob Evans), ever requested or indicated to Fleet that the Bank was expected to pay for any information furnished by the Plaintiffs. (Avil Aff. ¶ 5; Whiting Dep. at 104). Given these facts, Plaintiffs' unjust enrichment claim fails.

Moreover, the Plaintiffs have failed to satisfy the elements of unjust enrichment. The elements of a cause of action for unjust enrichment are: "(1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Peoples Nat'l Bank of Commerce v.

52573    3

First Union Nat'l Bank of Fla., 667 So. 2d 876, 879 (Fla.3d DCA 1996). Florida Courts treat unjust enrichment and quantum meruit synonymously. See Commerce Partnership 8098 L.P. v. Equity Contracting Co., 695 So. 2d 383, 386 (Fla. 4th DCA 1997). The basis for the action is an implied contract. See id.

Here, none of the elements for a claim of unjust enrichment have been satisfied. First, Lochmere did not confer a benefit upon Fleet. "It is axiomatic that there must be a benefit conferred before unjust enrichment exists." Butler, Inc. v. Trizec Properties, Inc., 524 So.2d 710, 712 (Fla.2d DCA 1988) (citing Coffee Pot Plaza Partnership v. Arrow Air Conditioning & Refrigeration, 412 So.2d 883 (Fla.2d DCA 1982)). In this case, Lochmere voluntarily provided the Master Development Budget to Fleet in connection with the loan evaluation process. (Avil Aff. ¶ 3). Lochmere did not apply for or receive any loan from Fleet. (Avil Aff. ¶ 4). Prior to filing of the Complaint, neither the Plaintiffs nor any other person or entity ever indicated to Fleet that the Bank was expected to pay for any information voluntarily provided by the Plaintiffs. (Whiting Dep. at 104). Thus, the only possible alleged benefit would be to the purchasers (H.D. Associates, L.P. and Dunes Operating Company, L.P.), who received the loan from Fleet, and not the Bank.

Second, Fleet did not voluntarily accept and retain the alleged benefit conferred by Lochmere. As Plaintiffs concede in their Complaint, when Lochmere demanded that Fleet return the Master Development Budget, Fleet complied with the request. (Am. Compl. ¶¶ 102, 110). After receiving Lochmere's demand, Fleet did not make any further use of the documentation of the Plaintiffs and relied upon information provided by the Eiger Defendants. (Avil Aff. ¶ 7). Thus, the "retention" element of unjust enrichment is not satisfied here.

5257 3                                          4

Third, it would not be inequitable for Fleet to retain the alleged benefit of the information sent by Lochmere without paying the value thereof to Lochmere. Here, Lochmere voluntarily provided Fleet with the Master Development Budget and never indicated that the Bank was expected to pay for any information furnished by the Plaintiffs prior to filing of the Complaint. (Avil Aff. ¶ 5; Whiting Dep. at 104). Under these circumstances, Plaintiffs have failed to demonstrate that it would be inequitable if Fleet does not pay for the Master Development Budget and, accordingly have failed to aver legally sufficient claims against the Bank. Consistent with this Court's decision in Cherokee Oil Co. v. Union Oil Co., supra, and other applicable law, Plaintiff's unjust enrichment claim should be dismissed.

Even if the court finds that Fleet received some tangential benefit from Plaintiffs' voluntary delivery of the Master Development Budget, Plaintiffs' claims are nevertheless barred as a matter of law. To the extent Lochmere expected to be paid for the Master Development Budget, its expectation could only have arisen through its alleged partnership agreements with the other Defendants. As a result, any alleged benefit received by Fleet arose from the relationship between Plaintiffs and the other Defendants. It is black letter law that "[t]he mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution." 66 Am.Jur.2d, Restitution and Implied Contracts, §16 (1973). Moreover, "a person who has conferred a benefit upon another, by the performance of a contract with a third person, is not entitled to restitution from the other merely because of the failure of performance by the third person." Id.

