**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LOCHMERE DEVELOPMENT GROUP }
INC., and LOCHMERE REALTY, INC.,     }
                                                            }
                Plaintiffs,                          }
                                                            }
v.                                                        }          CASE NO. 8:00 CV 1026-T-27B
                                                            }
H.D. ASSOCIATES, L.P., a Delaware }
Limited partnership, by and through its }
general partner, DUNES OPERATING }
COMPANY, L.P., a Delaware limited }
partnership, by and through its general }
partners, EIGER, INC., a Delaware    }
corporation, and 2M DUNES, L.L.C., a }
Texas limited liability company; EIGER }
FUND I, L.P., a Delaware limited partner- }
ship; EIGER PARTNERS, L.P., a         }
Delaware limited partnership; DAVID  }
LANE, an individual; BARNETT LANE   }
INVESTMENTS, INC., a Texas            }
corporation; JTL CAPITAL, L.L.C., a Texas}
limited liability company; FLEET       }
NATIONAL BANK, N.A. a national       }
banking association; PAUL E.            }
ROWSEY, III, an individual; C.TODD   }
MILLER, an individual; DAVID M.      }
JACOBS, an individual; and WILLIAM  }
S. BUCHANAN, an individual,             }
                                                            }
                Defendants.                         }
_____}

**DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE**
**INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.**
**MOTION FOR SUMMARY JUDGMENT AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

Of Counsel

ALAN M. GERLACH, ESQ.
BROAD AND CASSEL
Florida Bar. No. 199184
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
P.O. Box 4961 (32802)
Telephone No: (407) 839-4200
Fax No: (407) 425-8377
Attorneys for Defendants David Lane, Barnett Lane
Investments,      Inc. and JTL Capital, L.L.C



and

JOHN W. GREENE, ESQ.
HILL GILSTRAP
State Bar No. 08391520
1400 West Abram Street
Arlington, Texas 76013
Telephone No: (817) 261-2222
Fax No: (817) 277-3249
Attorneys for Defendants David Lane, Barnett Lane
Investments, Inc. and JTL Capital, L.L.C

**ORIGINAL**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FILED**

01 JUL -5 AM 11: 29

CLERK'S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

LOCHMERE DEVELOPMENT GROUP }
INC., and LOCHMERE REALTY, INC., }
}
     Plaintiffs, }
}
v. }    CASE NO. 8:00 CV 1026-T-27B
}
H.D. ASSOCIATES, L.P., a Delaware }
Limited partnership, by and through its }
general partner, DUNES OPERATING }
COMPANY, L.P., a Delaware limited }
partnership, by and through its general }
partners, EIGER, INC., a Delaware }
corporation, and 2M DUNES, L.L.C., a }
Texas limited liability company; EIGER }
FUND I, L.P., a Delaware limited partner- }
ship; EIGER PARTNERS, L.P., a }
Delaware limited partnership; DAVID }
LANE, an individual; BARNETT LANE }
INVESTMENTS, INC., a Texas }
corporation; JTL CAPITAL, L.L.C., a Texas}
limited liability company; FLEET }
NATIONAL BANK, N.A. a national }
banking association; PAUL E. }
ROWSEY, III, an individual; C.TODD }
MILLER, an individual; DAVID M. }
JACOBS, an individual; and WILLIAM }
S. BUCHANAN, an individual, }
}
     Defendants. }
_____}

## DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE INVESTMENTS, INC. AND JTL CAPITAL, L. L. C. MOTION FOR SUMMARY JUDGMENT

Of Counsel

ALAN M. GERLACH, ESQ.
BROAD AND CASSEL
Florida Bar. No. 199184
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
P.O. Box 4961 (32802)
Telephone No: (407) 839-4200
Fax No: (407) 425-8377
Attorneys for Defendants David Lane, Barnett Lane
Investments,    Inc. and JTL Capital, L.L.C

and

JOHN W. GREENE, ESQ.
HILL GILSTRAP
State Bar No. 08391520
1400 West Abram Street
Arlington, Texas 76013
Telephone No: (817) 261-2222
Fax No: (817) 277-3249
Attorneys for Defendants David Lane, Barnett Lane
Investments, Inc. and JTL Capital, L.L.C

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 247-248 (1986)..................................................................................4

*Austin vs. Duval County School Board*
657 So. 2nd 945 (1995)..........................................................................................6

*Bankest Imports, Inc. vs. ISCA Corp.*
717 F. Sup. 1537, 1551 (1989)..............................................................................10

*Beers vs. Beers*
724 So. 2nd 109 (Fla. 5th DCA 1998) Reh. Denied, Rev. Denied,
735 So. 2nd 1283....................................................................................................9

*C & J Sapp Publishing Company vs. Tandy Corp.*
585 So. 2nd 290, 292 (1991)...................................................................................9

*Celotex Corp. v. Catrett*
477 U.S. 317, 327 (1986) .......................................................................................5

*Challenge Air Transport, Inc. v. Transportes Aeros Nacionales, S.A.*
520 So. 2nd 323 (3rd DCA).....................................................................................11

*Dreyfuss vs. Dreyfuss*
701 So. 2nd 437 (Fla. 3rd DCA 1997) ....................................................................5

*Earley v. Champion Int'l Corp.*
907 F.2d 1077, 1080 (1990) ..................................................................................4

*Florida Tomato Packers, Inc. vs. Wilson*
296 So. 2nd 536 (Fla.. 3rd DCA) cert. denied,
327 So. 2nd 32 (Fla. 1976)......................................................................................6

*Inversiones vs. Barnett Bank of Central Florida*
584 So. 2nd 110 (1991.............................................................................................10

*Lance vs. Wade*
457 So. 2nd 1008, 1011 (1984).................................................................................8

*Matsushita Elec. Indus. Com. vs. Zenith Radio Corp.*
475 U.S. 574, 586 (1986)........................................................................................5

*Motor City of Jacksonville Limited by and through Motor City Of Jacksonville, Inc. v. Southest Bank, N.A.*
83 F. 3rd 1317, 1339 (1996) cert. granted and vacated
on other grounds, 519 U.S. 1087, 117 S. CT. 760 (1997)..............................................10

*National Union Fire Insurance Company of Pennsylvania v. Carib Aviation, Inc.*
759 F.2nd 873 (11th Cir. 1985)...........................................................................16

*Nohmod v. Nelson*
947 Florida 564, 3 So. 2nd 162 (1941)...................................................................6

*Quinn vs. Phipps*
93 Florida 805, 113 So. 419 (1927)......................................................................10

*Warshall v. Price*
629 So 2nd 903 (4th DCA 1994)..........................................................................15

## Statutes

Florida Uniform Partnership Act 620.8101(7)...........................................................5

## Rules

56, Fed. R. Civ. P.
56, (c ) Fed. R. Civ. P.

