FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

01 AUG 13 PM 3: 10

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.

    Plaintiffs,

v.                                                    Case No.: 8:00-cv-1026-T-27B

EIGER FUND I, L.P., et al.

    Defendants.

_____/

## LOCHMERE'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT
**(Intentional Fraud, Constructive fraud, Economic Loss Rule, and Civil Conspiracy)**

Plaintiffs, LOCHMERE DEVELOPMENT GROUP, INC. and LOCHMERE REALTY, INC. ("Lochmere"), by and through the undersigned counsel hereby file their Memorandum of Law in Opposition to Defendants', EIGER FUND I, L.P., EIGER PARTNERS, L.P., H.D. ASSOCIATES, L.P., DUNES OPERATING COMPANY, L.P. and 2M DUNES, L.L.C. ("Eiger Entities"), PAUL E. ROWSEY, III, C. TODD MILLER, DAVID M. JACOBS, and WILLIAM S. BUCHANAN (the "Eiger Individuals"). (The Eiger Entities and Eiger Individuals are collectively referred to as the "Eiger Defendants"), FLEET NATIONAL BANK, N.A. ("Fleet") and DAVID LANE, BARNETT LANE INVESTMENTS, INC. and JTL CAPITAL, L.L.C. (the "Lane Defendants"), Motions for Summary Judgment. Lochmere hereby reincorporates the discussion of the facts from its other Memoranda of Law in Opposition to Defendants' Motion for Summary Judgment.

117

## STATEMENT OF FACTS

Lochmere is in the business of developing, marketing, and managing real estate development projects in Florida. *(Evans Dep. III at pp. 20-37.)*[1] Robert Dale Evans ("Evans") is the sole shareholder and director of Lochmere. *(Evans Dep. III at p. 15.)* In 1997, Lochmere was informed of the opportunity to acquire a project known as Hammock Dunes located in Palm Coast, Florida. *(Evans Dep. III at pp. 341-342.)* Through a potential investor in the project, Steven Millham of Farrallon Capital, Lochmere was introduced to David Lane, of Barnett Lane Investments, Inc. *(Evans Dep. III at pp. 348-349.)* Lochmere had been recommended to Steven Millham due to Lochmere's experience and understanding of the complexities of real estate development in Florida. *(Evans Dep. III at 348.)* Lane was also interested in acquiring Hammock Dunes. *(Evans Dep. III at p. 354.)* Lane and Lochmere decided to work as a team to "make a run at it." *(Evans Dep. III at p. 349, 451-454.)* Prior to meeting with ITT, the owner of Hammock Dunes, Lochmere, Lane and Millham held a meeting. At that meeting Lane said he was positive about the project and was looking to Lochmere to spearhead the investigation to understand the actual mechanics of the project. *(Evans Dep. III at pp. 367-368.)* On August 21, 1998, Lochmere forwarded a letter to Lane indicating the scope of the relationship and the structure of the compensation between Lochmere and the Lane Defendants. *(Appendix, Ex. "B".)* Lane did not object to the terms proposed by Lochmere. *(Evans Dep. III at pp. 394-395.)* On September 2, 1998, Lochmere forwarded a second letter to Lane reiterating the terms of compensation Lochmere was to receive. *(Appendix, Ex. "C".)*

---

[1] Plaintiffs have adopted Defendants' convention for references to deposition transcripts on file with this Court. They are denoted by the name of the deponent followed by a reference to the relevant pages of the transcript. Robert Dale Evans has been deposed three times – twice in the related lawsuit in Texas and once in this case. References to the transcripts of these depositions are denoted as "Evans I" for his deposition on March 28, 2000, in the Texas case, "Evans II" for his deposition on May 22, 2000, in the Texas case, and "Evans III" for his deposition on April 26, 2001, in this case.

