FILED



UNITED STATES DISTRICT COURT
Middle District of Florida

CI AUG 13 PM 3: 10

LOCHMERE DEVELOPMENT GROUP, INC.,
and LOCHMERE REALTY, INC.,

      Plaintiffs,

vs.

    CASE NO.: 8:00-CV-1026-T-27B
    State Court No.: 00-02525/Div. I

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C.,
a Texas limited liability company; EIGER
FUND 1, L.P., a Delaware limited partnership;
EIGER PARTNERS, L.P., a Delaware limited
partnership;  DAVID LANE, an individual;
BARNETT LANE INVESTMENTS, INC., a
Texas corporation; JTL CAPITAL, L.L.C., a
Texas limited liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
PAUL E. ROWSEY, III, an individual; C. TODD MILLER,
an individual; DAVID M. JACOBS, an individual;
and, WILLIAM S. BUCHANAN, an individual,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT REGARDING TRADE SECRETS (COUNTS XXIV – XXX) AND CONVERSION (COUNTS XXXI – XXXVII)

    Plaintiffs, Lochmere Development Group, Inc. and Lochmere Realty, Inc. (hereinafter collectively referred to as "Plaintiffs" or "Lochmere"), hereby respond to the Motions for Summary Judgment on behalf of (a)  H.D. Associates, L.P., a Delaware Limited Partnership by and through its General Partner Dunes Operating Company, L.P., a Delaware Limited Partnership by and

*119*

through its General Partners, Eiger, Inc., a Delaware corporation, and 2M Dunes, L.L.C., a Texas Limited Liability Company; Eiger Fund 1, L.P., a Delaware Limited Partnership; Eiger Partners, L.P., a Delaware Limited Partnership (collectively, the "Eiger Entities"), (b)  David Lane, an individual; Barnett Lane Investments, Inc., a Texas corporation; JTL Capital, L.L.C., a Texas Limited Liability company, (collectively, the "Lane Defendants"), (c)  Fleet National Bank, N.A., a National Banking Association ("Fleet"), and (d)  Paul E. Rowsey, III, an individual; C. Todd Miller, an individual; David M. Jacobs, an individual; and William S. Buchanan, an individual (collectively, the "Eiger Individuals") regarding the issues of trade secrets and conversion as follows.  Lochmere hereby incorporates the discussion of the summary judgment standards and discussion of facts from its other Memoranda of Law in Opposition to Defendants' Motions for Summary Judgment.

## FACTS

Beginning in the fall of 1997, Robert Dale Evans ("Evans"), sole officer, director and shareholder of Plaintiff, Lochmere Development Group, Inc. and Lochmere Realty, Inc. (collectively "Lochmere") began investigation of a real estate development project known as Hammock Dunes, located in Palm Coast, Florida. *(Evans Dep. III at pp. 15, 21, 34-35; Evans Dep. I at p. 17-18).*[1] Over the course of the succeeding years, Evans invested his time, energy and money in analyzing the Hammock Dunes property and its development potential. *(Evans Dep. III at pp. 164-173, 218-221, 229-234, 236-239, 290-291).*  Certain portions of this information was discussed with other

---

[1] Plaintiffs have adopted Defendants convention for references to deposition transcripts on file with this Court.  They are denoted by the name of the deponent followed by a reference to the relevant pages of the transcript.  Robert Dale Evans has been deposed three times – twice in the related lawsuit in Texas and once in this case.  References to the transcripts of these depositions are denotes as "Evans I" for his deposition on March 28, 2000, in the Texas case, "Evans II" for his deposition on May 22, 2000, in the Texas case, and "Evans III" for his deposition on April 26, 2001, in this case.

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\RESPONSE MSJ.doc

members of the development team. *(Evans Dep. III at pp. 257-259).* By March 1999, the development group included the Eiger Entities, led by Paul Edward Rowsey ("Rowsey"), the Lane Defendants, and Lochmere. *(Evans Dep. III at pp. 67-69).* Beginning in approximately mid-April 1999, Lochmere began the development of the master development budget for the Hammock Dunes property. This budget was created on a computer spreadsheet program and became a road map for the development of the project. *(Evans Dep. III at pp. 225-226, 157-158).* These master development budgets were marked: "This document is the exclusive proprietary property of Lochmere Development Group, Inc. Do not duplicate or disburse without prior written consent." These master development budgets were filed with this court pursuant to Defendants' Notice of Filing Exhibits Under Court Seal dated July 5, 2001. These master development budgets were distributed within the development group and were also given to a prospective lender, BankBoston, N.A. (now Fleet National Bank, N.A.) in order to secure funding for the acquisition and development of the Hammock Dunes development. *(Evans Dep. III at pp. 93-96, 98-103).* This information was supplied by Lochmere under the understanding that Lochmere's previously distributed compensation package was accepted by the Defendants. *(Appendix, Ex. "R"; Evans Dep. III at p. 464.)*

