FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

01 SEP -5 PM 3:15

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.,

        Plaintiffs,

                              Case No.: 8:00-CV-1026-T-27B

v.

EIGER FUND I, L.P., et al.

        Defendants.

_____/

### DEFENDANTS THE EIGER ENTITIES', THE EIGER INDIVIDUALS', AND FLEET BANK, N. A.'S MOTION FOR LEAVE TO FILE LIMITED REPLIES TO PLAINTIFFS' MEMORANDA IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants Eiger Fund I, L.P., Eiger, Inc., Eiger Partners, L.P., H.D. Associates, L.P., Dunes Operating Company, L.P. and 2M Dunes, L.L.C., (the "Eiger Entities"), Paul E. Rowsey, III, C. Todd Miller, David M. Jacobs, and William S. Buchanan (the "Eiger Individuals") and Fleet National Bank, N.A. (the "Bank"), a national banking association, hereby move for leave to file the attached Limited Replies (See Exhibits A and B) to address inaccurate and misleading arguments Plaintiffs make in their Memoranda in Opposition to Plaintiffs' Motions for Summary Judgment.

The reasons and authorities in support of this motion are set forth in the accompanying memorandum of law.

7925.1

Pursuant to Local Rule 3.01(g), M.D. Fla. Rules, the undersigned certifies that he has conferred with Plaintiffs' counsel and has been unable to agree on the resolution of this motion.

## MEMORANDUM OF LAW

Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. seek to recover damages from each of the Defendants for services that Plaintiffs alleged they performed or proposed to perform in connection with a real estate development in Palm Coast, Florida known as Hammock Dunes. Plaintiffs' Amended Complaint comprises seventy-three pages and alleges thirty-eight separate counts.

On July 3, 2001, Defendants David Lane, Barnett Lane Investments, Inc., and JTL Capital ("the Lane Defendants") filed a motion for summary judgment as to each of the eighteen counts against them. On July 5, 2001, the Eiger Entities, the Eiger Individuals, and the Bank filed separate motions for summary judgment as to the twenty-two counts against them; however, only four of those twenty two counts were against the Bank - - one of which Plaintiffs have since voluntarily dismissed.[1]

On August 10, 2001, Plaintiffs filed a "Motion to Consolidate Responses to Defendants' Motions for Summary Judgment and Combine Page Limits." In light of the large number of claims, issues, and parties that the motions for summary judgment

---

1.     Hence, only the claims under the Uniform Trade Secret Act (Count XXX), conversion (Count XXXVII), and civil conspiracy (Count XXXVIII) are pending against the Bank. Incidentally, all Defendants were jointly named as defendants in the civil conspiracy claim. Thus, adding together the number of counts against each defendant or group of defendants results in a number greater than thirty-eight, the total number of counts in the Amended Complaint.

7925.1                                        -2-

addressed, these Defendants did not oppose this motion, even though the page limits for the briefs that Plaintiffs proposed did not comply with Local Rule 3.01(c)[2].

On August 13, 2001, Plaintiffs filed three separate memoranda of law in opposition to Defendants' summary judgment motions: (1) "Lochmere's Memorandum of Law in Opposition to Motions for Summary Judgment (Violation of Florida's Uniform Partnership Act) (Quantum Meruit and Unjust Enrichment)" - consisting of thirty-nine pages; (2) "Plaintiffs' Response to Motion for Summary Judgment Regarding Trade Secrets (Counts XXIV-XXX)" - consisting of twenty-four pages; and (3) "Lochmere's Memorandum of Law in Opposition to Defendants Motion for Summary Judgment (Intentional Fraud, Constructive Fraud, Economic Loss Rule, and Civil Conspiracy)" - consisting of sixteen pages.[3]

The Eiger Entities, the Eiger Individuals, and the Bank respectfully request that the Court authorize them to file the attached proposed Memoranda in Reply to Plaintiffs' Opposition Memoranda. In light of the multitude of claims and issues, the arguments in Defendants' initial briefs necessarily were compressed so that Defendants could comply with the page limits and format constraints of the Local Rules. The proposed reply memoranda is necessary to address certain inaccurate and misleading arguments in Plaintiffs' briefs,

---

2.      As noted below, two of the Plaintiffs' three briefs exceeded the twenty page limit set forth in Local Rule 3.01(c). See also Gamb v. Hilton Hotels Corp., No. 95-466-CIV-ORL-19, 1997 WL 893874, at **5-6 (M.D. Fla. Sept. 26, 1997) (filing separate motions for partial summary judgment, divided by issues, together with separate memoranda and statement of facts totaling sixty pages of filings violated the "spirit," if not the letter, of the local rule.)

3.      Although all three memoranda comprised seventy nine pages -- one page less than the eighty page maximum recited in Plaintiffs' motion to consolidate, the page margins in the three memoranda are far less than required by Local Rule 1.05(a). Only the right hand margin, which is one inch wide, complies with the rule. The top margins are slightly less than the required one and one-quarter inch, while the bottom margins range from three-quarters of an inch to one inch and the left hand margin is one inch -- substantially less than the one and one-quarter inch margins required by the rule.

7925.1                                                  -3-

including, but not limited to, their (1) mischaracterization of the case law applying a contractual disclaimer to preclude a finding of a partnership or joint venture; (2) erroneous recitals of the facts and holdings in cases which have denied recovery to plaintiffs seeking quantum meruit or unjust enrichment when services have been performed in the expectation of a future contract or business relationship; (3) attempt to recast their intentional fraud claim as a claim for fraudulent concealment; (4) erroneous conclusions about the application of the economic loss rule; (5) erroneous interpretation of the preemption doctrine of the Trade Secret Act; (6) failure to controvert material facts in the Bank's motion.

Although Local Rule 3.01(g) precludes the filing of briefs or other legal memoranda other than an initial brief and a response brief, Local Rule 1.01(c) allows the Court to suspend application and enforcement of the rules, in whole or in part, in the interests of justice in individual cases by written order. To assist in resolution of voluminous, lengthy or complex issues, the judges of this Court often have waived application of Local Rule 3.01(g) and authorized filing of reply briefs, especially when dispositive motions have been involved. See, e.g., Laffal v. Overseas Adventure Travel Partners, Inc., No. 3:99-CV-1113-J-21A, 2000 WL 362017, at *1 (M.D. Fla. March 31, 2000); Jackson v. Motel 6 Multipurposes, Inc., Nos. 96-72-CIV-FTM-17D, 96-115-CIV-FTM-17D, 1997 WL 724429, at 1 (M.D. Fla. Nov. 6, 1997); In re Disposable Contact Lens Antitrust Litigation, 170 F.R.D. 524, 527 (M.D. Fla. 1996); Hrynda v. United States, 933 F.Supp. 1047, 1049 (M.D. Fla. 1996); Gulf Marine Repair Corp. v. Liberty Mutual Ins. Co., No. 92-1576-CIV-T-21A, 1994 WL 805208, at *4 (M.D. Fla. Jan. 13, 1994); Weiselman v. Oppenheimer & Co., 835 F.Supp. 1398, 1400 (M.D.

