UNITED STATES DISTRICT COURT
Middle District of Florida

01 JUN 2 / AM 10: 44

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

LOCHMERE DEVELOPMENT GROUP, INC.,
and LOCHMERE REALTY, INC.,

          Plaintiffs,

vs.

CASE NO.: 8:00-CV-1026-T-27B
State Court No.: 00-02525/Div. I

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC.,a Delaware
corporation and 2M DUNES, L.L.C.,
a Texas limited liability company; EIGER
FUND 1, L.P., a Delaware limited partnership;
EIGER PARTNERS, L.P., a Delaware limited
partnership;  DAVID LANE, an individual;
BARNETT LANE INVESTMENTS, INC., a
Texas corporation; JTL CAPITAL, L.L.C., a
Texas limited liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
PAUL E. ROWSEY, III, an individual; C. TODD MILLER,
an individual; DAVID M. JACOBS, an individual;
and, WILLIAM S. BUCHANAN, an individual,

          Defendants.
_____/

**F I L E D**

Date /0 -/ 8 -0 /                    Tin

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LOCHMERE DEVELOPMENT GROUP, INC., a Florida corporation, and

LOCHMERE REALTY, INC., a Florida corporation (collectively "LOCHMERE"), sue

Defendants, H.D. ASSOCIATES, L.P., a Delaware limited partnership, by and through its

general partner, DUNES OPERATING COMPANY, L.P., a Delaware limited partnership

by an through its general partners EIGER, INC., a Delaware corporation and 2M DUNES

L.C., a Texas limited liability company; EIGER FUND 1, L.P., a Delaware limite

partnership, EIGER PARTNERS, L.P., a Delaware limited partnership; DAVID LANE, an individual; BARNETT LANE INVESTMENTS, INC., a Texas corporation; JTL CAPITAL, L.L.C., a Texas limited liability company, FLEET NATIONAL BANK, a national banking association; PAUL E. ROWSEY, III, an individual; C. TODD MILLER, an individual; DAVID M. JACOBS, an individual; and, WILLIAM S. BUCHANAN, an individual and allege as follows:

1. This is a Complaint for damages exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

2. Robert D. Evans (hereafter "Evans") is the President of Plaintiff, LOCHMERE.

3. LOCHMERE DEVELOPMENT GROUP, INC. is a Florida corporation with its principal place of business in Hillsborough County, Florida. LOCHMERE REALTY, INC. is a Florida corporation with its principal place of business in Hillsborough County, Florida.

4. H.D. ASSOCIATES, L.P., is a Delaware limited partnership with it principal place of business in Palm Coast, Florida (hereinafter "H.D. ASSOCIATES"). H.D. ASSOCIATES is the owner of a real estate project known as Hammock Dunes located in Palm Coast, Florida, (hereafter "the Project") which is the subject matter of this action.

5. DUNES OPERATING COMPANY, L.P., (hereinafter "DUNES") is a Delaware limited partnership with its principal place of business in Palm Coast, Florida, which is the general partner of H. D. ASSOCIATES.

6. EIGER, INC., is a Delaware corporation with its principal place of business in Dallas, Texas, and which is in the business of making investments in real estate and

related transactions and is a general partner of DUNES OPERATING COMPANY, L.P. and a former general partner of H.D. ASSOCIATES.

7.    2M DUNES L.L.C. (hereinafter "2M DUNES") is a Texas limited liability company with its principal place of business in Dallas, Texas, and which is in the business of making investments in real estate and related transactions and is a general partner of DUNES OPERATING COMPANY, L.P.

8.    EIGER FUND I, L.P., is a Delaware Limited Partnership which is in the business of making investments in real estate and related transactions.

9.    EIGER PARTNERS, L.P., is a Delaware Limited Partnership with its principal place of business in Dallas, Texas, and is in the business of making investments in real estate and related transactions.

10.    EIGER, INC. controls EIGER PARTNERS, L.P., and substantially all of the stock is owned by the principals of EIGER FUND I, L.P. (hereinafter, EIGER, INC., EIGER PARTNERS, L.P., and EIGER FUND 1, L.P., will be collectively referred to as "EIGER")

11.    DAVID LANE (hereinafter "LANE") is an individual with his residence in Dallas, Texas.

12.    BARNETT LANE INVESTMENTS, INC., is a Texas corporation (hereinafter "BARNETT LANE").

13.    JTL CAPITAL, L.L.C., is a Texas limited liability company (hereinafter "JTL CAPITAL"), an affiliate of LANE, and was an original general partner of H. D. ASSOCIATES, L.P.

3

14.     FLEET NATIONAL BANK f/k/a BANKBOSTON, N.A. is a national banking association (hereinafter "FLEET NATIONAL BANK").

15.     PAUL E. ROWSEY, III (hereinafter "ROWSEY"), is an individual with his residence in Texas and is a principal of EIGER, along with other principals, C. Todd Miller, David M. Jacobs, and Paul E. Rowsey.

16.     C. TODD MILLER (hereinafter "MILLER), is an individual with his residence in Texas and is a principal of EIGER, along with other principals, C. Todd Miller, David M. Jacobs, and Paul E. Rowsey.

17.     DAVID M. JACOBS ("JACOBS"), is an individual with his residence in Texas and is a principal of EIGER, along with other principals, C. Todd Miller, David M. Jacobs, and Paul E. Rowsey.

18.     WILLIAM S. BUCHANAN (hereinafter "BUCHANAN") is an individual with his residence in Texas and is a principal of EIGER, along with other principals, C. Todd Miller, David M. Jacobs, and Paul E. Rowsey.

## JURISDICTION

19.     Jurisdiction in this matter is established under Florida's Long Arm Statute, Fla. Stat. § 48.193(1)(a) because each of the Defendants operated, conducted and engaged in and carried on a business venture within this state with LOCHMERE for the sale and purchase of property located in Florida.

20.     Jurisdiction in this matter is also established under Florida's Long Arm Statute, Fla. Stat. § 48.193(1)(f) because Defendants caused injury to LOCHMERE within

4

Florida arising out of acts and omissions by Defendants residing out of the State while engaged in solicitation and business activities within the state.

## VENUE

21. Venue is proper in Hillsborough County, Florida for the following reasons:

a. Defendant EIGER, INC., is a foreign corporation doing business in this State.

b. Defendants LANE, ROWSEY, BUCHANAN, JACOBS, and MILLER are nonresident individuals.

c. The causes of action accrued in Hillsborough County because the foreign defendants failed to pay for services performed by LOCHMERE and payment for such services was to be made to LOCHMERE at LOCHMERE's resident office located in Tampa, Florida.

d. Florida Statutes § 47.051 allows venue to be brought against foreign corporations in the county where the cause of action accrued which was Hillsborough County, Florida, the situs of payment.

## ALLEGATIONS COMMON TO ALL COUNTS

22. LOCHMERE is in the business of developing, marketing, and managing real estate development projects in Florida.

23. During the fall of 1997, Gene Gorab ("Gorab") of Greenfield Partners, a Connecticut based investment company, informed LOCHMERE of an opportunity to acquire all or portions of the project known as Hammock Dunes, located in Palm Coast,

5

Florida.   Gorab suggested that LOCHMERE visit the site for further investigation. LOCHMERE discovered that the property would cost approximately $35,000,000.00 to purchase.

24.    In November 1997, Evans, as President of LOCHMERE, visited the Hammock Dunes site to obtain information on the property for potential acquisition and development efforts.

25.    On or about December 12, 1997, in Westport, Connecticut, Evans and Gorab discussed the Hammock Dunes project (hereafter "Project") with Mr. Steve Millham of Farallon Capital Management, L.L.C., of San Francisco, California ("Farallon"), which is also in the business of purchasing and developing real estate.   Evans and Millham discussed arranging a visit in early 1998 to inspect the opportunity as Farallon expressed an interest in pursuing the acquisition of Hammock Dunes in the capacity of a capital investor and needed the involvement of LOCHMERE because of its extensive Florida land development experience.

26.    On or about February 17, 1998, Millham advised LOCHMERE that Defendant, LANE of BARNETT LANE, also in the business of purchasing and developing real estate, was interested in the Project, that Farallon had an existing relationship with LANE, and that LANE had a relationship with Jim Gardner ("Gardner"), President of ITT Community Development Corporation ("ITT"), the owner of Hammock Dunes.

27.    On or about March 3, 1998, Millham contacted Evans and proposed that LOCHMERE evaluate the Project because of its knowledge of Florida land development.

6

28. On or about that time, LOCHMERE and LANE and BARNETT LANE agreed to associate for the purpose of forming a partnership and/or joint venture in order to profit from the business of finding a buyer for, and developing, marketing, and managing the Project.

29. On March 6, 1998, Millham prepared a memorandum to LANE, BARNETT LANE and LOCHMERE detailing the business association and each party's involvement in the same. As indicated by the memorandum, LOCHMERE's services were required because of its permitting and development experience in coastal Florida and because LOCHMERE's knowledge of local builders would be an asset to marketing efforts and "sales velocity." A copy of the memorandum is attached hereto and incorporated herein as Exhibit "A."

30. Since the inception of LOCHMERE's association with LANE and BARNETT LANE, they knew and agreed that LOCHMERE's continued involvement in due diligence investigations, pursuit of an equity partner and planning development, marketing and management of the Project were conditioned upon LOCHMERE being compensated for all such contributions to the association, specifically to include participation in the profits of the Project.

31. With that knowledge in hand, LANE and BARNETT LANE continued its partnership with LOCHMERE and the parties continued in cooperative efforts to acquire and develop the Project.

7

32. Beginning March 6, 1998 and thereafter, LOCHMERE, at the request of LANE and BARNETT LANE, assumed responsibility for compiling the necessary due diligence information and preparing financial projections and analyses for the Project.

33. Pursuant to LOCHMERE's agreement with LANE and BARNETT LANE, LOCHMERE assumed a broad role of planning the Project including hiring contractors to engage in due diligence exercises, hiring a law firm to assist in legal matters, hiring a design consultant, engaging the services of an engineering firm, and other tasks.

