FILED

UNITED STATES DISTRICT COURT
Middle District of Florida

01 NOV 30 AM 11: 39

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

LOCHMERE DEVELOPMENT GROUP, INC.,
and LOCHMERE REALTY, INC.,

       Plaintiffs,

vs.

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C.,
a Texas limited liability company; EIGER
FUND 1, L.P., a Delaware limited partnership;
EIGER PARTNERS, L.P., a Delaware limited
partnership;  DAVID LANE, an individual;
BARNETT LANE INVESTMENTS, INC., a
Texas corporation; JTL CAPITAL, L.L.C., a
Texas limited liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
PAUL E. ROWSEY, III, an individual; C. TODD MILLER,
an individual; DAVID M. JACOBS, an individual;
and, WILLIAM S. BUCHANAN, an individual,

       Defendants.

_____/

CASE NO.: 8:00-CV-1026-T-27TGW
State Court No.: 00-02525/Div. I

## PLAINTIFFS' RESPONSE TO EIGER DEFENDANTS AND
## FLEET NATIONAL BANK'S MOTION IN LIMINE

Plaintiffs, LOCHMERE DEVELOPMENT GROUP, INC., and LOCHMERE REALTY, INC.

(collectively "Lochmere" or "Plaintiffs"), by and through their undersigned counsel hereby respond

as follows to the Defendants, H.D. ASSOCIATES, L.P. ("H.D. Associates"), EIGER I, L.P., EIGER,

INC., EIGER PARTNERS, L.P., DUNES OPERATING COMPANY, L.P., 2M DUNES, L.L.C. ("Eiger

Companies"), PAUL E. ROWSEY, III, C. TODD MILLER, DAVID M. JACOBS and WILLIAM S.

183

BUCHANAN ("Eiger Individuals") (collectively the "Eiger Defendants"), and FLEET NATIONAL BANK'S ("Fleet") Motion in Limine. Lochmere will endeavor to respond to the issues presented by the Eiger Defendants and Fleet with like-numbered paragraphs.

Initially, however, Lochmere notes that many of the items of relief requested in the Defendants' motion are too generally described to garner a complete response. Because in many instances, Defendants have not described the specific witnesses, exhibits, or testimony it seeks to exclude, and likewise has not identified the surprise or prejudice of which it complains, a complete response is not appropriate. Lochmere contends that therefore, Defendants' Motion should be denied.

1. Please refer to Plaintiffs' Response to Defendants' Motion to Strike Testimony of Richard C. Brown.

2. The Eiger Defendants and Fleet have objected to statements and portions of statements included in the Amended Pretrial Statement relating to the testimony of Plaintiffs' designated experts, Richard C. Brown ("Brown") and Robert Whitley ("Whitley"). Defendants argue that the summary of expert's testimony in the pretrial statement include issues not specifically addressed by the experts' reports. Specifically, Defendants' objects and Plaintiff responds as follows:

With regards to Brown:

<u>Defendants' Objection</u>:   i.   The development budget prepared by Plaintiffs is proprietary and is very detailed and complex.

<u>Plaintiffs' Response</u>:   The Brown report states:

"1.      Lochmere uses a proprietary analytical tool called the Master Development Budget developed over a number of years in the real estate development business."

". . . Lochmere owns a proprietary tool that is a complete analytical tool in developing a business plan for a project."

". . . The budget was clearly marked as the proprietary property of Lochmere and H.D. Associates acknowledged that it had obtained this information from Lochmere."

<u>Defendants' Objection</u>:        iii.  Defendants could not have built a modeling system or performed the due diligence necessary by the deadline imposed by the Seller to go to contract.

<u>Plaintiffs' Response</u>:  The Brown report states:

"This development model is very detailed and extensive and *it is a very remote possibility* that H.D. Associates could build a modeling system that would accomplish its planning in the short period of time available, not to mention, coming to exactly the same amounts that Lochmere had prepared." (emphasis added).

<u>Defendants' Objection</u>:   iv.  The calculations of Plaintiffs' damages from pro forma and other financial documentation of defendants.

<u>Plaintiffs' Response</u>:   Section 3 of Brown's report sets forth the substance of the Lochmere/Lane Agreement and examines the disparities between the Lochmere Agreement and Eiger "Re-trade."  For the sake of judicial economy, the entirety of Section 3 will not be duplicated here.