Thus, if Plaintiffs were entitled to compensation for the Master Development Budget, the obligation to pay the compensation could only arise from a relationship between Plaintiffs and the

other Defendants.  As a result, Plaintiffs may not recover from Fleet simply because the other Defendants allegedly failed to perform contractual duties owed to the Plaintiffs.

In a similar vein, Plaintiffs are barred from recovering for unjust enrichment from Fleet because Fleet fulfilled its obligation in this transaction by making the loan.  Under Florida law, there can be no claim for unjust enrichment "where payment has been made for the benefit conferred." Gene B. Glick Co. v. Sunshine Ready Concrete Co., 651 So.2d 190 (Fla. 4th DCA 1995).  In applying this rule, Florida courts have held that a subcontractor may not recover for unpaid bills from an owner when the owner has paid the general contractor.  See Yates v. Bernard's Carpet and Draperies, Inc., 481 So.2d 515, 516 (Fla. 4th DCA 1985); Commerce Partnership 8098 L.P. v. Equity Contracting Co., 695 So.2d 383, 388 (Fla. 4th DCA 1997) ("The law of quasi contract does not require an owner to pay twice").

This rule applies here.  Fleet fulfilled its obligation in this transaction–it made the loan.  Fleet cannot be required to do anything further.  To hold otherwise would, in effect, cause Fleet to have to "pay twice." Accordingly, Plaintiffs' unjust enrichment claim fails.

Finally, Plaintiffs may not prevail because it is customary for loan applicants (and their agents) to provide banks information as part of a loan application without compensation. (Avil Aff. ¶ 8; Whiting Dep. at 104). The law of unjust enrichment is clear on this point.  Unjust enrichment is based upon a "legal presumption" or inference that "a party benefitted must pay reasonable compensation for such services or he stands unjustly enriched." Tobin & Tobin Ins. Agency, Inc. v. Zeskind, 315 So.2d. 518, 520 (Fla. 3rd DCA 1975).  However, [i]n the case of services, the inference of a promise to pay may be rebutted . . . by the fact that such services when rendered are customarily given without compensation." Restatement of Restitution, §107(2), comment c.

52573                                            6

In the banking industry, it is customary for loan applicants and their agents to provide information to banks during the loan review process without receiving compensation from the Bank. (Avil Aff. ¶ 8; Whiting Dep. at 104). As a result, the Plaintiffs are not entitled to any legal presumption that the Bank agreed to pay Plaintiffs for the Master Development Budget. Plaintiffs' unjust enrichment claim against the Bank is therefore without merit.

**2.    A Claim For Unjust Enrichment Based on Alleged Trade Secrets is Preempted by the Florida Uniform Trade Secrets Act.**

Lochmere's unjust enrichment/quantum meruit claims are barred because Florida's Uniform Trade Secrets Act preempts all other claims for misappropriation of trade secrets. Specifically, Fla. Stat. § 688.08 provides:

> (1)    Except as provided in subsection (2), ss. 688.001-688.009 displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret.

Courts interpreting the Uniform Trade Secrets Act have held unjust enrichment claims based upon alleged misappropriation of a trade secret are preempted by the Act. See Frantz v. Johnson, 999 P.2d 351, 357-358 (Nev. 2000) (holding the Uniform Trade Secrets Act excludes claims for unjust enrichment related to the alleged misappropriation of a trade secret); Glasstech, Inc. v. TGL Tempering Sys., Inc., 50 F. Supp.2d 722, 731 (N.D. Ohio 1999) (holding claims for "quasi-contract/quantum meruit and unjust enrichment are essentially restitutionary in nature and are displaced" by the Uniform Trade Secrets Act); Web Communications Group, Inc. v. Gateway 2000, Inc., 889 F. Supp. 316, 321 (N.D. Ill. 1995) (holding unjust enrichment claim was preempted by

the Illinois Trade Secrets Act). Thus, Lochmere's claim that Fleet has been unjustly enriched because Fleet "obtained and used information and data collected by Lochmere for use in the Project in violation of Florida's Trade Secret Act" is preempted by the Trade Secret Act and must be dismissed.