# TABLE OF CONTENTS

Background and Procedural Posture...........................................................................1

Factual Basis...................................................................................................2

Legal Grounds..................................................................................................2

1. The Applicable Legal Standard............................................................................4

2.      Plaintiff's Burden of Proof......................................................................

    A.      Violation of the Florida Uniform Partnership Act...................................5

    B.      Commit intentional fraud.............................................................8

    C.      Commit constructive fraud............................................................9

    D.      Theory of unjust enrichment........................................................11

    F.      Violate the Uniform Trade Secrets Act.............................................14

3.      Summary..............................................................................16

4.      Certificate of Service................................................................17

5.      Appendixes ..............................................................................

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LOCHMERE DEVELOPMENT GROUP }
INC., and LOCHMERE REALTY, INC., }
  }
  }
Plaintiffs, }
  }
v. }      CASE NO. 8:00 CV 1026-T-27B
  }
H.D. ASSOCIATES, L.P., a Delaware }
Limited partnership, by and through its }
general partner, DUNES OPERATING }
COMPANY, L.P., a Delaware limited }
partnership, by and through its general }
partners, EIGER, INC., a Delaware }
corporation, and 2M DUNES, L.L.C., a }
Texas limited liability company; EIGER }
FUND I, L.P., a Delaware limited partner- }
ship; EIGER PARTNERS, L.P., a }
Delaware limited partnership; DAVID }
LANE, an individual; BARNETT LANE }
INVESTMENTS, INC., a Texas }
corporation; JTL CAPITAL, L.L.C., a Texas}
limited liability company; FLEET }
NATIONAL BANK, N.A. a national }
banking association; PAUL E. }
ROWSEY, III, an individual; C.TODD }
MILLER, an individual; DAVID M. }
JACOBS, an individual; and WILLIAM }
S. BUCHANAN, an individual, }
  }
Defendants. }
_____ }

## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.

Pursuant to Federal Rules Civil Procedures 56 and Local Rule 3.01, Defendants, David

Lane, an individual, Barnett Lane Investments, Inc. and JTL Capital, L. L. C. (hereafter "Lane

Defendants") move this Court for Summary Judgment on all of Plaintiffs' claims. In support of this motion, the Lane Defendants plead as follows:

## Background and Procedural Posture

1.     Lochmere Development Group, Inc., and Lochmere Realty, Inc., Plaintiffs, (hereinafter "Lochmere" or "Plaintiffs") allege that Lochmere was "promised" certain compensation for Lochmere's involvement in the analysis, acquisition and purchase of the Hammock Dunes Project, an upscale land development project in Flagler County, Florida. Lochmere contends that the "promises" were made by the Lane Defendants and subsequently affirmed or ratified by the remaining Defendants. Lochmere has sued all the Defendants under various causes of actions relating to breach of the alleged "promises" made by all Defendants.

## Factual Basis

2.     The Lane Defendants rely on the  appendix filed herewith, containing excepts of deposition testimony of Lochmere, the affidavit of David Lane and supporting Summary Judgment evidence. [1]

## Legal Grounds

3.     The Lane Defendants are entitled to Summary Judgment on the claims of Plaintiff with regard to the following causes of actions:

      a)     Violation of Florida Uniform Partnership Act;

      b)     Intentional fraud;

      c)     Constructive fraud;

      d)     Unjust enrichment;

---

[1] Robert Evans is the President of Lochmere Realty, Inc. and Lochmere Development Group, Inc. He testified by Deposition as the Corporate Representative for both entities. For the purposes of internal consistency and ease of reference, the deposition testimony of  Robert Evans will be referenced as the testimony of "Lochmere."

e)   Violation of Florida Uniform Trade Secrets Act.

f)   Conversion

The Lane Defendants are entitled to Summary Judgment because the Summary Judgment evidence conclusively establishes that the Lane Defendants are not liable under a cause of action for

a)   violation of the Florida Uniform Partnership Act for the reason that the Lane Defendants were not partners with Plaintiffs;

b)   intentional fraud for the reason that the Lane Defendants made no false representations of fact to Plaintiffs;

c)   constructive fraud for the reason that the information alleged to be confidential and wrongfully disclosed was  a) not confidential and/or b) was not disclosed by the Lane Defendants but rather by Plaintiffs;

d)   unjust enrichment for the reason that the alleged use of proprietary information did not involve "proprietary" information and the Plaintiffs rejected a reasonable compensation offered to Plaintiffs;

e)   violation of the Florida Uniform Trade Secrets Act for the reason that the information in question  a) does not constitute trade secrets and/or  b) Lochmere consented to the disclosure.

f)   conversion for the reason that the information  allegedly was in reality provided to others by Plaintiff.

4.   Additionally and/or alternatively, Lochmere has no evidence that the Lane Defendants entered into a partnership agreement with Lochmere.

5.   Additionally and/or alternatively, Lochmere has no evidence that the Lane Defendants made false representations of fact regarding compensation which Lochmere would receive.

6.   Additionally and/or alternatively, Lochmere has no evidence that the Lane Defendants owed a fiduciary duty to Lochmere.

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF**
**DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE**
**INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.**                    **PAGE 3**

7.    Additionally and/or alternatively, Lochmere has no evidence that the Lane Defendants disclosed "confidential" information.

8.    Additionally and/or alternatively, Lochmere has no evidence that the Lane Defendants violated Florida's Trade Secrets Act.

9.    Additionally and/or alternatively, Plaintiff has no evidence that the Lane Defendants disclosed any information to any person or entity to which Lochmere had not previously disclosed such information and such disclosure was consented to by Lochmere.

## The Applicable Legal Standard

10.    Although cases granting and denying motions for summary judgment are legion, Defendants respectfully remind the Court of certain applicable and governing legal principles. For example, the principle that a court considering a motion for summary judgment must view the evidence in the light most favorable to the non-moving party does not require the parties to concur on every factual point. Rule 56, Fed. R. Civ. P., "[b] y its very terms,... provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). The governing standard as to which facts are material is the relevant substantive law in the case. Id. At 248. Thus, the "threshold inquiry [is to determine] whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. At 250. Further, it should be emphasized that "[c]onsideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on <u>each</u> element

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.                                            PAGE 4

that must be proved." *Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990)*. In

affirming summary judgment in an age discrimination case, the *Earley* court also held:

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]...Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...If the evidence is merely colorable or is non significantly probative, summary judgment may be granted.