After Farrallon Capital decided to no longer pursue Hammock Dunes, Lochmere and Lane decided to continue in the plan to acquire the project as a team: Lochmere was to be in charge of development and Lane was to be in charge of finding a capital partner. *(Evans Dep. III at p. 402.)* At one point, Lane expressed concern that one of the investors Lane had approached would try to take Lochmere's information and "steal the deal." *(Evans Dep. III at p. 406.)* Early on, Lane suggested that they try to negotiate a fee for their information and said that Lane would pay Lochmere from that fee. *(Evans Dep. III at p.406.)*

Lane continued to seek investors and finally, in March of 1999, located the Eiger Defendants. Eiger Representative Paul Rowsey flew from Texas to Florida to meet Lochmere and view the Hammock Dunes site. *(Rowsey Dep. at p. 54.)* In April 1999, Rowsey invited Lochmere to attend an April 15, 1999 meeting in Texas to explain the details of the Hammock Dunes project to the other representatives of Eiger. Prior to the April 15, 1999 meeting with Eiger, Evans presented Lane with a copy of the Development Agreement. *(Appendix, Ex. G, Evans Dep. III at p. 416.)* Lochmere stated that the terms of the Development Agreement were the basis of Lochmere going forward with the project. *(Evans Dep. III at p.418.)* Lane stated that they should go forward with the project. *(Evans Dep. III at p. 425.)* However, at the same time, Lane and Eiger had created their own entity, H.D. Associates, to acquire and develop the property. Evans was not told of the creation of the entity. *(Appendix, Ex. "W", pp. 61 and 49.)*

Lochmere then spent the next couple of months educating Eiger with regards to the various components of the project. *(Evans Dep. III at p. 431.)* Lochmere presented Eiger with a series of Master Development Budgets that contained proprietary information and became the roadmap for the development of the project. *(Evans Dep. III at pp. 225-226, 157-158.)* These master development budgets contained line items for all of Lochmere's compensation, and the

Eiger Defendants, Lane and Evans necessarily discussed the areas of Lochmere's compensation as part of the explanation of the budgets. *(Evans Dep. III at p. 133-134.)*

On or about June 8, 1999, the Eiger Defendants sent a letter to Lochmere stating that they recognized the value of Lochmere's knowledge of Florida land use regulations and that they had decided to hire a new CEO to be in charge of the development of the project. *(Appendix, Ex. "J".)* The next day Evans met with Rowsey. At that meeting, Evans explained his prior arrangements with Lane, how those arrangements correlated with the Master Development Budgets, and presented Rowsey with a copy of the Development Agreement. *(Appendix, Ex. "K", Evans Dep. III at p. 147.)* This information was provided under a cover letter that reiterated that Lochmere's participation in the project was based upon the terms of the Development Agreement and the compensation thereunder. *(Appendix, Ex. "K", "Q".)*

Later, after being informed of Lochmere's required compensation for its continued participation, Rowsey requested that Evans travel to Atlanta to assist Eiger in its meeting with BankBoston (n/k/a Fleet Bank.) At that meeting, Rowsey represented that Evans was most knowledgeable of the aspects of the project and that Lochmere was the developer of the project. *(Evans Dep. III at p. 99.)* Evans explained the complexities of the development to the bank and provided Fleet with a copy of the Master Development Budget. *(Evans Dep. III at p.99-104.)* Pursuant to Eiger's request, on June 24, 1999 Lochmere forwarded three binders of detailed due diligence information to Joseph Hatzell, an appraiser hired by Eiger and Fleet. *(Appendix, Ex. "R".)*

Once Lochmere had educated all of the Defendants and provided all of its valuable information to Fleet and the appraiser, Rowsey called Evans to offer Lochmere a drastically

reduced compensation package which Plaintiffs ultimately rejected. *(Rowsey Dep. at pp. 156-159, Appendix, Ex. "M".)*

## STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is only appropriate when the court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).* The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Abrams v. Hunter, 910 F. Supp. 620 (M.D. Fla. 1995).* If any factual issues are present in the records, the court must deny the motion and proceed to trial. *Id. at 623.* In applying this standard, the court must examine the pleadings, affidavits and other evidence in the light most favorable to the non-moving party. *Continental Casualty Co. v. Wendt, 205 F.3d 1258 (11 Cir. 2000.)* After the moving party has met this initial burden, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).* However, summary judgment is an extreme remedy which should not be granted, unless the moving party has established his right to judgment beyond controversy. *United States v. Feinstein, 717 F.Supp. 1552, 1555 (S.D. Fla. 1989).*

## I.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS V-X (INTENTIONAL FRAUD)[2]

Because fraud requires a full explanation of the facts and circumstances of the alleged wrong doing to determine if they collectively constitute a fraud, summary judgment is generally

---

[2] Lochmere has elected to voluntarily dismiss its claims against C. Todd Miller, David M. Jacobs, and William S. Buchanan for Intentional Fraud.