After Lochmere's master development budget had been completed and explained to the prospective players, and all of Lochmere's other information was delivered to Eiger, Lane and Fleet, Rowsey offered Lochmere a significantly smaller compensation package. *(Appendix, Ex. "R", "M".)* As a result, by mid-July, Lochmere was told its services were no longer required and that Eiger was abandoning the project. *(Evans Dep. III at pp. 272-277).* Thereafter, Lochmere forwarded letters to, *inter alia*, the Eiger Entities, Lane and Fleet, demanding the return of all of its

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

information, including the master development budget. *(Appendix, Ex. " L" and " N".)* Rowsey responded in writing, stating in his July 13, 1999 letter: "...we are happy to cease using the program and to remove it [sic] from all our computer hard drives. Additionally, we will send you any disks that contain the software or destroy them at your option." *(Appendix, Ex. "M", p.4).* Contrary to those statements, plaintiff's expert, Richard L. Brown, concluded that the Eiger Entities and Fleet continued to use the master development budgets prepared by Lochmere.    Specifically, the "approved budget" attached as Exhibit "A" to the "Senior Secured Credit Agreement" used by Fleet and Eiger to finance the Hammock Dunes development for its November 1999 closing is the same budget developed by Lochmere. *(See Exhibit 12 to Deposition of Nicholas Whiting entitled "Exhibits to Senior Secured Credit Agreement" filed with this court pursuant to Lochmere's Notice of Filing Documents Under Court Seal dated August 12, 2001; copies of Lochmere Master Development Budget filed with the court pursuant to Defendants' Notice of Filing Exhibits Under Court Seal dated July 5, 2001; and Appendix, Ex. "S", attached as exhibit to deposition of Richard L. Brown. Mr. Brown's deposition was taken on August 3, 2001 and transcript is not yet available)* Contrary to Rowsey's July 13, 1999 letter, Eiger and Fleet acquired the Hammock Dunes development and relied upon Lochmere's information. *(Evans Dep. III at pp. 272-277; Appendix, Ex. "S".)* A simple comparison of the "approved budget" attached to the loan documents for the Hammock Dunes acquisition and Lochmere's Master Development Budget dated June 22, 1999 shows them to be identical.

## I. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS XXIV – XXX (TRADE SECRETS)

All defendants in this action have attacked Lochmere's claims of misappropriation of trade secrets (Counts XXIV-XXX) on several fronts.  Defendants have variously claimed that the information was not a "trade secret" because it either was based upon information available to others, or that Lochmere did not adequately protect its secrets.  The Defendants also argue that their use of the information provided by Plaintiffs was not improper, and that even if it was improper, the Eiger Individuals could not be liable for its use.

### (a) DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUND THAT LOCHMERE CANNOT PROVE THE EXISTENCE OF A TRADE SECRET

The law of trade secrets has been codified by the *Uniform Trade Secrets Act (the "UTSA"),* which has been adopted by the State of Florida at *F.S. §688.01 et seq.  (the "Florida Uniform Trade Secrets Act" or "FUTSA")  Florida Statutes §688.02(4)* defines "trade secrets" as:

> "Information, including a formula, pattern, compilation, program, device, method, technique, or process that:  (a)  derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain the economic value from its disclosure or use; and  (b)  is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Florida has therefore adopted a two-part test in determining the existence *vel non* of a trade secret.  Reduced to its essence, the law requires the existence of a secret which is valuable.

The criteria used by Florida courts to determine the existence of a trade secret includes proof that:

> (a) the process is a secret; (b) the extent to which the information is known outside of the owner's business; (c) the extent to which it is known by employees and others involved in the owner's business; (d) the extent of measures taken by the owner to guard the secrecy of the information; (e) the value of the information to the owner and his competitors; (f) the amount of effort or money expended by the owner in developing the information; and (g) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Lovell Farms, Inc. v. Levy,* 641 So.2d 103, 104-05 (Fla. 3d DCA 1994)."

In addition, the courts have repeatedly stated that the issue of whether or not a trade secret exists is a question of fact for the jury. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1292 (S.D.Fla. 2001); *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corporation,* 139 Fed. 3rd 1396, 1410-11 (11th Cir. 1998) (citing Georgia version of UTSA); *Salsbury Laboratory v. Merieux Laboratory,* 908 F.2d 706, 712 (11th Cir. 1990); *Mangren Research and Development Corporation v. National Chemical Company, Inc.,* 87 F.3d 937, 943 (7th Cir. 1996) (applying Illinois version of the UTSA); *All Pro Sports Camp v. Walt Disney Co.,* 727 So.2d 363, 368 (Fla. 5th DCA 1999).