7925.1                          -4-

Fla. 1993); <u>Seniors Civil Liberties Assoc., Inc. v. Kemp</u>, 761 F. Supp. 1528, 1535 (M.D. Fla. 1991); <u>Davis v. Dugger</u>, 703 F.Supp. 916, 917, n.2 (M.D. Fla. 1988).

WHEREFORE, the Eiger Entities, the Eiger Individuals, and the Bank respectfully request that the Court grant leave to file the attached proposed Limited Reply Memoranda.

Respectfully submitted,

Daniel F. Molony
Florida Bar No. 271330
James B. Murphy, Jr.
Florida Bar No. 287598
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
(813) 202-7100 / (813) 221-8837 - Facsimile

Alan S. Loewinsohn
Carol E. Farquhar.
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road
Suite 110
Dallas, Texas 75252
(972) 713-1300 / (972) 713-1313 - Facsimile

Attorneys for Eiger Fund I, L.P., Eiger, Inc.,
Eiger Partners, L.P., H.D. Associates, L.P.,
Dunes Operating Company, L.P.,
and 2M Dunes, L.L.C. and Fleet National Bank,
NA., f/k/a BankBoston, N.A.

7925.1                                   -5-

and

Dora Kaufman
Florida Bar No. 771244
HALLEY, SINAGRA & PEREZ
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394
(954) 467-1300 / (954) 467-1372 - Facsimile

Co-Counsel for Fleet National Bank, N.A. f/k/a
BankBoston, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by facsimile transmission and by United States Mail to Gregory J. Orcutt, Esq., Bricklemyer, Smolker & Bolves, P.A., 500 E. Kennedy Blvd., Suite 200, Tampa, FL 33602 and Alan B. Gerlach, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801 this 5th day of September, 2001.

_____
ATTORNEY

7925.1

-6-



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.,

             Plaintiffs,

v.                                      Case No.: 8:00-CV-1026-T-27B.

EIGER FUND I, L.P., et al.

             Defendants.

_____/

## LIMITED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE EIGER ENTITIES AND THE EIGER INDIVIDUALS

Defendants H.D. Associates, L.P., Dunes Operating Co., L.P., Eiger, Inc., 2M Dunes, L.L.C., Eiger Fund 1, L.P., Eiger Partners, L.P. ("Eiger Entities"), Paul E. Rowsey, III, C. Todd Miller, David M. Jacobs, and William S. Buchanan ("Eiger Individuals"), submit the following Limited Reply in support of their motions for summary judgment.

### I.    UNIFORM PARTNERSHIP ACT, QUANTUM MERUIT, UNJUST ENRICHMENT

#### A.    Violation of the Florida Uniform Partnership Act

The disclaimer in the proposed Management, Development, and Marketing Agreement could not be any clearer or unequivocal when it states:

> **Nothing herein contained in this Agreement or in the relationship of the Owner and Manager shall be deemed to constitute a partnership, joint venture or any other relationship other than that of contract parties hereunder** and, while Owner shall have certain payment obligations to Manager hereunder which are determined by reference to the economic performance of the Property, nothing herein shall constitute Manager as having any equity or partnership interest in the Property, directly or indirectly. . . .

7656.1

Management Agreement § 4.4., Amended Comp. Ex. K (emphasis added).

Plaintiffs' argument that other factors must be present to conclude that a partnership or joint venture did not exist is simply wrong. None of the authorities cited in Defendants' initial briefs, which Plaintiffs attempt to distinguish, held that an express and unambiguous contractual disclaimer of a partnership or joint venture is invalid or ineffective.[1] Furthermore, this Court recently dismissed a claim for breach of an alleged partnership or joint venture agreement based upon a similar contractual disclaimer without relying upon *any* other extrinsic factors. See Anthony Distribs., Inc. v. Miller Brewing Co., 882 F. Supp. 1024, 1031 (M.D. Fla. 1995).[2] In that Evans conceded in his deposition that the only "contract" between Lochmere Development and the Eiger Entities was the proposed Management Agreement, and that it contained all of the contractual terms (Evans Dep. I at 56-58, 68-72), the disclaimer in Section 4.4 of the proposed Management Agreement clearly precludes Plaintiffs' partnership or joint venture claim.

Even if the Court needed to look beyond the disclaimer, however, the facts provide no support whatsoever to Plaintiffs' contentions that Plaintiffs formed a partnership or joint venture with the Eiger Entities. Plaintiffs concede that a partnership or joint venture requires a "community of interest in the performance of a common purpose, joint control or right of control, joint propriety of interest in the subject matter, right to share in the profits, and duty to

---

1. See Florida Muni. Power Agency v. Ohio Cas. Ins. Co., 714 So.2d 660, 661 (Fla. 5th DCA 1998); Schweitzer v. Seaman, 383 So.2d 1175, 1177-1178 (Fla. 4th DCA 1980); Savers Fed. Savings & Loan Assoc. v. Amberley Huntsville, Ltd., 934 F.2d 1201, 1207-1208 (11th Cir. 1991); Resolution Trust Corp. v. Jet Stream, Ltd., 790 F. Supp. 1130, 1137 (M.D. Fla. 1992).

2. The agreements in Anthony Distributors expressly provided: "Distributor acknowledges that it is, and shall remain an independent business entity. Miller and its distributors are not joint venturers or partners and neither may act as the agent, employee, or fiduciary of the other." This Court held, that in light of that language, Plaintiffs' claim for breach of a partnership agreement failed to state a cause of action and dismissed the claim. Id.

7656.1                                    2

share in any losses which may be sustained." Dreyfuss v. Dreyfuss, 701 So.2d 437, 439 (Fla. 3d DCA 1997) (quoting Austin v. Duval Co. School Bd., 657 So.2d 945, 948 (Fla. 1st DCA 1995)).