34. During April 1998 and May 1998, LOCHMERE met and negotiated with ITT representatives to discuss plans and financial projections for the Project and to negotiate major sales agreement issues.

35. On or about August 6, 1998, BARNETT LANE and ITT executed a purchase and sale agreement for the Project for a purchase price of $32,000,000.00.

36. On August 21, 1998, LOCHMERE forwarded to LANE and BARNETT LANE and Millham a confirmation letter ("First Partnership Letter") detailing the parties' negotiated structure of marketing, management and development services to be provided by LOCHMERE for the joint venture. The First Partnership Letter provided that LOCHMERE would provide LANE and Millham "specified managerial services based upon a monthly fee, in addition to all direct expenses related to such services." Also, "LOCHMERE would receive a Real Estate Brokerage commission, over and above any other brokerage fees paid to Palm Coast Realty, or outside Brokers, as compensation for [LOCHMERE's] supervision and management of the sales efforts" on the Project. The First Partnership Letter provided that the brokerage commission would be paid at the time of the

closing of the individual properties sold. Further, LOCHMERE would "participate in the profit of the venture" based upon a stair stepped hurdle rate. See Letter dated August 21, 1998 attached hereto and incorporated herein as Exhibit "B."

37.     After receipt of the First Partnership Letter, LANE and BARNETT LANE knew and agreed that LOCHMERE's continued work on the Project was conditioned upon the compensation package outlined in the preceding paragraph. LANE and BARNETT LANE continued its partnership with LOCHMERE and the parties continued in cooperative efforts to acquire the Project according to the terms of the First Partnership Letter.

38.     On September 2, 1998, LOCHMERE sent LANE and BARNETT LANE a follow up letter ("Second Partnership Letter") to the August 21, 1998 letter detailing, once again, the parties' negotiated structure of marketing, management and development services to be provided by LOCHMERE. See Letter dated September 2, 1998 attached hereto and incorporated herein as Exhibit "C."

39.     Upon receipt of the Second Partnership Letter, LANE and BARNETT LANE knew and agreed that LOCHMERE's continued work on the Project was conditioned upon receiving the compensation package as set forth in the Second Partnership Letter. LANE and BARNETT LANE continued its partnership with LOCHMERE and the parties continued in cooperative efforts to complete the Project according to the terms of the Second Partnership Letter.

40.     Between September 2, 1998 and December 15, 1998, in reliance upon LANE and BARNETT LANE's representations and assurances, LOCHMERE continued its work

9

on behalf of LANE and BARNETT LANE and the partnership to plan the development, marketing and management of the Project and to negotiate the acquisition of the Project.

41.     LOCHMERE understood that it would be compensated under the terms of the First Partnership Letter and the Second Partnership Letter.

42.     On or about December 15, 1998, Millham and Farallon Capital informed LOCHMERE that Farallon Capital was no longer in a position to proceed with the acquisition of Hammock Dunes.

43.     After Farallon's involvement ceased, LOCHMERE, LANE and BARNETT LANE continued to pursue another equity partner to further their joint partnership interests pursuant to the terms of the First and Second Partnership Letters.   Basic Capital Management, Inc. ("Basic Capital") was identified as a potential equity partner.

44.     LOCHMERE, in furtherance of its role as partner in the Project, was involved in the day-to-day negotiations with, and education of Basic Capital regarding the Project. See Letter dated March 2, 1999, attached hereto and incorporated herein as Exhibit "E."

45.     However, later that month, Basic Capital decided not to pursue the Project.

46.     After Basic Capital's involvement ceased, LOCHMERE and LANE and BARNETT LANE continued to pursue an equity partner to further their joint partnership interests and pursuant to the terms of the First and Second Partnership Letters.

47.     On March 18, 1999, LANE and BARNETT LANE sent LOCHMERE a memorandum stating "Bob, I had a great meeting today with a potential new partner." See Memorandum dated March 18, 1999 attached hereto and incorporated herein as Exhibit "D."  The potential partner was EIGER ("EIGER").

10

48.   In or about March 1999, LANE left BARNETT LANE and formed Defendant, JTL CAPITAL.

49.   In late March 1999, LANE of JTL CAPITAL, and ROWSEY of EIGER had an initial meeting to discuss their acquisition of Hammock Dunes and to discuss a potential partnership for this purpose.

50.   On March 30, 1999, LOCHMERE, LANE and JTL CAPITAL, Gardner of ITT, ROWSEY and MILLER of EIGER, also met to introduce EIGER to Gardner as a new potential equity partner in the Project.  At this meeting, the parties discussed the issue of each party's involvement in the Project.

51.   As LOCHMERE had done with the two prior potential equity partners, Farallon and Basic Capital, LOCHMERE was primarily responsible for educating EIGER regarding the Project by outlining the results of its due diligence research, its financial projections for the Project, and the business plan LOCHMERE was developing for the Project.

52.   Again, with both Partnership Letters in hand, LANE and JTL CAPITAL knew and agreed that LOCHMERE's continued work on the Project was conditioned upon receiving compensation as set forth in the letters and prior discussions.

53.   On March 31, 1999, Evans, ROWSEY, MILLER, and representatives of FLEET NATIONAL BANK, a financial lending institution which had been solicited for financing, visited the Project site, and Evans briefed them on the development opportunity, due diligence efforts to date, and the development strategy for the Project.

11

54.    On April 14, 1999, LOCHMERE forwarded to LANE another letter ("Third Partnership Letter") to reiterate the continued involvement of LOCHMERE on the Project according to the terms previously agreed to by LOCHMERE and LANE and BARNETT LANE.  A copy of the letter is attached hereto and incorporated herein as Exhibit "F."  The Third Partnership Letter also included a copy of the proposed Management, Development and Marketing Agreement and a copy of the Listing Agreement between LOCHMERE and LANE and BARNETT LANE (the "Partnership Agreement").  See Partnership Agreement attached hereto and incorporated herein as Exhibit "G."

55.    The Partnership Agreement provided the following compensation schedule for LOCHMERE:

| | |
|---|---|
| Management Fee: | $12,000 |
| Due Diligence Fee: | 1% |
| Real Estate Commission: | 4% |
| Expense Reimbursement: | 100% |
| Profit Participation: | 30% after 12% preferred return to capital and repayment of all capital and debt |

56.    On April 15, 1999, Evans reviewed the April 14, 1999 letter in detail with LANE and JTL CAPITAL at a meeting with ROWSEY and others in Dallas, Texas which was called to discuss the Project and its details.

57.    At that time, Evans confirmed with LANE and JTL CAPITAL that its continued involvement was conditioned upon LANE, JTL CAPITAL, ROWSEY, H.D. ASSOCIATES and EIGER's honoring of the Partnership Agreement and its terms.

58.    On or about this time, H.D. ASSOCIATES was formed for the purpose of purchasing and operating the Project.  JTL CAPITAL, together with EIGER, INC., were the

12

original general partners of H.D. ASSOCIATES. H.D. ASSOCIATES knew of LANE and JTL CAPITAL's Partnership Agreement with LOCHMERE.

59.     On April 22, 1999, LANE, JTL CAPITAL, H.D. ASSOCIATES and ROWSEY of EIGER, sent Gardner a letter which stated as follows: "As you know, David A. Lane has secured a new capital source, Eiger Fund I, L.P. (the "Fund") to pursue the purchase of the Project. We have also discussed that H.D. ASSOCIATES, L.P. ("Purchaser"), a limited partnership of which the Fund is the sole limited partner, and JTL Capital, L.L.C., as affiliate of David A. Lane, is a general partner, is prepared to immediately enter into an agreement for the purchase of the Project." The letter was signed by both LANE and ROWSEY and was addressed only to Gardner at ITT. Also discussed in the letter were proposed changes to a proposed Purchase Agreement between LANE, JTL CAPITAL and ITT based upon a previous purchase agreement between BARNETT LANE and Farallon as purchaser, and ITT as seller. See Letter dated April 22, 1999, attached hereto and incorporated herein as Exhibit "H."

60.     On that same date, at the specific request of ROWSEY, LANE, Evans, Steven Samaha (the attorney assisting on the Project), Gardner of ITT, Robert Cuff (attorney for ITT) and Chuck Callia (Chief Financial Officer of ITT), met at Hammock Dunes to present a proposed Purchase Agreement for the Project to ITT. At the meeting, ROWSEY, EIGER, LANE, JTL CAPITAL, and H.D. ASSOCIATES presented LOCHMERE to the ITT representatives as the Developer of the Project and requested LOCHMERE to assist in negotiating the contract.

61.    At all times, LOCHMERE continued its involvement in the Project based upon LANE, JTL CAPITAL, EIGER, and H.D. ASSOCIATES' continued assurances that it would receive compensation as set forth in the Partnership Agreement, and the First, Second, and Third Partnership letters.

62.    Throughout LOCHMERE's involvement with the Project, LOCHMERE had been collecting data from various sources, analyzing such materials, and had been assimilating the data and its analysis into a concise development plan which was ultimately encapsulated within a series of authentic spreadsheets captioned "Master Development Budget" (hereafter the "Lochmere Plan") which set forth detailed, itemized entries as a strategic plan to the Project, and which was over one (1) year in the making.  The Lochmere Plan was created solely by LOCHMERE as a result of its employee's work, creativity, inspiration and mental impressions. The Lochmere Plan contained extremely valuable, proprietary information which could not be duplicated by others without LOCHMERE's assistance.

63.    The data, information, and expertise provided by LOCHMERE as compiled in the Lochmere Plan constitute a trade secret inasmuch as the material was secret, had value, was intended for use within the confines of the Project, and it provided an advantage in the land development marketplace over those who did not know of it.

64.    On April 28, 1999, LOCHMERE, LANE, JTL CAPITAL, H.D. ASSOCIATES, EIGER, ROWSEY, and others, including Steve Kennedy of EIGER, met in Dallas, Texas. At the meeting, Evans of LOCHMERE personally presented the attendees with the Lochmere Plan dated April 26, 1999.

14

65.    EIGER, ROWSEY, LANE, JTL CAPITAL, and H.D. ASSOCIATES knew the document included secret proprietary material and in fact, the document stated, "Please Note: This Document Is The Exclusive Proprietary Property of LOCHMERE Development Group, Inc. Do Not Duplicate Or Disperse Without Prior Written Consent."