<u>Defendants' Objection</u>: vi.     Rebut the testimony of defendant's experts.

<u>Plaintiffs' Response</u>:   Plaintiffs expert reports were served on June 4, 2001, in accordance with the Court's Order modifying the Case Management Report.  The Eiger Defendants served their expert disclosures on or about June 28, 2001. To the extent that Defendants' experts address and/or attempt to refute the substance and subject of Plaintiffs' experts' opinions, it is implicit that Plaintiffs' experts will address these matters either in direct

examination or in rebuttal.  For rebuttal purposes, Plaintiffs are not attempting to introduce new facts or opinions not addressed in the expert reports.

With regards to Whitley:

Defendants' Objection: iii.    The results of the due diligence investigation process is proprietary to the Plaintiffs. The due diligence performed by Plaintiffs on this project was extensive.

Plaintiffs' Response:  The Whitley report states:

"9)    It is my opinion that the results of the due diligence process are proprietary in nature. The compilation of information from numerous sources which are then incorporated into a business plan of development or pro forma, is our creation, and therefore our exclusive property."

11)    I have reviewed the Revised Master Development Budget ("Revised Budget") prepared by Lochmere development Groups, Inc. . . . [it] could only be created by someone with extensive knowledge of the development of master planned communities.

In his deposition, dated August 2, 2001, Whitley also stated:

A.  I'm saying it's proprietary to whoever spent the time and effort to put it together."
     (Whitley Dep. p. 93, Lines 18-20)

Defendants' Objection: vi.    The development budget could only be created by someone with extensive knowledge of the development of master planned communities in Florida.

Plaintiffs' Response:  Whitley's report discusses the fact that each master planned community development, including Hammock Dunes, is unique.  As such, Whitley states that it is imperative that a developer identifies and understands the many specific characteristics that have an economic impact on the success of the project. See Whitley report, Paragraph 2. Specifically Whitley states:

". . . [the revised Budget] could only be created with someone with extensive knowledge of the development of master planned communities."

Defendants' Objection: vi.    The Defendants could not have performed their own due diligence and prepared their own development budget by the deadline imposed by the Seller if they had not utilized Plaintiffs due diligence and development budget.

Plaintiffs' Response:    The Whitley report states:

"13)    The information compiled and submitted per Lochmere's correspondence... forwarding three volumes of due diligence research and the Revised Budget, clearly saved BankBoston and its appraiser months of time in the preparation of its underwriting and appraisal as a condition of its loan approval process."

Defendants' Objection: vii.    The Plaintiffs due diligence and development budget was relied upon and utilized by defendants to acquire the project and to secure financing on the project.

Plaintiffs' Response:  In his deposition, Whitley, discussing a conversation he had Robert Evans, stated:

A.    He  [Evans] said they used his cash flow, which is fairly obvious. (Whitley dep. 89, Lines 6-7)

A.    So it's impossible for these numbers not to have come from here. (Whitley dep. page 90, Lines 5-6)

A.    "—how could they have matched so closely unless they used your work product?" (Whitley Dep. page 90, Lines 16-17).

Also, as discussed above, Whitley's report states that the information provided by Lochmere saved

BankBoston months of time in preparation.  See Whitley report, Paragraph 13.

Defendants' Objection: viii.    The Plaintiffs expected compensation package and profit participation are within industry standards.

Plaintiffs' Response:    The Whitley report states:

"Upon review of the Management, Development and Marketing Agreement and the Marketing and Listing Agreement by and between Lochmere and H.D. Associates, L.P. ("Agreements"), and a first hand knowledge of the complexity of the Hammock dunes project, it is my opinion that Lochmere's compensation terms and conditions of the Agreements are within industry standards."

Defendants' Objection: ix.    In his opinion, defendants acquired the project at a substantially reduced price than offered by the seller due primarily to the efforts of Plaintiffs.