**B.    The Court Should Enter Summary Judgment on Plaintiff's Misappropriation of Trade Secrets Claim in Count XXX.**

**1.    The Master Development Budget is Not a Trade Secret.**

A trade secret is defined by the Florida Uniform Trade Secret Act, §688.002(a), Fla. Stat., as follows:

> . . . information, including a formula, pattern, compilation, program, device, method, technique or process that:
>
> (a)    Derives independent economic value, actual or potential, from not being generally known to, and not be readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

To establish a misappropriation of a trade secret under the Act, the plaintiff bears the burden of demonstrating both that specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998) (citing Lee v. Cercoa, 433 So.2d 1, 2 (Fla. 4th DCA 1983)).

In this case, Plaintiffs claim that the "Master Development Budget" which they prepared for the Hammock Dunes project comprises a "trade secret." (Evans Dep. III at 225-226). The Master Development Budget was a computer-generated spread sheet of rows and columns containing various income and expense items projected for the Hammock Dunes Project. (Evans Dep. II, Ex.

36; Evans Dep. III, Exs. 38, 46-50) (filed under seal).  The information was inputted on "Lotus" or "Excel" software -- common off-the-shelf computer programs which are commercially available to anyone who wants to purchase them.  (Evans Dep. III at 161, 162).

Lochmere Development prepared several versions of the Master Development Budget which it furnished to the Eiger Entities. (Evans Dep. III at 157-158, 160-161, 173-177).  The information in the budget was assembled from the seller, ITT,  from consultants who were hired by prior prospective purchasers and whose fees were ultimately paid by the Eiger Entities (and not by Lochmere Development), or from publicly available documents.  (Evans Dep. III at 166, 170-171, 256). This information was not secret or confidential, was admittedly disclosed by Evans to others without any confidentiality agreement or contract in place, and was available to the prior prospective purchaser or to the Eiger Entities as well as to Lochmere Development. (Evans Dep. III at 178-179, 242).  Evans conceded that Defendants could have put together their own budget given adequate time.  (Evan Dep. III at 227).

Based upon these facts, the documents generated by Lochmere do not constitute "trade secrets" under the Trade Secret Act.  The case Public Sys. Inc. v. Towry, 587 So. 2d 969 (Ala. 1991), is instructive on this issue.  In Public Systems, the Supreme Court of Alabama held that the plaintiff's "spreadsheet software data program" did not meet the definition of a trade secret under the Act.  The court there found that the spreadsheet program was an "off-the-shelf computer program" that was "available to anybody who wants to go down to the software store and buy it." Id. at 971.  As a result, the court held that there was no trade secret protection in the program itself. Id.  The court further found that all of the information in the spreadsheet data program–a map,

population figures, and other figures gleaned from public documents–was "readily available to the public" and thus did not meet the definition of a trade secret under the Act. Id. at 972.

When the Public Systems analysis is applied here, the same conclusion is reached. Here, the Master Development Budget started with an off-the-shelf computer spreadsheet program. All of the information contained in the spreadsheet program was either not assembled by Plaintiffs or was available to the public. Under these facts, this Court should find that Plaintiffs have failed to meet the definition of a trade secret.

### 2.    Plaintiffs Failed to Preserve or Waived Any Claim of Trade Secrets by Disclosing The Alleged Trade Secret To a Third Party.