> Id. At 1080 (emphasis in original; citations omitted). A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Com. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).*

> In short, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action' " *Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), quoting Fed. R. Civ. P.1.*

## A)   The Lane Defendants did not violate the Florida Uniform Partnership Act

11.   Under the Florida Uniform Partnership Act, Fla. Stat. §.620.8101(7) "a

partnership" is created when there is an association of two or more persons to carry on as co-

owners a business for profit formed under §620.8202 of the Act. Therefore, in order to hold the

Lane Defendants liable under a theory of violation of the Florida Uniform Partnership Act, each

of the following elements must be demonstrated:

    a)   there was an association between the Lane Defendants and Lochmere; and

    b)   which was carried on by them as co-owners of a business for profit.

12.   Additionally, Florida law requires that more specific criteria be met in order to

establish the evidence of an oral argument for partnership. The Florida Courts have clearly

established the elements of an oral agreement which must be demonstrated to establish  a

partnership. A partnership is only established when both parties contribute to the capital or labor

of the business, have a mutuality of interests in both profits and losses, and agree to share in the

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.                           PAGE 5

assets and liabilities of the business. *Dreyfuss v. Dreyfuss*, 701 So. 2nd 437 (Fla. 3rd DCA 1997); *Florida Tomato Packers, Inc. v. Wilson* 296 So. 2nd 536 (Fla 3rd DCA), cert. denied, 327 So. 2nd 32 (Fla. 1976). To establish a partnership there must be a "community of interest and performance of a common purpose, joint control or right of control, joint propriety of interest in subject matter, right to share in the profits, and duty to share in any loses which may be sustained." *Austin v. Duval County School Board*, 657 So. 2nd 945 (Fla. 1st DCA 1995).

13.    These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership. *Dreyfuss*, at 139. In the *Dreyfuss* case, the Court found that there was never any discussion concerning the distribution of partnership gains, losses, payment of business loans, payment of overhead costs, and how to dissolve the partnership of the distribution of assets. *Dreyfuss* at 439. Thus, there was not a sufficient basis to establish the existence of an oral partnership.

14.    In *Nahmod v. Nelson*, 947 Florida 564, 3 So. 2nd 162 (Fla. 1941), the Court held "while the question of whether certain facts constitute a partnership is a question of law, whether the essentials of a partnership exist is a question of fact to be determined by the circumstances of each case. at 164. In the *Nahmod* case, the Court found that Plaintiff's own testimony showed at best only a "vague, uncertain and indefinite agreement of partnership."…. at 164. The Court held that such evidence did not rise to the standard required to establish an oral formation of a partnership.

15.    It is clear that the evidence in this case clearly establishes that there is no genuine issue of material fact as to this issue. Specifically, there was not an association to carry on as co-owners a business for profit. Lochmere testified in deposition that the terms of that Partnership

Agreement were as follows: "we were going to pursue the acquisition and development of Hammock Dunes collectively as a team". P. 452 L. 6 - 10 (app. 1)

Q:    So that was the terms of the Partnership Agreement, that you and Lane, Lane Barnett were going to pursue the acquisition of Hammock Dunes?

A:    Yes Sir, as I understand your question.

Q:    All right. Any other terms?

A:    I think that covers it, doesn't it?

P. 452 L. 11-16 (app. 1)

Q:    "Are there any other terms in this Partnership Agreement that you claim you had with Lane, Lane Barnett, other than that you would pursue the acquisition of Hammock Dunes?

A:    "Acquisition and ultimate development as a team, that's what – that was our objective."

P. 452 L. 20 -25 (app. 1)

Q:    Did you pursue the acquisition and ultimate development of Hammock Dunes as a team?

A:    Yes sir.

Q:    Any other terms?

A:    I think that covers it.

Q:    How – what were your respective roles, as you say, team members?

A:    I think that I addressed that earlier, about [the Lane Defendants] was going to be the owner, and Lochmere was going to provide the development, management, marketing and sales activities for the project.

P. 453 L 1-11 (app. 1)

16.    Based on that sworn testimony of the representative of Lochmere, there was never an intent that Lochmere and the Lane Defendants would be "co-owners." That is a necessary element for creation of a partnership. _Dreyfuss, Id._ Moreover, the above sworn testimony is

precisely the type of "vague, uncertain and indefinite agreement of partnership" that the _Nahmod_ court specifically rejected. The evidence encompassed in the sworn testimony of Lochmere was that such an agreement did not and never existed. Specifically, Lochmere denied in sworn testimony that there would be a sharing of any losses.

**Q:** Okay. Now, you, even as you contemplated what you say was going to be the deal, were not going to have to put any money up in connection with Hammock Dunes Project, were you?

**A:** No sir.

**Q:** Correct?

**A:** That's correct.

**Q:** So if there was a loss, you were not going to suffer the loss in terms of money you put up, correct?

**A:** That's correct.

Page 320, L. 5-15 (app. 2)

17.    Likewise, the affidavit of David Lane shows without equivocation that there was never an oral or written partnership agreement (App.3).

18.    Therefore, any claim that the Lane Defendants violated the Florida Uniform Partnership Act must necessarily fail. Breach of a partnership agreement must be initially predicated on the existence of a partnership.

**B)    The Lane Defendants did not commit Intentional Fraud**

19.    The elements of intentional fraud under Florida law are:

1)    A false statement containing the material facts;

2)    Knowledge by the person making the statement the representation is false;

3)    The intent by the person making the statement that the representation will induce another to act on it; and

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.                                    PAGE 8

4)    Reliance on the representation does injury to the other party.

*Lance v. Wade* 457 So. 2nd 1008, 1011 (Florida 1984); see also *C & J Sapp Publishing Company v. Tandy Corp.,* 585 So. 2nd 290, 292 (Florida App.-2nd Dist.1991).

20.    Lochmere's cause of action under intentional fraud must fail based on the uncontradicted sworn testimony of Lochmere's representative.