F:\DOCS\DAM\ORCUTT\LOCHMERE\FRAUD-AUGUST6.DOC

inappropriate. _Graef v. Hegedus,_ _698 So.2d 655, 656 (Fla. 2d DCA 1997); Baker v. United_ _Services Automobile Assoc.,_ _661 So.2d 128, 132 (Fla. 1ᵗ DCA 1995)._ A litigant has a right to a trial where there is the slightest doubt as to the facts in a fraud case. _Baker at 132._ To prove fraud under Florida law a plaintiff must show that (1) the defendant made a false representation of a past or present fact, (2) the defendant knew the statement was false, (3) the statement was made for the purpose of inducing the plaintiff to rely on it, and (4) the plaintiff's reliance was reasonable. _Somerset Pharmaceuticals Inc. v. Kimball,_ _49 F.Supp. 2d 1335, 1340 (M.D. Fla._ _1999)._

The Eiger Defendants limit their argument to requirement (1) above. They argue that there has been no affirmative false statement which is sufficient to support fraud. Specifically, the Eiger Defendants argue that, in his deposition, Evans admitted that no representative of the Eiger Defendants ever specifically stated that they would sign these agreements or made any commitment to pay the compensation called for in those agreements. _(Eiger Entities'_ _Memorandum, page 10.)_ The Eiger Defendants narrow focus on the signing of the Development Agreement diminishes the true nature of the relationship between plaintiff and defendants.

The full scope of the relationship between the Eiger Defendants and Lochmere contemplated that Lochmere was going to be the developer of the project, with all the corresponding duties, obligations, and compensation. Lochmere's involvement was necessary in the successful development of this project because of its extensive knowledge and experience of Florida land development and intensive research and analysis of the Hammock Dunes property. The Eiger Defendants completely relied on this knowledge to evaluate whether they would invest in this project and to persuade Fleet to provide financing. To that end, the Eiger Defendants continually represented to Evans and to others, at every step of the development, that

Lochmere was going to be in charge of the development of the project and would be compensated for its work. The Eiger Defendants received Lochmere's plans for compensation both in the form of the Development Agreement and as explained in the Master Development Budgets. The Eiger Defendants knew the terms for Lochmere's involvement in the project and continued to request its assistance and continued to refer to Lochmere as the developer. Eiger used Lochmere until Eiger had gathered all Lochmere's work product, then jettisoned it without payment of a single dollar. On these facts, a jury would be justified in finding that Lochmere was fraudulently induced to continue working on the project.

The Lane Defendants argue the same insufficiency. Their argument is founded upon a single excerpt from Evans' deposition where he indicated that he did not remember the exact words of misrepresentation stated by either David Lane, Barnett Lane or JTL Capital. *(Lane Defendants' Motion for Summary Judgment, page 9.)* However, by simply putting that excerpt in context, the argument is shown to be unfounded. A few pages earlier, Evans stated that he explained the terms Lochmere required in order to continue to work on the project, including Lochmere's role in the development of the project and its expected compensation. The Development Agreements *(Appendix, Ex. "G" and "K")* setting out these terms were provided to Lane and Evans asked if Lane wanted to proceed. Regarding the Development Agreements, Mr. Evans specifically stated:

> Q.    (Mr. Green): "Mr. Lane did not say, "I agree to those terms" is that right?"
>
> (Mr. Orcutt): "Same objection."

A.      (Mr. Evans):  "Mr. Lane did not use those words."  **I said, "Here's the agreement to go forward with." He said, "let's go forward."**  So he did not say I agree to these terms."  *(Evans Dep. III at p. 441.)*

Lochmere's compensation demands were not new to the Lane Defendants, since Evans had presented Lane with versions of these terms throughout their relationship.  *(Appendix, Ex. "B", "C", "F" and "G".)*

Additionally, Florida recognizes that fraud may exist even in situations where no affirmative statement has been made.  The law imposes a duty to disclose where one party does not have an equal opportunity to be appraised of the facts withheld.  *Thiele v. Davison*, *440 F.Supp. 585 (M.D. Fla. 1977.)*  A truthful representation can also constitute fraud where further amplification is required to avoid a misunderstanding.  *Id. at 591.*  Further, where a party undertakes to disclose any information, all material facts must be disclosed in order to clarify any partial or ambiguous statement.  *Gutter v. Wenker, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994.)*  In the instant case, the representations made by Defendants induced Lochmere to its continued involvement and progress in the development of the project. Specifically, Defendants kept using Lochmere until all the primary players in the deal had absorbed Lochmere's information, then they abruptly attempted to substantially reduce its compensation.