In order to meet this challenge, Plaintiff has elicited testimony and documents proving or inferring that Lochmere's president and chief employee, Robert Evans, spent more than a year gathering and reviewing documents and other physical evidence regarding the physical characteristics and legal requirements associated with the land to be purchased. No compensation was paid to Lochmere for this work. *(Appendix, Ex. "W", p. 58.)* This information included, *inter alia,* the various state, county and water management district  approvals and requirements associated with the property.  Based upon this information, and Mr. Evans' expertise in land development, Lochmere designed a complete marketing and product plan, calculated the number

F:\docs\docs\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\RESPONSE MSJ.doc

6

of marketable units and different product types which could be placed upon the property to be purchased, developed costs associated with creating the development, and otherwise created an entire marketing and development plan for the Hammocks Dunes property. A great deal of this information was used in order to create the master development budget, which was clearly marked as containing trade secret information owned by Lochmere [2]. Mr. Evans' knowledge and experience in Florida land development and the use of his judgment is critical to the creation of this analysis, as the defendants in this case had no experience in land development in Florida and could not have even anticipated the issues which were analyzed in depth and presented in the Lochmere analysis. *(Evans Dep. III at pp. 164-173, 218-221, 229-234, 236-239, 290-291, 410-430, 456, 464, Appendix, Ex. "J", "W".)*

Lochmere's analysis was used not only to negotiate for a lower purchase price of the Hammock Dunes development, and was used to project both the cash flow and ultimate possible profits from the development of the Subject Property. *(Evans Dep. III at p. 318.)* The Hammock Dunes development, its legal requirements and its development possibilities and constraints were so complicated that other sophisticated Florida developers had refused to negotiate for the purchase of the property and ITT had previously been unable to sell the property. *(Evans Dep. III, p. 234; Appendix, Ex. "U", "V".)*

The defendants recognized Mr. Evans' expertise and his expert status with respect to the Subject Property, and in fact Mr. Rowsey introduced him as their "developer" in the course of

---

[2] All copies of the master development budgets were marked: "This document is the exclusive proprietary property of Lochmere Development Group, Inc. Do not duplicate or disburse without prior written consent." Until the Texas lawsuit was filed, no defendants ever objected to Lochmere's notation on these documents. Copies of these budgets were filed with the court pursuant to Defendants' Notice of Filing Exhibits under court seal dated July 5, 2001.

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

meeting with other capital investors, including the defendant Bank Boston, n/k/a Fleet Bank. *(Evans Dep. III at pp. 98-99. )* Furthermore, plaintiff's expert opined that the subject master development budget and due diligence research were proprietary in nature to Lochmere. *(Appendix, Ex. "T", which is attached as an exhibit to the deposition of Robert Whitley, taken August 3, 2001. The deposition transcript is not yet available.)*

The label on these budget documents, stating that the information was "proprietary" to Lochmere and along with a requirement not to duplicate, is additional proof that the information contains trade secrets:

> "While labeling information "trade secret" or "confidential information" does not conclusively establish that the information fits this description, it is nonetheless an important factor in establishing the value which was placed on the information and that it could not be readily derived from publicly-available sources. The evidence referenced above is more than sufficient to merit the court's finding that the information used by [the Defendant] had independent economic value to [the Plaintiff] and [the Defendant], and was not generally known to the public in satisfaction of the first prong of the statutory definition of a "trade secret."

*Morlife v. Perry,* 66 Cal. Rptr. 2d 731, 736, 56 Cal. App. 4th 1514, 1522-23 (1st Dist. 1997). *(Citations omitted.)*

In addition to marking the master development budget as trade secret owned by Lochmere, Plaintiffs only distributed the information to those in the development group and to a single other prospective purchaser of the Hammock Dunes development (Starwood) and only with the proprietary legend. All versions produced by the parties herein bear that legend. *(budget documents described in Footnote 2.)* Furthermore, Defendants acknowledged that the information was prepared by Lochmere and that Lochmere had to be paid to use the information in their own

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ doc

internal memoranda. *(Appendix, Ex, "P" and "O".)*   Furthermore, Lane admits in its Memorandum

that Lochmere's information was confidential:

> "In fact, the 'secret and confidential' information was instead
> revealed by Lochmere.  The confidential information in question was
> the Master Development Budget and [Lochmere's] expertise that
> [Lochmere] revealed throughout the course of the due diligence
> investigation..." *(Lane Memorandum, p. 10).*

In addition, Defendants have admitted that Lochmere was the owner of valuable information by

virtue of their offer to pay Lochmere $225,000 for the information. *(Appendix, Ex. "M", p. 3: "We*

*offered to pay you approximately $225,000 upon the closing...")*   Accordingly, plaintiffs have

demonstrated sufficient facts to show that there was a trade secret or trade secrets which were

developed by plaintiffs in this matter, and that the plaintiffs took reasonable steps in order to

preserve its secrecy.  Defendants' summary judgment requests must therefore be denied.