The Management Agreement described H. D. Associates as "Owner" and Lochmere Development as "Manager" while the Marketing Agreement referred to them as H. D. Associates as "Owner" and Lochmere Realty as "Broker." Neither document ever referred to the parties as "partners" or "joint venturers." Furthermore, neither document provided for joint control by Lochmere Development or Lochmere Realty over the affairs of the alleged partnership or joint venture. The proposed Management Agreement instead stated that in fulfilling its duties as Manager, Lochmere Development was to be "[s]ubject to directions to be given by Owner from time to time as described herein . . ." and further specifically provided

> [e]xcept as otherwise specifically stated, nothing herein shall be construed as vesting in Manager any control rights or voting or approval rights whatsoever in or to the operation, financing and disposition of the Property or any portion thereof and all decisions concerning the Property or any portion thereof shall be made solely by Owner or its designee from time to time. . . .

(Management Agreement §§ 1, 4.5, Amended Compl. Ex. K).[3]

The authority or control granted to Lochmere Realty under the proposed Marketing Agreement was similarly restricted. It provided that "'Broker' has no authority to accept any

---

3.    Under the proposed contract, Owner had the authority to approve the marketing plans and specifications for the property, determine the level of maintenance and security to be provided with respect to the property, to instruct Manager as to insurance requirements with respect to the property and all initial insurance contracts, to approve any contracts for services, construction, materials, or equipment in excess of the lower of $25,000 or an amount specified in the budget for such contract, to amend or modify, without Manager's approval, any aspect of the marketing plan with respect to the property, to approve the layout and utilization of the development and any significant change of the design, layout, or utilization of the development, to approve any sales or conveyances of the property, and to finance, refinance, mortgage or pledge the property. Management Agreement §§ 2, 3. Amended Compl. Ex. K. The authority delegated to the Manager, on the other hand, was narrowly limited. Id. § 4.

offer on behalf of owner with respect to the Property and all such authority is retained by Owner." (Marketing Agreement § 3).

Contrary to Plaintiffs' contention, Florida courts have repeatedly held that parties to a joint venture or partnership must have *equal* authority or control over the pursuit of the enterprise. See, e.g., Berkan v. Brown, 242 So.2d 207 (Fla. 3d DCA 1970); Cline v. Schoenberger, 234 So.2d 372, 374 (Fla. 2d DCA 1970); Yokom v. Rodriguez, 41 So.2d 446, 448 (Fla. 1949); Beckett v. Pierce, 25 So.2d 486, 489 (Fla. 1946); Coral Gables Securities Corp. v. Miami Corp., 166 So. 555, 557 (Fla. 1936). Even assuming, however, that a lesser degree of "shared" or "mutual" control would suffice, none of the authorities that Plaintiffs cited found a partnership or joint venture to exist when the authority or control of one of the parties was as tightly circumscribed as that of Lochmere Development or Lochmere Realty under these documents.

Moreover, the "Incentive Participation" provision under the proposed Management Agreement was the only aspect of either document that was dependent on the Owner realizing a profit on the development. See Management Agreement, Ex. "D", Amended Compl. Ex. K).[4] The proposed Management Agreement, however, also provided that Owner would pay Manager its out-of-pocket expenses, a monthly fee, and a percentage of the purchase price of the property – none of which were dependent on the Owner's profits. The proposed Marketing Agreement did not provide for any participation by the Broker in any the income or profits of the alleged partnership or joint venture. (Id. *passim*) Instead, it provided that the Broker would receive a

---

4.    The disclaimer in the proposed Management Agreement, however, expressly provided that the "Incentive Participation would not give Manager "any equity or partnership interest in the Property, directly or indirectly." Id. § 4.4.

7656.1                                   4

real estate commission at various rates in connection with sales with all or any part of the property. (Id. § 5).

Although Plaintiffs argue that a duty to share in the losses of the alleged partnership or joint venture can be implied or inferred from the fact that Plaintiffs were to contribute services, while the Eiger Entities were to contribute capital, such an inference clearly would be inappropriate here. In those cases where courts have implied a duty to share losses, the putative joint venturer had provided skill and labor without an expectation of repayment in the event that the venture was unsuccessful. Thus, the basis for implying a duty to share losses was that "in the event of loss, [one party] would have exercised his skill and effort in vain and [the other party] would have to suffer diminishment of his capital investment." Uhrig v. Redding, 8 So.2d 4, 6 (Fla. 1942); see also Russell v. Thielen, 82 So.2d 143, 145 (Fla. 1955); Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536, 539 (Fla. 3d DCA 1974). If the proposed Management Agreement had been consummated, Lochmere Development clearly would not have performed services "in vain" for no compensation. Under these agreements, H. D. Associates would have been required to pay Lochmere Development for all costs, fees, and expenses it had incurred and to pay it $12,000 a month as well as a fee equal to 1% of the Purchase Price of the property -- regardless of whether the project turned a profit or not. Similarly, the commissions that Lochmere Realty would have been paid if the Marketing Agreement had been consummated were not dependent on whether the development was profitable.

Plaintiffs' attempt to explain away the testimony of Robert Evans is likewise

7656.1

5

unavailing.[5] Plaintiffs' suggestion that questions that Evans was asked about the alleged partnership raised a legal issue (see Pls.' Mem. of Law in Opp. to Mot. for Summ. Judgment - Partnership Act, Quantum Meruit and Unjust Enrichment at 18, hereinafter "Pls.' Partnership Mem.") is contradicted by their assertions that the existence of a partnership or joint venture is an issue of fact (Id. at 4) which depends upon the parties' intent. (Id. at 10).[6] The Eiger Entities submit that Evans testimony was sufficiently "deliberate, clear, and unequivocal" to rise to the level of a "judicial admission." See Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621(11th Cir. 1983); Backar v. Western States Producing Co., 547 F.2d 876, 880, n. 4 (5th Cir. 1977). Even if Evans' statements constitute an evidentiary admission rather than a judicial admission, however, they still would be entirely appropriate for the Court to consider in connection with the motions for summary judgment. See Fed. R. Civ. P. 56(c). Furthermore, the arguments (which obviously are not evidence) in Plaintiffs' brief notwithstanding, Plaintiffs' failure to file an affidavit in opposition to Defendants' motions for

---

5.    Plaintiffs' attempt to disavow the wording of the very documents that they rely upon to establish their claim and of Evans' sworn testimony is "Alice in Wonderland/Through the Looking Glass" in its flavor:

> "When *I* use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean, neither more nor less."

Lewis Carroll, Through the Looking-Glass and What Alice Found There at 186 (Penguin Classics 1998) (1872).