66.    The Lochmere Plan contains specific line items entitled "R.E. Commissions," "Management Services," "General & Administrative Cost Estimates--Development Office" and "Due Diligence Coordination" which are directly extracted from the Partnership Agreement by and between LOCHMERE and LANE, JTL CAPITAL, and H.D. ASSOCIATES.    The listed items could not have addressed anything other than compensation to LOCHMERE as described in the Partnership Agreement.

67.    In reviewing the Lochmere Plan with ROWSEY, Evans explained each component, and further explained how each summary item was supported by detailed supporting budgets.  Evans also specifically explained to ROWSEY how the line items related to LOCHMERE's Partnership Agreement.

68.    With full knowledge of the Partnership Agreement and compensation requirements of LOCHMERE, EIGER and its principals, LANE, JTL CAPITAL, and H.D. ASSOCIATES continued to request LOCHMERE's assistance and continued to rely on LOCHMERE's expertise and the Lochmere Plan, thereby ratifying the Partnership Agreement and its terms.

69.    Between April 1999 and May 1999, in reliance upon the belief that the terms of the Partnership Agreement would be honored, LOCHMERE continued in its work on the Project on behalf of LANE, JTL CAPITAL, H.D. ASSOCIATES and EIGER.

15

70.     On May 25, 1999, Samaha (the attorney assisting on the project) sent LOCHMERE, LANE, JTL CAPITAL, H.D. ASSOCIATES, ROWSEY of EIGER and Mark Van Kirk, attorney for EIGER, a memorandum detailing various "deal points" discussed by the parties to formulate a revised Purchase Agreement between EIGER and ITT.  Among the items listed was a revised purchase price of $25,400,000.00. See Memorandum attached hereto and incorporated herein as Exhibit "I."  LOCHMERE was instrumental in reducing the purchase price.

71.     Based on discussions with, and at the request of EIGER, on June 7, 1999, LOCHMERE forwarded to ROWSEY a revised version of The Lochmere Plan, which contained numerous refinements ("Revised Lochmere Plan") to the original April 26, 1999 version.  The Revised Lochmere Plan states on page one: "Please Note: This document is the exclusive proprietary property of Lochmere Development Group, Inc.  Do not duplicate or disperse without prior written consent."

72.     On June 8, 1999, ROWSEY sent LOCHMERE a facsimile suggesting that EIGER would hire a Chief Executive Officer to be in charge of the development of Hammock Dunes.  The letter represented that EIGER wanted to have LOCHMERE continue with primary responsibility for development but with a lower compensation package and diminished return on profits.  This letter was in stark contrast to the terms of the Partnership Agreement and which ROWSEY of EIGER had previously accepted as a condition of LOCHMERE's continued involvement in the Project and the use of LOCHMERE's trade secrets included within the Revised Lochmere Plan.  See correspondence attached hereto and incorporated herein as Exhibit "J."

16

73.    On June 9, 1999, Evans of LOCHMERE telephoned ROWSEY in response to ROWSEY's correspondence of June 8, 1999, and scheduled a meeting with ROWSEY to discuss the merits of the correspondence for the following day at 2:00 p.m. in Dallas, Texas.

74.    On June 10, 1999, at the meeting in Dallas between LOCHMERE and ROWSEY, ROWSEY stated that LANE, JTL CAPITAL, and H.D. ASSOCIATES had never discussed with ROWSEY the Partnership Agreement between LOCHMERE and LANE, BARNETT LANE, and H.D. ASSOCIATES.

75.    In response to ROWSEY's statements, Evans presented ROWSEY with the First, Second and Third Partnership Letters and the Revised Partnership Agreement, a copy of which is attached hereto as Exhibit "K."

76.    At the meeting, Evans and ROWSEY discussed the merits and structure of the compensation program. ROWSEY reaffirmed the need for LOCHMERE's continued involvement in the acquisition and development of Hammock Dunes and represented that the terms appeared reasonable but stated that he and EIGER wanted to review the documents in greater detail to determine if there were any "minor revisions" or comments and would discuss the matter with Evans the following day.

77.    LOCHMERE made it clear to ROWSEY that its involvement in the Project was solely conditioned upon receiving compensation and future profits as delineated within the Partnership Agreement. LOCHMERE made it clear that its efforts would cease if ROWSEY and EIGER failed to honor the Partnership Agreement's terms.

17

78. With full knowledge of the terms stated in the Partnership Agreement and that LOCHMERE's involvement was conditioned upon full acceptance of the same, ROWSEY, EIGER, and H.D. ASSOCIATES continued to solicit and use LOCHMERE's information and expertise to further EIGER's involvement in the Project.

79. Later on June 10, 1999, Evans and ROWSEY were joined by Kennedy to review in greater detail, the changes to the Revised Lochmere Plan.

80. On June 14, 1999, ROWSEY contacted Evans to request that Evans attend a meeting between EIGER and representatives of FLEET NATIONAL BANK, in Atlanta, Georgia to discuss FLEET NATIONAL BANK's participation in the financing of the Project. Solely induced by the belief that the terms of the Partnership Agreement continued to be acceptable, Evans agreed to meet ROWSEY and Kennedy in Atlanta the following morning.

81. On June 15, 1999, Evans led a meeting at the office of FLEET NATIONAL BANK in Atlanta, Georgia to discuss financing on the Project. In attendance were Evans, ROWSEY, Kennedy, and representatives from FLEET NATIONAL BANK.

82. At the meeting, Evans presented all attendants with the Revised Lochmere Plan prepared by LOCHMERE and spent approximately four (4) hours reviewing the complexity and thoroughness of the Revised Lochmere Plan. The representatives of FLEET NATIONAL BANK indicated that they were extremely impressed with LOCHMERE's knowledge of the Project and Florida land development in general.

18

83.    Nick Whiting, one of the representatives from FLEET NATIONAL BANK, requested that LOCHMERE e-mail the Revised Lochmere Plan to both Kennedy and Bob Avil, another representative of FLEET NATIONAL BANK.

84.    At the meeting, Evans explained the unique financial structure included in the Revised Lochmere Plan and that he had developed a simplified and innovative structure for financing which was a novel and untapped strategy in the industry.  The Revised Lochmere Plan proposed combining the required letters of credit according to the proposed Purchase Agreement and a line of credit to provide the necessary liquid security to satisfy ITT's demands.  FLEET NATIONAL BANK and Kennedy requested LOCHMERE to further edit the Revised Lochmere Plan to incorporate the implementation of this innovative letter of credit/line of credit financing vehicle recommended by LOCHMERE.

85.    As in earlier versions, this revised Lochmere Plan ["Final Lochmere Plan"] contained the following statement:   "Please Note: This document is the exclusive proprietary property of Lochmere Development Group, Inc.  Do not duplicate or disperse without prior written consent."

86.    At the meeting, Evans also described the format of the draw package prepared by LOCHMERE which included performance under the Partnership Agreement with LOCHMERE.  FLEET NATIONAL BANK requested LOCHMERE prepare the draw package as discussed and submit for its review and approval.

87.    At the meeting, FLEET NATIONAL BANK further requested that LOCHMERE coordinate with Joseph Hatzell of Joseph J. Blake and Associates, the company hired to perform an appraisal on the Project.   An appraisal was necessary before FLEET

19

NATIONAL BANK would approve the financing necessary for the Project. FLEET NATIONAL BANK asked LOCHMERE to provide copies of the due diligence research compiled by and solely in the possession of LOCHMERE and a copy of the Final Lochmere Plan to expedite the appraisal report and to secure financing more quickly.

88.    At the meeting, FLEET NATIONAL BANK also requested that LOCHMERE coordinate with Tracy Plott, Esq. of Paul Hastings Janofsky & Walker, L.L.P., in supplying copies of the due diligence research compiled by LOCHMERE to expedite Plott's review as well.

89.    At the meeting, ROWSEY reiterated to FLEET NATIONAL BANK representatives that LOCHMERE would be responsible for the development of Hammock Dunes.

90.    LOCHMERE only continued to work in furtherance of the Project in reliance upon both LANE, JTL CAPITAL, H.D. ASSOCIATES, ROWSEY and EIGER's assurances that the terms of the Partnership Agreement would be honored.

91.    LOCHMERE's involvement was instrumental in EIGER's and the Project's obtaining financing with FLEET NATIONAL BANK.

92.    On June 17, 1999, LOCHMERE forwarded two complete copies of the draft draw package to Kennedy. One copy was for FLEET NATIONAL BANK's review. The other copy was for EIGER's review. The draw package detailed LOCHMERE's performance and compensation under the proposed Purchase Agreement.

93.    On June 24, 1999, LOCHMERE compiled and forwarded three (3) volumes of due diligence and the Final Lochmere Plan to Joseph Blake & Associates.

20

94.    Until that time, LOCHMERE had been the sole custodian of all due diligence records and those records had not been provided to any of the Defendants until that time.

95.    On June 28, 1999, LOCHMERE received a request from Kennedy that he be copied on all due diligence information sent to Joseph Blake & Associates.

96.    Later that same day, obviously after receiving confirmation that the diligence documents had been sent, ROWSEY called Evans and informed LOCHMERE that contrary to prior representations, EIGER would not honor the terms of the Partnership Agreement. Instead, ROWSEY stated that EIGER would consider some form of a diminished role for LOCHMERE, along with a proposed diminished compensation. ROWSEY also informed Evans that he was not certain that EIGER would continue its pursuit of Hammock Dunes if EIGER and LOCHMERE could not reach an understanding about LOCHMERE's diminished role for a diminished compensation.