Plaintiffs' Response:    In his deposition, Whitley remarks that the Hammock dunes property may be overpriced. Specifically he states:

Q.    Why did you attempt to renegotiate the sales price on Hammock dunes?

A.    We didn't think it was worth the original price that they were asking. (Whitley Dep. page 143, Lines 4-7).

The Whitley report also discusses, in detail, the aspects of due diligence and how this process is necessary to accurately evaluate the financial aspects of a development, including the cost of the project. See Whitley report, Paragraph 3. Whitley then continues to state that the budget was created by someone with extensive knowledge of this kind of development. See Whitley report, Paragraph 11. Finally, Whitley states that he would require a budget of that magnitude in deciding whether to submit an agreement for sale and purchase. A reasonable inference can be drawn that Whitley is suggesting that because of Lochmere's due diligence work, the Hammock Dunes project was acquired at a fair or reasonable price.

<u>Defendants' Objection</u>: xi.    Refute the testimony of defendants' experts.

<u>Plaintiffs' Response</u>:    Plaintiffs expert reports were served on June 4, 2001, in accordance with the Court's Order modifying the Case Management Report. The Eiger Defendants and Fleet served their expert disclosures on or about June 28, 2001. To the extent that Defendants experts address and/or attempt to refute the substance and subject of Plaintiffs' experts' opinions, it is implicit that Plaintiffs' experts will address these matters either in direct examination or in rebuttal. For rebuttal purposes, Plaintiffs are not attempting to introduce new facts or opinions not addressed in the expert reports.

With regard to all Plaintiffs' expert testimony:

<u>Defendants' Objection</u>: Plaintiffs' quantum meruit Count will be based on the reasonable value of Plaintiffs' services and contribution to the acquisition of the project. Expert testimony will establish these damages at the same $18,000,000.00 amount.

<u>Plaintiffs' Response</u>:    In Section 3 of Brown's report sets forth the substance of the Lochmere/Lane Agreement and examines the disparities between the Lochmere Agreement and Eiger "Re-trade." These calculations indicate the amount claimed under the compensation package and profit participation.

It is recognized that the purpose of discovery is to reduce the possibility of surprise and make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 678, 78 S. Ct. 983, 2. L.Ed. 2d 451 (1958). To that end, *Rule 26* of the *Federal Rules of Civil Procedure* requires a party calling a testifying expert to provide the identity of that expert along with a report containing a statement of the expert's opinions and the basis thereof. *Fed. R. Civ. P. 26(a)(2)(B)*.

In the instant action, Plaintiffs identified their experts in accordance with the case management report, the Local Rules, and *Rule 26* of the *Federal Rules of Civil Procedure*. The reports provided Defendants the basis and opinions of Plaintiffs' experts. Defendants deposed Whitley on August 2, 2001, and Brown on August 3, 2001.

Each statement Defendants object to is contained in Plaintiffs' expert reports, either expressly or implicitly. Many of the implied statements were discussed in the experts' depositions conducted by the Defendants. Any remaining concerns have been raised throughout the course of this litigation; Defendants can show no surprise or prejudice. Logical inferences drawn from an experts testimony do not unfairly prejudice a defendant. *Thuddum v. Allied Products Corp.,* 36 F.3d 767, 770 (8th Cir. 1994). In *Thuddum,* an expert report failed to indicate any particular defect, of several possible, which caused a grain auger accident. The expert merely stated that in the absence of these defects the auger would not have collapsed. The court held that such inferential testimony did not constitute unfair surprise or prejudice. *Thuddum,* 36 F.3d at 770.

The case law Defendants rely on is inapplicable in the instant case. *See, Schearbrook Land & Livestock Co. v United States,* 124 F.R.D. 221 (M.D. Fla. 1988). In *Schearbrook,* a plaintiff

failed to respond to expert interrogatories and did not identify any of its experts until approximately one month after the close of discovery, during the drafting of the Pre-Trial Stipulation. Those facts are radically different than in the instant case, where Plaintiffs timely identified their experts and properly provided reports containing the experts' opinions and reasoning, and Defendants have deposed the experts. Defendants motion should be denied.