After the Eiger Entities refused to agree to the Management, Development and Marketing Agreement that Evans proposed, Evans went to Starwood Capital Group ("Starwood"), a Wall Street capital management firm with whom he had previous dealings, (Evans Dep. III at 41-42), to ascertain whether that company was interested in pursuing the acquisition and development of Hammock Dunes with Lochmere Development's assistance. (Evans Dep. III at 295-297).  In the course of these discussions, Evans gave Starwood representatives a copy of the Master Development Budget.  Starwood evaluated and used the information in the budget in making its own offer to purchase the property. (Evans Dep. III at 298, 302-305). Moreover, Evans admittedly disclosed this information to Starwood without any confidentiality agreement and without any contract in place for his or Lochmere Development's services. (Evans Dep. III at 313, 324). [2]

---

2.    As noted above, much of the information in the Master Development Budget was prepared by consultants who were paid by the Eiger Entities. Mr. Evans took this information and gave the Master Development Budget to Starwood to use in a competing bid for the property. Under these circumstances, it is astonishing that Plaintiffs would sue these Defendants for
(continued...)

The United States Supreme Court has held that "[i]f an individual discloses his trade secret to others who are under no obligation to to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984). Thus, Lochmere's disclosure of the Master Development Budget to Starwood without adequate confidentiality arrangements extinguishes Lochmere's property rights in the document and precludes the claim for misappropriation of trade secrets.

### 3.     Fleet's Use of the Information Was Not Improper.

Plaintiffs have alleged that Fleet has unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage. (Am. Compl. ¶ 353). "In a typical case for improper use [of trade secrets], the defendant company uses the information to gain a competitive advantage against the trade secret owner." Vernango River Corp. v. NIPSCO Indus., Inc., 1994 WL 702759, *10 (N.D. Ill. December 15, 1994). Fleet's only involvement in this project was in making the loan, not in competing with Plaintiffs to market or develop the project. Thus, Fleet's use of the Master Development Budget was not improper because Fleet gained no competitive advantage against Plaintiffs by using the information.

Moreover, Fleet's alleged use was not improper because Lochmere's original purpose in providing the information to Fleet was to assist the purchasers in obtaining financing for the purchase of Hammock Dunes. Any claimed use of the information by Fleet during the loan evaluation process was not improper because such use was not adverse to the purpose for which the

---

2.     (...continued)
misappropriation of information belonging to and paid for by the Eiger Defendants. If anyone has a claim here, it is the Eiger Defendants!

information was disclosed. In <u>Verango River Corp.</u>, the Court dealt with a similar issue and held that there was no improper use:

> What is absent in this case is an improper use of the information. <u>See</u> <u>Omnitech Int'l Inc.</u> (no improper use where alleged trade secrets revealed during negotiations with plaintiff simply made defendant "smarter" about investigating similar business deal). Plaintiffs were acting on the South Shore's behalf when they disclosed the information, and their objective was to facilitate the economic stability of the South Shore. Even if the Court assumes, arguedo, that NIPSCO used the information to formulate its bid to buy the South Shore, such a use was not adverse to the purpose for which the information was disclosed.

<u>Id.</u> at *10.

Under the reasoning of <u>Verango River Corp.</u>, any use of the information by Fleet during the loan evaluation process was not improper because such use was not adverse to the purpose for which the information was disclosed. As a result, Fleet is entitled to Summary Judgment on Plaintiffs' claim for misappropriation of trade secrets.

**C.    The Conversion Claim is Barred Because it Preempted by the Uniform Trade Secrets Act and Because the Documents Were Returned to Plaintiffs' Upon Request.**

In Count XXXVII, Lochmere alleges that Fleet wrongfully converted its trade secrets. Specifically, Lochmere alleges that Fleet "wrongfully induced Lochmere to disclose the trade secrets" and Fleet "took Lochmere's information and trade secrets and used them for its own benefit." (Am. Compl. ¶¶ 420, 422).

Lochmere's claims are barred because Florida's Uniform Trade Secrets Act preempts all other tort claims for missapproprioation of trade secrets. <u>See</u> Fla. Stat. § 688.08. Courts have

repeatedly held that common law tort remedies involving trade secret misappropriation (except for contractual or criminal remedies) are preempted by the Uniform Trade Secret Act and can no longer be asserted as separate claims apart from the statutory remedy. Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 1271 (S.D. Fla. 2001). In light of the statutory preemption, numerous Courts have granted orders (or affirmed orders) granting summary judgments as to claims for common law conversion when the subjects of the claimed conversions are alleged to be trade secrets. Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 132 F. Supp. 643 (N.D. Ill. 2001); Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 968 (N. D. Ill. 2000); see Garrido v. Burger King Corp., 338 So. 2d 79 (Fla. 3d DCA 1990) (company's conversion and theft claims were preempted by the Copyright Act).