> **Q:**    What false representations did David Lane make, and I need to know them in David Lane's words?
>
> **A:**    I don't remember his –
>
> **Q:**    Including Lane Barnett and JTL Capital?
>
> **A:**    I don't remember his exact words.
>
> **Q:**    Okay. Did he provide you any documents that were false?
>
> **A:**    I don't recall.
>
> P. 455 L. 13 -21 (app. 4)

C)    **The Lane Defendants did not commit Constructive Fraud**

21.    Any cause of action for constructive fraud must like necessarily fail. Specifically, in regard to the cause of action for constructive fraud, Lochmere contends that

1)    the Lane Defendants had a fiduciary duty to Lochmere;

2)    that duty was breached by the Lane Defendants by giving secret and confidential information created during the partnership.

An action for constructive fraud is appropriate where there is a duty under a confidential or fiduciary relationship which has been abused. *Beers v. Beers,* 724 So. 2nd 109 (Fla. 5th DCA 1998) Reh. Denied, Rev. Denied, 735 So. 2nd 1283. In order, then, to prevail on as such a theory Lochmere must demonstrate a) a fiduciary relationship with the Lane Defendants and b) the disclosure of "secret and confidential information." Lochmere's proof fails on both elements.

22. First, a fiduciary duty exits only certain circumstances. A fiduciary relationship under Florida law is a legally imposed relationship which is found to exist where relations of trust and confidence exists between the parties, or confidence is imposed by one party and a trust accepted by the other. *In Inversiones vs. Barnett Bank of Central Florida*, *584 So. 2nd 110 (5th DCA Fla. 1991)* (emphasis added), citing *Quinn vs. Phipps*, *93 Florida 805, 113 So. 419 (1927)*. In the *Barnett Bank* case, the Court specifically stated that the Defendant "did not expressly" assume any fiduciary duty towards Plaintiffs...." That was sufficient to establish that no fiduciary relationship existed. at 111.

23. Under Florida law, there must be an allegation of dependency by one party and voluntary assumption of duty by another party to advise, counsel, and to protect the weaker party; The fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of its fiduciary on the part of the other party. *MotorCity of Jacksonville Limited by and through MotorCity of Jacksonville, Inc. v. Southeast Bank, N.A. 83 F. 3rd 1317, 1339 (11th Cir. 1996) (en banc), cert. granted and vacated on other grounds, 519 U.S. 1087, 117 S. CT. 760 (1997), opinion reinstated on remand, 120 F. 3rd 1140 (11th Cir 1997) (en banc).* See, also, *Bankest Imports, Inc. v. ISCA Corp., 717 F. Sup. 1537, 1551 (S.D. Florida 1989).*

24. Clearly, the Lane Defendants were not fiduciaries with Lochmere.

25. Second, the Lane Defendants did not reveal any confidential information. In fact, the "secret and confidential" information was instead revealed by Lochmere. The confidential information in question was "the Master Development Budget and [Lochmere's] expertise that [Lochmere] revealed throughout the course of the due diligence investigation... P. 456 L. 9-22

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.**         **PAGE 10**

(app. 4). But, the Master Development Budget was provided to their parties by Lochmere . P. 456 L. 23-25 (app. 4).

26.    Therefore, it was in fact Lochmere that provided the information to the third parties, not the Lane Defendants. Thus, the evidence is conclusive that 1) the Lane Defendants did not breach any fiduciary duty and; 2) even assuming that such a duty existed, Lochmere, not the Lane Defendants revealed the confidential information.

### D)    The Lane Defendants are not liable under a theory of Unjust Enrichment

27.    In order to show unjust enrichment, Lochmere must show the following:

A benefit conferred upon the Defendant by the Plaintiff, appreciation by the Defendant of such benefit, an acceptance in retention of such benefit by the Defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *Challenge Air Transport, Inc. v. Transportes Aeros Nacionales, S.A., 520 So. 2nd 323 (3rd DCA)* (emphasis added).

28.    Based on the foregoing elements which are required to demonstrate a cause of action for unjust enrichment, it is clear that Locmere's claim must fail as a matter of law. In the sworn testimony, Lochmere testified as follows:

> **Q:**    Are you seeking in this lawsuit to be reimbursed or to be paid or awarded damages for the time you spent in connection with the Hammond Dunes Project?
>
> **A:**    Ma'am,  as I stated, I expect to be compensated for my work.
>
> **Q:**    And how you expect – on what basis, on what rate, do you expect to be compensated?
>
> **A:**    Ma'am, I don't have a rate, ma'am.  I expected for my agreements to be honored.
>
> Page 464 L. 23-25 through 465 L 1-7 (app 5)

29.    Additionally, Lochmere testified as follows:

> **Q:**    Where – help me out.  Where is it in here [the alleged agreements] that says – what  other compensation Lochmere will receive in  [the alleged

agreements]?

**A:** We had – okay, if you look at –starts on page nine, marketing, 10.1, and it gets on if you follow through on 10.1 [d] it talks about brokerage to be provided by the management company, which is Lochmere Realty, the brokerage is going to receive seven percent.

**Q:** Okay, when was that matter discussed with David Lane?

**A:** I don't recall right off, but we did discuss as far as when the marketing of the project and who was going to run the real estate office and you need to have a licensed broker to establish the brokerage of that sales office, but I don't remember the exact time.

**Q:** Well, what was discussed with regard to that, what did David Lane say specifically?

**A:** I don't know what he said specifically, but it was my understanding that I was going to be the broker of record for the sale office....

**Q:** Okay. What else?

**A:** Continuing on, paragraph 11.2, 12,000.00 is reflected there.

**Q:** Okay.

**A:** 11.4 "sum equal to one percent of the purchase price, in consideration of some of the due diligence investigation and other work.."

**Q:** When was that discussed?

**A:** Oh, that was discussed sometime earlier. I don't recall if that was before this thing was put together.

**Q:** What exactly was said?

**A:** I don't recall right at the moment.

**Q:** What did Mr. Lane say?

**A:** I don't recall right at the moment. ...

**A:** Yes, sir, so that would be the reimbursement of all of the overhead, the G & A and the operations of it.

**Q:** When did you discuss that with Mr. Lane?

**A:**    I don't recall right off.

**Q:**    What did Mr. Lane say?

**A:**    Well, I don't recall a conversation, you know, specifically at this time. ....

**A:**    It's Exhibit E, Profit Participation Agreement, which identifies a 10% percent preferred return.

**Q:**    Exhibit E?

**A:**    Exhibit E.

**Q:**    Okay. Alright.

**A:**    And you'll see overview, and it addresses 10% percent preferred return, paid to the capital prior to participation of profits.