Furthermore, a party to a business transaction must exercise care to disclose facts basic to the transaction, if he knows that the other is about to enter into it under a mistake.  *Gutter, supra, 631 So.2d at 1118; RESTATEMENT (SECOND) OF TORTS SECTION 551 (2)(1997).*  In the case at bar, the Defendants were aware that Lochmere's demands as set forth under the terms of the Development Agreement, yet failed to disclose that they were not going to honor the agreement. All the while, Defendants encouraged Lochmere to continue to work.  Defendants did not inform

Lochmere they were going to reduce its compensation until after they had received all of the information they needed from it.

## II.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS XI-XVI (CONSTRUCTIVE FRAUD)

Constructive fraud exists where a party abuses a confidential or fiduciary relationship or where an unconscionable advantage has been taken. *Beers v. Beers*, *724 So.2d 109 (Fla. 5th DCA 1998.)* The scope of the terms "fiduciary relationship" and "confidential relation" are broad; they embrace both technical fiduciary relations and informal relations that exist wherever one party trusts and relies upon another. *Atlantic Nat'l. Bank of Fla. v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1986.)* Whether a fiduciary relationship exists requires an intense investigation of the facts and circumstances surrounding the dispute between the parties and is therefore a question of fact for the jury. *Swerhun v. General Motors Corp., 812 F.Supp. 1218 (M.D. Fla. 1993.)*

Florida's *Revised Uniform Partnership Act of 1995, Fla. Stat. §620.81001 et. seq.*, sets forth fiduciary duties owed to the partnership and the other partners. *§620.8404 Fla. Stat. (2000.)* These fiduciary duties include, *inter alia*, the duty of loyalty, duty of care, and the duty to act consistently with the obligation of good faith and fair dealing. *§620.8404 Fla. Stat. (2000.)* As discussed in Lochmere's other Memoranda in Opposition to Summary Judgment, Counts I- IV, there are disputed issues of material fact as to the existence of a partnership relationship between Plaintiff and Defendants. Because the existence of a partnership would supply the necessary fiduciary or confidential relationship, Defendants are not entitled to summary judgment on these grounds.

However, the existence of a partnership is not required for a fiduciary relationship. A fiduciary relationship exists where special confidence is reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence. *Atlantic, supra, 480 So.2d at 1332.* Fiduciary relationships also exist where confidence is reposed on one side and there is a resulting superiority and influence on the other. *Id. at 1333.* A fiduciary owes to its beneficiary the duty to refrain from self dealing, the duty of loyalty, a duty to disclose material facts, and an overall duty to refrain from taking advantage. *Compton v. Fifth Avenue Assoc.,* 7 F.Supp. 2d 1328, 1332 (M.D. Fla. 1998); *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 519 (Fla. 3d DCA 1994).

Further, it is recognized that the disclosure of secret information itself gives rise to the existence of a confidential or fiduciary relationship. *Dotolo v. Schonten,* 426 So.2d 1013 (Fla. 2d DCA 1983), *rev. den.* 434 So.2d 888; *Concept, Inc. v. Thermotemp, Inc.,* 553 So.2d 1325 (Fla. 2d DCA 1989.) The court in *Biodynamic Technologies, Inc. v. Chattanooga Corp.,* 644 F.Supp. 607, 610 (S.D. Fla. 1986) in the context of a claim for unfair competition arising from the alleged theft of secret information stated:

> "The word property as applied to trade-marks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not, the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore, the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual disadvantage in the fact that he knew the plaintiff's secrets he must take the burden with the good."

*Biodynamic, supra 644 F.Supp. at 609, citing:  E.I. Dupont DeNemours Powder Co. v. Masland, 244 U.S. 100, 102, 375 S.Ct. 575 (1917.)*

In the instant case, in reliance on Defendants' actions and representations, Lochmere provided Defendants with all of the relevant information necessary to acquire, market and develop the project.  Defendants acquiesced to the terms stated by Lochmere and encouraged Evans to continue to work for the project.  However, it appears that Defendants were withholding relevant information regarding their plans for Lochmere's compensation.  Lochmere was not cut out of the deal until after Evans had provided all of the necessary information to all of the primary players.