### (b)  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUNDS THAT THE LOCHMERE TRADE SECRETS WERE BASED UPON PUBLIC INFORMATION


Defendants Eiger Entities and Fleet state, without citation to the record, that "[a]ll of the

information contained in the spread sheet program was either not assembled by plaintiffs or was

available to the public". *(Eiger Entities' Memorandum, p. 16; Fleet Memorandum, p. 10.)*   This is a

misstatement of the facts, even as summarized in the defendants' own memoranda.  While it is

true that some of the information came from public records, a significant amount of the information

was never available to the public in general, and other components of the analysis were developed

by or at the direction of Lochmere. Even Rowsey's July 13, 1999 letter, attached to the Complaint

herein as Exhibit M, at page 3, states that..."some...[information in the master development

budgets] is based upon [Lochmere's] information." *(Appendix, Ex. "M", p. 3.)*    The master development budget is a reflection of Lochmere's research, application of judgments and work product. *(Evans Dep. III at pp. 164-173, 218-221, 229-234, 236-239, 290-291, 464.)* Therefore, the facts do not support Defendants' legal argument.

Furthermore, the courts have consistently held as a matter of law, that under the *UTSA* a combination of publicly known information in a new or different way can be a trade secret. *See, Best Technologies v. Trident Environmental Systems, Inc., 681 So.2d 1175 (Fla. 2d DCA 1996)(A common process independently developed, but known and used by competitors can be a trade secret); Thermodyne Food Service Products, Inc. v. McDonald's Corp., 940 F.Supp. 1300, 1304-05 at N.4 (N.D. Illinois 1996) (Finding trade secrets can consist of a combination of known information), Computer Care v. Service Systems Enterprises, Inc., 982 F.2d 1063, 1072 (7th Cir. 1992) (A trade secret can exist in a combination of characteristics and components, each of which by itself is in the public domain, but the unified process design and operation of which a unique combination affords competitive advantage and is a protectable trade secret.); Richardson vs. Suzuki Motor Co., Ltd., 868 F.2d 1226, 1243 (9th Cir. 1999) (Trade secrecy is not negated because defendant by an expenditure of effort might have collected same information from sources available to the public.); Lucas County Board of Commissioners v. Ohio Environmental Protection Agency, 724 N.E. 2d 411, 418 (Ohio 2000) (Where documents already in the public domain are combined to form a larger document, a trade secret may exist if the unified result would afford a party a competitive advantage).* Therefore, as a matter of law, a trade secret protectable under the *FUTSA* can exist even where some of the base information was created and available in the public

domain. Defendants have never asserted that Lochmere's information was not at least a new or unique combination of known information, therefore, Defendants motions must be denied.

The defendants rely upon the case of *Public Systems, Inc. v. Towry*, *587 So.2d 969 (Ala. 1991)* for the proposition that a spread sheet software data program such as the Master Development Budget, can never be a trade secret. Alabama has not adopted the *Uniform Trade Secrets Act* and the *Towry* case was decided upon Alabama's unique statutory trade secrets law. The Alabama Supreme Court stated that the determination of the existence of a trade secret is a question of fact for the trial court, and affirmed the trial court's determination that the off-the-shelf spread sheet computer program, which had rows and columns containing information directly input from public records, was not a protectable trade secret. The information consisted of a map and data published by the Alabama Department of Economic and Community Affairs, some unpublished data provided by the same agency, and some census data. Pursuant to the determinative Alabama statute, information readily ascertained or derived from public information cannot be a trade secret by definition. *Alabama Code 1975*, *§8-27-2(1)(d))*. The case at bar is governed by a different legal standard and may have come out differently under the *UTSA*. Further, Lochmere's work product here cannot be compared in scope or extent to that of the Alabama plaintiff. Prior to Lochmere's creation of the master development budget, there was no document or group of documents available to the Defendants which would allow this level of in-depth overview of the development analysis of the Hammock Dunes property. (*See budget documents referenced in Footnote 2; Evans Dep. III at pp. 237-238; Appendix, Ex. "T".)*

Finally, the theoretical ability to recreate trade secrets does not assist Defendants in their arguments. The courts have held that under the *UTSA*, the fact that Defendants could have

developed the information on its own given sufficient time does not negate the existence of a protectable trade secret. *Mangren, supra, 87 F.3d at 943.*

### (c) DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE OF LOCHMERE'S DISCLOSURE OF SECRETS TO STARWOOD

Eiger and Fleet argue that the disclosure to Starwood (not a party to this litigation) of the master development budget was somehow fatal to the preservation of Lochmere's secrets as a matter of law. They argue that once disclosed to Starwood, no trade secret existed which could be protected by Lochmere because it was no longer a "secret". *(See Fleet Memorandum at p.10; Eiger Entities Memorandum at p.16)* Again, the defendants distort the law's protection of trade secrets. At most, Defendants raise an issue of fact for the jury.