6.    Plaintiffs' re-characterization of their claim as based upon a joint venture, rather than a partnership, likewise is unavailing. In the first place, Plaintiffs' Amended Complaint never uses the term "joint venture." Instead, the Amended Complaint consistently refers to the "Partnership Agreement," and to the parties as "partners" and their alleged relationship as a "partnership." (See Amd Compl. ¶¶ 144-148, 150-153.) Secondly, Plaintiffs conceded that the elements of a partnership and a joint venture are the same. (see Pls.' Partnership Mem. at 6).

7656.1                                              6

summary judgment leaves Evans' testimony unrefuted. [7]

Finally, Plaintiffs' partnership or joint venture claim still is fatally deficient as a matter of law. The proposed Management Agreement expressly provided for an initial term of four years after which it was to be automatically renewable for additional successive one year terms. The proposed Marketing Agreement provided that it was to extend "until the date as of which Owner no longer owns any portion of the property." Under well settled Florida law, the statute of frauds bars the enforcement of a contract when the parties intended and contemplated that the performance of the agreement would take longer than one year. See Section 725.01, Fla. Stat.; Dwight v. Tobin, 947 F.2d 455, 458 (11th Cir. 1991). Moreover, oral or unsigned partnership or joint venture agreements clearly are not immune from the reach of the statute of frauds. Id. (partnership agreement), see also Kay v. Katzen, 568 So.2d 960, 961 (Fla. 3d DCA 1990) (partnership agreement); Futch v. Head, 511 So.2d 314, 318, n. 1 (Fla. 1st DCA 1987) (holding that for purposes of statute of frauds any distinction between partnerships and joint ventures is meaningless).

Although the existence of a partnership or joint venture is generally a question of fact, where there is no genuine issue with respect to the relevant facts, summary judgment is clearly appropriate. Browning v. Peyton, 918 F.2d 1516 (11th Cir. 1990); Anthony Distributors, 882 F. Supp. at 1031. In this instance, summary judgment is warranted because Plaintiffs clearly

---

7.     Indeed, courts give great weight to sworn deposition testimony of parties or their representatives in ruling on motions for summary judgment. For example, it is well established that an affidavit which attempts to contradict, without explanation, a party's prior deposition testimony should be stricken in considering a motion for summary judgment. See Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc. , 736 F.2d 656, 657 (11th Cir. 1984); Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 687 (M.D. Fla. 1999). In this instance, however, Evans did not even attempt to explain his prior statements through an affidavit.

7656.1                                                7

have failed to sustain their burden of demonstrating the existence of any genuine issue of material fact.

### B.      Quantum Meruit/Unjust Enrichment

Even though Plaintiffs now argue at great length that quantum meruit and unjust enrichment are separate and independent causes of action, Plaintiffs did not separately allege these claims in their Amended Complaint. Instead, they jumbled both claims against the Eiger Entities in the same count. Regardless of the propriety of this pleading practice[8], and whether these two legal theories are distinct causes of action, however, Plaintiffs have failed to establish a genuine issue of material fact for trial.

It is well established that there can be no recovery for either quantum meruit or unjust enrichment if the plaintiff provided the services in the hope of a future business opportunity and without any reasonable expectation that reimbursement will directly result. Indeed, in at least two of the decisions Plaintiffs rely upon in their brief, the courts applied this very principle to grant summary judgments which dismissed claims for unjust enrichment and quantum meruit. See Web Communications Group, Inc. v. Gateway 2000, Inc., 889 F. Supp. 316, 321 (N.D. Ill. 1995); Bloomgarden v. Coyer, 479 F.2d 201, 208-212 (D. C. Cir. 1973).

Moreover, for the rule to apply, the party seeking an award under a quantum meruit or unjust enrichment theory does not have to expressly admit that it did not expect to be compensated for its services. Although an admission by the plaintiffs in a deposition or pleading

---

8.      See, e.g., Nemitz v. Cunny, 221 F.Supp. 571, 574 (N.D. Ill. 1963) (different causes of action, based on different legal theories, even though based on essential identical facts, should be alleged in separate counts); Guth v. Texas Co., 155 F.2d 563 (7th Cir. 1946) (cause of action for negligence and on account should have been stated in separate counts); 5 Charles A. Wright & Arthur R. Miller, Federal Practice § 1324 at 743-745 (2d ed. 1990).

7656.1                                                       8

obviously would support application of the rule, it is not required.  As the court in Bloomgarden recognized:

> And the point in time at which elements essential to implication [of an agreement to pay for services performed by a party] must occur **is at the time the services are rendered**. . . . This is because an implied-in-fact contract to compensate for services arises, if at all, at the time the services are rendered, and only if the then-existing circumstances enable implication of a contract does it come into being.  The precepts are elemental and so much is implicit in the decisions holding that services performed without expectation of remuneration or simply kin the expectation of a nonmonetary business advantage do not warrant implication of a contract to pay.  **In all of these case there was at some point a change of heart, and an effort in the suit to recover cash compensation not contemplated when the acts were performed.**

479 F.2d at 209 and n. 35 (emphasis added).

Contrary to Plaintiffs' characterization (See Pls.' Partnership Mem. at 33), the plaintiffs in two of the decisions cited in Defendants' initial brief, North Am. Financial Group, Ltd. v. S.M.R. Enterprises, Inc., 583 F. Supp. 691, 699 (N.D. Ill. 1984) and Maple Island Farm, Inc. v. Bitterling, 209 F.2d 867 (8th Cir. 1954), did not admit that they were not seeking compensation for their services. For that matter, neither did the Plaintiff in Web Communications, a case which Plaintiffs rely upon in their brief. (See Pls.' Partnership Mem. at 29).  The courts nevertheless concluded in all of those cases that there was no reasonable expectation of compensation based upon the context in which the circumstances were rendered and the facts in the record.

The undisputed facts clearly support that same conclusion here.  Evans conceded that Plaintiffs never kept any records with respect to the time they spent on the Hammock Dunes Property, and it is uncontested that Plaintiffs never submitted any bills for their services. (Evans Dep. III at 32; Rowsey Aff. § 18).  Furthermore, when asked at his deposition whether he expected to be compensated for his work, Evans responded as follows:

7656.1                                        9

Q:      Are you seeking in this lawsuit to be reimbursed or paid or awarded damages for the time you spent in connection with the Hammock Dunes project?

A:      Ma'am, as I stated, I expect to be compensated for my work.

Q:      And how you expect - on what basis, on what rate, do you expect to be compensated?

A:      **Ma'am, I don't have a rate, ma'am.  I expect for my agreements to be honored.**

(Evans IV at 464-465 (emphasis added)).