97.    On July 2, 1999, LOCHMERE requested that ROWSEY describe exactly what EIGER proposed as a diminished role and a diminished compensation for LOCHMERE. ROWSEY's description of LOCHMERE's obligations varied little from the Partnership Agreement but the compensation changed dramatically.    Specifically, ROWSEY proposed the following:

| | |
|---|---|
| Management Fee: | $12,000 per month |
| Due Diligence Fee: | 1% |
| Real Estate Commission: | 0% |
| Expense Reimbursement: | $3,000 per month |
| Profit Participation: | 7.5% after unknown preferred return to capital and repayment of all capital and debt |

98. During that conversation, ROWSEY's justification for the diminished compensation was that the investors demanded a 75% share of the profits after and in addition to the preferred return. Therefore, there was only 25% to be shared between the rest of the group. ROWSEY stated that EIGER had reached a side agreement with LANE and JTL CAPITAL for a ten percent (10%) carried interest or profit participation after the preferred return. That left fifteen percent (15%) for LOCHMERE and affiliates of H.D. ASSOCIATES.

99. Prior to that conversation, LOCHMERE had no knowledge that LANE and JTL CAPITAL had separately negotiated a side agreement with EIGER.

100. LANE and JTL CAPITAL's actions in accepting such a side agreement, favorable to its own interests but completely detrimental to LOCHMERE's interest and in complete derogation of the Partnership Agreement's terms, was a blatant breach of the longstanding partnership and the fiduciary duty owed to LOCHMERE.

101. EIGER's pursuit of such a side agreement with LANE and JTL CAPITAL was also favorable to its own interests but completely detrimental to LOCHMERE's interest and in complete derogation of the Partnership Agreement's terms. As such, EIGER also breached the Partnership Agreement which it had ratified through its actions and continued use of LOCHMERE's information and expertise to further EIGER's involvement in the Project, and also breached its own fiduciary duty owed to LOCHMERE as a partner in the joint business venture.

102. On July 12, 1999, LOCHMERE sent correspondence to ROWSEY, Joseph Blake & Associates, LANE and JTL CAPITAL demanding the return of all information

22

provided to EIGER, FLEET NATIONAL BANK, LANE, JTL CAPITAL, H.D. ASSOCIATES, and Joseph Blake & Associates, and reiterated that all information provided constituted trade secrets under Florida law.   See correspondence dated July 12, 1999 attached hereto and incorporated herein as Exhibit "L."

103.   ROWSEY responded by letter dated July 13, 1999.  In the letter, ROWSEY admitted that EIGER had used and relied upon LOCHMERE's analysis of the Project, i.e., the Lochmere Plans, to conduct due diligence and to investigate the potential investment in the Project.  However, contrary to statements and representations made during the negotiations with EIGER, and even though EIGER had been relying solely upon the proprietary information of LOCHMERE for several months in its efforts to arrange a favorable deal for itself on the Project, ROWSEY now informed LOCHMERE that the Lochmere Plans were "fatally flawed."  See correspondence dated July 13, 1999 attached hereto and incorporated herein as Exhibit "M."

104.   In the letter, ROWSEY falsely claimed that lower compensation to LOCHMERE was justified because neither LANE nor LOCHMERE was willing to work more than three (3) days a week.

105.   EIGER's July 13, 1999, letter further conflicted with ROWSEY and EIGER's earlier request that LOCHMERE continue in the same role as before but only with a lower compensation.

106.   ROWSEY's July 13, 1999, letter also failed to acknowledge the side agreement established between EIGER and LANE wherein LANE and JTL CAPITAL would receive a ten percent (10%) carried interest or profit participation after the preferred return.

23

107. Thereafter, LOCHMERE sent ROWSEY a second letter demanding the return of all Lochmere Plans which LOCHMERE had clearly labeled as secret and proprietary. See correspondence dated July 29, 1999 attached hereto and incorporated herein as Exhibit "N."

108. LOCHMERE also sent follow-up letters to Joseph Blake & Associates, LANE, JTL CAPITAL, and FLEET NATIONAL BANK.

109. The Lochmere Plans were the key to EIGER's ability to secure FLEET NATIONAL BANK's financing and ability to proceed to purchase the Project "within only a matter of weeks" because those materials, along with LOCHMERE's unique explanations, educated EIGER regarding the development potential and value of the Project. Furthermore, because ITT demanded a non-refundable deposit of $3,000,000 to induce it to sign any proposed purchase contracts, due diligence had to be completed at that time. If not for the analysis of the information gathered by LOCHMERE including the Lochmere Plans, H.D. ASSOCIATES could not have purchased the Project.

110. EIGER, ROWSEY, LANE, JTL CAPITAL, and H.D. ASSOCIATES have yet to return all of the information to LOCHMERE as requested. FLEET NATIONAL BANK returned the documents only after utilizing the materials included therein.

111. Instead, EIGER, ROWSEY, LANE, JTL CAPITAL, H.D. ASSOCIATES and FLEET NATIONAL BANK utilized the proprietary and secret Lochmere Plans and other proprietary information to conclude the purchase of the Project.

112. On or about November 30, 1999, H.D. ASSOCIATES, including EIGER, LANE, and JTL CAPITAL closed on the Project.

113.   As a result of LOCHMERE's substantial work, creativity and trade secrets, H.D. ASSOCIATES was able to acquire the Project at a price millions of dollars less than the original contract and which will allow H.D. ASSOCIATES and its affiliates to make millions of dollars in profits.

114.   As a result of their actions, the Defendants wrongfully deprived LOCHMERE DEVELOPMENT GROUP, INC. and LOCHMERE REALTY, INC. of the ability to acquire or participate in the development of the Project and receive the profits therefrom.

115.   During the course of dealing between LOCHMERE, LANE, JTL CAPITAL, H.D. ASSOCIATES and EIGER and its principals, ROWSEY, BUCHANAN, MILLER and JACOBS, LOCHMERE has received absolutely no compensation for its work spanning over 1 ½ years.

## COUNT I

### VIOLATION OF FLORIDA'S UNIFORM PARTNERSHIP ACT
### FLA. STAT. § 620 Et. Seq.
### (Wrongful Dissociation and Usurpation of Partnership Opportunity)
### (LANE and BARNETT LANE)

116.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

117.   This is an action for a violation of Florida Statutes § 620, et. seq (Revised Uniform Partnership Act) and related common law exceeding $15,000.00 exclusive of interest, costs, and attorneys fees.

118.   LOCHMERE, LANE, and BARNETT LANE were partners.

119.   LOCHMERE entered into a valid and enforceable Partnership Agreement with LANE and BARNETT LANE.

25

120.   In furtherance of the partnership and Partnership Agreement, LOCHMERE contributed money to the partnership and invested time and effort on due diligence issues, arranged for the hiring of and contact with third parties who provided services for the furtherance of the partnership including, but not limited to, engineers, attorneys, and appraisers, and also played a very active role in the contract negotiation process with all the parties solicited as potential partners in the Project including Farallon, Basic Capital, and EIGER.  Further, LOCHMERE prepared extensive budgetary analyses to be used in the negotiating process, negotiated directly with ITT as part of the acquisition group, negotiated directly with FLEET NATIONAL BANK as a "borrower" to secure financing for the Project, and was the sole reason that EIGER was able to purchase the Project and the justification for payment of the non-refundable deposit of $3,000,000.

121.   LOCHMERE's sole inducement to form a partnership with LANE and BARNETT LANE was that LOCHMERE would receive the compensation described in the Partnership Agreement, including future profits as a result of its work on the Project.

122.   LANE and BARNETT LANE had fiduciary duties to LOCHMERE to refrain from conduct adverse to the partnership.

123.   LANE and BARNETT LANE had fiduciary duties to LOCHMERE to refrain from engaging in grossly negligent, reckless, intentional misconduct, or a knowing violation of the law.

124.   LANE and BARNETT LANE wrongfully dissociated from the partnership.

125.   LANE and BARNETT LANE wrongfully usurped the partnership opportunity that they and LOCHMERE had with EIGER and ITT.

26

126.   LANE and BARNETT LANE wrongfully used and allowed EIGER, ROWSEY and others to use the trade secrets to close the purchase of the Project while knowing that they had no intention of honoring the Partnership Agreement with LOCHMERE.

127.   As a proximate result of LANE and BARNETT LANE's actions and inaction, LOCHMERE has suffered damages including damage to its reputation in the Florida development community.

128.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived.

WHEREFORE, LOCHMERE demands judgment against LANE and BARNETT LANE for damages resulting from their wrongful dissociation from the partnership and usurpation of the parties' partnership opportunity including, but not limited to, lost future profits, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT II

### VIOLATION OF FLORIDA'S UNIFORM PARTNERSHIP ACT
### FLA. STAT. § 620 Et. Seq.
### (Wrongful Dissociation and Usurpation of Partnership Opportunity)
### (LANE AND JTL CAPITAL)

129.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

130.   This is an action for a violation of Florida Statutes § 620, et. seq (Revised Uniform Partnership Act) and related common law exceeding $15,000.00 exclusive of interest, costs, and attorneys fees.

131.   LOCHMERE, LANE and JTL CAPITAL were partners.

132.   LOCHMERE entered into a valid and enforceable Partnership Agreement with LANE and JTL CAPITAL.

133.   In furtherance of the Partnership Agreement, LOCHMERE contributed money to the partnership and invested time and effort on due diligence issues, arranged for the hiring of and contact with third parties who provided services for the furtherance of the partnership including, but not limited to, engineers, attorneys, and appraisers, and also played a very active role in the contract negotiation process with all the parties solicited as potential partners of the Project including Farallon, Basic Capital, and EIGER. Further, LOCHMERE prepared extensive budgetary analyses to be used in the negotiating process, negotiated directly with ITT as part of the acquisition group, negotiated directly with FLEET NATIONAL BANK as a "borrower" to secure financing for the Project, and was the sole reason that EIGER was able to purchase the Project and the justification for payment of the non-refundable deposit of $3,000,000.

134.   LOCHMERE's sole inducement to form a partnership with LANE and JTL CAPITAL was that LOCHMERE would receive the compensation described in the Partnership Agreement, including future profits as a result of its work on the Project.

135.   LANE and JTL CAPITAL had fiduciary duties to LOCHMERE to refrain from conduct adverse to the partnership.

136.   LANE and JTL CAPITAL had fiduciary duties to LOCHMERE to refrain from engaging in grossly negligent, reckless, intentional misconduct, or a knowing violation of the law.