3. The Defendants seek to exclude all evidence of wealth on the basis that it is irrelevant and prejudicial. While the wealth of a defendant or group of defendants is generally not admissible as it may tend to inflame the prejudice or sympathies of the jury, it may be admissible where exemplary damages are claimed, or where it is relevant to the facts in the case. Here, at least the inference of wealth will be given to the jury, because one of the defendants is a bank, and other defendants are investment enterprises. Furthermore, the Hammock Dunes Project cost tens of millions of dollars, paid in cash, and generates profits in the tens of millions. The Defendants wrote a $3 million non-refundable check as earnest money under the acquisition contract. Because of the facts and issues inherent to the case, references to the wealth or financial ability of the defendants to carry out the acquisition and development of the Hammock Dune Project will necessarily be a part of the record. Therefore, references to the defendants' wealth, at least at some level, cannot be avoided.

Moreover, Plaintiffs are seeking exemplary damages pursuant to the trade secrets statute, §688, *Florida Statutes*, and therefore, evidence of wealth is admissible, but not required. *Rinaldi v. Aaron*, 314 So.2d 762, 764 (Fla. 1975). Because the Defendants' wealth is relevant and admissible, and Defendants have not shown any undue prejudice, Defendants' motion should be denied.

4. Defendants seek to prohibit testimony on attorneys' fees because no expert has been identified to testify to reasonableness and no documents have been produced which bear on the issue. Pursuant to the standard procedure described by *F.R.C.P. Rule 54(d)(2)*, attorneys' fees are subject to motion and proof at a hearing subsequent to the verdict. Therefore, Plaintiffs do not intend to put on evidence of attorneys' fees and costs at the trial hearing, but reserve the right to do so at a later hearing.

5. Defendants seek to prohibit evidence of the indemnity agreement with BankBoston, n/k/a Fleet. While the Defendants cite the general rule with respect to contracts of insurance, those rules are not applicable to the present situation. The rule is limited to liability insurance issues, and does not address indemnity agreements. *Rule 411* designed for negligence cases to avoid the prejudice that may result where the jury might be inclined to award damages simply because there is an insurance company to pay those damages. See, *Holladay v. Berschoor*, 381 F.2d 100 (5th Cir. 1967).

An indemnification agreement is not an agreement for liability insurance and therefore is not subject to the rule. *DSC Communications v. Next Level Communications*, 929 F.Supp 239, 243-245 (E. Dist. Tx. 1996).

Further, *FRE Rule* 411 also states "This rule does not require the exclusion of evidence of insurance against liability when offered for any other purpose, such as proof of agency, ownership or control, or the bias or prejudice of a witness." In this case, the Plaintiffs argue that the indemnity agreement in favor of Fleet is admissible for other purposes, such as evidence that the bank understood it was misappropriating trade secrets at the time it approved the loan, or for impeachment. As stated in *DSC Communications*, *supra*, "To the contrary, the fact that

F \docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\RSP EIGER FLEET MOL.doc

9

[Defendants] felt it necessary to 'insure' against the contingency that they might be found to have stolen DSC's trade secrets, is some evidence that they believed they may not have owned the trade secrets." *DSC, supra*, at 244; *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 757-58.

Furthermore, the logic behind *Rule 411* is not satisfied where the insuring party is also a defendant in the case. This is no prejudicial effect where all parties are already before the court. The Court in *Posttape, supra*, stated: "Here the proffered testimony [regarding liability insurance coverage] was relevant to the knowledge of Gibson and Posttape Associates. It is doubtful that there would be any prejudice because the parties were both commercial entities, the injury was not likely to stir the emotions, and the existence of such coverage might have been so unusual that the purchase itself would have significance in the circumstances." *Posttape, supra*, at 758.

6. The Eiger Companies seek to exclude any evidence of other lawsuits, except the Texas State Court lawsuit, from evidence in this matter. In support of their motion, Defendants cite *Rule 401, 403 and 404,* but do not describe what prejudice or confusion would occur as a result of such testimony. Further, since the parties are already parties to a lawsuit (the present one), the mere fact that they are also parties to another lawsuit is not prejudicial or confusing. Because the Defendants have cited no prejudice, and evidence relating to other lawsuits may be relevant, Defendants' motion should be denied.

7. Defendants seek to prevent to preclude testimony or evidence of commissions or other payments made with respect to the sale or purchase of the Hammock Dunes property or testimony as to the legality of such payments. Defendants assert such evidence is irrelevant and prejudicial, but fail to describe how such prejudice would arise. The fact that a commission was paid to

realtors and/or brokers in this case is relevant to the facts in this case. Furthermore, the jury could determine that those payments were wrongful in light of the circumstances, or should have been made to the Plaintiffs. However, the Plaintiffs do not assert that any commissions paid were illegal or in violation of Florida law. On that basis, the Defendants' motion should be denied.