Lochmere's conversion claim is also barred because Fleet returned the documentation at Lochmere's request. Under Florida law, "[t]he essence of the tort of conversion is a party's refusal to surrender the property after demand has been made." Small Business Admin. v. Echevarria, 864 F.Supp. 1254, 1262 (S. D. Fla. 1994). Here, Lochmere voluntarily and consensualy provided Fleet with the documentation in connection with Fleet's loan evaluation process. When Lochmere demanded that Fleet return the documentation, the Bank complied with this request. Thus, there has been no conversion of Lochmere's documentation because there was no refusal to surrender the documents after demand was made.

As demonstrated above, Plaintiffs' claim for "conversion" of their alleged trade secrets in Count XXXVII is precluded as a matter of law, and summary judgement should be entered in favor of Fleet on this claim.

5257.3                                          13

**D.      Plaintiffs' Claim For Civil Conspiracy In Count XXXVIII Must Fail Because Plaintiffs Do Not Have a Viable Underlying Tort Claim.**

The elements of a claim for civil conspiracy are (a) a conspiracy between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; (d) damage to the plaintiff as a result of acts done under the conspiracy. Primerica Fin. Serv., Inc. v. Mitchell, 48 F.Supp. 1363 (S. D. Fla. 1999); Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Co., 616 So.2d 562 (Fla. 5th DCA 1993). The gist of an action for civil conspiracy is not the conspiracy itself, which furnishes no independent cause of action, but the alleged wrong committed by the conspirators. Id. at 565; Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). Thus, where the underlying tort claims are legally insufficient, summary judgment also is appropriate with respect to a claim for civil conspiracy based upon the conduct involved in those underlying claims. Griese-Traylor Corp. v. First Nat'l Bank of Birmingham, 572 So.2d 1039 (5th Cir. 1978).

Accordingly, summary judgment also must be entered in Fleet's favor as to Plaintiffs' claim for civil conspiracy given the absence of any legally sufficient underlying tort claim.

**IV.      CONCLUSION**

On the basis of the foregoing, Fleet respectfully requests that the Count enter Summary Judgment in its favor as to Counts XXIII, XXX, XXXVII, and XXXVIII of Plaintiffs' Amended Complaint and that the Court award costs, expenses and reasonable attorneys' fees in the Bank's favor.

5257.3                                14

Respectfully submitted,

Daniel F. Molony, Esq.
Florida Bar No. 271330
James B. Murphy, Esq.
Florida Bar No. 287598
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
(813) 202-7100
(813) 221-8837 - Facsimile

Alan Loweinsolm, Esquire
Carol E. Farquhar, Esquire
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road
Suite 110
Dallas, Texas 75252
(972) 713-1300
(972) 713-1313 Facsimile
Attorneys for Eiger Fund I, L.P., Eiger, Inc.,
Eiger Partners, L.P., H.D. Associates, L.P.,
Dunes Operating Company, L.P.,
and 2M Dunes, L.L.C., and Fleet National Bank
f/k/a BankBoston, N.A.

and

Dora Kaufman, Esquire
Florida Bar No.: 771244
Hully, Singer &Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394
(954) 967-1300
(954) 467-1372-Facsimile
Co-Counsel for Fleet National Bank f/k/a
BankBoston, N.A.

52573                              15                              .

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by ~~facsimile transmission and by~~ United States Mail to Gregory J. Orcutt, Esq., Bricklemyer, Smolker & Bolves, P.A., 500 E. Kennedy Blvd., Suite 200, Tampa, FL 33602 and Alan B. Gerlach, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801 this 5th day of July, 2001.

ATTORNEY

5257.3                                  16