**Q:**    When did you discuss that with Mr. Lane?

**A:**    I know that we had – I don't recall the exact time when we talked about it, but I think that we believe that it was going to be 10%.

**Q:**    What did Mr. Lane say?

**A:**    I don't recall that he –he responded. I don't recall how he responded.

Page 448 L. 16-25, 449 L. 1-25, Page 450 L. 1-25, Page 451 L. 1-14 (app. 6)

30.    Thus, it is clear that Plaintiff can in no way establish the fair value to which Plaintiffs are entitled under a theory of unjust enrichment. The nebulous claim by Plaintiffs that services were performed  and the Plaintiffs want to be compensated by the "honoring" of an unsubstantiated "agreement" does not provide a legal basis for the Plaintiffs to prevail under a theory of unjust enrichment.  The Plaintiffs do not and cannot establish the fair value of the services which were performed. Plaintiff cannot prevail as a matter law under a theory of unjust enrichment.

**F)**  **The Lane Defendants did not violate the Uniform Trade Secrets Act**

31.    In order for Lochmere to establish a cause of action under this theory, Lochmere must first establish a breach of that Act.

32.    Pertinent parts of that Act states as follows:

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a)    derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other person who can obtain economic value from its disclosure or use; and

(b)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

33.    The evidence in this case clearly establishes that Lochmere fails to establish the existence of either element required to successfully bring this cause of action. First, Lochmere cannot prevail on element (a) which requires that the alleged "trade secrets" is not "readily ascertainable by proper means by another person.." According to the sworn testimony of Lochmere, Lochmere cannot produce any evidence that that information was not readily ascertainable by others.

> **Q:**    So it is accurate to say you don't know whether or not any or all of the information on any of the master development budgets, original through fifth version, were not readily ascertainable by any or all of the Defendants; agreed?
>
> **A:**    Yes, sir.

Page 228 L. 12-17 (app. 7)

> **Q:**    Any information, product developed out by the consultants would have been ready available to the Lane Defendants who were paying for it, correct?
>
> **A:**    Yes, sir.

**Q:**    The public information that was used to prepare the master development budgets would be ready available, if they went to look for it, to either the Eiger Defendants or the Lane Defendants, correct?

**A:**    Yes, sir.

[Mr. Orcutt: Object to the form of the question. We are going over this at least a second time.]

**Q:**    And the ITT information that was made available to you would be just as available, if asked, to the Lane Defendants or the Eiger Defendants, correct?

[Mr. Orcutt: Object to the form of the question.]

**Q:**    Correct?

**A:**    I believe so.

Page 242 L. 4-23 (app. 8)

34.    Additionally, the uncontradicted and incontrovertible evidence is that Lochmere, not the Lane Defendants, revealed the information.

**Q:**    Now, you provided the master development budget to Eiger; is that correct?

**A:**    Yes sir.

**Q:**    And that contained the information that you say is proprietary?

**A:**    Yes sir.

Page 256 L. 20- 25 (app. 9)

E.    **The Lane Defendants are not liable under a theory of Conversion**

35.    According to the authority stated in *Warshall v. Price,* 629 So 2nd 903 (4th DCA 1994), conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.  At 904.  In this case, however, the evidence clearly establishes that there was no such action on the part of the Lane Defendants.   As stated in appendix 9, the information alleged to be converted was the master development budget which was disclosed by Lochmere, not the Lane Defendants.  Therefore, without agreeing that Lochmere was the owner

of the document, (even though Lane had paid for the information contained in the document), the Lane Defendants undertook no action which was inconsistent with alleged ownership of the document by Lochmere. Therefore, Lochmere's cause of action for conversion against the Lane Defendants must fail as a matter of law.

Under Florida law, the essence of the tort of conversion is not acquisition of the property but, rather, the wrongful depravation of that property. *National Union Fire Insurance Company of Pennsylvania v. Carib Aviation, Inc. 759 F.2nd 873 (11th Cir. 1985)*. Additionally, there can be no conversion of Florida law where the person consents to possession by another of assets allegedly converted. In re. *General Plastics Corp.*, 184 b. r. 996 (Bkpty. S.D. Fla. 1995). The evidence contained in the summary judgment proof is that Lochmere was not denied or deprived of the document and that Lochmere consented to its possession by others. Therefore, Lochmere's cause of action must fail as a matter of law.

### Summary

In conclusion, Plaintiffs' causes of action described herein should fail as a matter of law based on the uncontradicted evidence presented to the Court.

Respectfully submitted,

_____
ALAN M. GERLACH, ESQ.
BROAD AND CASSEL
Florida Bar. No. 199184
390 North Orange Avenue, Suite 1100
Orlando, Florida 32801
P.O. Box 4961 (32802)
Telephone No: (407) 839-4200
Fax No: (407) 425-8377
Attorneys for Defendants David Lane, Barnett Lane Investments, Inc. and JTL Capital, L.L.C

and

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANTS DAVID LANE, AN INDIVIDUAL, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L. L. C.                    PAGE 16

JOHN W. GREENE, ESQ.
HILL GILSTRAP
State Bar No. 08391520
1400 West Abram Street
Arlington, Texas 76013
Telephone No: (817) 261-2222
Fax No: (817) 277-3249
Attorneys for Defendants David Lane, Barnett Lane
Investments, Inc. and JTL Capital, L.L.C

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was

forwarded via overnight mail, to all counsel of record on the 2ND day of July, 2001.

John W. Greene

STATE OF TEXAS            §

COUNTY OF TARRANT        §

### AFFIDAVIT OF JOHN W. GREENE

Before me, the undersigned notary, on this day, personally appeared JOHN W. GREENE, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

"My name is John W. Greene. I am over twenty-one (21) years of age and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

The deposition excerpts appendixes contained and incorporated as part of this Motion for Summary Judgment are true and correct copies of deposition excerpts of the deposition of Robert Evans. Further affiant sayeth not.

_____
JOHN W. GREENE

SWORN TO and SUBSCRIBED before me by John W. Greene on this 2nd day of July, 2001.

_____
Notary Public in and for the State of Texas

My commission expires: 6/15/02

W. DOYLENE BLACK
Notary Public State of Texas
My Comm. Exp. 06-15-2002

# APPENDIX 1

Page 451

return.

Q. Exhibit E?

A. Exhibit E.

Q Okay. All right.

A. And you'll see overview, and it addresses 10 percent preferred return, paid to the capital prior to participation of profits.

Q. When did you discuss that with Mr. Lane?

A. I know that we had -- I don't recall the exact time we talked about it, but I think we believed that it was going to be about 10 percent.