The Lane Defendants' arguments with respect to the constructive fraud counts contain misstatements of law. *(See Paragraphs 25 and 26 of Defendants Lane Memorandum, pp. 10 and 11, Para. 25 and 26.)*  The mere fact that Lochmere provided confidential information to a third party in confidence, has no bearing on whether the fiduciary relationship between Lochmere and Lane Defendants has been breached.[3]  As discussed above, a fiduciary owes several duties to its beneficiary; these duties extend beyond the mere duty of keeping confidences. Lochmere provided the Defendants with the information necessary to evaluate, acquire and develop the project.  There has been no believable evidence that the Defendants did not use or benefit from Lochmere's information.

Because the Defendants cannot negate the existence of a confidential relationship between the parties, they are not entitled to summary judgment.

---

[3] See also Plaintiffs discussion of the disclosure to Starwood in Lochmere's Memorandum Regarding Trade Secrets.

F:\DOCS\DAMORCUTT\LOCHMERE\FRAUD-AUGUST6.DOC

## III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS VIII, IX, X, XIV, XV AND XVI ON THE BASIS OF THE ECONOMIC LOSS RULE

The Eiger Defendants argue that Lochmere's fraud and constructive fraud claims are barred by operation of the economic loss rule. Eiger's motion should be denied on at least three separate grounds: (1) the Defendants deny that a contract exists; (2) even if a contract exists, the economic loss rule does not apply to these facts; and (3) recent cases have limited the scope of the economic loss rule, and have questioned the validity of the cases cited by the Defendants.

The economic loss rule precludes recovery where the parties' relationship is purely contractual and there is no tort independent from the breach of the contract claimed other than those resulting in personal injury or property damage. _HTP, Ltd. v. Lineas Aereas Costarricences, S.A._, 685 So.2d 1238 (Fla. 1996); _La Pesca Grande Charters, Inc. v. Moran_, 704 So.2d 710 (Fla. 5th DCA 1998). It is axiomatic that the first analysis under the economic loss rule must be to determine the existence of a contract between the parties. The Eiger Defendants in the present case have denied the existence of any agreement between the parties. _(See Amended Answer of the Eiger Defendants, Paragraphs 25, 39, 46, and 48.)_ Despite these denials, the Eiger Defendants argue that a contract between the parties precludes Lochmere's causes of actions. _(See Eiger Entities Memorandum, pages 6, 10 and 13.)_ In order for the court to grant summary judgment on this issue, it would have to determine that an enforceable contract exists between the parties, therefore Eiger's motion should be denied.

Even if a contract exists, a tort claim based on conduct separate and distinct from the activities constituting a breach of contract is not barred by the economic loss rule. _HTP, supra_, 685 So.2d at 1240. In _HTP_, the Florida Supreme Court quoted a Michigan case, _Huran Tool and Engineering Co. v. Precision Consulting Services, Inc._, 209 Mich. App. 365, 372, 532 N.W. 2d

*541, 545, (1995)*, which states: "**Fraud in the inducement** presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in **fact the** ability of one party to negotiate fair terms and make an informed decision is undermined by the other parties fraudulent behavior." In the instant case, Lochmere's decision to continue to work towards the development of the project was undermined by the representations and actions of Defendants. By keeping secret the Defendants' plans to drastically reduce Lochmere's compensation, they prevented Lochmere from being able to negotiate and make an informed decision.

The fact that the damages sought relate to the subject matter of the agreement has no bearing on whether the fraud count is barred by the economic loss rule. *See Bradley Factor Inc. v. United States*, 86 F.Supp. 2d 1140, 1144 (M.D. Fla. 2000). In *Bradley Factor*, one of the parties failed to provide the other with a pertinent letter prior to the signing of a security agreement. The party that failed to receive the letter sued, alleging a breach of contract and fraudulent inducement. The court found that because the omission of the pertinent information occurred prior to the contract, the claim would stand despite the fact that fraud concerned the subject matter of the contract. *Bradley Factor, supra,* 86 F.Supp. 2d at 1145.

Likewise, the Defendants' arguments with respect to constructive fraud are similarly unfounded. The economic loss rule does not abolish a cause of action for a breach of fiduciary duty, even if an underlying oral or written contract exists. *Crowell v. Morgan Stanley Dean Whitter Services Co.*, 87 F.Supp. 2d 1287 (S. D. Fla. 2000); *Brown's Quality Towing Inc. v. Southeastern Bank of Florida*, 765 So.2d 134 (Fla. 1st DCA 2000); *Invo Fla. Inc. v. Somerset Adventurer Inc.*, 751 So.2d 1263 (Fla. 3d DCA 2000).