Lochmere's disclosure to a different prospective investor does not somehow render its information no longer a trade secret. Indeed, the master development budget which was displayed to Starwood, and the discussions thereunder, were subject to the same trade secret requirement as are being asserted in this case and Starwood was under an obligation not to disclose the information. *Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475, 94 S.Ct. 1879, 1883. (1974)* *("This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in confidence and under an implied obligation not to use or disclose it.")* However, Starwood did not misappropriate those secrets as did the defendants. Starwood's offer to purchase the Hammock Dunes development was rejected and Starwood did not use the trade secrets in order to gain a competitive advantage and cut Lochmere out of its share of the profits. *(Evans Dep. III, pp. 301-305, 464.)*

As a matter of law, a trade secret need not be maintained in absolute secrecy. The *FUTSA* requires only that "reasonable steps" be taken to maintain its secrecy. *F.S. §688.02(4)(b).* Again, whether this requirement is satisfied is a question of fact, within the province of the jury. *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corporation, 139 Fed. 3rd 1396, 1410-11 (11th Cir. 1998); Salsbury Laboratory v. Merieux Laboratory, 908 F.2d 706, 712 (11th Cir. 1990); Mangren Research and Development Corporation v. National Chemical Company, Inc., 87 F.3d 937, 943 (7th Cir. 1996). Kewannee Oil Co., supra, 416 U.S. at 475, 94 S.Ct. at 1883.* Trade secret information can be shared with others, as long as there are "reasonable" restrictions concerning the disclosure of such information. Therefore, such information can be disclosed to others in confidence, including an implied obligation not to use or disclose the information.

In this case, Lochmere took reasonable steps to protect the secrecy of this information. There is no allegation that this information was made available to the public in general. Until given to the Defendants, Mr. Evans was the only person who had access to the totality of the information, much of which was distilled into the master development budget. It is undisputed that all versions of this document were clearly marked "This document is the exclusive proprietary property of Lochmere Development Group, Inc. Do not duplicate or disburse without prior written consent." *(See budget documents referenced in Footnote 2.)* Therefore, Defendants' motions should be denied.

### (d) DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUNDS THAT THERE WAS NO IMPROPER USE OF LOCHMERE'S TRADE SECRETS

The Eiger Defendants argue that there has been no "improper use" of the information,

therefore, there is no "misappropriation" as the term is used under the *FUTSA*.[3]  "Misappropriation" is defined as follows:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:  (1) Used improper means to acquire knowledge of the trade secret; or (2) At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:  (a) Derived from or through a person who had utilized improper means to acquire it; (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c)  Derived from or through a person who owned a duty to the person seeking relief to maintain its secrecy or limit its use.

*Fla. Stat. §688.02(2)*

As a matter of law, even if the Eiger Defendants were correct in their assertion that there was no "improper use", under the statute, they would not be entitled to summary judgment on this issue.  The statutory definition of misappropriation contains alternative methods for determining whether a misappropriation has occurred.  Therefore, Defendants must show that all alternatives cannot be satisfied.  Simply defeating one branch of the definition does not entitle the defendants to summary judgment.

In addition, defendants' characterization of the improper nature of their use is an additional mischaracterization of the facts.  Lochmere worked for many months gathering the information which ultimately enabled the defendants to acquire the property at a multi-million dollar discount,

---

[3] Defendants cite only *Venango River Corp. v. NIPSCO Indus., Inc.*, 1994 WL 702759, *10 (ND Ill. Dec. 15, 1994)* for this proposition.  However, a close reading of the case shows that the language cited is either dicta or refers to a contract claim.  In *Venango*, the court found that the plaintiffs were not proper parties to bring the claims because they were, at most, shareholders of the corporation who owned the trade secrets at issue.  Therefore, their only viable claim was pursuant to their confidentiality agreement. *Id* at *10.

allowed them to put a non-refundable deposit of $3,000,000.00 down, quickly close upon the contract, and begin to develop the property.  Lochmere never prepared or sent invoices to any of the defendants for the work it did, and instead prepared a contract for compensation that was heavily weighted upon its split of the profits to be achieved through the development of the Subject Property.  *(Appendix, Ex. "G" and "K")*  It is obvious that the information was developed in order that Lochmere could share in the profits resulting from its labors.  Rowsey even promised to return or destroy all the information, but ultimately used it instead.  *(Appendix, Ex. "M", p.4, "S".)*  For the Eiger Defendants to argue that somehow the information that they acquired from Lochmere, and used without payment of a single penny was not "improper" stretches credibility.  <u>Mangren Res. & Dev. Corp. v. National Chemical Co.</u>, 87 F.3d 937, 943 (7th Cir. 1996).  Even Rowsey recognized that Lochmere was owed money for the information as late as July 13, 1999 when he wrote:  "We offered to pay you approximately $225,000 upon the closing of the acquisition."  *(Appendix, Ex. M, p.3, and "P")*  Internal Eiger memoranda showed that Eiger owed Lochmere $250,000 as a reimbursement for Lochmere's due diligence work.  *(Appendix, Ex. "P".)*

Again, Defendants have not met their burden, and summary judgment should be denied.