Thus, if an "admission" in this lawsuit were necessary, Evans supplied it.  Evans did not rely on Defendants paying his companies at the time the services were rendered.  Instead, Evans hoped that Defendants would enter into the proposed Management Agreement and Marketing Agreement, and that his companies would then be retroactively paid for their services.  Plaintiffs have not presented a shred of evidence to show that, at the time these services were rendered, they reasonably expected the Eiger Entities to pay them regardless of whether or not the Eiger Entities ultimately agreed to the proposed contracts.  Accordingly, the Court should enter summary judgment on Plaintiffs' unjust enrichment/quantum meruit claim.

## II.      INTENTIONAL FRAUD AND THE ECONOMIC LOSS RULE

### A.      Intentional Fraud

Plaintiffs argue that the Eiger Defendants and Rowsey[9] are not entitled to summary judgement on Plaintiffs' fraud claim.  (Pls.' Mem. of law in Opp. to Defs.' Mot. for Summ. J. –Intentional Fraud, Constructive Fraud, Economic Loss Rule, and Civil Conspiracy, hereinafter "Pls.' Fraud Mem.")  However, Plaintiffs do not dispute that neither Rowsey, nor any other representative of the Eiger Defendants, ever represented that they would sign the agreements or

---

9.      On August 21, 2001, Plaintiffs entered into a stipulation of voluntary dismissal without prejudice of the fraud claims against Defendants Todd Miller, David M. Jacobs and William S. Buchanan.

7656.1                                             10

made any commitment to pay compensation called for in the agreements. (Eiger Entities' Mem. at 9). Instead, Plaintiffs vaguely allege that "Defendants continually represented to Evans and to others, at every step of the development, that Lochmere was going to be in charge of the development and would be compensated for its work." (Pls.' Mem. at 7). But Plaintiffs cite to no affidavits, deposition testimony, documents or other evidence in the record to support these assertions. Accordingly, these factual assertions must be stricken and cannot be relied upon to save Plaintiffs from the entry of summary judgment. See Fed. R. Civ. P. 56(e) (party opposing summary judgment may not "rest upon mere allegations or denials of the adverse party's pleading, but must "by affidavits or as otherwise provided in this rule . . . set forth specific facts showing there is a genuine issue for trial.")

Plaintiffs next argue that they can prevail on their fraud claim even without proof of an affirmative misrepresentation. (Pls.' Fraud Mem. at 8). Specifically, Plaintiffs argue that Defendants committed to fraud because they "were aware that Lochmere's demands as set forth under the terms of the Master Development Agreement, yet failed to disclose that they were not going to honor the agreement." (Id. at 8). Plaintiffs' strategy is obvious. Having failed to identify affirmative misrepresentations by Defendants, Plaintiffs now attempt to recast their fraudulent misrepresentation claim as a nondisclosure or concealment claim. But nowhere in Plaintiffs' fraud allegations are the words "nondisclosure"or "fraudulent concealment" ever mentioned (See, e.g., Second Am. Compl. at ¶¶ 190-197). Indeed all of the fraud allegations specifically refer to "false representations of fact" allegedly made by the Defendants. (Id.) Plaintiffs are therefore barred from pursuing a fraudulent concealment claim now because they have failed to plead the fraud with specificity as required under Federal Rules of Civil Procedure

7656.1                                               11

9(b).  See Jones v. Gen. Motors Corp., 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998).

Moreover, Plaintiffs do not satisfy the requirements to establish fraudulent concealment. Under Florida law, nondisclosure of a material fact only constitutes fraud when there is a duty to disclose. TransPetrol, Ltd. v. Radulovic, 764 So.2d 878, 879 (Fla. 4th DCA 2000).  Florida law only imposes a duty to disclose where the person making the representation has some superior knowledge in the matter or where he or she acts in a confidential or fiduciary capacity. Id. at 880.  Thus, where the parties are dealing at arms length and the facts are equally available to both parties, there is no duty to disclose.  Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179 (S.D. Fla. 1991).[10]Here, as demonstrated in the discussion regarding Plaintiffs' partnership claim, the parties were dealing at arms length and there was no confidential or fiduciary relationship.   As a result, Plaintiffs may not recover for non-disclosure or fraudulent concealment.

In any event, a party's nondisclosure of an intent not to perform under a contract cannot, as a matter of law, form the basis of a fraudulent nondisclosure claim.  See Dantzler Lumber & Export Co. v. Bullington Lumber Co., 968 F. Supp. 1543, 1547 (M.D. Fla. 1997).

### B.    The Economic Loss Rule

Plaintiffs argue that their fraud and constructive fraud claims are not barred by the economic loss rule. (Pls.' Fraud Mem. at 12-14).  Plaintiffs first argue that, in order for the economic loss rule to apply, the Court has to "determine an enforceable contract exists between the parties." (Id. at 12).  Plaintiffs then argue that because Defendants have denied the existence

---

10.     Furthermore, Evans conceded that no representative of the Eiger Entities ever said that they would sign these proposed agreements or made any commitment to pay him the compensation provided under the documents. (Evans Dep. I at 136-137, 166-167; Evans Dep. III at 150-151, 188-189, 191-192, 210-211).

7656.1                                          12

of any agreement between the parties, they are somehow estopped from raising the economic loss rule as a defense to Plaintiffs' tort actions.

Plaintiffs' claim that an enforceable contract is required for the economic loss rule to apply is without merit, as the Florida Supreme Court has held to the contrary. Casa Clara Condo. Ass'n, Inc. v. Charley Toppino and Sons, Inc., 620 So. 2d 1244, 1247-48 (Fla. 1993) (suit by homeowners against supplier of concrete used to build their homes was barred by the economic loss rule despite the absence of contractual privity between the parties). See also Hoseline, Inc. v. U.S.A. Diversified Prod., Inc., 40 F.3d 1198 (11th Cir. 1994) (economic loss rule barred tort claims despite the absence of a breach of contract claim); Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538 (11th Cir. 1990) (economic loss rule barred tort claims on motion for summary judgment even though defendant's breach of contract claim had been dismissed in earlier proceedings). Based upon the foregoing cases, Plaintiffs' fraud and constructive fraud claims are not sheltered from application of the economic loss rule.