137.   LANE and JTL CAPITAL wrongfully dissociated from the partnership.

28

138.   LANE and JTL CAPITAL wrongfully usurped the partnership opportunity that they and LOCHMERE had with EIGER and ITT.

139.   LANE and JTL CAPITAL wrongfully used and allowed EIGER and ROWSEY and others to use the trade secrets to close the purchase of the Project knowing that they had no intention of honoring the Partnership Agreement with LOCHMERE.

140.   As a proximate result of LANE and JTL CAPITAL's actions and inaction, LOCHMERE has suffered damages, including damage to its reputation in the Florida development community.

141.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by LANE and JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against LANE and JTL CAPITAL for damages resulting from their wrongful dissociation from the partnership and usurpation of the parties' partnership opportunity including, but not limited to, lost future profits, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT III

### VIOLATION OF FLORIDA'S UNIFORM PARTNERSHIP ACT
### FLA. STAT. § 620 Et. Seq.
### (Wrongful Dissociation and Usurpation of Partnership Opportunity)
### (EIGER & H.D. ASSOCIATES BY AND THROUGH ITS
### GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES)

142.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

143.    This is an action for a violation of Florida Statutes §620, et. seq. (Revised Uniform Partnership Act) and the related common law exceeding $15,000.00 excluding pre and post judgment interest, costs and attorneys' fees.

144.    LOCHMERE, EIGER, and H.D. ASSOCIATES were partners.

145.    LOCHMERE entered into a valid and enforceable Partnership Agreement with EIGER and/or H.D. ASSOCIATES.

146.    In furtherance of the partnership and Partnership Agreement, LOCHMERE contributed money to the partnership and invested time and effort on due diligence issues, arranged for the hiring of and contact with third parties who provided services for the furtherance of the partnership including, but not limited to, engineers, attorneys, and appraisers, and also played a very active role in the contract negotiation process with all the parties solicited as potential partners in the Project including Farallon, Basic Capital, and EIGER.  Further, LOCHMERE prepared extensive budgetary analyses to be used in the negotiating process, negotiated directly with ITT as part of the acquisition group, negotiated directly with FLEET NATIONAL BANK as a "borrower" to secure financing for the Project, and was the sole reason that EIGER was able to purchase the Project and the justification for payment of the non-refundable deposit of $3,000,000.

147.    LOCHMERE's sole inducement to form a partnership with EIGER and/or H.D. ASSOCIATES was that LOCHMERE would receive the compensation described in the Partnership Agreement, including future profits as a result of its work on the Project.

148.    EIGER and H.D. ASSOCIATES had a fiduciary duty to LOCHMERE to refrain from conduct adverse to the partnership.

149.   EIGER and H.D. ASSOCIATES had a fiduciary duty to LOCHMERE to refrain from engaging in grossly negligent, reckless, intentional misconduct, or a knowing violation of the law.

150.   EIGER and H.D. ASSOCIATES wrongfully dissociated from the partnership.

151.   EIGER and H.D. ASSOCIATES wrongfully usurped the partnership opportunity that all of the partners had with ITT.

152.   EIGER and H.D. ASSOCIATES wrongfully used and allowed third parties to use trade secrets created by LOCHMERE to close the purchase of the Project while knowing that EIGER had no intention of honoring the Partnership Agreement.

153.   As a proximate result of EIGER's and H.D. ASSOCIATES' actions and inactions, LOCHMERE has suffered damages, including damage to his reputation in the Florida development community as a proximate result of EIGER's and H.D. ASSOCIATES' wrongful dissociation and usurpation of the partnership opportunity they had with ITT.

WHEREFORE, LOCHMERE demands judgment against EIGER, H.D. ASSOCIATES, DUNES, EIGER, INC. and 2M DUNES for damages resulting from their wrongful dissociation from the partnership and usurpation of the parties' partnership opportunity including, but not limited to, lost future profits, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT IV

**VIOLATION OF FLORIDA'S UNIFORM PARTNERSHIP ACT**
**FLA. STAT. § 620 Et. Seq.**
**(Wrongful Dissociation and Usurpation of Partnership Opportunity)**
**(ROWSEY, BUCHANAN, MILLER AND JACOBS)**

154. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

155. This is an action for a violation of Florida Statutes § 620, et. seq (Revised Uniform Partnership Act) and related common law exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

156. ROWSEY, BUCHANAN, MILLER and JACOBS are the principals of EIGER.

157. LOCHMERE and ROWSEY, BUCHANAN, MILLER, and JACOBS were partners.

158. LOCHMERE entered into a valid and enforceable Partnership Agreement with ROWSEY, BUCHANAN, MILLER and JACOBS.

159. ROWSEY, BUCHANAN, MILLER, and JACOBS had fiduciary duties to LOCHMERE to refrain from conduct adverse to the partnership.

160. ROWSEY, BUCHANAN, MILLER, and JACOBS had fiduciary duties to LOCHMERE to refrain from engaging in grossly negligent, reckless, intentional misconduct, or a knowing violation of the law.

161. ROWSEY, BUCHANAN, MILLER, JACOBS wrongfully dissociated from the partnership.

162. ROWSEY, BUCHANAN, MILLER, and JACOBS wrongfully usurped the partnership opportunity that all of the partners had with ITT.

163. ROWSEY, BUCHANAN, MILLER, and JACOBS wrongfully used and allowed third parties to use the trade secrets created by LOCHMERE to close the purchase of the Project even though they had no intention of honoring the Partnership Agreement.

164.   As a proximate result of ROWSEY, BUCHANAN, MILLER, and JACOBS' inactions, LOCHMERE has suffered damages, including damage to his reputation in the Florida development community.

165.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, BUCHANAN, MILLER, and JACOBS for damages resulting from its wrongful dissociation from the partnership and usurpation of the parties' partnership opportunity including lost future profits, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT V

### INTENTIONAL FRAUD (LANE)

166.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

167.   This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

168.   During LANE and LOCHMERE's partnership to develop the Project, LANE made repeated false representations of fact regarding the compensation which LOCHMERE would receive upon closing of the sale, purchase and development of the Project.

169.   LANE made these false representations of fact knowing that such statements were false.

33

170.    LANE made these false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project. At all times relevant to this dispute, LANE knew that he would not honor those representations.

171.    LOCHMERE relied to its detriment upon LANE's representations and continued to work to complete the Project.

172.    LOCHMERE has been economically damaged as a result of LANE's intentional misrepresentations.

173.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against LANE for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT VI

## INTENTIONAL FRAUD (BARNETT LANE)

174.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

175.    This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

176.    During BARNETT LANE and LOCHMERE's partnership to develop the Project, BARNETT LANE made repeated false representations of fact regarding the

34

compensation which LOCHMERE would receive upon closing of the sale, purchase and development of the Project.

177.   BARNETT LANE made these false representations of fact knowing that such statements were false.

178.   BARNETT LANE made these false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project.  At all times relevant to this dispute, BARNETT LANE knew that it would not honor those representations.

179.   LOCHMERE relied to its detriment upon BARNETT LANE's representations and continued to work to complete the Project.

180.   LOCHMERE has been economically damaged as a result of BARNETT LANE's intentional misrepresentations.

181.   All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against BARNETT LANE for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT VII

## INTENTIONAL FRAUD (JTL CAPITAL)

182.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

183.    This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

184.    During JTL CAPITAL and LOCHMERE's partnership to develop the Project, JTL CAPITAL made repeated false representations of fact regarding the compensation which LOCHMERE would receive upon closing of the sale, purchase and development of the Project.

185.    JTL CAPITAL made these false representations of fact knowing that such statements were false.

186.    JTL CAPITAL made these false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project.  At all times relevant to this dispute, JTL CAPITAL knew that it would not honor those representations.

187.    LOCHMERE relied to its detriment upon JTL CAPITAL's representations and continued to work to complete the Project.

188.    LOCHMERE has been economically damaged as a result of JTL CAPITAL's intentional misrepresentations.

189.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against JTL CAPITAL for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT VIII

### INTENTIONAL FRAUD (H.D. ASSOCIATES BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES)

190.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

191.    This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

192.    During H. D. ASSOCIATES and LOCHMERE's partnership to develop the Project, H.D. ASSOCIATES made repeated false representations of fact regarding the compensation which LOCHMERE would receive upon closing of the sale, purchase and development of the Project.

193.    H.D. ASSOCIATES made these false representations of fact knowing that such statements were false.

194.    H.D. ASSOCIATES made these false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project.  At all times relevant to this dispute, H.D. ASSOCIATES knew that it would not honor those representations.

195.    LOCHMERE relied to its detriment upon H.D. ASSOCIATES' representations and continued to work to complete the Project.

196.    LOCHMERE has been economically damaged as a result of H.D. ASSOCIATES' intentional misrepresentations.

197.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

37

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, DUNES, EIGER, INC. and 2M DUNES for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT IX

## INTENTIONAL FRAUD (EIGER)

198.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

199.    This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

200.    EIGER made these false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project.

201.    At all times relevant to this dispute, EIGER knew that it would not honor those representations.

202.    LOCHMERE relied to his detriment upon EIGER's representations, continued to work on the Project and gave EIGER the Lochmere Plans in sole reliance upon those representations.

203.    LOCHMERE has been damaged as a result of EIGER's intentional misrepresentations.

204.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

38

WHEREFORE, LOCHMERE demands judgment against EIGER for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT X

## INTENTIONAL FRAUD (ROWSEY, JACOBS, MILLER AND BUCHANAN)

205. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

206. This is an action for intentional fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

207. ROWSEY, JACOBS, MILLER and BUCHANAN are principals of EIGER.

208. ROWSEY, JACOBS, MILLER and BUCHANAN made repeated false representations of fact for the purpose of inducing LOCHMERE to continue its work on the Project.

209. At all times relevant to this dispute, ROWSEY, JACOBS, MILLER and BUCHANAN knew that they would not honor those representations.

210. LOCHMERE relied to its detriment upon ROWSEY, JACOBS, MILLER and BUCHANAN's representations, continued to work on the Project, and gave EIGER the Lochmere Plans in sole reliance upon those representations.