8. The Defendants seek an Order requiring the parties to refrain from mentioning the fact that some of the attorneys in the case are from Texas. While the Defendants agree to abide by the rules of conduct as set forth by the Judge in this matter, it is practically impossible to enforce a provision of this nature. The Defendants do not even allege that knowledge that their attorneys reside in Texas is somehow prejudicial. Furthermore, many of the Defendants are from Texas, and that fact will be known to the jury. Therefore, because the Defendants have failed to allege any prejudice, and practically, the issue may arise in numerous different ways, Defendants' motion should be denied.

9. The Plaintiffs agree that the stamp "Confidential" or "Attorneys' Eyes Only" are to be removed from trial exhibits, therefore, Defendants' motion should be granted.

10. Defendants seek to prohibit all evidence of future lost profits because none of the witnesses are properly designated to give such testimony and further, that such damages are too speculative. Defendants cite the case of *Belcher v. Import Cars, Ltd.*, 246 So.2d 584, 586-87 (Fla. 3d DCA 1971) for this proposition. Further, Defendants argue that Robert Evans is not designated as an expert and therefore cannot give opinion evidence as to this damages.

Defendants have failed to cite the controlling precedent, and their motion should be denied.

While Florida law supports the proposition that prospective business profits may be too speculative and dependent on changing circumstances to be recovered, the courts recognize

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RSP EIGER FLEET MOL.doc

11

significant exceptions to this guideline. In the case of *New Amsterdam Casualty v. Utility Battery Manufacturing Co.*, *166 So. 856 (Fla. 1935)*, the Florida Supreme Court announced the general rule preventing introduction of evidence of prospective business profits. However, the *New Amsterdam* court recognized an exception if the plaintiff could show its future losses by competent proof.

More recently, the Florida Supreme Court, in *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.*, *545 So.2d 1348 (Fla. 1989)*, followed the precedent of *Twyman v. Roell*, *166 So. 215 (Fla. 1936)*. The *W.W. Gay* court stated: "We follow the holding in *Twyman*. A business can recover lost prospective profits regardless of whether it is established or has any "track record". The party must prove (1) the defendant's action caused the damage; and (2) there is some standard by which the amount of damages may be accurately determined. ...The expert testimony when combined with the economic studies, was clearly sufficient to raise a jury question". *W.W. Gay, supra, at 1351.*

Defendants rely on *Belcher v. Import Cars, Ltd.*, *246 So.2d 584 (Fla. 3d DCA 1971)*, which predates *W.W. Gay* by more than fifteen (15) years, and is no longer viable law. However, in *Belcher*, the business at issue had operated at a loss for some time. The plaintiff there sought to put on expert testimony that other, more efficiently operated car dealerships earned a profit. However, the appellate court stated that the record contained insufficient data to conclude that other dealerships were sufficiently similar to support the analogy. Therefore, based upon the general rule precluding future profits, and an insufficient basis for the expert testimony, the court determined that the expert testimony should have been disallowed. That is clearly not the case here.

F \docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RSP EIGER FLEET MOL.doc

12

In addition, there is now more than 2 years of financial data, plus the projections by the defendants of the anticipated profits of the venture, to form the basis for the damage estimate. In the case of *Massey Ferguson, Inc. v. Santa Rosa Tractor Co., Inc.*, 415 So.2d 865 (Fla. 1st DCA 1982), the court allowed the plaintiff's claim for lost future profits to be based upon an analysis of plaintiff's two financial statements plus a computer printout prepared by the defendant showing projected future sales. *Santa Rosa, supra,* at 867. Further, in the case of *Mercury Marine v. Boattown, USA, Inc.*, 444 So.2d 88 (Fla. 4th DCA 1984), the court allowed the jury to determine lost future profits based upon testimony by a corporate officer about projections based upon an annualized profit over a 15-month period in which the plaintiff's business was in operation. *Mercury Marine, supra,* at 90.