Q. What did Mr. Lane say?

A. I don't recall that he -- he responded. I don't recall how he responded.

Q. Is there any other provision for compensation in Exhibit 61?

A. Let's see. We've addressed the real estate brokerage fee to Lochmere Realty. We had the -- the due diligence fee, which was based on one percent, $12,000 a month, and the reimbursement of all overhead.

Q. Okay.

A. I believe that covers it.

Q. All right.

A. Excuse me, did you mark -- John, did you --

MR. GREENE: That's already marked as

Page 452

46.

A. Okay.

Q. (BY MR. GREENE) Now, you continued in your Complaint that Lochmere entered into a valid and enforceable partnership agreement with Lane and Barnett Lane. Is -- what are the terms of that partnership agreement that you're referring to?

A. That we were going to pursue the acquisition and development of Hammock Dunes, collectively as a team.

Q. So that was the terms of the partnership agreement that you and Lane. Lane Barnett were going to pursue the acquisition of Hammock Dunes?

A. Yes, sir, as I understand your question.

Q. All right. Any other terms?

A. I think that covers it, doesn't it?

Q. All right. Well, you tell me.

MR. ORCUTT: Thank you for agreeing with him, counsel. You said all right.

Q. (BY MR. GREENE) Are there any other terms in this partnership agreement that you claim you had with Lane. Lane Barnett, other than that you would pursue the acquisition of Hammock Dunes?

A. Acquisition and ultimate development as a team, that's what -- that was our objective.

Page 453

Q. Pursue the acquisition and ultimate development of Hammock Dunes as a team?

A. Yes, sir.

Q. Any other terms?

A. I think that covers it.

Q. And how -- what were your respective roles, as you say, team members?

A. I think that I addressed that earlier, about David was going to be the owner, and Lochmere was going to provide the development, management, marketing and sales activities for the project.

Q. Okay. Was it also part of David Lane's responsibility to get the capital investment?

A. Yes, sir, that was David's role.

Q. You've also claimed in your Petition that, "During Lane and Lochmere's partnership to develop the project Lane made repeated false representations of fact regarding the compensation which Lochmere would receive upon closing of the sale. purchase and development of the project." Again, let me say when I refer to Lane, I'm referring to David Lane, Barnett Lane and JTL Capital collectively. Now, what false misrepresentations of fact were made?

MR. ORCUTT: I'm going to object to the form of the question. I don't know what context that's

Page 454

in. That was a document prepared by your lawyers, but answer to the best of your ability.

A. Could you repeat that, please, sir?

Q. (BY MR. GREENE) Yes, sir. I'll read this paragraph again. "During Lane and Lochmere's partnership to develop the project, Lane made repeated false representations of fact regarding the compensation which Lochmere would receive upon closing of the sale, purchase and development of the project." What false representations do you contend that Lane made?

A. That we were partners, we were pursuing this thing together. There was no doubt in my mind based on representations by Mr. Lane that we were doing this as a team, as partners, but that wasn't the case.

Q. What representations were those? What specifically did Lane say?

A. Well, sir, as evidenced by all these proceedings, that we worked together as a team for the acquisition, the ultimate acquisition and development of Hammock Dunes, and basically I got kicked to the curb, they took all my information and went with Eiger and left me sitting on -- on the sidewalk.

MR. GREENE: Object, nonresponsive.

Q. (BY MR. GREENE) What representations did

# APPENDIX 2

our time.

Q    How much?

A    It is in the letter you just had.  I don't recall the amount.

Q    Okay.  Now, you, even as you contemplated what you say was going to be the deal, were not going to have to put any money up in connection with Hammock Dunes project, were you?

A    No, sir.

Q    Correct?

A    That's correct.

Q    So if there was a loss, you weren't going to suffer the loss in terms of money you put up, correct?

A    That's correct.

Q    So you -- even as you contemplated this "claimed H.D. agreement" or any agreement you had with the Eiger defendants, you weren't agreeing to share in a loss, if there was one, were you?

A    No, sir, I wasn't.

Q    My statement is correct?

A    That statement is correct.

Q    And by "you," I mean either Lochmere Development or Lochmere Realty, correct?

A    Yes, sir.

012f8040-448f-11d5-8bca-000255a63be2

# APPENDIX 3

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LOCHMERE DEVELOPMENT GROUP INC., and LOCHMERE REALTY, INC., }
}
}
      Plaintiffs, }
}
v. }     CASE NO. 8:00 CV 1026-T-27B
}
H.D. ASSOCIATES, L.P., a Delaware Limited partnership, by and through its general partner, DUNES OPERATING COMPANY, L.P., a Delaware limited partnership, by and through its general partners, EIGER, INC., a Delaware corporation, and 2M DUNES, L.L.C., a Texas limited liability company; EIGER FUND I, L.P., a Delaware limited partnership; EIGER PARTNERS, L.P., a Delaware limited partnership; DAVID LANE, an individual; BARNETT LANE INVESTMENTS, INC., a Texas corporation; JTL CAPITAL, L.L.C., a Texas limited liability company; FLEET NATIONAL BANK, N.A. a national banking association; PAUL E. ROWSEY, III, an individual; C.TODD MILLER, an individual; DAVID M. JACOBS, an individual; and WILLIAM S. BUCHANAN, an individual, }
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
}
      Defendants. }
}

STATE OF TEXAS      §

COUNTY OF TARRANT    §

## AFFIDAVIT OF DAVID LANE

     Before me, the undersigned notary, on this day, personally appeared DAVID LANE, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

"My name is David Lane. I am over twenty-one (21) years of age and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

1.      I was co-owner of Barnett Lane Investments, Inc., and owner of JTL Capital, L. L. C. at all time pertinent to this matter. All communications I had with any person or entity regarding the Hammock Dunes Project were in that capacity and will be referred to as communications made collectively by "the Lane Defendants."

2.      During 1997 through 1999 I was involved in negotiations with numerous individuals regarding the acquisition and development of the Hammock Dunes Project. Among the persons with whom I had communications was the president of Lochmere Realty, Inc. and Lochmere Development Group, Inc., Robert Evans. I will refer to Lochmere Realty, Inc., and Lochmere Development Group, Inc. collectively as "Lochmere." I had numerous conversations with Mr. Evans in his capacity as President of Lochmere in that time period. In several of those communications, Mr. Evans proposed a general compensation scheme for Lochmere as part of the overall process of acquisition and development.