All of the cases cited by Defendants predate the Florida Supreme Court's ruling in *Moransais v. Heathman, 744 So.2d 973 (Fla. 1999)*. There, the Supreme Court stated that :

> "…[O]ur holdings have appeared to expand the application of the [economic loss] rule beyond its principal origins and have contributed to the application of the rule by trial and appellate courts to situations well beyond our original intent.

*Moransais, supra, 744 So.2d at 980.*

Furthermore, the Supreme Court cited with approval to *HTP, supra,* stating:

> "The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either an intentional or a negligent act considered to be independent from acts that breach the contract."

*Moransais, supra, 744 So.2d at 981 citing HTP, Ltd., supra, 685 So.2d at 1239.*

Based upon these decisions, the holdings in all of the cases cited by Defendants have been called into question. Further, the Southern District of Florida, author of *McCutcheon v. Kidder Peabody and Coe, 938 F.Supp. 820 (S.D. Fla. 1996)*, cited by Defendants, has directly questioned the holding for which that case is cited. In *Crowell, supra, 87 F.Supp.2d at 1292*, the court reviewed the import of the *Moransais* holding on the economic loss doctrine, specifically referencing both federal cases cited by Defendants on this issue. At the conclusion of its analysis, the court held that constructive fraud claims (breach of fiduciary duty claims) are not barred by Florida's economic loss rule in effect overruling its decision in *McCutcheon, supra.. Crowell, supra, 87 F.Supp. 2d at 1293.*

As a matter of fact and law, the Eiger Defendants' Motions regarding the economic loss rule should be denied.

F:\DOCS\DAM\ORCUTT\LOCHMERE\FRAUD-AUGUST6 DOC

## IV.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT XXXVIII – CIVIL CONSPIRACY

The Eiger Defendants have properly stated that in order to be liable under a civil conspiracy theory, there must be an underlying tort. They further argue that because they are entitled to summary judgment on all of Plaintiff's tort claims, that they are likewise entitled to summary judgment on civil conspiracy grounds. Therefore, if the court determines that a single tort claims survives summary judgment, the civil conspiracy claim must stand.[4] Because Lochmere has shown that summary judgment cannot be granted as to the tort claims, the Eiger Defendants motion should be denied.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by U.S. Mail to all parties on the attached Service List this _5_ day of August, 2001.

Respectfully submitted,

BRICKLEMYER SMOLKER & BOLVES, P.A.

By: _____

Jay J. Bartlett
Florida Bar No. 875163
Gregory J. Orcutt
Florida Bar No. 230855
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 E. Kennedy Boulevard, Suite 200
Tampa, Florida 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422
Attorneys for  LOCHMERE
DEVELOPMENT   GROUP,   INC.   and
LOCHMERE REALTY, INC.

---

[4] The Eiger Individuals have also argued that they are not personally liable for tortious conduct of the corporation. For discussion of this issue, please see Defendants' companion memoranda.

F:\DOCS\DAM\ORCUTT\LOCHMERE\FRAUD-AUGUST6.DOC

## SERVICE LIST

Daniel F. Molony, Esq.
Shook, Hardy & Bacon, L.L.P.
100 North Tampa Street, Suite 3900
Tampa, FL 33602

Alan S. Loewinsohn, Esq.
Carol E. Farquhar, Esq.
Jo E. Hartwick, Esq.
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road, Suite 110
Dallas, TX 75252

(Attys. for H.D. ASSOCIATES, L.P. DUNES
OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C., EIGER FUND 1 L.P.,
EIGER PARTNERS, L.P., PAUL E. ROWSEY, III,
C. TODD MILLER, DAVID M. JACOBS,
WILLIAM S. BUCHANAN and FLEET NATIONAL
BANK f/k/a BANKBOSTON, N.A.)

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Co-Counsel: FLEET NATIONAL BANK f/k/a BANKBOSTON, N.A.

Alan M. Gerlach, Esq.
Broad & Cassel
390 North Orange Ave.
Suite 1100
Orlando, FL 32801

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

(Attys. for DAVID LANE, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L.L.C.)

F:\DOCS\DAMORCUTT\LOCHMERE\FRAUD-AUGUST6.DOC

16