(e) <u>PREEMPTION UNDER THE FLORIDA UNIFORM TRADE SECRETS ACT</u>

Eiger and Fleet have argued that as a matter of law, most of the tort claims made in the Complaint are subject to preemption under the *FUTSA*.[4]  Logically, in order to prevail on this argument, one must first assume that the court determines, as a matter of fact and law, that a trade

---

[4] On this basis, the defendants severally attack the constructive fraud (Counts XI-XVI), Unjust Enrichment/Quantum Meruit (Counts XVII-XXIII), and Conversion (Counts XXXI-XXXVII).  Because they are not typically entitled "torts", Plaintiffs have addressed Unjust Enrichment/Quantum Meruit in a separate memorandum.

secret exists.  Because the jury could find that the plaintiffs had a proprietary interest in the information disclosed to the Defendants, but that the information was not trade secrets, Defendants' motions should fail.  None of these torts are dependant upon the presence of trade secrets.

Defendants' argument is premised upon *Fla. Stat. §688.08* which states as follows:

> (1) "Except as provided in subsection (2), §688.01-688.09(2) displace conflicting tort restitutory, and other laws of this state providing civil remedies for misappropriation of a trade secret.  (2) This act does not affect: (a) Contractual remedies, whether or not based upon misappropriation of a trade secret; (b) Other civil remedies that are not based upon misappropriation of a trade secret; or (c) Criminal remedies, whether or not based upon misappropriation of a trade secret."

These provisions of the Florida Act have been specifically construed, consistent with the majority view, to mean that the effect of preemption is to preclude only those common law claims that are based *solely* on a theory of misappropriation of trade secrets.  In *Coulter Corp. v. Leinert*, 869 F.Supp. 732 (E.D.Mo. 1994), applying Florida law, the court held that when determining whether a particular claim is preempted under the FUTSA, "the issue becomes whether allegations of trade secret misappropriation *alone* comprise the underlying wrong; if so, the cause of action is barred by §688.008." Id. at 734 (emphasis added).  See also *Smithfield Ham & Products Co. v. Portion Pac, Inc.*, 905 F.Supp. 346, 348 (E.D.Va. 1995), holding that "the preemption provision is intended to preclude only those common law claims that are premised *entirely* on a claim for the misappropriation of a trade secret." (Emphasis in original.) Thus, because the Act "only preempts common law claims that 'conflict' with its provisions,...a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary

for a misappropriation claim under the *UTSA*." <u>*Powell Products, Inc. v. Marks*</u>, *948 F.Supp. 1469, 1474 (D.Colo. 1996)*.

In this case, Lochmere's tort claims against the Eiger Defendants and Fleet are not premised solely or entirely upon the misappropriation of trade secrets. Rather, each of those counts alleges first that "Lochmere has conferred a benefit...by providing...its substantial skills, creativity and proprietary information without compensation," and then alleges that each defendant "has further been unjustly enriched because [it] has obtained and is currently using information and data collected by Lochmere for use in the project in violation of Florida's Trade Secrets Act, and is benefiting financially in the marketplace at the financial expense of Lochmere." Thus, while Lochmere's tort claims include allegations related to the misappropriation of trade secrets and other information, the Defendants are not entitled to summary judgment on those claims because they also seek recovery on independent grounds for other services that were provided and produced benefits, but for which Lochmere was not compensated. See <u>*Powell Products*</u>, *948 F.Supp. at 1474-75*; <u>*Smithfield Ham*</u>, *905 F.Supp. at 350*.

### (i) DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUNDS THAT CONSTRUCTIVE FRAUD IS PREEMPTED BY *FUTSA*

As described elsewhere in Plaintiffs' memoranda, the elements of constructive fraud are the existence of a confidential or fiduciary relationship, and abuse of that relationship. <u>*Beers v. Beers*</u>, *724 So.2d 109 (Fla. 5th DCA 1998)*; <u>*Rogers v. Mitzi*</u>, *584 So.2d 1092 (Fla. 5th DCA 1991), rev. den. 598 So.2d 77)*; <u>*Allie v. Ionata*</u>, *466 So.2d 1108 (Fla. 5th DCA 1985)*; <u>*Douglas v. Ogle*</u>, *85 So. 243 (Fla. 1920)*. Therefore, the elements of this cause of action can be satisfied without regard

to the existence of trade secrets, or the misappropriation thereof.  Therefore, as a matter of law, Defendants are not entitled to summary judgment on this basis.  _Coulter Corp., supra; Smithfield Ham, supra; Powell Products, supra._