Plaintiffs next point out that even if a contract is found, the economic loss rule does not preclude claims for fraud in the inducement. (Pls.' Fraud Mem. at 13). Plaintiffs then assert, without any evidentiary support in the record, that Defendants' alleged secret plans to "drastically reduce Lochmere's compensation" somehow "prevented Lochmere from being able to negotiate and make an informed decision." (Id. at 13). Plaintiffs' argument fails for several reasons. First, they have not pled fraud in the inducement with particularity as required under Federal Rules of Civil Procedure 9(b). See Jones v. Gen. Motors Corp., 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998). As a result, Plaintiffs are barred from raising a fraudulent inducement claim now. Second, the facts alleged in Plaintiffs' opposition to Defendants' motion are not

7656.1                                    13

supported in the record and therefore should not be considered here. Fed. R. Civ. P. 56(e). Finally, Plaintiffs' allegations do not support a claim for fraudulent inducement. What Plaintiffs' allegations boil down to is that Defendants supposedly secretly intended to breach the alleged agreements with Plaintiffs and should have disclosed this to Plaintiffs.[11] As noted above, these kinds of allegations do not state a legally cognizable claim under Florida law. See Dantzler Lumber & Export v. Bullington Lumber Co., 968 F. Supp. 1543, 1547 (M.D. Fla. 1997).

Plaintiffs next argue that their constructive fraud claims are not barred under the economic loss rule. (Pls. Fraud Mem. at 14). Plaintiffs place great emphasis on the Florida Supreme Court's decision in Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999) and assert that it has drastically changed the law with respect to the application of the economic loss rule to constructive fraud claims. This is simply not the case. Moransais only applies to professional negligence claims. Id. at 983. The case does not even address claims of constructive fraud or breach of fiduciary duty.

Moreover, in Moransais, the Supreme Court cited with favor to its decision in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996) which held:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts **considered to be independent from acts that breached the contract.**

Id. at 1239 (emphasis added).

Thus the economic loss rule still applies where the alleged tortuous acts are not

---

11.       Of course, Defendants vigorously deny that they entered into any contracts or agreements, or that they had any intention to breach any contacts or agreements, with Plaintiffs.

7656.1                                                          14

independent from "acts that breached the contract." Here, Plaintiffs' constructive fraud allegations are that Defendants breached duties owed to Plaintiffs under the partnership agreement by failing to keep secret all confidential information created during the partnership. (Second Am. Compl. ¶¶ 241-42). Thus, the very acts that constitute the tort (disclosing the confidential information) constitute the breach of the alleged partnership agreement. As a result, the tort and contract actions are not independent and economic loss rule applies to bar Plaintiffs constructive fraud claim.

### III.    TRADE SECRETS AND PREEMPTION

### A.    Trade Secrets

Plaintiffs have raised several arguments in response to Defendants' motion for summary judgment on Plaintiffs' claims for misappropriation of trade secrets claims. First, Plaintiffs argue that the Master Development Budget meets the definition of a trade under Florida's Uniform Trade Secret Act. (See Pls.' Trade Secret Mem. at 7-9). Although Plaintiffs present a barrage of citations to the deposition testimony of Lochmere's president, Robert Evans, what is most telling is what facts Plaintiffs fail to controvert. Specifically, Plaintiffs do not controvert the following facts from the Eiger Entities' memorandum:

- The Master Development Budget was a computer-generated spread sheet of rows and columns containing various income and expense items projected for the Hammock Dunes Project (See e.g. Eiger Entities' Mem. at 14-15);

- The information in the budget was assembled from the seller, ITT, from consultants whom Lane had hired and whose fees were ultimately paid by the Eiger Entities (and not by Lochmere Development), and from publicly available documents. (Evans Dep. III at 166, 170-171, 256).

- The information was not secret or confidential, but was available to the prior prospective purchaser or to the Eiger Entities as well as to Lochmere

7656.1                                    15

Development. (Evans Dep. III at 178-179, 242).

- Defendants could have put together their own budget given adequate time. (Evans Dep. III at 227);

- The "draw package" consisted of blank financial forms that were never used by any of the Defendants (Id. at 17). [12]

Although Plaintiffs do not controvert these facts, they attempt to raise additional facts and argue that the existence of these facts makes the issue of whether the Master Development Budget is a trade secret a fact issue for the jury. (See Pls.' Trade Secret Mem. at 6). An examination of Plaintiffs' facts reveals, however, that they are insufficient to defeat Defendants' motion for summary judgment.

For example, Plaintiffs make much of the fact that the Master Development Budget is labeled "proprietary." (Id. at 6). Defendants do not dispute this. But this fact is no great consequence because courts have uniformly held that merely labeling information as confidential does not elevate it to the level of a trade secret. Eaton Corp. v. Appliance Valves Corp., 526 F. Supp. 1172, 1178 (N.D. Ind. 1981), aff'd, 688 F.2d 842 (7th Cir. 1982); Utilase, Inc. v. Williamson, 188 F.3d 510, 1999 WL 71769, *7 (6th Cir. 1999); Ecologix, Inc. v. Fansteel, Inc., 676 F. Supp. 1374, 1381 (N.D. Ill. 1998).

Plaintiffs also argue that the Master Development Budget, although consisting of publicly available information and information paid for by Defendants, was somehow the product of "Mr. Evans knowledge and experience in Florida land development and the use of his judgment . . . ." (Pls.' Mem. at 6-7). As noted earlier, however, Evans admits that much of the information

---

12. Indeed, Plaintiffs' failure to even address the draw package is grounds for entry of summary judgment that the draw package is not a trade secret.

7656.1                                    16

in the Master Development Budget was the product of the experience of experts hired by the Lane Defendants. (Eiger Entities' Mem. at 15). Despite this fact, Evans felt justified in giving this information to Starwood, a competitor for the purchase of the property. (Id. at 16.) Thus, under Plaintiffs' analysis, Evans would have been justified in taking information paid for by Defendants, mixing it with publicly available information, stamping it "proprietary," giving it to Starwood, and then precluding Defendants from using their own information. Such a tortured analysis of trade secret law defies common sense and cannot stand.

### B.    Preemption

Plaintiffs do not dispute that their tort claims are related to their misappropriation of trade secrets claim. (Pls.' Trade Secret Mem. at 17). Rather, Plaintiffs argue that their tort claims are not preempted under Florida law because the claims are not based solely upon the alleged misappropriation of trade secrets. (Id. at 16, citing Coulter Corp. v. Leinert, 869 F. Supp. 732 (E.D. Mo. 1994)). Plaintiffs' reliance on the Coulter case is misguided because it was decided by a federal court in Missouri and thus is not binding precedent under Florida law. Furthermore, Plaintiffs' argument ignores the line of cases which hold that the Uniform Trade Secrets Act bars related common law claims. See, e.g., Hutchison v. KFC Corp., 809 F. Supp. 68, 71 (D. Nev. 1992). In order to survive summary judgment, a plaintiff must be able to show that the distinct theories of relief sought are supported by facts completely unrelated to the alleged misappropriation of trade secrets. Smithfield Ham and Prod. Co. v. Portion Pac, Inc., 905 F. Supp. 346, 348-49 (E.D. Va. 1995). Plaintiffs have failed to meet such burden; therefore summary judgment is appropriate.