211. LOCHMERE has been damaged as a result of ROWSEY, JACOBS, MILLER and BUCHANAN's intentional misrepresentations.

212.   All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, JACOBS, MILLER and BUCHANAN, jointly and severally, for damages resulting from intentional fraud including compensatory damages, punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XI

## CONSTRUCTIVE FRAUD (LANE)

213.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

214.   This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

215.   LOCHMERE and LANE agreed to work together to purchase and develop the Project.  During the partnership, LOCHMERE developed confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project and financially profiting from the deal.

216.   LOCHMERE fulfilled all of its duties.

217.   LANE owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

40

218. LANE abused and breached the confidential and fiduciary relationship created by the partnership between LANE and LOCHMERE.

219. LOCHMERE has been economically damaged as a result of LANE's wrongful actions.

220. All conditions precedent to the bringing of this action have occurred or have been waived by LANE.

WHEREFORE, LOCHMERE demands judgment against LANE for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XII

### CONSTRUCTIVE FRAUD (BARNETT LANE)

221. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

222. This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

223. LOCHMERE and BARNETT LANE agreed to work together to purchase and develop the Project. During the partnership, LOCHMERE developed confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project and financially profiting from the deal.

224. LOCHMERE fulfilled all of its duties.

225.    BARNETT LANE owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

226.    BARNETT LANE abused and breached the confidential and fiduciary relationship created by the partnership between BARNETT LANE and LOCHMERE.

227.    LOCHMERE has been extensively economically damaged as a result of BARNETT LANE's wrongful actions.

228.    All conditions precedent to the bringing of this action have occurred or have been waived by BARNETT LANE.

WHEREFORE, LOCHMERE demands judgment against BARNETT LANE for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XIII

### CONSTRUCTIVE FRAUD (JTL CAPITAL)

229.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

230.    This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

231.    LOCHMERE and JTL CAPITAL where they agreed to work together to purchase and develop the Project.    During the partnership, LOCHMERE developed

42

confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project and financially profiting from the deal.

232.    LOCHMERE fulfilled all of its duties required under the Partnership Agreement.

233.    JTL CAPITAL owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

234.    JTL CAPITAL abused and breached the confidential and fiduciary relationship created by the partnership between JTL CAPITAL and LOCHMERE.

235.    LOCHMERE has been extensively economically damaged as a result of JTL CAPITAL's wrongful actions.

236.    All conditions precedent to the bringing of this action have occurred or have been waived by JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against JTL CAPITAL for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XIV

### CONSTRUCTIVE FRAUD
### (H.D. ASSOCIATES BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES)

237.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

43

238.    This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

239.    LOCHMERE and H.D. ASSOCIATES agreed to work together to purchase and develop the Project.    During the partnership, LOCHMERE developed confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project and financially profiting from the deal.

240.    LOCHMERE fulfilled all of its duties.

241.    H.D. ASSOCIATES owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

242.    H.D. ASSOCIATES abused and breached the confidential and fiduciary relationship created by the partnership between H.D. ASSOCIATES and LOCHMERE.

243.    LOCHMERE has been extensively economically damaged as a result of H.D. ASSOCIATES' wrongful actions.

244.    All conditions precedent to the bringing of this action have occurred or have been waived by H.D. ASSOCIATES.

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, DUNES, EIGER, INC. and 2M DUNES for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

**COUNT XV**

## CONSTRUCTIVE FRAUD (EIGER)

245.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

246.    This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

247.    LOCHMERE and EIGER agreed to work together to purchase and develop the Project.  During the partnership, LOCHMERE developed confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project.

248.    LOCHMERE fulfilled all of its duties.

249.    EIGER owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

250.    EIGER knew that LOCHMERE's continued involvement in the Project was dependent upon the terms of the partnership and Partnership Agreement.

251.    EIGER knew that LOCHMERE was the sole custodian of confidential and proprietary information which was necessary to the Project.  EIGER owed a duty to LOCHMERE not to take unconscionable advantage by obtaining LOCHMERE's confidential information for its own financial gain.

252.    EIGER abused and breached the confidential relationship and took improper advantage of its relationship with LOCHMERE.

45

253.    LOCHMERE has been extensively economically damaged as a result of EIGER's wrongful actions.

254.    All conditions precedent to the bringing of this action have occurred or have been waived by EIGER.

WHEREFORE, LOCHMERE demands judgment against EIGER for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XVI

### CONSTRUCTIVE FRAUD (ROWSEY, JACOBS, MILLER AND BUCHANAN)

255.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

256.    This is an action for constructive fraud exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

257.    LOCHMERE and ROWSEY, JACOBS, MILLER and BUCHANAN agreed to work together to obtain and develop the Project.   During the partnership, LOCHMERE developed confidential information and data for the sole purpose of furthering the goal of obtaining and developing the Project.

258.    LOCHMERE fulfilled all of its duties required.

259.    ROWSEY, JACOBS, MILLER and BUCHANAN owed a fiduciary duty to LOCHMERE to refrain from acting to the detriment of the partnership and to keep secret all confidential information created during the partnership.

46

260.   ROWSEY, JACOBS, MILLER and BUCHANAN knew that LOCHMERE's continued involvement in the Project was dependent upon the terms of the partnership and Partnership Agreement.

261.   ROWSEY, JACOBS, MILLER and BUCHANAN knew that LOCHMERE was the sole custodian of confidential and proprietary information which was necessary to the purchase and development of the Project.  ROWSEY, JACOBS, MILLER and BUCHANAN owed a duty to LOCHMERE not to take unconscionable advantage by obtaining LOCHMERE's confidential information for their own financial gain.

262.   ROWSEY, JACOBS, MILLER and BUCHANAN abused and breached the confidential relationship and took improper advantage of their relationship.

263.   LOCHMERE has been economically damaged as a result of ROWSEY, JACOBS, MILLER and BUCHANAN's wrongful actions.

264.   All conditions precedent to the bringing of this action have occurred or have been waived.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, JACOBS, MILLER and BUCHANAN for damages resulting from constructive fraud including compensatory and punitive damages, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

**COUNT XVII**

**UNJUST ENRICHMENT**
**QUANTUM MERUIT AND UNJUST ENRICHMENT**
**(LANE)**

47

265.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

266.    This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

267.    LOCHMERE has conferred a benefit upon LANE by providing to LANE its substantial skills, creativity and proprietary information without compensation.

268.    LANE has been further unjustly enriched because LANE has obtained and is currently using information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and is benefiting financially in the marketplace at the financial expense of LOCHMERE.

269.    LANE would be unjustly enriched and it would be inequitable for LANE to retain the benefit conferred upon him by LOCHMERE without paying LOCHMERE.

270.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against LANE for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

**COUNT XVIII**

**UNJUST ENRICHMENT**
**QUANTUM MERUIT AND UNJUST ENRICHMENT**
**(BARNETT LANE)**

271.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

48

272. This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

273. LOCHMERE has conferred a benefit upon BARNETT LANE by providing to BARNETT LANE its substantial skills, creativity and proprietary information without compensation.

274. BARNETT LANE would be unjustly enriched and it would be inequitable for BARNETT LANE to retain the benefit conferred upon it by LOCHMERE without paying LOCHMERE.

275. All conditions precedent to the bringing of this action have occurred or have been waived by BARNETT LANE.

WHEREFORE, LOCHMERE demands judgment against BARNETT LANE for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XIX

### UNJUST ENRICHMENT
### QUANTUM MERUIT AND UNJUST ENRICHMENT
### (JTL CAPITAL)

276. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

277. This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

278. LOCHMERE has conferred a benefit upon JTL CAPITAL by providing to JTL CAPITAL its substantial skills, creativity and proprietary information without compensation.

49

279.    JTL CAPITAL has been further unjustly enriched because JTL CAPITAL has obtained and is currently using information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and is benefiting financially in the marketplace at the financial expense of LOCHMERE.

280.    JTL CAPITAL would be unjustly enriched and it would be inequitable for JTL CAPITAL to retain the benefit conferred upon them by LOCHMERE without paying value thereof to LOCHMERE.

281.    All conditions precedent to the bringing of this action have occurred or have been waived by JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against JTL CAPITAL for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XX

### UNJUST ENRICHMENT
### QUANTUM MERUIT AND UNJUST ENRICHMENT
### (H.D. ASSOCIATES BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES)

282.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

283.    This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

284.    LOCHMERE has conferred a benefit upon H.D. ASSOCIATES by providing H.D. ASSOCIATES its substantial skills, creativity and proprietary information without compensation.

50

285.    H.D. ASSOCIATES has been further unjustly enriched because H.D. ASSOCIATES has obtained and is currently using information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and is benefiting financially in the marketplace at the financial expense of LOCHMERE.

286.    H.D. ASSOCIATES would be unjustly enriched and it would be inequitable for H.D. ASSOCIATES to retain the benefit conferred upon them by LOCHMERE without paying value thereof to LOCHMERE.

287.    All conditions precedent to the bringing of this action have occurred or have been waived by H.D. ASSOCIATES.

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, DUNES, EIGER INC. and 2M DUNES for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXI

### UNJUST ENRICHMENT
### QUANTUM MERUIT AND UNJUST ENRICHMENT
### (EIGER)

288.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

289.    This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

290.    LOCHMERE has conferred a benefit upon EIGER by providing to EIGER its substantial skills, creativity and proprietary information without compensation.

291.    EIGER has been further unjustly enriched because EIGER has obtained and is currently using information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and is benefiting financially in the marketplace at the financial expense of LOCHMERE.

292.    EIGER would be unjustly enriched and it would be inequitable for EIGER to retain the benefit conferred upon it by LOCHMERE without paying LOCHMERE.

293.    All conditions precedent to the bringing of this action have occurred or have been waived by Defendants.

WHEREFORE, LOCHMERE demands judgment against EIGER for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXII

### UNJUST ENRICHMENT
### QUANTUM MERUIT AND UNJUST ENRICHMENT
### (ROWSEY, JACOBS, MILLER AND BUCHANAN)

294.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

295.    This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

296.    ROWSEY, JACOBS, MILLER and BUCHANAN are principals of EIGER.

297.    LOCHMERE has conferred a benefit upon ROWSEY, JACOBS, MILLER and BUCHANAN by providing them with its substantial skills, creativity and proprietary information without compensation.