With respect to the testimony of Robert Evans with respect to value, worth, or prospective loss of future profits, Defendants certainly cannot claim any surprise or undue prejudice. Mr. Evans has been deposed on at least four (4) separate occasions by these Defendants, and in nearly every deposition, has described his opinions as to the profitability of the Hammock Dunes Project and of his expected payment and share of those profits. Defendants have had ample opportunity to determine Mr. Evans' basis for those opinions and to arrange their own expert testimony as necessary. Furthermore, a significant part of Evans' job was to estimate future profits of the Hammock Dunes Project. Throughout the course of their business relationship, Defendants relied upon his projections of such profits.

Defendants appear to argue that Evans was not designated as an expert witness pursuant to *Rule 26(b)(4)*. A close reading of that rule shows that Evans was not specially retained *for trial* testimony nor was he an employee regularly involved in giving expert testimony. Therefore, he is

exempt from much of the disclosure procedure, such as preparing an expert report.  When speaking to these types of expert witnesses, where their knowledge comes from being an actor or viewer with respect to the transactions that are part of the subject matter of the lawsuit, courts hold that they are to be treated as ordinary witnesses.  *Frantz v. Golebicwski*, 407 So.2d 283 (Fla. 3d DCA 1981) citing the comment to *FRE 26(b)(4)*.

In addition, *Federal Rules of Evidence*, including *Rule 701 and 702*, give the trial court wide latitude in determining whether a person is qualified to give expert testimony, and in allowing expert or opinion testimony of the lay witness.  *Agro Air Assoc., Inc. v. Houston Casualty Co.*, 128 F.3d 1452, 1455 (8th Cir. 1997); *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993); *United States v. Novaton*, 867 F.Supp. 1023, 1026 (S.D. Fla. 1994).  The Plaintiffs will elicit from Mr. Evans the factual predicate necessary to lay opinion evidence under both *Rule 701 and 702*, and therefore, the Defendants' motion must be denied.

11.     Plaintiffs agree that there should be no reference to the filing of, or the court's denial of summary judgment motions herein, therefore, Defendants' Motion #11 should be granted.

12.     Defendants seek to prevent evidence or testimony regarding the Hunt family's investment in Eiger I, L.P.  Plaintiffs do not presently see how such information could be relevant, and therefore do not object to the entry of such an Order, subject to Plaintiffs' reservation of its right to argue relevance based upon evidence adduced at trial.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by Facsimile to all parties on the attached Service List this $\underline{29}$ day of November, 2001.

Respectfully submitted,

BRICKLEMYER SMOLKER & BOLVES, P.A.

By: _____
Jay J. Bartlett
Florida Bar No. 875163
Gregory J. Orcutt
Florida Bar No. 230855
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 E. Kennedy Boulevard, Suite 200
Tampa, Florida 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422
Attorneys for   LOCHMERE DEVELOPMENT
GROUP, INC. and LOCHMERE REALTY, INC.

F \docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL CT\PLDGS\RSP EIGER FLEET MOL doc

15

## SERVICE LIST

Daniel F. Molony, Esq.
Shook, Hardy & Bacon, L.L.P.
100 North Tampa Street, Suite 3900
Tampa, FL  33602

Alan S. Loewinsohn, Esq.
Carol E. Farquhar, Esq.
Jo E. Hartwick, Esq.
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road, Suite 110
Dallas, TX  75252

(Attys. for H.D. ASSOCIATES, L.P. DUNES OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C., EIGER FUND 1 L.P., EIGER PARTNERS, L.P., PAUL E. ROWSEY, III,
C. TODD MILLER, DAVID M. JACOBS, WILLIAM S. BUCHANAN and FLEET NATIONAL
BANK f/k/a BANKBOSTON, N.A.)

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Co-Counsel: FLEET NATIONAL BANK f/k/a BANKBOSTON, N.A.

Alan M. Gerlach, Esq.
Broad & Cassel
390 North Orange Ave.
Suite 1100
Orlando, FL 32801

Timothy A. Andreu, Jr.
Glenn Rasmussen & Fogarty
100 South Ashley Dr., Suite 1300
Tampa, FL 33602

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

(Attys. for DAVID LANE, BARNETT LANE INVESTMENTS, INC. AND JTL CAPITAL, L.L.C.)

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\RSP EIGER FLEET MOL.doc

16