3.      I never agreed to any compensation scheme for Lochmere. Inasmuch as the Lane Defendants were not going to be the capital investors on the Hammock Dunes Project, the Lane Defendants had no authority to represent any terms any individuals involved in the process would receive as compensation. I never represented that there was an agreement for compensation for Lochmere.

4.      I never signed any agreement relating to compensation for Lochmere for the reason that the Lane Defendants did not have the authority to do so nor did the Lane Defendants agree to any compensation settlement with Lochmere. That decision could only be made by the entity funding the purchase and development of the Hammock Dunes Project. I advised Lochmere that I could not independently make that decision.

5.      I never entered into any oral agreement concerning compensation for Lochmere. That decision could only be made by the entity providing the capital for the purchase and development of the Hammock Dunes Project. I advised Lochmere that I could not independently make that decision.

6.      At no time did the Lane Defendants enter into an oral or written partnership agreement with Lochmere. The Lane Defendants never agreed to an arrangement whereby the Lane Defendants and Lochmere would be co-owners of Hammock Dunes, or any other project. The Lane Defendants never agreed to be co-owners of any place or thing with Lochmere.

7.      The Lane Defendants never had any agreement with Lochmere regarding the sharing of profits on Hammock Dunes or any other project. The Lane Defendants never had any or agreement with Lochmere concerning the sharing of losses on Hammock Dunes or any other project.

# APPENDIX 4

Case 8:00-cv-01026-JDW    Document 85    Filed 07/05/01    Page 34 of 44 PageID 1190

NO. 8:00-CV-1026-T-27B    Multi-Page™    ROBERT D. EVANS - VOL. 2
LOCHMERE DEVELOPMENT GROUP, INC. vs. H.D. ASSOCIATES, L.P.    JUNE 26, 2001

Page 455

Lane make?

A. Is that a legal concept? Because I'm -- I'm trying to describe what happened versus what you may interpret as a legal concept, so I think that might be some of the confusion between -- between us, in my attempt to answer your questions thoroughly.

Q. Well --

MR. ORCUTT: Are you asking him for statements that were not true? Or how do you define --

MR. GREENE: Yeah. Misrepresentations.

MR. ORCUTT: -- false representations, I think that's what he's asking you.

Q. (BY MR. GREENE) What false representations did David Lane make, and I need to know them in David Lane's words?

A. I don't remember his --

Q. Including Lane Barnett and JTL Capital?

A. I don't remember his exact words.

Q. Okay. Did he provide you any documents that were false?

A. I don't recall.

Q. You've also alleged that Lane, the Lane Defendants were -- are liable for constructive fraud for the reason that Lochmere developed confidential information and data for the sole purpose of furthering

Page 456

the goal of obtaining and developing the project and financially profiting from the deal and that Lane abused and breached the relationship by revealing that information. What confidential information and data did Lochmere develop?

MR. ORCUTT: I'm going to make the same objection to this line of questioning as to the last. Go ahead and answer it.

A. The master development budget and my expertise that I revealed throughout the course of the due diligence investigation, throughout this whole process, because Mr. Lane, as capable as he is in Texas, unfortunately, did not have a vast knowledge of real estate development in the state of Florida, so this information that I'm here referring to was on an ongoing basis, where I raised issues with the seller and shared that information as I went with David on these critical information, and the creation of the Master Development Budget.

Q. (BY MR. GREENE) Now, you provided the Master Development Budget to Eiger; is that correct?

A. Yes, sir.

Q. And that contained this information that you say is proprietary?

A. Yes, sir.

Page 457

Q. And you did it for the purpose of attempting to assist in the purchase and development of Hammock Dunes?

A. On the condition of that, yes, sir.

Q. On what? On the condition of what?

A. You said that's why I gave it to them, didn't you?

Q. Yeah, for that purpose.

A. For that purpose.

Q. Okay. That's the purpose you gave it to Eiger?

A. Yes, sir.

Q. All right. And that's the purpose -- that's the purpose for which you generated this information and these documents; right, to assist in the purchase and development of Hammock Dunes?

A. Yes, sir.

Q. And we've already established that either Eiger ultimately or David Lane immediately paid for the information acquired from third parties that went into this Master Development Budget; is that right?

A. Not necessarily.

Q. What information didn't they pay for? Did you pay for any -- did Lochmere pay for any information?

Page 458

A. No, sir, but not all the information went into the budget.

Q. So they paid for additional information that didn't go into the budget?

A. No, sir. What Mr. Lane paid for through Barnett Lane and JTL Capital may have paid for some of it, I don't know during that transition period, but it was -- David -- Mr. Lane's entity was going to pay for all the third party, you know, consultants, and I would review that information, which a lot of it I helped create in conjunction with the consultants. Some of that information I may or may not have, you know, utilized in the budget. If I agreed with the numbers, then I may utilize them. And I may just -- and then I would decide the timing and sequence of events of those numbers. If I didn't agree with them, I wouldn't use them, so that budget is not an assemblage of someone else's data. What it is, I used that information in addition to my experience to create the Master Development Budget, so that budget is not a mere assemblage of someone else's reports.

Q. It's an assemblage of someone else's reports and your opinions?

A. No, it is not an assemblage of someone else's reports. The Master Development Budget is not an

# APPENDIX 5

Case 8:00-cv-01026-JDW    Document 85    Filed 07/05/01    Page 36 of 44 PageID 1192

NO. 8:00-CV-1026-T-27F          Multi-Page™          ROBERT D. EVANS - VOL. 2
LOCHMERE DEVELOPMENT GROUP, INC. vs. H.D. ASSOCIATES, L.P.          JUNE 26, 2001

Page 463

A. I have no idea.

Q. And if you have notes, do you believe they've been produced in this case?

A. Yes, ma'am.

Q. You've used the words that Mr. Lane, in your understanding, was to be the purchaser in connection with the contract with Farallon and ITT. What did you mean when you described Mr. Lane as being the purchaser?

A. Just that, he was going to be the purchaser of that -- that asset, of that property, in conjunction with Farallon was going to be the equity contributor.

Q. Was it your understanding that Mr. Lane was going to put in money of his own?

A. I don't know whether we discussed whether Mr. Lane was going to put in money of his own. I know that he was going to -- as I discussed earlier -- he was going to pay for the third party consultants to the point and then Farallon was going to reimburse him at a later date for that.

Q. When the -- when you learned that Farallon was not going to go forward, are you aware of whether or not Mr. Lane ever asked Farallon to be reimbursed for the costs he had expended?