### (ii)  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUNDS THAT CONVERSION IS PREEMPTED BY _FUTSA_

Under Florida law, conversion is an unauthorized act which deprives another of his property.  _National Union of Fire Ins. Co. of Penn. v. Carib Aviation, Inc.,_ 759 F. 2d 873 (11th Cir. 1985); _Star Fruit Co. v. Eagle Lake Growers, Inc.,_ 160 Fla. 130, 33 So. 2d 858 (Fla. 1948). A conversion occurs when a person who has a right to possession of property demands its return and that demand is not or cannot be met. _Shelby Mutual Ins Co. of Shelby, Ohio v. Crain Press, Inc.,_ 481 So. 2d 501 (Fla. 2d DCA 1986).  Again, the elements of conversion are not dependent upon the existence of or misappropriation of trade secrets.  A reasonable jury could find that Lochmere's work product was wrongfully taken by Defendants.[5]

In the instant case, Lochmere forwarded several revisions of the Master Development Budgets to Defendants.  Each master development budget bore the following language:

> **PLEASE NOTE:   THIS DOCUMENT IS THE EXCLUSIVE PROPRIETARY INFORMATION OF LOCHMERE DEVELOPMENT GROUP, INC. DO NOT DUPLICATE OR DISPERSE WITHOUT PRIOR CONSENT.**

After it became clear that the Defendants were not going to honor the joint venture agreement between the parties, Lochmere sent a letter to Defendants demanding the return of the information included in the master development budget. _(Appendix, Ex. "L" and "N".)_  Thereafter,

---

[5] It should be noted that Florida law specifically recognizes one's ownership and ability to protect business information which is not a trade secret. §542.335(1)(b)(2) Fla. Stat. 2000.

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

Eiger agreed to return or destroy all its copies. *(Appendix, Ex. "M", p.4)* However, the "approved budget" which was attached to Eiger's loan documents months after Rowsey's July 13, 1999 is substantially identical to the master development budgets created by Lochmere *(Appendix, Ex. "S".)* Therefore, Lochmere's budgets continued to be used. Similarly, Evans testified that Eiger and Fleet must have used Lochmere's due diligence work product since they could not have completed due diligence in the time period at issue. *(Evans Dep. III at p. 229.)* Because the elements of conversion (and the facts supporting those elements) are separate from those required under *FUTSA,* Defendants are not entitled to summary judgment on the grounds that conversion is preempted by *FUTSA.* At least at the motion to dismiss stage, one Florida court has allowed these counts to coexist. *Del Monte Fresh Produce Co. v. Dole Foods, Inc.,* 136 F.Supp. 2d 1271, 1289-94 (S.D. Fla. 2001)

## II.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS XXXI-XXXVII (CONVERSION)

Fleet argues that Lochmere's conversion claim is barred because Fleet alleges that it returned the documentation requested by Lochmere. *(Fleet Memorandum in Support of Summary Judgment, page 13.)* However, Richard Brown has opined that the approved budget relied upon by Fleet and used for the closing on the Hammock Dunes property is essentially identical to Lochmere's master development budget. *(Appendix, Ex. "S")* The testimony of Richard Brown and the comparison of the budget documents themselves raise factual issues of whether Defendants utilized the information in derogation of Lochmere's proprietary right of possession. Therefore, summary judgment cannot be granted.

F:\docs\doc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

The Lane Defendants deny that they undertook any act of dominion over Lochmere's property inconsistent with Lochmere's ownership. The Lane Defendants argue that there can be no conversion because the Defendants initially obtained the property with the consent of Lochmere. *(Lane Memorandum, page 15.)*   However, the essence of conversion is not how a defendant initially acquires the property, but rather the exercise of authority inconsistent with the rights of the true owner. *Florida Department of Ins. v. Debenture Guaranty, 921 F. Supp. 750 (M.D. Fla. 1996); Masvidal v. Ochoa, 505 So. 2d 555 (Fla. 3d DCA 1987).* In *Masvidal,* the court held that a conversion occurred when the defendant lawfully obtained funds via a contract but subsequently converted those funds to his own use. *Masvidal, supra, 505 So.2d at 556.*

Further, it is not necessary for a person to deprive another of exclusive possession of their property in order to be liable for conversion. *Warsaw v. Price, 629 So.2d 903 (Fla. 4th DCA 1994).* In *Warshaw* the appellate court reversed a directed verdict where an employee had obtained a copy of a patient list.  The court held that even though the doctor retained the original list, the employee could be liable for conversion.  The *Warsaw* court cited an Illinois decision, *Conant v. Karris, 520 N.E. 2d 757 (Ill. App. 1987),* which held that once the defendant had obtained and used a copy, the information on the original was no longer confidential.  Therefore, the plaintiff was denied the benefit of the data and could maintain a cause of action for conversion. *Conant at 904.* In the case at bar, Lochmere demanded the return of the confidential information, but thereafter the Defendants utilized and disseminated that information.  Lochmere was therefore deprived of its value, and conversion has occurred.  Since Lochmere has demonstrated that a substantially identical budget was relied upon by Eiger and Fleet to finalize the acquisition of the Hammock Dunes development, Defendants are not entitled to summary judgment on these counts.