### 1.    Constructive Fraud

7656.1                                        17

Plaintiffs' claims for constructive fraud are based on the alleged misappropriation of trade secrets. Specifically, Plaintiffs allege that Defendants improperly disclosed confidential information created by the alleged partnership with Defendants. (Second Am. Compl. at ¶¶ 239-42). Thus, Plaintiffs' claims are preempted by the Florida Uniform Trade Secrets Act. C & F Packing Co. v. IBP, Inc., 224 F.3d 1296, 1306 (Fed. Cir. 2000) (fraud claim preempted since alleged fraud was based on defendant's alleged knowingly false promises and acts of concealment, which were indistinguishable from defendant's alleged trade secret misappropriation).

### 2.    Unjust Enrichment/Quantum Meruit

Plaintiffs concede that a claim for unjust enrichment arising out of the misappropriation of a trade secret is preempted. (Pls. Partnership Mem. at 30). As a result, to the extent Plaintiff is asserting a claim for unjust enrichment based upon the Defendants' alleged misappropriation of the Master Development Budget (which Plaintiffs have identified as a trade secret), Plaintiffs' claims for unjust enrichment are preempted. C & F Packing Co. v. IBP, Inc., 1994 WL 30540, at *7 (N.D. Ill. Feb. 1, 1994), rev'd on other grounds, 224 F.3d 1296 (Fed. Cir. 2000) (unjust enrichment claim preempted where it was inextricably intertwined with and could not be meaningfully distinguished from plaintiff's statutory misappropriation claim); Web Communications Group, Inc. v. Gateway 2000, Inc., 889 F. Supp. 316, 321 (N.D. Ill. 1995) (unjust enrichment claim preempted to the extent that it was directed at trade secret misappropriation).

Plaintiffs argue that their quantum meruit claim, however, are not preempted because it

7656.1                                         18

sounds in contract and therefore falls within the exception of section 688.008 of the Trade Secret Act. (Pls.' Partnership Mem. at 30). As shown above, Plaintiffs have lumped their unjust enrichment and quantum meruit claims together, making it impossible to distinguish between the two. In any event, section 688.008 makes no reference to implied contracts and Plaintiffs have presented no authority that implied contracts fall within its scope. Indeed, the only case on point on this issue is Glasstech, Inc. v. TGL Tempering Systems, Inc., 50 F. Supp. 722 (N.D. Ohio 1999) which, as Plaintiffs concede, holds that quantum meruit claims are preempted. Accordingly, this Court should hold that the quantum meruit claims are preempted under the Trade Secret Act.

### 3.     Conversion Claims

The alleged converted property for which Plaintiffs are seeking damages consists of the master development budgets, which are the subject of the misappropriation claim. As such, Plaintiffs' conversion claim is preempted by the Florida Uniform Trade Secrets Act. Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 972 (N.D. Ill. 2000) (conversion claim preempted by Illinois Trade Secrets Act where physical items allegedly taken by defendant were significant only to the extent they contained confidential information); Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 132 F. Supp. 2d 643, 649 (N.D. Ill. 2001) (conversion claim preempted where plaintiff's "research and development," allegedly converted by defendant fell within the examples of trade secrets enumerated in the Illinois Trade Secrets Act).[13]

---

13.     To the extent that Plaintiffs are asserting a claim for disclosure of "confidential business information" that does not rise to the level of a trade secret, they fail to state a cognizable claim. Under Florida law, a party can use information that is not a trade secret so long as they have not entered into a nondisclosure agreement. See, e.g., Concept, Inc. v. Thermotemp, Inc., 553 So.2d 1325, 1328 (Fla. 2d DCA 1989).

7656.1                                                   19

## IV.    CONCLUSION

For all of the foregoing reasons, the Eiger Entities and Eiger Individuals  respectfully request that their motions for summary judgment be granted and that the Court grant their costs, expenses and reasonable attorney's fees.

Respectfully submitted,

Daniel F. Molony   FBN 271330
James B. Murphy, Jr.   FBN 287598
SHOOK, HARDY & BACON, L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
(813) 202-7100 / (813) 221-8837 - Facsimile

Alan Loweinsohn
Carol E. Farquhar
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road, Suite 110
Dallas, Texas 75252
(972) 713-1300 / (972) 713-1313 Facsimile
Attorneys for Eiger Fund I, L.P., Eiger, Inc.,
Eiger Partners, L.P., H.D. Associates, L.P.,
Dunes Operating Company, L.P. & 2M Dunes,
LLC & Fleet National Bank a/k/a BankBoston NA

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by facsimile transmission and by United States Mail to Gregory J. Orcutt, Esq., Bricklemyer, Smolker & Bolves, P.A., 500 E. Kennedy Blvd., Suite 200, Tampa, FL 33602 and Alan B. Gerlach, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801 this 5th day of September, 2001.

ATTORNEY

7656.1                                    20



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.,

           Plaintiffs,

                                         Case No.: 8:00-cv-1026-T-27B

v.

EIGER FUND I, L.P., et al.

           Defendants.

_____/

## LIMITED REPLY IN SUPPORT OF DEFENDANT FLEET NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

Defendant Fleet National Bank f/k/a BankBoston, N.A. ("Fleet" or "the Bank"), submits this Limited Reply in Support of its Motion for Summary Judgment against Plaintiffs Lochmere Development Group, Inc. ("Lochmere Development") and Lochmere Realty, Inc. ("Lochmere Realty") (collectively "Lochmere").

### I.    INTRODUCTION

Plaintiffs have three remaining claims against the Bank; (1) Violation of Florida's Uniform Trade Secret Act (Count XXX); (2) Conversion (Count XXXVII); and (3) Civil Conspiracy (Count XXXVIII).[1] The Bank adopts and incorporates by reference herein the arguments made by the Eiger Entities in their Limited Reply pertaining to misappropriation of

_____

1.      On August 28, 2001, the Court, pursuant to a stipulation of the parties, dismissed Plaintiffs' claim for Unjust Enrichment/Quantum Meruit against the Bank. (See Order of August 28, 2001 at ¶ 4).

7930.1

trade secrets, conversion and conspiracy. The Bank separately sets forth herein a limited reply as to certain additional arguments pertaining to the Bank.