298.   ROWSEY, JACOBS, MILLER and BUCHANAN have been further unjustly enriched because ROWSEY, JACOBS, MILLER and BUCHANAN have obtained and are currently using information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and are benefiting financially in the marketplace at the financial expense of LOCHMERE.

299.   ROWSEY, JACOBS, MILLER and BUCHANAN would be unjustly enriched and it would be inequitable for ROWSEY, JACOBS, MILLER and BUCHANAN to retain the benefit conferred upon them by LOCHMERE without paying LOCHMERE.

300.   All conditions precedent to the bringing of this action have occurred or have been waived by ROWSEY, JACOBS, MILLER and BUCHANAN.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, JACOBS, MILLER and BUCHANAN for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXIII

### UNJUST ENRICHMENT
### QUANTUM MERUIT AND UNJUST ENRICHMENT
### (FLEET NATIONAL BANK)

301.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

302.   This is an action for quantum meruit exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

53

303. LOCHMERE has conferred a benefit upon FLEET NATIONAL BANK by providing to FLEET NATIONAL BANK its substantial skills, creativity and proprietary information without compensation.

304. FLEET NATIONAL BANK has been further unjustly enriched because FLEET NATIONAL BANK obtained and used information and data collected by LOCHMERE for use in the Project in violation of Florida's Trade Secret's Act, and is benefiting financially in the marketplace at the financial expense of LOCHMERE.

305. FLEET NATIONAL BANK would be unjustly enriched and it would be inequitable for FLEET NATIONAL BANK to retain the benefit conferred upon them by LOCHMERE without paying LOCHMERE.

306. All conditions precedent to the bringing of this action have occurred or have been waived.

WHEREFORE, LOCHMERE demands judgment against FLEET NATIONAL BANK for damages resulting from unjust enrichment, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXIV

### VIOLATION OF FLORIDA'S UNIFORM
### TRADE SECRETS ACT (LANE)

307. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

308. This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

54

309.    The data, information, and expertise provided by LOCHMERE to LANE including the Lochmere Plans, constitute trade secrets.

310.    LANE knew the material contained trade secrets.

311.    LANE unlawfully misappropriated the items designated as trade secrets to his own use and to gain an economic advantage.

312.    LOCHMERE has been economically damaged by LANE's wrongful use of LOCHMERE's trade secrets.

313.    All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by LANE.

WHEREFORE, LOCHMERE demands judgment against LANE for damages resulting from Defendant's violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXV

### VIOLATION OF FLORIDA'S UNIFORM
### TRADE SECRETS ACT (BARNETT LANE)

314.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

315.    This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

316.    The data, information, and expertise provided by LOCHMERE to BARNETT LANE, including the Lochmere Plans, constitute trade secrets.

55

317.   BARNETT LANE knew the material contained trade secrets.

318.   BARNETT LANE unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage.

319.   LOCHMERE has been economically damaged by BARNETT LANE's wrongful use of LOCHMERE's trade secrets.

320.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by BARNETT LANE.

WHEREFORE, LOCHMERE demands judgment against BARNETT LANE for damages resulting from Defendant's violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXVI

### VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT (JTL CAPITAL)

321.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

322.   This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

323.   The data, information, and expertise provided by LOCHMERE to JTL CAPITAL, including the Lochmere Plans constitutes trade secrets.

324.   JTL CAPITAL knew the material contained trade secrets.

56

325.   JTL CAPITAL unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage that it would not have had but for use of LOCHMERE's Lochmere Plans.

326.   LOCHMERE has been economically damaged by JTL CAPITAL's wrongful use of LOCHMERE's trade secrets.

327.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against JTL CAPITAL for damages resulting from violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXVII

### VIOLATION OF FLORIDA'S UNIFORM
### TRADE SECRETS ACT (H.D. ASSOCIATES BY AND THROUGH ITS GENERAL
### PARTNERS, DUNES, EIGER, INC. AND 2M DUNES

328.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

329.   This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

330.   The data, information, and expertise provided by LOCHMERE to H.D. ASSOCIATES, including the Lochmere Plans constitutes trade secrets.

331.   H.D. ASSOCIATES knew the material contained trade secrets.

57

332.   H.D. ASSOCIATES unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage.

333.   LOCHMERE has been economically damaged by H.D. ASSOCIATES' wrongful use of LOCHMERE's trade secrets.

334.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by H.D. ASSOCIATES.

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, DUNES, EIGER, INC. and 2M DUNES for damages resulting from violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXVIII

### VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT (EIGER)

335.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

336.   This is an action for violation of Florida's Uniform Trade Secret's Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

337.   The data, information, and expertise provided by LOCHMERE to EIGER, including the Lochmere Plans constitutes trade secrets.

338.   EIGER knew the material contained trade secrets.

339.   EIGER unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage.

58

340.    LOCHMERE has been economically damaged by EIGER's wrongful use of LOCHMERE's trade secrets.

341.    All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by EIGER.

WHEREFORE, LOCHMERE demands judgment against EIGER for damages resulting from violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXIX

### VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT (ROWSEY, JACOBS, MILLER AND BUCHANAN)

342.    LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

343.    This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

344.    The data, information, and expertise provided by LOCHMERE to ROWSEY, JACOBS, MILLER and BUCHANAN, including the Lochmere Plans, constitutes trade secrets.

345.    ROWSEY, JACOBS, MILLER and BUCHANAN knew the material contained trade secrets.

346.   ROWSEY, JACOBS, MILLER and BUCHANAN unlawfully misappropriated the items designated as trade secrets to their own use and to gain an economic advantage.

347.   LOCHMERE has been economically damaged by ROWSEY, JACOBS, MILLER and BUCHANAN's wrongful use of LOCHMERE's trade secrets.

348.   All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, JACOBS, MILLER and BUCHANAN, jointly and severally, for damages resulting from violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXX

### VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT (FLEET NATIONAL BANK)

349.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

350.   This is an action for violation of Florida's Uniform Trade Secrets Act, Fla. Stat § 688.03, exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys fees.

351.   The data, information, and expertise provided by LOCHMERE to FLEET NATIONAL BANK, including the Lochmere Plans constitutes trade secrets.

352.   FLEET NATIONAL BANK knew the material contained trade secrets.

60

353. FLEET NATIONAL BANK unlawfully misappropriated the items designated as trade secrets to its own use and to gain an economic advantage.

354. LOCHMERE has been economically damaged by FLEET NATIONAL BANK's wrongful use of LOCHMERE's trade secrets.

355. All conditions precedent to LOCHMERE's right to bring this action have been met or have been waived by FLEET NATIONAL BANK.

WHEREFORE, LOCHMERE demands judgment against FLEET NATIONAL BANK for damages resulting from violation of the Florida Trade Secrets Act, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXI

## CONVERSION (LANE)

356. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

357. This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

358. Starting in late 1997, LOCHMERE compiled information and data for the acquisition, development and marketing of the Project.

359. LANE knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

360. LANE also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon LANE's acknowledgment that LOCHMERE would be compensated.

61

361. LANE wrongfully induced LOCHMERE to disclose the trade secrets.

362. LOCHMERE would not have forwarded LANE the information and trade secrets had it known that it would not be compensated therefor.

363. LANE took LOCHMERE's information and trade secrets and used it for its own benefit.

364. LOCHMERE has been economically damaged as result of LANE's actions.

365. All conditions precedent to the bringing of this action have occurred or have been waived by LANE.

WHEREFORE, LOCHMERE demands judgment against LANE for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXII

## CONVERSION (BARNETT LANE)

366. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

367. This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

368. Starting in late 1997, LOCHMERE compiled information and data for the acquisition, development and marketing of the Project.

369. BARNETT LANE knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

370.  BARNETT LANE also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon BARNETT LANE's acknowledgment that LOCHMERE would be compensated.

371.  BARNETT LANE wrongfully induced LOCHMERE to disclose the trade secrets.

372.  LOCHMERE would not have forwarded BARNETT LANE the information and trade secrets had it known that it would not be compensated therefor.

373.  BARNETT LANE took LOCHMERE's information and trade secrets and used it for its own benefit.

374.  LOCHMERE has been economically damaged as result of BARNETT LANE's actions.

375.  All conditions precedent to the bringing of this action have occurred or have been waived by BARNETT LANE.

WHEREFORE, LOCHMERE demands judgment against BARNETT LANE for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXIII

### CONVERSION (JTL CAPITAL)

376.  LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

377.  This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

63

378.    Starting in late 1997, LOCHMERE had compiled information and data for the acquisition, development and marketing of the Project.

379.    JTL CAPITAL knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

380.    JTL CAPITAL also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon JTL CAPITAL's acknowledgment that LOCHMERE would be compensated.

381.    JTL CAPITAL wrongfully induced LOCHMERE to disclose the trade secrets.

382.    LOCHMERE would not have forwarded JTL CAPITAL the information and trade secrets had it known that it would not be compensated therefor.

383.    JTL CAPITAL took LOCHMERE's information and trade secrets and used it for its own benefit.

384.    LOCHMERE has been economically damaged as result of JTL CAPITAL's actions.

385.    All conditions precedent to the bringing of this action have occurred or have been waived by JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against JTL CAPITAL for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXIV

### CONVERSION (H.D. ASSOCIATES BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES

386. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

387. This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

388. Starting in late 1997, LOCHMERE had compiled information and data for the acquisition, development and marketing of the Project.

389. H.D. ASSOCIATES knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

390. H.D. ASSOCIATES also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon H.D. ASSOCIATES' acknowledgment that LOCHMERE would be compensated.

391. H.D. ASSOCIATES wrongfully induced LOCHMERE to disclose the trade secrets.

392. LOCHMERE would not have forwarded H.D. ASSOCIATES the information and trade secrets had it known that it would not be compensated therefor.

393. H.D. ASSOCIATES took LOCHMERE's information and trade secrets and used it for its own benefit.

394. LOCHMERE has been economically damaged as result of H.D. ASSOCIATES' actions. All conditions precedent to the bringing of this action have occurred or have been waived by H.D. ASSOCIATES.