A. I don't know.

Page 464

Q. Did you ever ask Farallon to be reimbursed for the time you had spent?

A. No.

Q. Why not?

A. I didn't.

Q. And are you seeking then in this lawsuit to be reimbursed for time you spent on the Hammock Dunes project prior to the time that Farallon ceased its involvement?

A. I don't know that I requested to be reimbursed for time in that concept. I'm not billing anything by the hour, ma'am.

Q. Are you seeking in this lawsuit to be awarded any money for the time that you've spent on the Hammock Dunes project?

A. In my sense of the effort, be it time, resources, commitment, expertise that in the creation of the Master Development Budget and what I brought to the table that allowed Eiger to -- you know, and H.D. to go forward and acquire that project.

MS. FARQUHAR: Motion to strike as nonresponsive.

Q. (BY MS. FARQUHAR) Are you seeking in this lawsuit to be reimbursed or to be paid or awarded damages for the time you spent in connection with the

Page 465

Hammock Dunes project?

A. Ma'am, as I stated, I expect to be compensated for my work.

Q. And how do you expect -- on what basis, at what rate do you expect to be compensated?

A. I don't have a rate, ma'am. I expect -- I expected for my agreements to be honored.

Q. And what part of the agreement that you expect to be honored, if any, relates to the time you expended on the Hammock Dunes project prior to it was -- it was supposed to close?

MR. ORCUTT: I object to the form of the question.

A. I don't really understand the question. What I expect to be compensated for, ma'am, was what I brought to the table, irrespective of when I gained knowledge, and how I got, you know -- I presented it at that time that was embodied in the Master Development Budget as, you know, tied to the agreements.

Q. (BY MS. FARQUHAR) Well, the fee for due diligence coordination, is that what you're talking about as being in the Master Development Budget?

A. It was a component part. It did not stand alone. It was a components part of the overall compensation package.

Page 466

Q. What does that line represent in the Master Development Budget to your understanding?

A. What does it represent? A component part of the compensation package.

Q. And what particular part of the component?

A. It's just a component part of the compensation. It's a fee.

Q. A fee for what?

A. A fee for part of my, you know, involvement with this project, in conjunction with all the other component parts.

Q. And which particular part of your involvement was that a fee for?

A. It's -- it's not segregated. For my involvement in help putting this project together and to go forward it was a component part of the Master Development Budget as well as the -- the agreements, so it's not saying that fee was for one specific scope of work. It wasn't. It was part of an overall compensation that was part of my compensation, or Lochmere's compensation.

Q Does that fee include repayment to Mr. Lane for the monies he paid to these third party vendors such as Steve Somaha?

A. No, ma'am.

# APPENDIX 6

8.    The Lane Defendants paid most, if not all, of the expenses incurred in the consulting work undertaken for the pursuant of the opportunity to acquire Hammock Dunes, with most, if not all, expenses later being reimbursed by the Eiger entities, but never by Lochmere.

9.    The Lane Defendants never produced any documents generated by Lochmere to Eiger other than those which had already been produced by Lochmere or were produced pursuant to the instructions or agreement of Lochmere.

10.    At all times, the Lane Defendants advised Lochmere that a compensation scheme for Lochmere as a result of its involvement in the acquisition and development of the Hammock Dunes Project had to be reached independently with the eventual owner of the project.

11.    The Lane Defendants never represented that they were acting in a fiduciary or confidential relationship with Lochmere and never undertook to act or behalf of Lochmere with regard to the Hammock Dunes Project."

DAVID LANE

SWORN TO and SUBSCRIBED before me by _____ on this _____ day of July, 2001.

W. DOYLENE BLACK
Notary Public State of Texas
My Comm. Exp. 06-15-2002

Notary Public in and for the State of Texas

My commission expires: 6/15/02

# APPENDIX 7

same questions I asked and may not have come up with the same conclusions that I did.

Q    Other than that, since you don't know that, my question is --

A    There, sir, lies the core to that question, that you're saying, could they have come up with all of this information on their own. I don't know because I don't know what their capabilities -- how far beyond their capabilities would have been. They may never have raised some of the questions that I raised and never surfaced this information.

Q    Fair enough. So it is accurate to say you don't know whether or not any or all of the information on any of the master development budgets, original through fifth version, were or were not readily ascertainable by any or all of the defendants; agreed?

A    Yes, sir.

MR. ORCUTT:  I want to have a continuing objection to the form of the question that contains "readily ascertainable."

BY MR. LOEWINSOHN:

Q    How is it that you believe any or all of the defendants have used the information disclosed on any of the master development budgets, from the original version through the fifth version, for

012f8040-448f-11d5-8bca-000255a63be2

# APPENDIX 8

question.  The information they generated based on the input I had would be readily available to the Lane defendants?

Q     Any information, product developed out by the consultants would have been readily available to the Lane defendants who were paying for it, correct?

A     Yes, sir.

Q     The public information that was used to prepare the master development budgets would be readily available, if they went to look for it, to either the Eiger defendants or the Lane defendants, correct?

A     Yes, sir.

MR. ORCUTT:  Object to the form of the question. We're going over this at least a second time.

BY MR. LOEWINSOHN:

Q     And the ITT information that was made available to you would be just as available, if asked, to the Lane defendants or the Eiger defendants, correct?

MR. ORCUTT:  Object to the form of the question.

BY MR. LOEWINSOHN:

Q     Correct?

A     I believe so.

Q     What was the unique financial structure that you claim is included in these master development

# APPENDIX 9

Page 256

this consultant, Canterbury, to assist you in compilation of the estimated construction costs that are reflected in these various versions of the master development budget; agreed?

A     Yes, sir.

Q     And Evans Exhibit 13 is a letter you sent to David Lane, correct?

A     Yes, sir.

Q     And it confirms in the second paragraph that work done by Canterbury Engineering initially paid for by the Lane defendants, ultimately paid for by the Eiger defendants was work used to prepare conceptual site plans and infrastructure construction cost estimate to support the master development budgets that we've been talking about, correct?

A     The letter speaks for itself, sir.  That's correct.

Q     But the letter is correct in that regard?

A     The letter is correct in regards to what it says, and you just repeated that.

MR. ORCUTT:  Objection.

BY MR. LOEWINSOHN:

Q     Let me show you what has been marked as Exhibit 51 and ask you to identify and confirm that that is a letter that you wrote to the Canterbury

012f8040-448f-11d5-8bca-000255a63be2