### III. THE EIGER INDIVIDUALS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE TORT COUNTS

The Eiger Individuals have argued that merely being a corporate officer does not make them personally liable for the torts of the corporation. While it is true that merely being a corporate officer does not make one liable for torts perpetrated by the corporation, neither may a corporate officer hide behind the corporate veil, where the corporate officers themselves had some involvement in the tort. In *First Financial USA, Inc. v. Steinger*, 760 So.2d 966 (Fla. 4th DCA 2000), the court held that the corporate president was not entitled to judgment on the pleadings where the plaintiff alleged that the president committed wrongful conduct in his capacity of officer and director of the corporation. The court overturned the trial court's dismissal and cited settled Florida law holding corporate officers individually liable for torts committed even while acting as a representative and within the scope of their corporate authority. *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363 (Fla. 4th DCA 1981); *Roth v. Nautical Engineering Corp.*, 654 So.2d 978 (Fla. 4th DCA 1995); *Segal v. Rhumbline Intn'l, Inc.*, 688 So.2d 397 (Fla. 4th DCA 1997); *Brinker v. W.T. McDevitt & Assoc., Inc.*, 693 So.2d 712 (Fla. 4th DCA 1997). Furthermore, the Florida courts have consistently held that the concept of piercing the corporate veil does not apply in the case of a tort, even when intentional torts have not been alleged. *Florida Specialty, Inc. v. H 2 Ology, Inc.*, 742 So.2d 523, 527-28 (Fla. 1st DCA 1999). Therefore, as a matter of law, the Eiger Individuals can be held individually liable for torts, even if they were acting within the scope of their employment.

The Eiger Individuals also argue that there is no evidence of any tortious conduct by any of them.[6] This is certainly not true for Paul Rowsey, as his acts have been described throughout Plaintiff's memoranda. Nearly all actions taken by the Eiger entities were accomplished by Rowsey. All of the Eiger Individuals are the executive officers of the Eiger entities. *(Rowsey Dep. pp. 33-40)* All the executive officers were informed and acted on a unanimous basis. *( Rowsey Dep. pp. 33-40, 54.)* Therefore, based upon Rowsey's testimony, a reasonable jury could determine that each individual was informed of and participated in decisions reflected in Mr. Rowsey's letters and actions. They can be held liable for misappropriating trade secrets, constructive fraud, conversion and civil conspiracy. Therefore, the Eiger Individuals are not entitled to summary judgment on these grounds.

---

[6] The Eiger individuals have no record support for this statement, except Evans' testimony that almost all his contracts were with Rowsey. The Eiger Individuals' affidavits do not negate tortious activity, only stat that they didn't deal directly with Evans. Therefore, plaintiffs' do not believe the Eiger Individuals have met their burden for summary judgment motions. *Abrams v. Hunter,* 910 F.Supp. 620 (M.D. Fla. 1995); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986.)

F \docs\dec\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

22

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by Facsimile and U.S. Mail to all parties on the attached Service List this __/3__ day of August, 2001.

Respectfully submitted,

BRICKLEMYER SMOLKER & BOLVES, P.A.

By: _____
    Jay J. Bartlett
    Florida Bar No.  875163
    Gregory J. Orcutt
    Florida Bar No. 230855
    BRICKLEMYER SMOLKER & BOLVES, P.A.
    500 E. Kennedy Boulevard, Suite 200
    Tampa, Florida 33602
    Telephone: (813) 223-3888
    Facsimile: (813) 228-6422
    Attorneys for   LOCHMERE DEVELOPMENT
    GROUP, INC. and LOCHMERE REALTY,
    INC.

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\RESPONSE MSJ.doc

23

## SERVICE LIST

Daniel F. Molony, Esq.
Shook, Hardy & Bacon, L.L.P.
100 North Tampa Street, Suite 3900
Tampa, FL 33602

Alan S. Loewinsohn, Esq.
Carol E. Farquhar, Esq.
Jo E. Hartwick, Esq.
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road, Suite 110
Dallas, TX 75252

(Attys. for H.D. ASSOCIATES, L.P. DUNES
OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C., EIGER FUND 1 L.P.,
EIGER PARTNERS, L.P., PAUL E. ROWSEY, III,
C. TODD MILLER, DAVID M. JACOBS,
WILLIAM S. BUCHANAN and FLEET NATIONAL
BANK f/k/a BANKBOSTON, N.A.)

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Co-Counsel: FLEET NATIONAL BANK f/k/a BANKBOSTON,N.A.

Alan M. Gerlach, Esq.
Broad & Cassel
390 North Orange Ave.
Suite 1100
Orlando, FL 32801

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

(Attys. for DAVID LANE, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L.L.C.)

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RESPONSE MSJ.doc

24