## II.   ARGUMENT

### A.   Misappropriation of Trade Secrets

The Bank adopts and incorporates by reference herein the facts and legal arguments on Plaintiffs claim for misappropriation of trade secrets set forth in the Limited Reply of the Eiger Entities at p. 15 to 17 as if fully set forth herein. In addition, in its motion for summary judgment, the Bank argued, inter alia, that any limited use of the Master Development Budget was not improper because the Bank gained no competitive advantage against Plaintiffs by using the information.  In response, Plaintiffs do not dispute any of the Bank's facts regarding its limited use of the information voluntarily furnished by Plaintiffs or the affidavit of Robert Avil filed simultaneously with the Bank's motion for summary judgment.  (See Pls.' Trade Secret Mem. at 13-14).  Instead, Plaintiffs argue that, even if the Bank's use was proper, the Court should not enter summary judgement because the Trade Secret Act "contains alternative methods for determining whether misappropriation occurred."  (Id.)

There is a fatal flaw in Plaintiffs argument: Plaintiffs specifically alleged that the Bank had engaged in improper use of the information.  (See Second Am. Compl. at ¶ 353) ("FLEET NATIONAL BANK unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage.") As a result, Plaintiffs are barred from relying on an alternative method of showing that a misappropriation occurred.

Moreover, Plaintiffs have not alleged any facts showing that the Bank disclosed the information to anyone, or that they acquired it improperly, the two alternative methods of

7930.1                                    -2-

establishing misappropriation of a trade secret under Section 688.02 of the Trade Secret Act. Accordingly, Plaintiffs cannot show that the Bank misappropriated any trade secrets and the Bank is entitled to summary judgment on this issue.

Finally, Plaintiffs attempt to avoid the court's holding in Verango River Corp.,v. NIPSCO Indus., Inc., 1994 WL 702759, *10 (N.D. Ill. 1994) that a party cannot be held liable for misappropriation of trade secrets when the "use was not adverse to the purpose for which the information was disclosed." In a footnote, Plaintiffs attempt to divert the Court's attention from the holding of the case by stating that "it is either dicta or refers to a contract claim." (Pls.' Trade Secret Mem. at n. 3.) Plaintiffs are incorrect. The Bank's opening memorandum filed July 5 correctly references the court's holding in Verango that the plaintiffs in that case could not pursue a claim for misappropriation of trade secrets. Moreover, even if the language were dicta, this would not detract from the court's analysis of the trade secret issue or indicate such analysis was flawed. Indeed, a finding of improper use is essential to a finding of misappropriation of trade secrets. As the court properly recognized in Verango, there can be no improper use when the use is not adverse to the purpose for which the information was disclosed. Because Plaintiffs do not, and cannot, dispute that the Bank's only possible use would have been for the evaluation of the loan (the purpose for which Plaintiffs voluntarily gave it to the Bank), Plaintiffs cannot establish a misappropriation and the Bank is entitled to summary judgment on this claim.

7930.1

-3-

## B.    Conversion

The Bank adopts and incorporates by reference herein the facts and legal arguments on Plaintiffs' conversion claim set forth in the Limited Reply of the Eiger Entities at p.19 to 20 as if fully set forth herein.  In addition, in its motion for summary judgment, the Bank established that Lochmere's conversion claim was barred because the Bank returned the documentation at Lochmere's request.  In their Response, Plaintiffs do not dispute any of the facts set forth by the Bank in its memorandum or the affidavit of Robert Avil filed simultaneously therewith.  (Pls.' Trade Secret Mem. at 19).  Under Florida law, "[t]he essence of the tort of conversion is a party's refusal to surrender the property after demand has been made."  Small Business Admin. v. Echevarria, 864 F.Supp. 1254, 1262 (S. D. Fla. 1994).  Here, Plaintiffs do not controvert the Affidavit of Robert Avil, Director of the Bank, and Testimony of Nicholas Whiting, a former employee of the Bank, which establishes that: (1) Lochmere voluntarily and consensually provided the Bank with the documentation in connection with the Bank's loan evaluation process (Avil Aff., at ¶ 3); (2) after receiving Lochmere's demand for a return of the documentation, the Bank complied with this request (Id. at ¶ 6; Am. Compl. at ¶ 110); (3) after returning the requested documentation, the Bank did not make any further use of this documentation (Avil Aff. at ¶ 7); and (4) after returning the requested documentation, the Bank relied subsequently on the information provided by Eiger (Transcript of the deposition of Nicholas Whiting, filed July 5, 2001, at page 98, lines 7-14). Thus, in addition to the preemption arguments set forth at p. 19-20 in the Limited Reply of the Eiger Entities, there has been no conversion of Lochmere's documentation because the documentation was voluntarily furnished by Lochmere to the Bank, and there was no refusal to surrender the documents after demand was made.

7930.1                                    -4-

## C.    Conspiracy

It is undisputed that where no valid underlying tort claim exists, a claim of conspiracy fails as a matter of law. Thus, because the Bank is entitled to summary judgment on Plaintiffs' tort claims, it is also entitled to summary judgment on the conspiracy claim.

## III.    CONCLUSION

On the basis of the foregoing, the Bank respectfully requests that the Count enter Summary Judgment in its favor as to Counts XXX, XXXVII, and XXXVIII of Plaintiffs' Amended Complaint and that the Court award costs, expenses and reasonable attorneys' fees in the Bank's favor.

Respectfully submitted,

Daniel F. Molony, Esq.
Florida Bar No. 271330
James B. Murphy, Esq.
Florida Bar No. 287598
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
(813) 202-7100 / (813) 221-8837 - Facsimile

Alan Loeweinsolm, Esquire
Carol E. Farquhar, Esquire
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road
Suite 110
Dallas, Texas 75252
(972) 713-1300 / (972) 713-1313 Facsimile
Attorneys for Eiger Fund I, L.P., Eiger, Inc.,
Eiger Partners, L.P., H.D. Associates, L.P.,
Dunes Operating Company, L.P.,
and 2M Dunes, L.L.C., and Fleet National Bank
f/k/a BankBoston, N.A.

7930.1                               -5-

Dora Kaufman, Esquire
Florida Bar No.: 771244
Haly, Singer &Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394
(954) 967-1300 / (954) 467-1372-Facsimile
Co-Counsel for Fleet National Bank f/k/a
BankBoston, N.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by facsimile transmission and by United States Mail to Gregory J. Orcutt, Esq., Bricklemyer, Smolker & Bolves, P.A., 500 E. Kennedy Blvd., Suite 200, Tampa, FL 33602 and Alan B. Gerlach, 390 N. Orange Avenue, Suite 1100, Orlando, FL 32801 this 5th day of September, 2001.

ATTORNEY

7930.1                                              -6-