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, DUNES, EIGER, INC. and 2M DUNES for damages resulting from conversion, costs of this

action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXV

## CONVERSION (EIGER)

395.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

396.   This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

397.   Starting in late 1997, LOCHMERE had compiled information and data for the acquisition, development and marketing of the Project.

398.   EIGER knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

399.   EIGER also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon EIGER's acknowledgment that LOCHMERE would be compensated.

400.   EIGER wrongfully induced LOCHMERE to disclose the trade secrets.

401.   LOCHMERE would not have forwarded EIGER the information and trade secrets had it known that it would not be compensated therefor.

402.   EIGER took LOCHMERE's information and trade secrets and used it for its own benefit.

403.   LOCHMERE has been economically damaged as result of EIGER's actions.

404. All conditions precedent to the bringing of this action have occurred or have been waived by EIGER.

WHEREFORE, LOCHMERE demands judgment against EIGER for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXVI

## CONVERSION (ROWSEY, JACOBS, MILLER AND BUCHANAN)

405. LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

406. This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

407. Starting in late 1997, LOCHMERE had compiled information and data for the acquisition, development and marketing of the Project.

408. ROWSEY, JACOBS, MILLER and BUCHANAN knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

409. ROWSEY, JACOBS, MILLER and BUCHANAN also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon ROWSEY, JACOBS, MILLER and BUCHANAN's acknowledgment that LOCHMERE would be compensated.

410. ROWSEY, JACOBS, MILLER and BUCHANAN wrongfully induced LOCHMERE to disclose the trade secrets.

67

411.   LOCHMERE would not have forwarded ROWSEY, JACOBS, MILLER and BUCHANAN the information and trade secrets had it known that it would not be compensated therefor.

412.   ROWSEY, JACOBS, MILLER and BUCHANAN took LOCHMERE's information and trade secrets and used it for its own benefit.

413.   LOCHMERE has been economically damaged as result of ROWSEY, JACOBS, MILLER and BUCHANAN's actions.

414.   All conditions precedent to the bringing of this action have occurred or have been waived by ROWSEY, JACOBS, MILLER and BUCHANAN.

WHEREFORE, LOCHMERE demands judgment against ROWSEY, JACOBS, MILLER and BUCHANAN for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXVII

### CONVERSION (FLEET NATIONAL BANK)

415.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

416.   This is an action for conversion exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

417.   Starting in late 1997, LOCHMERE had compiled information and data for the acquisition, development and marketing of the Project.

68

418.   FLEET NATIONAL BANK knew that LOCHMERE's information, including the Lochmere Plans, included confidential trade secrets.

419.   FLEET NATIONAL BANK also knew that LOCHMERE's disclosure of such Lochmere Plans were conditioned upon FLEET NATIONAL BANK's acknowledgment that LOCHMERE would be compensated.

420.   FLEET NATIONAL BANK wrongfully induced LOCHMERE to disclose the trade secrets.

421.   LOCHMERE would not have forwarded FLEET NATIONAL BANK the information and trade secrets had it known that it would not be compensated therefor.

422.   FLEET NATIONAL BANK took LOCHMERE's information and trade secrets and used it for its own benefit.

423.   LOCHMERE has been economically damaged as result of FLEET NATIONAL BANK's actions.

424.   All conditions precedent to the bringing of this action have occurred or have been waived by FLEET NATIONAL BANK.

WHEREFORE, LOCHMERE demands judgment against FLEET NATIONAL BANK for damages resulting from conversion, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXVIII

### CIVIL CONSPIRACY (LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES, BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, AND FLEET NATIONAL BANK)

425.   LOCHMERE re-alleges each and every allegation of Paragraphs 1 through 115 above.

426.   This is an action for civil conspiracy exceeding $15,000.00 excluding pre and post judgment interest, costs, and attorneys' fees.

427.   LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK, or two or more of them, agreed and conspired with each other and committed overt acts in furtherance of such conspiracy in order to usurp the partnership opportunity of the Project.   In addition, they conspired to unlawfully misappropriate trade secrets of LOCHMERE, wrongfully induced LOCHMERE to work on the Project, while knowing that they had no intention of compensating LOCHMERE.

428.   LOCHMERE has been economically damaged as result of LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK's actions.

429.   All conditions precedent to the bringing of this action have occurred or have been waived.

WHEREFORE, LOCHMERE demands judgment against LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK, jointly and severally, for damages resulting from civil conspiracy, costs

of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## COUNT XXXIX

### PROMISSORY ESTOPPEL (LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES, BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, AND FLEET NATIONAL BANK)

430.    LOCHMERE realleges each and every allegation of Paragraphs 1 through 115 above.

431.    This is an action for promissory estoppel exceeding $15,000.00 excluding pre and post judgment interest, costs and attorneys' fees.

432.    LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK, individually or collectively, induced and encouraged LOCHMERE to expend substantial time and money to formulate a unique financing, development, marketing, and management plan for the Hammock Dunes project, and to conduct extensive due diligence research, in reasonable reliance on their promise to employ and compensate LOCHMERE in accordance with the terms of the Partnership Agreement.

433.    LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK should reasonably have expected that LOCHMERE would rely on their promise to employ and compensate LOCHMERE

71

when they, individually or collectively, through their statements, affirmative acts, or acquiescence, induced and encouraged LOCHMERE to change its position to its detriment by continuing to work and expend funds on the Hammock Dunes project based on the understanding that they would honor their promise to employ and compensate LOCHMERE in accordance with the terms of the Partnership Agreement.

434.    LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK, individually or collectively, have refused to honor and fulfill their promises to LOCHMERE as embodied in the Partnership Agreement, and as a consequence LOCHMERE has been economically damaged.

435.    Failure to enforce the promises made to LOCHMERE in the Partnership Agreement against LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK would be manifestly unjust, in that it would permit them to profit unfairly while evading their obligations to LOCHMERE under the Partnership Agreement after having reaped the benefits from LOCHMERE's expenditure of funds, labor, and expertise on the project in justifiable reliance on their promises.

WHEREFORE, LOCHMERE demands judgment against LANE, BARNETT LANE, JTL CAPITAL, H.D. ASSOCIATES by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK for damages resulting from their refusal to fulfill their promises to employ

72

and compensate LOCHMERE in accordance with the terms of the Partnership Agreement,

which are enforceable based on the doctrine of promissory estoppel, costs of this action, a

reasonable attorneys' fee, together with such further relief as is just and proper under the

circumstances.

COUNT XL

## TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIP (H.D. ASSOCIATES, BY AND THROUGH ITS GENERAL PARTNERS, DUNES, EIGER, INC. AND 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, AND FLEET NATIONAL BANK

436.    LOCHMERE realleges each and every allegation of Paragraphs 1 through

115 above.

437.    This is an action tortious interference with a contractual or business

relationship exceeding $15,000.00 excluding pre and post judgment interest, costs and

attorneys' fees.

438.    LOCHMERE had an agreement or understanding with LANE and BARNETT

LANE and JTL CAPITAL relating to the development, marketing, and management of the

Hammock Dunes project based on the Partnership Agreement that existed prior to the

involvement of H.D. ASSOCIATES, by and through its general partners, DUNES, EIGER,

INC. AND 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, AND FLEET

NATIONAL BANK.

439.    H.D. ASSOCIATES, by and through its general partners, DUNES, EIGER,

INC. AND 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, AND FLEET

NATIONAL BANK were aware of the Partnership Agreement, and the business relationship

between LOCHMERE and LANE, BARNETT LANE and JTL CAPITAL that it evidenced, from the time they became involved in the project.

440. H.D. ASSOCIATES, by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK intentionally and without lawful justification interfered with LOCHMERE's contractual or business relationship with LANE, BARNETT LANE and JTL CAPITAL by demanding that LOCHMERE accept different terms of employment and compensation, which were substantially less favorable than those embodied in the Partnership Agreement.

441. LOCHMERE has been economically damaged by H.D. ASSOCIATES, by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK improper interference with LOCHMERE's contractual or business relationship with LANE, BARNETT LANE and JTL CAPITAL.

WHEREFORE, LOCHMERE demands judgment against H.D. ASSOCIATES, by and through its general partners, DUNES, EIGER, INC. and 2M DUNES, EIGER, ROWSEY, JACOBS, MILLER, BUCHANAN, and FLEET NATIONAL BANK for damages resulting from tortious interference with a contractual or business relationship, costs of this action, a reasonable attorneys' fee, together with such further relief as is just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

442.    LOCHMERE demands a jury trial on all issues so triable.

Gregory J. Orcutt
Florida Bar No. 230855
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 East Kennedy Boulevard, Suite 200
Tampa, Florida 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422 - Facsimile
Attorneys for LOCHMERE DEVELOPMENT
GROUP, INC. and LOCHMERE REALTY, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by U. S. Mail to the individuals listed on the Service List, this _2/_ day of June, 2001.

Gregory J. Orcutt

(f:\user\bdh\docs\eiger\6-20-01 second am. comp.)

75

## SERVICE LIST

Alan S. Loewinsohn, Esq.
Carol E. Farquhar, Esq.
Jo E. Hartwick, Esq.
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road, Suite 110
Dallas, TX  75252

Daniel F. Molony, Esq.
Shook, Hardy & Bacon, L.L.P.
100 North Tampa Street, Suite 3900
Tampa, FL  33602

(Attys. for H.D. ASSOCIATES, L.P. DUNES
OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C., EIGER FUND 1 L.P.,
EIGER PARTNERS, L.P.,L.P., PAUL E. ROWSEY, III,
C. TODD MILLER, DAVID M. JACOBS,
WILLIAM S. BUCHANAN and FLEET NATIONAL
BANK f/k/a BANKBOSTON, N.A.)

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Co-Counsel: FLEET NATIONAL BANK f/k/a BANKBOSTON,N.A.

Alan M. Gerlach, Esq.
Broad & Cassel
390 North Orange Ave.
Suite 1100
Orlando, FL 32801

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

(Attys. for DAVID LANE, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L.L.C.)