UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FILED

01 NOV 30 PM 12: 15

LOCHMERE DEVELOPMENT GROUP, INC.,
and LOCHMERE REALTY, INC.,

       Plaintiffs,

vs.

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C.,
a Texas limited liability company; EIGER
FUND 1, L.P., a Delaware limited partnership;
EIGER PARTNERS, L.P., a Delaware limited
partnership;  DAVID LANE, an individual;
BARNETT LANE INVESTMENTS, INC., a
Texas corporation; JTL CAPITAL, L.L.C., a
Texas limited liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
PAUL E. ROWSEY, III, an individual; C. TODD MILLER,
an individual; DAVID M. JACOBS, an individual;
and, WILLIAM S. BUCHANAN, an individual,

       Defendants.

CASE NO.: 8:00-CV-1026-T-27B
State Court No.: 00-02525/Div. I

_____/

## PROPOSED JURY INSTRUCTIONS OF THE EIGER DEFENDANTS AND FLEET NATIONAL BANK AND OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS

COME NOW, EIGER FUND I, L.P., EIGER, INC, EIGER PARTNERS, L.P., H.D.

ASSOCIATES, L.P., DUNES OPERATING COMPANY, L.P., 2M DUNES, L.L.C., PAUL E.

ROWSEY, III, C. TODD MILLER, DAVID M. JACOBS, and WILLIAM S. BUCHANAN

(collectively the "Eiger Defendants") and FLEET NATIONAL BANK f/k/a BankBoston, N.A.,

("Fleet National Bank") and submit, pursuant to this Court's Order, their Proposed Jury

Instructions.



SCANNED

## OBJECTIONS TO PLAINTIFFS' PROPOSED INSTRUCTIONS

The Eiger Defendants and the Bank object numerous proposed jury instructions submitted by Plaintiffs, including, but not limited to:

1.      All of Plaintiffs instructions with respect to their claim for misappropriation of trade secrets which are incomplete and misstate the standards and the law under the Florida Uniform Trade Secret Act;

2.      Various instructions relating to their partnership or joint venture claim because they misstate the law, are argumentative, and are incomplete in that they omit numerous necessary instructions relating to whether the parties reached an agreement or contract to form a partnership or joint venture;

3.      Various instructions relating to damages (including their claim for punitive damages relating to misappropriation of trade secrets which was not sought by Plainitiffs in their pleadings and, moreover, under Florida law, is to be assessed by the Court, rather than the jury, where appropriate);

4.      Plaintiffs' separate instruction for breach of fiduciary duty (which is duplicative of their instruction regarding breach of fiduciary duty in connection with their partnership or joint venture claim);

5.      Plaintiffs' promissory estoppel instruction (which among other things misstates the law regarding the requirement of an affirmative promise or misrepresentation as an element of the claim), and Plaintiffs' tortious interference claim (which attempts to recast the factual basis of their claim to encompass matters not alleged in their pleadings).

With respect to the instructions regarding trade secrets, the Eiger Defendants and the Bank urge the Court to give the trade secret instructions contained in the Model Instructions on Business Torts promulgated by the American Bar Association, Section on Litigation (3d ed. 1996). Attached hereto are copies of those model instructions in their entirety.

## COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished, you will go to the jury room and begin your discussions – what we call your deliberations.

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____ .**

### Consideration of the Evidence
### Duty to Follow Instructions
### Corporate Party Involved

In deciding the case, you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence – that is, the testimony of the witnesses and the exhibits I have admitted in the record – but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in

C \Document\#11150 v1 - Final Instructions 2 wpd

4

arriving at your decision concerning the facts.  It is your own recollection and interpretation of the evidence that controls.

Granted:       _____
Denied:        _____
Amended:       _____
Withdrawn:     _____

Plaintiffs' Proposed Instructions of 11/26/01, p. 2-3.

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____ .**

### Credibility of Witnesses

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____


Plaintiffs' Proposed Instructions of 11/26/01,  p. 4.

C:\Document\#11150 v1 - Final Instructions 2 wpd

6

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Impeachment of Witnesses
### Inconsistent Statement

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Granted:         _____
Denied:          _____
Amended:         _____
Withdrawn:       _____

Plaintiffs' Proposed Instructions of 11/20/01, p. 5.

C \Document\#11150 v1 - Final Instructions 2 wpd

7

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

**Expert Witnesses**
**General Instruction**

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion.  The same as with any other witness, it is up to you to decide whether to rely upon it.

Granted:          _____
Denied:           _____
Amended:          _____
Withdrawn:        _____

Plaintiffs' Proposed Instructions of 11/26/01, p. 6.

C:\Document\#11150 v1 - Final Instructions 2 wpd

8

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Multiple Claims, Numerous Parties

In your deliberations, you are to consider distinct claims.  These claims are as follows:

(1)     misappropriation of trade secrets;

(2)     wrongful dissociation from an alleged partnership or joint venture;

(3)     breach of fiduciary duty;

(4)     promissory estoppel;

(5)     interference with a contractual or business relationship, and

(6)     conspiracy

Some claims do not apply to particular defendants. Although these claims have been tried together, each party is entitled to have you separately consider each claim as it affects that party. Except as the Court may instruct you otherwise, in your deliberations you should therefore consider the evidence as it relates to each claim and each party separately, as you would had each claim been tried before you separately.

Granted:        _____
Denied:         _____
Amended:       _____
Withdrawn:     _____


Plaintiffs' Proposed Instructions of 11/26/01, p. 7 (modified)

C \Document\#11150 v1 - Final Instructions 2.wpd

9

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Greater Weight of Evidence

In this case each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a "greater weight of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

The "greater weight of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a greater weight of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim or contention by the greater weight of the evidence you should find against the party making that claim or contention.


Granted      _____
Denied      _____
Modified      _____
Withdrawn      _____


Pattern Jury Instructions, Rule 6.2, 11th Cir., 2000 Ed. (Modified to replace "preponderance of the evidence" with "greater weight of the evidence").

C \Document\#11150 v1 - Final Instructions 2 wpd

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____.**

### Clear and Convincing Evidence

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. In contract, "clear and convincing evidence" is evidence that is precise, explicit, lacking in conviction, and of such weight that it produces a firm belief or conviction without hesitation, about the matter in issue.

Granted:       _____
Denied:        _____
Amended:       _____
Withdrawn:     _____

Florida Standard Jury Instructions In Civil Cases, PDI, pages 1-2 (Lexix Nexix 2001 ed. (modified).

C:\Document\#11150 v1 - Final Instructions 2 wpd

## DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Prima Facie Case

To recover on the trade secret claims Plaintiffs have made in this case, Plaintiffs must prove each of the following four elements by a preponderance of the evidence:

(1)    that Plaintiffs possessed a trade secret;

(2)    that Defendants acquired the trade secret (a) thorough improper means, (b) through a confidential relationship with Plaintiffs, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without Plaintiffs' permission;

(3)    that Defendants used or disclosed the trade secret without Plaintiffs' permission; and

(4)    that (a) Plaintiffs suffered harm as a direct and proximate result of Defendants' use or disclosure of Plaintiffs' trade secret, or (b) Defendants obtained benefit from such use or disclosure.

I will go over each of these elements more specifically in the following instructions.

If after you consider all of the evidence you find that Plaintiffs have proven each of these elements in accordance with the legal requirements as I describe them to you, then you will consider the amount of money damages to be awarded to Plaintiffs, by following the instructions that I will give you relating to damages.

If, on the other hand, you find that Plaintiffs has not proven one or more of these elements, then Defendants are not liable.

C \Document\#11150 v1 - Final Instructions 2.wpd

12

Granted          _____
Denied           _____
Modified         _____
Withdrawn        _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.02 (modified to replace "preponderance of the evidence" with "greater weight of the evidence.")

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Secrecy

To determine that a trade secret exists you must first decide whether the information was indeed secret when Defendants' allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in trade or business are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information. In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

The secrecy requirement for information to qualify as a trade secret, however, does not mean that absolute secrecy must be maintained – in the sense that no one else in the world possesses the information. Rather, Plaintiffs must demonstrate that the information was known only to them or to a few others who have also treated the information as a trade secret.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.03 [1]

C:\Document\#11150 v1 - Final Instructions 2 wpd

14

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Reasonable Measures to Protect Secrecy

Plaintiffs must prove that they took reasonable measures to protect the secrecy of information for the information to be accorded trade secret protection. There are no absolute requirements that define what measures are "reasonable" in a given situation. That depends on the circumstances of each case, but factors you may wish to consider in evaluating whether "reasonable" measures were taken here could include the following:

(1)     whether Plaintiffs made it a practice to apprise their employees or others involved with their business that the information is a trade secret and/or is to be kept confidential;

(2)     whether Plaintiffs required employees or others involved in their business or with their business to sign confidentiality agreements or covenants not to compete regarding the information;

(3)     whether Plaintiffs restricted access to the information on a "need to know basis"; or

(4)     whether Plaintiffs generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.03 [1]

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Competitive Advantage

A trade secret must be valuable either to Plaintiffs or to their business rivals in the sense that, as long as it is secret, the information provides Plaintiffs with an actual or potential competitive business advantage over their rivals. To help you determine whether Plaintiffs enjoyed, or were likely to enjoy, such a competitive advantage, you may consider such things as

(1)     the degree to which the information was generally known or readily ascertainable by others;

(2)     the extent to which Plaintiffs used or uses the information in their business;

(3)     whether profits or increased efficiency enjoyed by Plaintiffs' business are due to the information;

(4)     what gain or benefits a Defendants' business obtained from the information;

(5)     what money, effort, and time Plaintiffs expended to develop the information; and

(6)     the ease or difficulty of acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets (a process called "reverse engineering").

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.03 [3]

C:\Document\#11150 v1 - Final Instructions 2 wpd

16

## DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Acquisition by Defendants

You must determine whether Defendants acquired the trade secret under circumstances that impose a duty Defendants owed to Plaintiffs. Defendants would have a duty to Plaintiffs if Defendants acquired the information (a) by using improper means, (b) through a confidential relationship with Plaintiffs, or (c) under other circumstances in which the law imposes a duty on Defendants regarding use of the information. Let me discuss each of these with you in detail.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.04

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Improper Means

If Plaintiffs prove that Defendants acquired the trade secret by theft, bribery, trespass, misrepresentation, or through corporate espionage, such as wiretapping, Defendants have used "improper means." It would also be improper if Defendants learned the trade secret from a third party who used improper means to acquire the information or who breached a duty of confidentiality in disclosing the information, when the Defendants know or should know that it is acquiring a trade secret belonging to another. Improper means also includes inducing another either to use improper means to acquire the information or to breach a duty of confidentiality that person owed to Plaintiffs.

It is not improper, on the other hand, to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____


ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.04 [1]

C \Document\#11150 v1 - Final Instructions 2.wpd

18

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____.**

**Ratification**

If you find that Plaintiffs, or anyone acting on Plaintiffs' behalf,  ratified or consented to

any of Defendants' use of the Plaintiffs' alleged trade secrets, then you must find that Defendants

did not misappropriate Plaintiffs' alleged trade secrets.


Granted         _____
Denied          _____
Modified        _____
Withdrawn       _____


*See* Florida Jur. 2d § 645

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Confidential Relationship

You must determine whether Defendants acquired the information through a confidential relationship with Plaintiffs.

To determine whether the trade secret was disclosed to Defendants through a confidential relationship you may consider whether, based on the dealings between the parties, Defendants knew or should have known that Plaintiffs expected the information to be kept secret and whether Plaintiffs' expectation was reasonable.

At times an agreement about confidentiality will be express, as when there is a written agreement between the parties specifying that Defendants will not disclose or use the information unless authorized to do so. At other times an agreement about confidentiality will be implicit from the circumstances of the parties' dealings. You may find a confidential relationship existed between the parties based either on an express agreement between the parties or one implied from the circumstances of their dealings.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.04 [2]

C:\Document\#11150 v1 - Final Instructions 2 wpd

20

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Wrongful Use or Disclosure

You must determine whether Defendants wrongfully used or wrongfully disclosed the trade secret in question.

A Defendant who has acquired trade secret information by improper means has no right to use or to disclose the information in any way whatever. Thus, any use or disclosure by a Defendant who has acquired a trade secret by improper means is wrongful.

A Defendant who originally acquired information through a confidential relationship may not disclose such information in any way that goes beyond the scope of authorization it received from Plaintiffs regarding use and disclosure. That is, a person receiving trade secret information in confidence may use or disclose the information only in strict accordance with the understanding under which the information was given to the person. Any other use or disclosure is wrongful.

A person who comes into possession of trade secret information without realizing that is has been, for example, acquired through improper means, or who acquires the information by mistake or accident not having reason to believe that it belongs to another, is authorized to use that information only as long as the person does not know, and does not have reason to know, that the information in fact belongs to another. Hence a Defendant who has acquired trade secret information in a manner that does not give rise to liability initially is nonetheless liable for the use or disclosure of that information after defendant is informed or are put on notice by other facts that it has acquired trade secret information that rightfully belongs to Plaintiffs.

Granted _____
Denied _____
Modified _____
Withdrawn _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.05

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. ___.**

**Wrongful Use**

If you find that the information provided to Fleet National Bank was used solely in

connection with its intended use as part of the loan evaluation process, then you must find that

Defendant Fleet National Bank did not misappropriate Plaintiffs' alleged trade secrets.


Granted          _____
Denied           _____
Modified         _____
Withdrawn        _____


*Venago River Corp. v. NIPSCO Indus., Inc.*, 1994 WL 702759, *10 (N.D. Ill. December 15, 1994)

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Waiver

The Eiger Defendants and Fleet National Bank contend that, by providing the Master Development Budget to Starwood Capital Group, Inc., Plaintiffs waived any claim that the Eiger Defendants or Fleet Bank wrongfully used or disclosed the Master Development Budget.

The Eiger Defendants further allege that because Plaintiffs have previously denied the existence of a partnership with the Eiger Defendants, Plaintiffs have waived their right to now assert that a valid partnership between Plaintiffs and the Eiger Defendants later existed.

Waiver is the intentional relinquishment or giving up of a known right. It does not arise merely from failure to take action within a reasonable period of time, but may be inferred from conduct or acts putting the other party off its guard and leading it to believe that the right has been waived. However, the acts, conduct, or circumstances relied on to show waiver must clearly indicate that the obligation has in fact been waived. There can be no waiver of a right unless the party alleged to have waived its right to obtain performance of the contract was in possession of all the material facts.

Granted           _____
Denied            _____
Modified          _____
Withdrawn         _____


*Gilman v. Butzloff*, 155 Fla. 888, 22 So.2d 263 (1945); *Destin Savings Bank v. Summerhouse of FWB, Inc.*, 579 So.2d 232 (Fla. 1st DCA 1991); *American Ideal Management, Inc. v. Dale Village, Inc.*, 567 So.2d 497 (Fla. 4th DCA 1990); 11 Fla. Jur. 2d *Contracts* §280.

Business Litigation In Florida (4th ed. 2001), §15.26 (modified).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Estoppel

The Eiger Defendants and Fleet Bank contend that, because Plaintiffs voluntarily provided the Master Development Budget to Starwood Capital Group, Inc., Plaintiffs are estopped from making any claim that the Eiger Defendants wrongfully used or disclosed the spreadsheets.

The Eiger Defendants further allege that because Plaintiffs have previously denied the existence of a partnership with the Eiger Defendants, Plaintiffs are now estopped from asserting that a valid partnership between Plaintiffs and the Eiger Defendants later existed.

The doctrine of equitable estoppel prevents a party from denying or asserting the contrary of any material fact on which, by its words or conduct, it has induced another to rely and thereby change its position in such a way that the other party would suffer injury if such denial or contrary assertion were allowed.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

*Steen v. Scott*, 144 Fla. 702, 198 So. 489 (1940);
*Taylor v. Kenco Chemical & Mfg. Corp.*, 465 So.2d 581 (Fla. 1st DCA 1985); 22 FLA. JUR. 2d *Estoppel and Waiver* §30.

Business Litigation In Florida (4th ed. 2001), §15.81.

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Compensatory Damages

If you find that a Defendant is liable to Plaintiffs for its conduct, then you should consider whether Plaintiffs have suffered monetary damages as a result. You should address the issue of damages, however, only if you first determine that a Defendant is liable to Plaintiffs on any of the bases we have discussed previously.

As with issues of liability, the Plaintiffs have the burden to prove to you that it has suffered harm due to the wrongful conduct of Defendants. I will discuss with you two potential ways to approach such damages: (1) profits lost by Plaintiffs, or (2) benefits gained by Defendants.

Let me now go over these alternatives.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.06 (modified to remove reference to royalties)

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. \_\_\_\_.

### Plaintiffs' Lost Profits

Plaintiffs claim that they have lost profits from misuse of trade secrets. If you find that Plaintiffs would have realized profits from employing trade secrets in their business that they have lost due to the wrongful conduct of Defendants, then you may measure damages by the amount of such lost profits for the particular periods of time that I will cover with you in a moment.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.06[1]

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Defendants' Benefit

You may also consider what benefit Defendants have gained from misuse of Plaintiffs' trade secrets. Regardless of whether you find that Plaintiffs suffered losses, if you find that Defendants benefitted from using a trade secret belonging to Plaintiffs, then you may award the monetary value that you attribute to those benefits as the measure of Plaintiffs' damage.

These two approaches to damages are different in some respects but may also overlap. That is, it may be that Defendants profited from particular sales that Plaintiffs would have made had Defendants not competed using the trade secrets.

In that situation, the two ways of approaching damages that I have just described would measure the identical damages – whether viewed as Plaintiffs' loss or Defendants' gain. The law does not permit a Plaintiff to recover twice for the same damages. Thus you may include as damages both Plaintiffs' lost profits and Defendants' gain only if and to the extent that they do not overlap in this way. Stated in other words, if you were to include lost sales in calculating Plaintiffs' lost profits because Defendants made the sales, then the value of those same sales should be excluded from any calculation of Defendants' gains that you may make.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.06[2]

C \Document\#11150 v1 - Final Instructions 2.wpd

28

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____.**

**Time Period for Damages**

Plaintiffs would be entitled to damages running only for as long as (1) you find that their

trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that

the trade secret afforded Defendants a competitive advantage, such as providing Defendants a head

start in its business.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

ABA Model Jury Instructions, Business Tort Litigation, 3d Ed., Inst. No. 8.06[4]

C \Document\#11150 v1 - Final Instructions 2 wpd

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

**Exemplary Damages Trade Secrets**

If you find that any of the Defendants misappropriated a trade secret from Plaintiffs, then Plaintiffs may be entitled to exemplary or punitive damages. The Court will make the determination of whether Plaintiffs are entitled to such damages, and, if so, the amount of such damages. However, for the Court to consider whether to award punitive damages, you must first find that the Defendants willfully and maliciously misappropriated the Plaintiffs' trade secrets.

An act is "willful" if it is done intentionally and knowingly. An act is "malicious" if it is done with knowledge that it will harm a third party.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____

Plaintiffs' Proposed Instructions, 11/26/01 p. 23 (modified); *Lee Const. Corp. v. Newman*, 143 So. 2d 222 (Fla. 3d DCA 1962 ); *In re Vestel*, 256 B.R. 326 (Bkrtcy. M.D. Fla. 2000)

C \Document\#11150 v1 - Final Instructions 2 wpd

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S
PROPOSED JURY INSTRUCTION NO. _____.**

### Existence of Joint Venture Relationship

The next issue for your consideration is the Plaintiffs' claim that they were engaged in a partnership or a joint venture with the Defendants for the purchase, development, and marketing of the Hammock Dunes Project, and that the Defendants engaged in a course of conduct that wrongfully violated their duties to the Plaintiffs as joint venturers. To recover on this claim, the Plaintiffs must first prove the existence of a joint venture relationship by a greater weight of the evidence.

A joint venture is business relationship that has many of the characteristics of a partnership, but can be less formal and more limited in scope than a partnership.

Granted:         _____
Denied:          _____
Amended:         _____
Withdrawn:       _____

Plaintiffs' Proposed Instructions, 11/26/01, p. 26 (modified)

C \Document\#11150 v1 - Final Instructions 2.wpd

31

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Formation of Partnership or Joint Venture Agreement

A partnership or joint venture is a contract. For Plaintiffs to prevail on their claim that Plaintiffs they entered into a partnership or joint venture in this case, they must show by the greater weight of the evidence each of the following elements:

1.    That Plaintiffs made an offer to one or more of the Eiger Entities or the Lane Defendants that covered certain necessary terms.

2.    That one or more of the Eiger Entities or the Lane Defendants accepted the offer.

3.    That each party gave something of value in return for what they received.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____


1 LexisNexis, Florida Forms of Jury Instructions § 30.02 (2001) (modified); Miller-Dunn Co. v. Green, 154 Fla. 72, 16 So.2d 637 (1944); Trickey v. Stone, 152 So.2d 748 (Fla. 1st DCA 1963).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Agreements to be Reduced to Writing

Although it is not always necessary for the parties to put their agreement into writing, if you find that the parties did not intend to be legally bound until their agreement was written and signed, and the parties did not put their agreement into writing and sign it, then you must find that no contract was formed.

Granted:          _____
Denied:           _____
Amended:          _____
Withdrawn:        _____


1 LexisNexis, Florida Forms of Jury Instructions § 30.11 (2001) (modified); Eastern Airlines, Inc. v. Mobil Oil Corp., 564 F.Supp. 1131 (S.D. Fla. 1983); W. R. Townsend Contr., Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999); Housing Authority of City of Fort Pierce v. Foster, 237 So.2d 569 (Fla. 4th DCA 1970).

C \Document\#11150 v1 - Final Instructions 2 wpd

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Definition of Offer

An offer is a definite proposal to enter into a specific contract. It is not necessary that any particular words be used. However, an offer does not result every time a person suggests to another person the terms of a possible contract. A person who merely suggests the terms of a possible contract may be inviting an offer from the other person. In determining whether Plaintiffs made an offer to any of the Eiger Entities or the Lane Defendants to enter into a partnership or joint venture agreement, you should determine whether a reasonable person in the Defendants' position would have thought that Plaintiffs were making an offer.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.20 (2001) (modified) C. W. Kister Co. v. Hotel Martinique, 44 So.2d 288 (Fla. 1950); Miller-Dunn Co. v. Green, 154 Fla. 72, 16 So.2d 637 (1944); Frissel v. Nichols, 94 Fla. 403, 114 So. 431 (1927); Izadi v. Machado (Gus) Ford, Inc., 550 So.2d 1135 (Fla. 3d DCA 1989).

C \Document\#11150 v1 - Final Instructions 2 wpd

34

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Acceptance

An acceptance is a communication from one person to another person that indicates that

the person making the acceptance agrees to the terms of the other person's offer.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.30 (2001); Kendel v. Pontious, 261 So.2d 167 (Fla. 1972).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Counteroffer

For a binding contract to be formed, the offer must be accepted in its entirety. The offer cannot be accepted in part and rejected in part. For a binding contract to be formed, acceptance of the offer must be absolute, unambiguous, and without condition or reservation. To be valid, the acceptance must not vary from the terms of the offer in any way, whether by omission, addition, or alteration.

Therefore, if you find that any of the Eiger Entities or the Lane Defendants, when presented with an offer to enter into a partnership or joint venture agreement with Plaintiffs, proposed new terms or rejected some terms of the offer, then you must find that no contract was formed, but that said defendant or defendants made a counteroffer.

Granted: _____
Denied: _____
Amended: _____
Withdrawn: _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.35 (2001) (modified) Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539 (Fla. 1947); Sullivan v. Economic Research Properties, 455 So.2d 630 (Fla. 5th DCA 1984); Conger Life Ins. Co. v. Deimel, 441 So.2d 1116 (Fla. 3d DCA 1983); Mintzberg v. Golestaneh, 390 So.2d 759 (Fla. 3d DCA 1980); Florida Towing Corp. v. Oliver J. Olson & Co., 426 F.2d 896 (5th Cir. 1970).

C \Document\#11150 v1 - Final Instructions 2.wpd

36

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Rejection of Offer

An offer terminates as soon as the person to whom the offer was made rejects the entire offer or any of its terms.  Once rejected, the offer cannot be later accepted.

Granted:       _____
Denied:        _____
Amended:       _____
Withdrawn:     _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.36 (2001); Conger Life Ins. Co. v. Deimel, 441 So.2d 1116 (Fla. 3d DCA 1983).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Necessary Terms

To enter into a binding contract, the parties must agree on the necessary terms, or on a specific means for establishing them.  The necessary terms are those of subject matter, quality, quantity, and consideration, which I will explain more about shortly.  As long as the parties have fixed these terms, other terms may be implied from the facts and circumstances.

If you find that Plaintiffs and one or more of the Eiger Entities or the Lane Defendants failed to agree on a necessary term of the alleged partnership or joint venture agreement, then you must find that no partnership or joint venture agreement existed.  If you find that Plaintiffs and Defendants did agree on all necessary terms, then you should go on to consider other issues relating to the alleged partnership or joint venture.

Granted:          _____
Denied:           _____
Amended:          _____
Withdrawn:        _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.50 (2001) (modified); W.R. Townsend Contr., Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999); Innkeepers Int'l, Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1975); Fincher v. Belk-Sawyer Co., 127 So.2d 1130 (Fla. 3d DCA 1961).

C \Document\#11150 v1 - Final Instructions 2 wpd

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Definition of Consideration

Consideration is something of value that is given or agreed to be given in exchange for a promise. For a valid contract to be formed between two parties, each party has to have provided some type of consideration to the other party in exchange for the other party's promise to do or not do something.

It is not necessary that the thing of value offered by the party be of great value or even moderate value. As long as the thing of value has some value, even if the value is slight, the party will have provided sufficient consideration.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____

1 LexisNexis, Florida Forms of Jury Instructions § 30.60 (2001); Mangus v. Presnet, 135 So.2d 417 (Fla. 1961); Frissell v. Nichols, 94 Fla. 403, 114 So. 431 (1927); Wright v. Seaton, Inc., 420 So.2d 623 (Fla. 4th DCA 1982); Balter v. Pan American Bank of Hialeah, 383 So.2d 256 (Fla. 3d DCA 1980); Venice East, Inc. v. Manno, 186 So.2d 71 (Fla. 2d DCA 1966); Lake Sarasota, Inc. v. Pan American Surety Co., 140 So.2d 139 (Fla. 2d DCA 1962); Lamborn v. Slack, 107 So.2d 277 (Fla. 2d DCA 1958).

C \Document\#11150 v1 - Final Instructions 2 wpd

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Partnership or Joint Venture Elements

To establish that a partnership or joint venture relationship existed in this case, the Plaintiffs have the burden of proving, by the greater weight of the evidence, each of the following five elements:

1a  <u>A community of interest in the performance of a common purpose</u>. If you find from the evidence that there was a common of interest between the Plaintiffs and the Defendants to jointly purchase, develop, and market the Hammock Dunes Project, then the first element of a joint venture has been established.

2a  <u>Joint control or right of control</u>. Each of the parties must have a joint control or right of control over the joint venture.

3a  <u>A joint proprietary interest</u>.

4a  <u>A right to share in the profits</u>. To prove the existence of a joint venture, the Plaintiffs must prove that there was an agreement, which may be express or implied, under which it was entitled to share in the profits. It is not necessary that the profits be divided equally, but only that they be shared on some basis.

5a  <u>A duty to share in any losses</u>. Each member of a joint venture must have a duty to share the burden of any losses sustained by the enterprise; however, this duty does not necessarily mean that each joint venturer must be obligated to contribute funds towards the payment of debts.

Granted:    _____
Denied:     _____
Amended:    _____
Withdrawn:  _____

Plaintiffs' Proposed Instructions, 11/26/01 p. 27 -28 (modified)

**DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

**Joint Venture  Breach of Fiduciary Duties**

If you find from the evidence that the parties were engaged in a joint venture to purchase and develop Hammock Dunes, then you must next determine whether the Defendants, by their conduct, violated any fiduciary duty or obligation that they owed to the Plaintiffs as joint venturers.

When parties are engaged in a joint venture, the law provides that there is a fiduciary relationship between them.  In a fiduciary relationship, each party owes to the others certain duties requiring them to deal with each other fairly and in good faith.  Under law, a joint venturer's duty of loyalty to the other joint venturers includes the following:

1a  To be accountable to the joint venture and hold any profit, benefit, opportunity or property for the joint venture;

2a  To refrain from adversely dealing with the joint venture in the conduct of the venture's business; and

3a  To abstain from competing with the joint venture in the conduct of the venture's business.

A joint venturer must discharge the duties to the joint venture and the other joint venturers and exercise any rights consistently with the obligation of good faith and fair dealing.

If you find from the evidence and prior instructions that any of the Lane Defendants, or H.D. Associates and the Eiger Companies, violated their fiduciary duties to the Plaintiffs as joint venturers, you must then fix the amount of money which reasonably, fairly and fully compensates Plaintiffs for the losses occasioned by Defendants' conduct.

You should consider the following elements of damage, to the extent you find them proved by the greater weight of the evidence:

C \Document\#11150 v1 - Final Instructions 2 wpd

42

(a)    Any Defendant that wrongfully left the joint venture is liable to the Plaintiffs for damages caused by leaving; or

(b)    Any Defendant that wrongfully took the joint venture opportunity to purchase and develop the Hammock Dunes Project is liable to the Plaintiffs for the loss, if any, suffered by the Plaintiffs as a result of the loss of its ability to participate in that joint venture opportunity.

Granted:    _____
Denied:    _____
Amended: _____
Withdrawn:_____

Plaintiffs' Proposed Instructions, 11/26/01 p. 29-30 (modified)

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Promissory Estoppel

The next matter for your consideration is Plaintiffs' claim that the Defendants (other than Fleet National Bank) made certain promises that the Plaintiffs relied upon and in the interest of justice, these Defendants cannot deny their obligations under these promises.

In this instance, the Plaintiffs claim that Defendants promised that Plaintiffs would be employed and compensated consistent with the terms of the alleged Management, Development and Marketing Agreements. Specifically, Plaintiffs claim that Defendants(other than Fleet Bank) promised the following compensation package and profit participation to Plaintiffs:

1a    Plaintiffs would complete the necessary due diligence process to acquire the Hammock Dunes Project, and these Defendants would compensate Plaintiffs one percent (1%) of the cost of acquiring the Hammock Dunes Project;

2a    Upon acquisition of the Hammock Dunes Project, Plaintiffs would be in charge of the operation, marketing and management of the Hammock Dunes Project, and Defendants would pay Plaintiffs a management fee of $12,000 per month for these services;

3a    Plaintiffs be the real estate broker for the purpose of selling property within the Hammock Dunes Project, and these Defendants would pay Plaintiffs a four percent (4%) commission at the completion of each sale;

4a    Finally, Plaintiffs would be entitled to a share of the profits gained by the Hammock Dunes Project in the amount of thirty percent (30%), after a twelve percent (12%) return to capital and repayment of all capital and debt.

To prevail on this claim, Plaintiffs must prove each of the following facts by the greater weight of the evidence:

First:    That the Defendants (other than Fleet Bank) made a promise to the Plaintiffs;

Second:    That the Plaintiffs relied on that promise to Plaintiffs' detriment;

C \Document\#11150 v1 - Final Instructions 2 wpd

Third:        That the Defendants (other than Fleet Bank) reasonably should have expected that the promise would cause or induce Plaintiffs to continue to act and incur expenses;

Fourth:       That injustice can only be avoided by enforcing the terms of the promise against the Defendants.

If you find for these Defendants, you need not address the issue of damages. If you find for the Plaintiffs, you should award Plaintiffs an amount of money that the greater weight of the evidence shows will fairly and adequately compensate for the loss or damage as was caused by Defendants' failure to live up to their promises.

Granted:      _____
Denied:       _____
Amended:      _____
Withdrawn:    _____

Plaintiffs' Proposed Instructions, 11/26/01 p. 33-34 (modified)

C \Document\#11150 v1 - Final Instructions 2.wpd

45

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Promissory Estoppel-Mere Acquiescence Insufficient

To find a defendant liable for promissory estoppel that particular defendant cannot merely have acquiesced, failed to act or remained silent in response to statements or conduct by Plaintiffs. Instead, you must specifically find that the particular defendant made an express, affirmative written or oral promise to employ or compensate Plaintiffs.

Granted     _____
Denied     _____
Modified     _____
Withdrawn     _____

*W.R. Grace & Co. v. Geodata Serv., Inc.*, 547 So.2d 919, 924 (Fla. 1989); *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660 (Fla. 1987); *Travelers Indemnity Co. v. Billue*, 763 So. 2d 1204 (Fla. 1st DCA 2000).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Interference with Contract or with Prospective Business Relations

The next issue for your determination is the Plaintiffs' claim against H.D. Associates and the Eiger Companies, and the Eiger Defendants and Eiger Individuals that these Defendants, or any of them, interfered with business relations between Plaintiffs and the Lane Defendants and did so improperly and intentionally; and if so, such interference caused damage to Plaintiffs.

The first question is whether these Defendants interfered with Plaintiffs' business relations or contract with the Lane Defendants by inducing or otherwise causing Plaintiffs to accept different terms of employment and compensation which were substantially less favorable than those in Plaintiffs' alleged partnership agreement with the Lane Defendants.

Intentional interference with another person's contract or business relationship is improper. If these Defendants did interfere with Plaintiffs' business relations with the Lane Defendants, then the next question is whether, as contended by Plaintiffs, the interference by the Eiger Defendants was improper. A person who enjoys business relations with another is entitled to protection from improper interference with that relationship. However, another person is entitled to advance his own financial interest so long as he has a proper reason or motive and he uses proper methods.

A person who interferes with the business relations of another with the motive and purpose, at least in part, to advance his own business or financial interests, does not interfere with an improper motive. But, one who interferes only out of spite, or to do injury to others, or for other bad motive, has no justification, and his interference is improper.

If the Eiger Defendants' or Eiger Individuals' interference was improper, the last question is whether it was intentional as well. Interference is intentional if the person interfering knows of the

business relationship with which he is interfering, knows he is interfering with that relationship, and desires to interfere or knows that interference is substantially certain to occur as a result of his action.

If you find for the Eiger Defendants and Eiger Individuals, you will not consider the matter of damages. But, if you find for Plaintiffs, you should award Plaintiffs an amount of money that the greater weight of the evidence shows will fairly and adequately compensate for such loss or damage as was caused by the intentional interference.

Granted: _____
Denied: _____
Amended: _____
Withdrawn: _____

Plaintiffs' Proposed Instructions of 11/26/01 p. 36-37 (modified)

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Tortious Interference-Existing or Business Relationship

For any of the Eiger Entity Defendants or the Eiger Individual Defendants to be liable for tortious interference with or business relationship, you must find that there was an existing business relationship between Plaintiffs and one or more of the Lane Defendants at the time of the alleged interference. Furthermore, a party involved in a business relationship with another party cannot interfere with its own business relationship. Thus, if you find that the Plaintiffs' alleged contractual or business relationship with one or more of the Lane Defendants had terminated at the time of the alleged interference, then you must find in favor of Defendants on this claim.

Granted      _____
Denied      _____
Modified      _____
Withdrawn      _____

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994).

C.\Document\#11150 v1 - Final Instructions 2.wpd

49

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Tortious Interference Justification Defense

If you find by the greater weight of the evidence that the Eiger Defendants did intentionally interfere with Plaintiffs' alleged contractual or business relationship with Lane, Barnett Lane and JTL Capital, then you must consider whether the Eiger Defendants' conduct was justified. The Eiger Defendants have asserted that their conduct was justified because it occurred during the course of their competition with Plaintiffs. If you find that the Eiger Defendants' conduct does relate to competition between the Eiger Defendants and Plaintiffs, and that the Eiger Defendants' conduct was motivated, at least in part, by such competition, and that the Eiger Defendants did not use wrongful means to compete, then the Eiger Defendants' conduct was justified and you must find for the Eiger Defendants on Plaintiffs' claim of tortious interference with contractual of business relations.

"Wrongful means" includes the use physical violence, fraud, civil suits and criminal prosecutions, but does not include the use of persuasion or the exertion of limited economic pressure.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

*Jay v. Mobley*, 783 So. 2d 297 (Fla. 4th DCA 2001) (*citing* Restatement (Second) of Torts, § 768; *Perez v. Rivero*, 534 So.2d 914 (Fla. 3d DCA 1988); *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.*, 384 So.2d 303 (Fla. 5th DCA 1980).

Business Litigation In Florida, §15.43 (4th ed. 2001); Restatement (Second) of Torts, § 768, comment on clause (b).

C \Document\#11150 v1 - Final Instructions 2.wpd

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Tortious Interference Justification Defense

If you find that the Eiger Defendants did intentionally interfere with the Plaintiffs' alleged contractual or business relationship with Lane, Barnett Lane and JTL Capital, then such conduct may be justified if the Eiger Defendants' conduct was without malice and was intended to protect its own respective financial interest in the contract . If you find that such conduct was justified then you must find for the Eiger Defendants on Plaintiffs' claim of tortious interference with contractual or business relations.

Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____

*Security Title Guarantee Corp. of Baltimore v. McDill Columbus Corp.*, 543 So.2d 852 (Fla. 2d DCA 1989); *Genet Co. v. Annheuser-Busch, Inc.*, 498 So.2d 683 (Fla. 3d DCA 1986); *Babson Bros. Co. v. Allison*, 337 So.2d 848 (Fla. 1st DCA 1976); REINSTATEMENT (SECOND) OF TORTS §769 (ALI-ABA 1977).

Business Litigation In Florida (4th ed. 2001), §15.44 (Modified); See also Fla. Std. Jury Inst. (Civ.) MI 7.2.

## DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Tortious Interference Justification Defense

If you find that the Eiger Defendants' conduct was justified because the Eiger Defendants acted to protect their own competitive or financial interest, then it is immaterial that the Eiger Defendants may also have received a personal benefit in interfering with Plaintiffs' alleged contractual or business relationship with Lane, Barnett Lane and JTL Capital.  If you find, however, that the Eiger Defendants' conduct was not directed to protecting their individual competitive or financial interest but that it was directed solely to harm Plaintiffs, or to gratify the Eiger Defendants spitefulness, even if it also incidentally furthered their economic interests, then the Eiger Defendants conduct was not justified.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

*O.E. Smith's Sons, Inc. v. George*, 545 So.2d 298 (Fla. 1st DCA 1989); *McCurdy v. Collis*, 508 So.2d 380 (Fla. 1st DCA 1987).

Business Litigation In Florida (4th ed. 2001), §15.46

C:\Document\#11150 v1 - Final Instructions 2 wpd

52

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Tortious Interference-Existing Contractual Business Relationship

In order to find that Plaintiffs had an existing contractual or business relationship with one or more of the Lane Defendants at the time of the alleged interference, you must find that at that time Plaintiffs had a business relationship with one or more of the Lane Defendants evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if there had been no interference.

Granted       _____
Denied        _____
Modified      _____
Withdrawn     _____

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Torious Interference-Intentional Interference

In order to be liable for interfering with the alleged or business relationship between Plaintiffs and Lane, Barnett Lane and JTL Capital, the Eiger Entity Defendants or the Eiger Individual Defendants must have acted intentionally to interfere in the business relationship. Therefore, Defendants must have known of the existence of the contractual or business relationship and must have either intended to cause the breach of the relationship or acted knowing that their actions were likely to cause that result. The Eiger Entity Defendants, the Eiger Individual Defendants need not bear ill will toward Plaintiffs, although evidence of malice will bear on whether the Eiger Entity Defendants, the Eiger Individual Defendants acted unjustifiably.

Granted      _____
Denied       _____
Modified     _____
Withdrawn    _____

*See Tamiami Trail Tours v. Cotton*, 463 So. 2d 1126 (Fla. 1985);  Business Litigation In Florida, §15.41 (4th ed. 2001).

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____ .**

## Conspiracy

The next issue for your consideration is Plaintiffs' claim that two or more of the Defendants conspired to harm the Plaintiffs. You are instructed that when one person conspires with another person to commit an intentional or willful act, those parties are each liable for the injury or losses that are caused to the Plaintiffs by the conspiracy to commit those acts.

If you find from the evidence that the acts committed against the Plaintiffs were committed pursuant to a mutual agreement between any two of the Defendants to act to the detriment of the Plaintiffs, that these acts were carried out against the Plaintiffs in accordance with that mutual agreement, and that the Plaintiffs suffered harm as a result of those acts, then you shall find for the Plaintiffs. If you find for Plaintiffs, you should award Plaintiffs an amount of money that the greater weight of the evidence shows will fairly and adequately compensate for such loss or damage as was caused by the conspiracy.

Granted:        _____
Denied:         _____
Amended:        _____
Withdrawn:      _____

Plaintiffs' Proposed Instructions, 11/26/01, p. 37

C \Document\#11150 v1 - Final Instructions 2.wpd

56

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____**

**Damages**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.


Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____


Pattern Jury Instructions, Rule 7.1, 11th Cir., 2000 Ed.

## DEFENDANTS  EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S REQUESTED JURY INSTRUCTION NO. _____.

### Lost Profits

Plaintiffs assert the right to recover its lost profits from the Eiger Entity Defendants, Eiger Individual Defendants and/or Fleet Bank.  In order to recover its lost profits Plaintiffs must establish by a greater weight of the evidence that there is evidence of an actual loss that is neither too speculative nor conjectural and that the profits lost were as a direct result of the defendant's actions.

Evidence of lost profits is considered too speculative if it is insufficient to satisfy the mind of a prudent and impartial person that such lost profits exist in the amount claimed. Further, lost profits are considered too speculative when they are based purely on Plaintiff's "estimates."


Granted        _____
Denied         _____
Modified       _____
Withdrawn      _____


See *W.W. Gay Mechanical Contractor. Co. v. Wharfside Two, Ltd.*, 545 So. 2d 1348 (Fla. 1989);
*Douglas Fertilizer & Chem. v. McClung Landscaping*, 459 So. 2d 335 (Fla. 5th DCA 1984);
*Forest's Mens Shop v. Schmidt*, 536 So. 2d 352 (Fla. 3d DCA 1975), *cert denied*, 322 So.2d 913
(Fla. 1975); *Garay v. State of Florida*, 708 So. 2d 631 (Fla.  5th DCA 1998).

## DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.

### Reduction to Present Value Inflation and Calculation of Below-Market Discount Rate

If you should find that Plaintiffs have proved a loss of future earnings, any amount you award for that loss must be reduced to present value. This must be done in order to take into account the fact that the award will be paid now, and Plaintiffs will have the use of that money now and in the near future, even though the total loss will not be sustained until later in the future.

In order to make a reasonable adjustment for the present use of money representing a lump-sum payment of anticipated future loss, you must apply what is called a below-market discount rate.

In making that calculation you should first determine the net, after-tax income the Plaintiff would have received during the remainder of the Plaintiffs' working life, including any increases the Plaintiff would have received as a result of any factors other than inflation. This future income stream must then be discounted or reduced by applying a below-market discount rate, which represents the estimated market interest rate the award could be expected to earn over the period of the loss (adjusted for the effect of any income tax on the interest so earned), and then reduced by the estimated rate of future price inflation.

You have heard the testimony of the economists concerning this calculation and their opinions concerning the appropriate below-market discount rate; and, while you are not bound by those opinions, you may rely upon them as an aid in resolving this issue.

Granted: _____
Denied: _____
Amended: _____
Withdrawn: _____

C \Document\#11150 v1 - Final Instructions 2.wpd

60

Pattern Jury Instructions, Rule 5.1, 11th Cir., 2000 Ed.

C \Document\#11150 v1 - Final Instructions 2 wpd

61

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Duty to Mitigate Damages

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages – that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that the Plaintiffs, failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of the Plaintiff's damages by the amount that could have been reasonably realized if the Plaintiff had taken advantage of such opportunity.

Granted      _____
Denied      _____
Modified      _____
Withdrawn      _____

Pattern Jury Instructions, Rule 1.1, 11th Cir., 2000 Ed.

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Unclean Hands

If you find that Plaintiffs have committed misconduct relating to any of Plaintiffs' claims then you should deny the relief sought by Plaintiff as to those specific claims. Such misconduct need not be illegal or criminal but Plaintiffs must be free of inequitable conduct related to the particular controversy.

Granted _____
Denied _____
Modified _____
Withdrawn _____

*See Emery v. International Glass & Mfg., Inc.*, 249 So. 2d 496 (Fla. 2d DCA 1971); 22 Fla. Jur. 2d §§ 78-81.

**DEFENDANTS EIGER ENTITIES, EIGER INDIVIDUALS AND FLEET BANK'S PROPOSED JURY INSTRUCTION NO. _____.**

### Election of Foreman; Verdict Forms

When you retire to the jury room, you should select one of your number to act as foreman [or forewoman] to preside over your deliberations and sign your verdict[s]. Your verdict[s] must be unanimous, that is, your verdict[s] must be agreed by each of you.

Granted:      _____
Denied:       _____
Amended:      _____
Withdrawn:    _____

Plaintiffs' Proposed Instructions, 11/26/01 p. 37 (modified)

C \Document\#11150 v1 - Final Instructions 2.wpd

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P.

By: _____

    Daniel F. Molony
    Florida Bar No. 271330
    James B. Murphy
    Florida Bar No. 287598
    Paul W. Rebein
    Florida Bar No.
100 North Tampa Street, Suite 2700
Tampa, Florida 33602
(813) 202-7100 Phone
(813) 221-8837 Facsimile

ATTORNEYS FOR FLEET
NATIONAL BANK

PEZZULLI & LOEWINSHON, L.L.P.

By: _____

    Alan S. Loewinsohn
    State Bar No. 12481600
    Carol E. Farquhar
    State Bar No. 06828300
18383 Preston Road, Suite 100
Dallas, Texas   75252
(972) 713-1300 Phone
(972) 713-1313 Facsimile

Timothy A. Andreu, Jr.
State Bar No. 443778
Glenn Rasmussen Fogarty, P.A.
100 South Ashley Drive, Suite 1300
Tampa, FL 33602
(813) 229-3333
Fax: (813) 229-5946

ATTORNEYS FOR EIGER FUND, L.L.P.
EIGER, INC., EIGER PARTNERS, L.P.
2M DUNES, L.L.C., DUNES OPERATING
COMPANY, L.P., H.D. ASSOCIATES, L.P.,
PAUL E. ROWSEY, III, C. TODD MILLER,
DAVID M. JACOBS, AND WILLIAM S.
BUCHANAN

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P.

By: _____
Daniel F. Molony
Florida Bar No. 271330
James B. Murphy
Florida Bar No. 287598
Paul W. Rebein
Florida Bar No.
100 North Tampa Street, Suite 2700
Tampa, Florida 33602
(813) 202-7100 Phone
(813) 221-8837 Facsimile

ATTORNEYS FOR FLEET
NATIONAL BANK

PEZZULLI & LOEWINSOHN, L.L.P.

By: _____
Alan S. Loewinsohn
State Bar No. 12481600
Carol E. Farquhar
State Bar No. 06828300
18383 Preston Road, Suite 100
Dallas, Texas 75252
(972) 713-1300 Phone
(972) 713-1313 Facsimile

Timothy A. Andreu, Jr.
State Bar No. 443778
Glenn Rasmussen Fogarty, P.A.
100 South Ashley Drive, Suite 1300
Tampa, FL 33602
(813) 229-3333
Fax: (813) 229-5946

ATTORNEYS FOR EIGER FUND, L.L.P.
EIGER, INC., EIGER PARTNERS, L.P.
2M DUNES, L.L.C., DUNES OPERATING
COMPANY, L.P., H.D. ASSOCIATES, L.P.,
PAUL E. ROWSEY, III, C. TODD MILLER,

DAVID M. JACOBS, AND WILLIAM S.
BUCHANAN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served on the following

counsel of record on this 30th day of November, 2001 via the method indicated:

Gregory J. Orcutt                                    Via telecopy and U.S. Mail
Bricklemyer, Smolker & Bolves, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, Florida   33602

Alan Gerlach                                         Via telecopy and U.S. Mail
Broad & Cassel
390 N. Orange Avenue, Suite 1100
Orlando, FL   32801

John W. Greene                                       Via telecopy and U. S. Mail
Hill Gilstrap
1400 West Abram
Arlington, TX 76013

KF 8484
. A65
M 64
1996

MODEL JURY INSTRUCTIONS

# Business Torts Litigation

Third Edition

Business Torts Litigation
Subcommittee on Jury Instructions
SECTION OF LITIGATION
AMERICAN BAR ASSOCIATION

ETSON UNIVERSIT.

OCT 2 9 1996

LAW LIBRARY

xxi
xxiii
xxv
xxix

5

8

9
9
11
14
16
16
17
18
19
20
21

22
22
23

iii

## 8.02 Prima Facie Case

To recover on the trade secret claims plaintiff has made in this case, plaintiff must prove each of the following four elements by a preponderance of the evidence:

(1) that plaintiff possessed a trade secret;

(2) that defendant acquired the trade secret (a) through improper means, (b) through a confidential relationship with plaintiff, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without plaintiff's permission;

(3) that defendant used or disclosed the trade secret without plaintiff's permission [note that under the UTSA, improper acquisition alone, without use or disclosure, is sufficient to establish liability]; and

(4) that (a) plaintiff suffered harm as a direct and proximate result of defendant's use or disclosure of plaintiff's trade secret, or (b) defendant obtained benefit from such use or disclosure.

I will go over each of these elements more specifically in the following instructions.

If after you consider all of the evidence you find that plaintiff has proven each of these elements in accordance with the legal requirements as I describe them to you, then you will consider the amount of money damages to be awarded to plaintiff, by following the instructions that I will give you relating to damages.

If, on the other hand, you find that plaintiff has not proven one or more of these elements, then defendant is not liable.

### Comment

*Restatement*

Despite the varying degrees of detail with which courts establish the elements of a prima facie case for misappropriation of trade secrets, "the criteria are essentially the same in all instances." 1 Melvin F. *Jager, Trade Secrets Law* [hereinafter *Jager*] § 504[1] (1991) (and cases cited therein). *See also* 2 *Mil-*

*gram, supra,* § 7.07[1], at 7-213–25 (and cases cited therein). The above jury instruction was distilled from cases such as the following: *In re Certain Apparatus for Continuous Production of Copper Rod,* (ITC 1979); *Greenberg v. Croydon Plastics, Co.,* 378 F. Supp. 806, 811 (E.D. Pa.), *vacated on other grounds,* (E.D. Pa. 1974); *Rohm and Haas Co. v. Adco Chemical Co.,* 689 F.2d 424 (3d Cir. 1982); *Taco Cabana International, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1123 (5th Cir. 1991).

*Uniform Act*

One difference between the UTSA and the *Restatement* approach is that under the UTSA, improper acquisition alone is sufficient to establish liability for trade secret misappropriation. UTSA § 1(2). *See, e.g., Minuteman, Inc. v. Alexander,* 434 N.W.2d 773, 778 (Wis. 1989); *see also* Richard J. Cipolla Jr., "A Practitioner's Guide to Oklahoma Trade Secrets Law, Past, Present and Future: The Uniform Trade Secrets Act," 27 Tulsa L.J. 137 n.152 (damages available for improper acquisition alone, as acquisition may diminish indirect value of trade secret). *But see Ins. Assoc. Corp. v. Hansen,* 782 P.2d 1230, 1235 (Idaho 1989) (even if plaintiff possessed trade secret, claim fails without proof of use); Ala. Code § 8-27-3, 4 (1993) (improper disclosure or use in addition to acquisition required for liability under Alabama act).

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 71 of 87 PageID 2334

as "information" that has economic value, is not generally known or readily ascertainable, and is secret); Colo. Rev. Stat. § 7-74-102(4) (1990 supp. 1995) (trade secret definition differs from UTSA in that information *must* relate to plaintiff's business and there is no requirement that type of secrecy-preserving measures employed be reasonable; definition encompasses "the whole or any portion or phase of any scientific or technical information, design . . . procedure . . . improvement, confidential business or financial information, listing of names, addresses or telephone numbers, or other information relating to any business or profession which is secret and of value"); Conn. Gen. Stat. § 35-51(d) (1987 supp. 1996) ("formula, pattern and compilation" are deleted from UTSA's definition, and "drawing, cost data and customer list" are added); Ga. Code Ann. § 10-1-761(4) (1994 supp. 1995) and Ill. Rev. Stat. ch. 765, para. 2(d), cmts. (1993 supp. 1996) (in addition to types of information listed in UTSA, Georgia and Illinois acts add "information, including, but not limited to," technical or nontechnical data, a drawing, financial data, financial plans, product plans, or list of actual or potential customers or suppliers; also, under Illinois act, term "program" meant to cover computer programs and term "information" intended to include know-how and ideas used in computer science and biotechnology); Kan. Stat. Ann. § 60-3320(4) (1994) (includes "data" in definition of trade secret); Iowa Code § 550.2(4) (1987 supp. 1996), Me. Rev. Stat. Ann. tit. 10, § 1542(4) (1980 supp. 1995), Neb. Rev. Stat. § 87-502(4) (1994), Va. Code Ann. § 59-1-336 (1992 supp. 1995), and W. Va. Code § 47-22-1(d) (1995) (these statutes broaden trade secret definition by explicitly making list of types of information nonexclusive; in addition, Nebraska statute adds "drawing" and "code" to list of information that may constitute trade secret); Minn. Stat. § 325c.01(5) (1995 supp. 1996) (adds words "information or computer software, including a formula . . ." to definition of trade secret); N.C. Gen. Stat § 66-152(3) (1995) (North Carolina act specifies that trade secret is business or technical information, and also adds "compilation of information to the UTSA definition"); Or. Rev. Stat. § 646.461(4) (1988) (Oregon act adds drawing, cost data, and customer list to UTSA definition of trade secret).

## 8.03[1]   Secrecy

To determine that a trade secret exists you must first decide whether the information was indeed secret when defendant's allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information. In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

The secrecy requirement for information to qualify as a trade secret, however, does not mean that absolute secrecy must be maintained—in the sense that no one else in the world possesses the information. Rather, a plaintiff must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.

### Comment

Although neither the *Restatement* nor the UTSA specifically require a finding of "novelty," courts routinely require some degree of novelty or originality for information to be accorded trade secret status. Although information need not evince the same degree of novelty required for patent protection, it must possess sufficient originality to separate it from everyday knowledge or knowledge commonly used by people in a trade or business. *See, e.g., Northup v Reish,* 200 F.2d 924 (7th Cir. 1953) (Restatement case); *Corroon & Black-Rutters & Roberts, Inc. v. Hosch,* 325 N.W.2d 883, 893 (Wis. 1982) (dissenting opinion); *Technicon Data Sys. Corp. v. Curtis 1000, Inc.,* 7644 1984 WL 8268 (Del. Ch. Aug. 21, 1984) (Delaware Trade Secret Act case); *Electro-Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 899 (Minn. 1983) (Minnesota Trade Secret Act case); *Dionne v. Southeast Foam Converting & Packaging, Inc.,* 397 S.E.2d 110, 113–14 (Va. 1990) (Virginia Trade Secret Act).

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 72 of 87 PageID 2335

*Restatement*

The case law is replete with references to the requirement that information be secret to be accorded trade secret protection. *See, e.g , J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.,* 260 N E.2d 723, 730 (Mass 1970); *Zoecon Indus., Div. of Zoecon Corp. v. Am. Stockman Tag Co ,* 713 F 2d 1174, 1179 (5th Cir. 1983), *K-2 Ski Co. v. Head Ski Co.,* 506 F 2d 471, 473–74 (9th Cir. 1974); *Speedry Chem. Prods., Inc. v. Carter's Ink Co ,* 306 F 2d 328, 331 (2d Cir. 1962); *Kubik, Inc v. Hull,* 224 N.W.2d 80, 91–93 (Mich. Ct. App. 1974).

*Uniform Act*

To determine whether information is secret, the courts in UTSA states generally focus on whether the information is generally known or readily ascertainable using proper means. *See Pub. Sys , Inc. v. Towry,* 587 So. 2d 969, 973, (Ala. 1991) (information that is readily available or derived from publicly available information without investment of substantial time, effort, and research is not protectable); *Allen v. Johar, Inc.,* 823 S.W.2d 824 (Ark. 1992) (information accorded trade secret status when it contained personnel information not generally known and developed through expenditure of much time and money); *Electro-Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 899, (Minn. Ct. App. 1985); *Fleming Sales, Co. v Bailey,* 611 F. Supp. 507, 513 (N.D. Ill. 1985) (holding that when information known throughout an industry such information not protectable regardless of secrecy measures employed); *Kozuch v. CRA-MAR Video Ctr., Inc.,* 478 N.E.2d 110, 113 (Ind. Ct. App. 1985) (holding trade secret does not exist when information reasonably discoverable from other sources); *see also Scott v Snelling & Snelling, Inc ,* 732 F. Supp 1034, 1044 (N.D. Cal. 1990); *Colorado Supply Co. v. Stewart,* 797 P 2d 1303, 1306 (Colo. Ct. App. 1990), *cert. denied,* 91SC171 1991 Colo. LEXIS 708 (Colo. Feb 1991); *Kavanaugh v. Stump,* 592 So. 2d 1231 (Fla. Dist. Ct. App. 1992); *Xpert Automation Sys , Corp v. Vibromatic Co ,* 569 N.E.2d 351, 356 (Ind. Ct. App. 1991); *Steenhoven v. College Life Ins. Co.,* 458 N.E.2d 661, 666–67 (Ind. Ct. App.), *reh'g denied,* 460 N.E 2d

374 ∎

973 (Ind. Ct App. 1984); *Mid-America Nat'l Agency, Inc. v. Albert H. Wohlers & Co.,* (D. Kan. 1988).

The California and Illinois statutes do not include the requirement that trade secret information "not be readily ascertainable by proper means." Under these statutes, therefore, a trade secret may consist of information that could have been legally obtained. The "readily ascertainable" standard is, however, available as a defense in both states. *See* Cal. Civ. Code § 3426 *et seq ,* cmts. (1970); Ill. Rev. Stat. ch. 765 para. 2(a), cmts. (1996); *Gillis Associated Indus., Inc. v. Cart-All, Inc ,* 564 N E.2d 881, 886 (Ill. App Ct. 1990); *Rockwell Graphic Sys. v. Dev Indus.,* 730 F. Supp. 171, 176–77 (N.D. Ill. 1990), *rev'd on other grounds,* 925 F.2d 174 (7th Cir. 1991).

∎ 375

Case 8:00-cv-01026-JDW    Document 186    Filed 11/30/01    Page 73 of 87    PageID 2336

### 8.03[2]   Reasonable Measures to Protect Secrecy

Plaintiff must prove that it took reasonable measures to protect the secrecy of information for the information to be accorded trade secret protection. There are no absolute requirements that define what measures are "reasonable" in a given situation. That depends on the circumstances of each case, but factors you may wish to consider in evaluating whether "reasonable" measures were taken here could include the following:

(1) whether plaintiff made it a practice to apprise its employees or others involved with its business that the information is a trade secret and/or is to be kept confidential;

(2) whether plaintiff required employees or others involved in its business or with its business to sign confidentiality agreements or covenants not to compete regarding the information;

(3) whether plaintiff restricted access to the information on a "need to know basis"; or

(4) whether plaintiff generally maintained tight security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

### Comment

This instruction lists four of the most commonly discussed measures for protecting the secrecy of trade secret information, but ultimately the test is not readily defensible in terms of whether any one (or even any group) of specific factors is present or absent and, to what degree. Relevant factors will most often depend on the facts of a particular case; some of the factors listed here may not be relevant at all. In fact, factors not listed here may, in some circumstances, be enough to establish reasonable secrecy measures. This list then, is not meant to be, and cannot be, comprehensive.

### Restatement

See *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 851–52 (1st Cir. 1985) ("Heroic measures to ensure secrecy are not essential,

but reasonable precautions must be taken."), *cert. denied,* 475 U.S. 1016 (1986); *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.,* 260 N.E.2d 723, 731 (Mass. 1970) (reasonable security precautions include "constant warnings to all persons to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it"); *Ecolab, Inc. v. Paolo,* 753 F. Supp. 1100, 1112 (E.D.N.Y. 1991) (reasonable security measures to protect trade secrets include employee confidentiality agreements and need-to-know disclosure to employees); *Anaconda Co. v. Metric Tool & Die Co.,* 485 F. Supp. 410, 422 (E.D. Pa. 1980) ("Although the secrecy maintained was by no means absolute, it was such that except by the use of improper means, defendant would have had difficulty in acquiring the information."); *Jostens, Inc. v. Nat'l Computer Sys., Inc.,* 318 N.W.2d 691, 700–01, (Minn. 1982) (inadequate security measures found when no confidentiality policy, and information plaintiff sought to protect published in article not marked "secret" or "confidential"); *E.I. DuPont de Nemours & Co. v. Christopher,* 431 F.2d 1012, 1016–17 (5th Cir. 1970) (holding reasonable security measures do not require plaintiff build impenetrable fortress around its construction site to shield secrets from competitor's aerial photography).

### Uniform Act

See *Allied Supply Co. v. Brown,* 585 So. 2d 33, 36 (Ala. 1991) (holding adequate security measures not taken when employees had free access to customer lists, lists not marked "confidential," and many copies available within company), *United Centrifugal Pumps v. Cusimano,* 708 F. Supp. 1038 (W.D. Ark. 1988) (adequate measures to maintain secrecy include disclosure only upon execution of confidentiality agreement, limited access to location where trade secret used, surveillance of files containing information, and computer information accessible only by special password); *Allen v. Johar, Inc.,* 823 S.W.2d 824 (Ark. 1992) (adequate secrecy measures found when information not allowed out of plaintiff's building and old information destroyed); *Vacco Indus., Inc. v. Van Den Berg,* 6 Cal. Rptr. 602 (Cal. Ct. App. 1992), (secrecy mea-

376 ■

■ 377

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 74 of 87 PageID 2337

sures adequate when employer kept visitor logs, required sign-out sheets for confidential documents, maintained document destruction policy, and required that confidential information be kept in locked cabinets); *Network Telecommunications, Inc. v. Boor-Crepeau*, 790 P 2d 901, 902 (Colo. Ct. App. 1990) (trade secret found to exist when information given to employees only on need-to-know basis, employees advised that information was trade secret, and access to company plant controlled and limited); *Colorado Supply Co v. Stewart*, 797 P.2d 1303, 1306 (Colo. Ct. App. 1990) (same holding), *cert. denied*, No. 89CA0989 1991 Colo LEXIS 708 (Colo Feb 1991); *Sheets v Yamaha Motors Corp.*, 849 F.2d 179, 183–84, (5th Cir. 1988) (holding reasonable security measures not taken when plaintiff publicly displayed product containing alleged trade secret, installed alleged trade secret in other products without instructing customers not to disclose it, and allowed others to take pictures and examine product without requiring confidentiality agreements), *aff'd in part and rev'd in part*, 891 F.2d 533 (2d Cir. 1990), *reh'g denied*, 897 F.2d 528 (5th Cir. 1990); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890 (Minn. Ct. App. 1983) (reasonable efforts to keep information secret include combination of physical security, confidentiality procedures, and policies that put employees and others on notice of information's secrecy), *appeal after remand*, 370 N.W.2d 465 (Minn. Ct. App. 1985); *Surgidev Corp v. Eye Technology, Inc.*, 828 F.2d 452, 455 (8th Cir. 1987) (secrecy measures found adequate when information shared with employees only on need-to-know basis, employees on notice that information secret and signed nondisclosure agreements, and visitor access restricted in areas containing information); *Aries Info. Sys , Inc. v. Pacific Management Sys. Corp.*, 366 N.W.2d 366, 368–69, 440 (Minn. Ct. App. 1985) (secrecy measures adequate when information had proprietary notices attached and employees signed confidentiality agreements); *Dionne v. Southeast Foam Converting & Packaging, Inc*, 397 S.E.2d 110, 113–14 (Va. 1990) (secrecy measures adequate when information never disclosed to anyone other than plaintiff's lawyer, unauthorized people excluded from building where trade secret kept, and all people, including family members,

378 ■

who had only information regarding trade secret required to sign confidentiality agreements); *Boeing Co. v. Sierracin Corp ,* 738 P.2d 665, 676 (Wash. 1987) (secrecy measures adequate even though information disclosed to Federal Aviation Administration, as such information not available to public on demand); *Machen, Inc. v. Aircraft Design, Inc ,* 828 P 2d 73, 78–79 (Wash. Ct. App.) (adequate secrecy measures include advising employees that information is trade secret, limiting access to information to need-to-know basis, limiting and controlling access to location where trade secret kept, and advising others outside business of information's secrecy), *review denied*, 841 P.2d 47 (Wash. 1992)

■ 379

## 8.03[3]  Competitive Advantage

A trade secret must be valuable either to plaintiff or to its business rivals in the sense that, as long as it is secret, the information provides plaintiff with an actual or potential competitive business advantage over its rivals. To help you determine whether plaintiff enjoyed, or was likely to enjoy, such a competitive advantage, you may consider such things as

(1) the degree to which the information was generally known or readily ascertainable by others;

(2) the extent to which plaintiff used or uses the information in its business;

(3) whether profits or increased efficiency enjoyed by plaintiff's business are due to the information;

(4) what gain or benefits defendant's business obtained from the information;

(5) what money, effort, and time plaintiff expended to develop the information; and

(6) the ease or difficulty of acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets (a process called "reverse engineering").

### Comment

The list of factors set forth in this instruction includes those factors most commonly referred to by the courts. Again, the inquiry is so fact specific that depending upon the circumstances of a particular case, some of these factors may not be relevant at all, while others, not listed, may establish the requirement of competitive advantage.

### Restatement

In defining a trade secret, the *Restatement* requires that the information "give [the holder of it] an opportunity to obtain an advantage over competitors who do not know or use it." *Restatement* § 757 cmt. b. *See also Salsbury Lab., Inc. v. Merieux Lab., Inc.*, 735 F. Supp. 1555 (M D Ga. 1989) (element of com-

petitive advantage significant in determining whether information deserves trade secret protection); *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349 (Mass. 1979) (citing competitive advantage as element of trade secret); *Rohm and Haas Co. v. Avco Chem. Co.*, 689 F 2d 424, 430–31 (3d Cir. 1982) (evidence of plaintiff's competitive advantage included fact that plaintiff derived four highly successful products from information in dispute and that defendant tried for years to duplicate plaintiff's manufacturing process without success); *Sheridan v. Mallinckrodt, Inc.*, 568 F. Supp. 1347, 1352 n.7 (N D N.Y. 1983) (plaintiff's manufacturing process conferred competitive advantage on plaintiff because it required less attention from machine operators and made it easier to detect defects in plaintiff's products, thus helping to control production costs); *FMC Corp. v. Spurlin*, 596 F. Supp. 609 (W.D. Pa. 1984) (holding that showing of competitive advantage necessary for trade secret protection); *Thermotics, Inc. v. Bat Jac Tool Co.*, 541 S.W.2d 255 (Tex. Civ. App. 1976) (plaintiff's profits before and after alleged misappropriation by defendant constitutes evidence of competitive advantage).

### Uniform Act

In defining a trade secret, the UTSA requires that the information "derive independent economic value, actual or potential, from not being known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." UTSA § 1[4]. To determine whether information has "independent economic value" under the UTSA, most courts look to whether the information confers a "competitive advantage" upon the plaintiff. Thus, although the language of the UTSA differs on its face from that of the *Restatement*, both, in practice, require the same proof. *See, e.g., Religious Technology Ctr. v. Wollersheim*, 796 F.2d 1076, 1090 (9th Cir. 1986); *Secure Serv Technology, Inc. v. Time & Space Processing, Inc.*, 722 F. Supp. 1354, 1360 n.14, (E.D. Va. 1989); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W 2d 890, 900–01, (Minn. Ct. App. 1983), *appeal after remand*, 370 N.W.2d 465 (Minn. Ct. App. 1985); *New England Ins. Agency, Inc. v. Miller*, No. CV-89-0285030-5 1991 WL

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 76 of 87 PageID 2339

65766, 65767 (Conn. Super  Apr. 16, 1991). *See also United Centrifugal Pumps v. Cusimano*, (W D. Ark. 1988) (information has independent economic value when competitor would have to spend at least as much time, effort, and money as plaintiff had expended to obtain information using proper means); *ABBA Rubber Co. v. Seaquist*, 286 Cal. Rptr. 518 (Cal. Ct. App. 1991) (customer list has economic value to competitors if information on list will allow competitor to direct its efforts to specific group of customers who use its product, and if competitor did not otherwise know, or could not otherwise economically ascertain, prospective clients); In re *R & R Assoc., Inc.*, 119 B.R. 302, 304 (Bankr. M D. Fla. 1990) (information has independent economic value when plaintiff spent considerable time, effort, knowledge, and expense compiling information and when information secret and not available from other sources); *Aries Info. Sys., Inc. v. Pacific Management Sys. Corp.*, 366 N.W.2d 366, 368, (Minn. Ct. App. 1985) (computer program had independent economic value because not generally known, available only through plaintiff, and plaintiff generated extensive revenues from sale of program), *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 456 (8th Cir. 1987) (defendant's intention to use plaintiff's information is circumstantial proof of economic value).

### 8.03[4]   Continuous Use in Business [*Restatement* Only]

For the information to be a trade secret, it must be put to continuous use in plaintiff's business. "Continuous use" means regular use in the business, including at the time of defendant's alleged wrongful conduct. Stated another way, information that is never used or used only for single or passing events in the operation of plaintiff's business is not continuous use. If the information at issue was not in continuous use in the operation of plaintiff's business at the time that defendant's alleged wrongful conduct occurred, then it is not a trade secret.

### Comment
*Restatement*

According to the *Restatement*, purported trade secrets that are never used in the operation of the business, or used only for single or ephemeral events, may not be accorded trade secret protection. *See, e.g., Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986); *Victor Chem. Works v. Iliff*, 132 N.E 806 (Ill. 1921). One justification postulated for the continuous use requirement is that unless a plaintiff can show continuous use, it is uncertain whether plaintiff would be able to protect the secrecy of such information and that such information would actually confer a competitive advantage. 1 *Milgram, supra,* § 2.02[1], at 2-29.

Many courts, however, either ignore or liberally construe the continuous use requirement set forth in the *Restatement. See, e.g., Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F 2d 677, 683 (7th Cir. 1983); *Sikes v. McGraw-Edison Co.*, 671 F.2d 150, 157 (5th Cir. 1982); *see generally* 1 *Jager, supra* at § 5.04[2]; 1 *Milgram, supra*, § 2.02[1], at 2-30–34. For example, many states hold that when an inventor negotiates with a manufacturer to produce a device the inventor has developed, even when the information is not currently part of a production process bringing in sales for the inventor, the information may still be accorded trade secret status. *See, e.g., Ferroline Corp. v. Gen. Aniline & Film Corp.*, 207 F.2d 912 (7th Cir. 1953) (applying New Jersey

law); *Jet Spray Cooler, Inc. v. Crampton*, 282 N.E.2d 921 (Mass. 1972) (trade secret protection granted to information never actually used in plaintiff's business). "Negative" information, or information about the sorts of products or processes that will not work, is also often accorded trade secret protection without being in continuous use. *See generally* 1 *Milgram*, *supra*, § 2.02[1], at 2-36–38 (and cases cited therein). Given that such information confers a competitive advantage on the discoverer in the form of a potential head start into more fruitful research or production possibilities, and that a rival may yet waste time and money repeating another business's mistakes, courts in some *Restatement* states hold that such "negative" information may constitute a trade secret even though such information will never be put to continuous use in the operation of a business.

### Uniform Act

The UTSA does not include a "continuous use" requirement. Accordingly, information that was not in use at the time of defendant's actions, as well as information that has never been put to use, including "negative" information, may constitute a trade secret. *See, e.g., Courtesy Temporary Serv., Inc. v. Camacho*, 272 Cal. Rptr. 352, 357–58 (Cal. Ct. App. 1990) (customer list held protectable even when part of extensive research in compilation of list included finding entities that would not subscribe to plaintiff's services); *Morton v. Rank Am., Inc.*, 812 F. Supp. 1062 (C.D. Cal. 1993).

## 8.04 Acquisition by Defendant

You must determine whether defendant acquired the trade secret under circumstances that impose a duty defendant owed to plaintiff. Defendant would have a duty to plaintiff if defendant acquired the information (a) by using improper means, (b) through a confidential relationship with plaintiff, or (c) under other circumstances in which the law imposes a duty on defendant regarding use of the information. Let me discuss each of these with you in detail.

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 78 of 87 PageID 2341

### 8.04[1]  Improper Means

If plaintiff proves that defendant acquired the trade secret by theft, bribery, trespass, misrepresentation, or through corporate espionage, such as wiretapping, defendant has used "improper means." It would also be improper if defendant learned the trade secret from a third party who used improper means to acquire the information or who breached a duty of confidentiality in disclosing the information, when the defendant knows or should know that it is acquiring a trade secret belonging to another. Improper means also includes inducing another either to use improper means to acquire the information or to breach a duty of confidentiality that person owed to plaintiff.

It is not improper, on the other hand, to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.

### Comment

#### Restatement

The above instruction deals with acquisition through improper means, such as corporate espionage and theft. *See E I. DuPont de Nemours & Co v. Christopher,* 431 F.2d 1012, 1016–17 (5th Cir. 1970) (holding competitor who attempted to discover DuPont's trade secrets through aerial photography of DuPont plant under construction liable for wrongful acquisition of trade secrets). In reality, these situations are far less common than acquiring the information through lawful means, such as in the context of a confidential relationship, and then misusing the information. An example would be a former employee competing or sharing information with a new employer. *See, e g., Milgram, supra,* § 5.05, at 5.18 n.2 (stating that "[i]ndustrial espionage is rarely described in civil actions" and that "[t]he type of case civil actions frequently depict involves an errant employee or former employee together with a culpable or too 'relaxed' next employer"). The classic example of a confidential relationship that is often implied-at-law is that of employee to employer. *See also* § 8.04[2] cmt., *infra.*

#### Uniform Act

This definition of "improper means" might be considered somewhat less comprehensive than the definition used by UTSA, in that the instruction excludes "breach   . of duty to maintain secrecy," which is included in the UTSA. *See* UTSA § 1[1]. Because these instructions cover the concept of acquisition of the secret first and then wrongful disclosure or use, a breach of duty to maintain secrecy is not treated as acquisition by "improper means." Subsequent instructions on wrongful use and disclosure cover this concept.

Note also that the UTSA's definition of "improper means" ("[t]heft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means") is subject to some variation in state statutes that are based on the UTSA. *See, e.g ,* Ala. Code § 8-27-2(2) (1993) ("improper means" also includes trespass and other deliberate acts committed for purpose of gaining access to information by means of "electronic, photographic, telescopic or other aids to enhance normal human perception" when owner has reasonable expectation of privacy); Ill. Rev. Stat. ch. 765, para. 2(a), cmts. (1996) ("improper means" also includes "breach of a confidential relationship or other duty to maintain secrecy" and any conduct improper under circumstances), N.C. Gen. Stat. § 66-152 (1995) (term "improper means" not used, rather, violation of statute includes only acquisition, use, or disclosure of plaintiff's trade secret without plaintiff's express or implied authority). The practitioner should consider these variations when formulating this instruction.

Unlike the *Restatement*, the UTSA imposes liability for mere acquisition of a trade secret using improper means, neither disclosure nor use of the trade secret is required for liability to attach *See* § 8.05, *infra*. Thus, if the misappropriation claim is based on improper acquisition alone, the misappropriation instruction should end here, to be followed by the damages instructions. *But see* Ala. Code § 8-27-3 (1993) (holding that requirements for proof of misappropriation codify common law, and no liability for improper acquisition alone).

### 8.04[2]  Confidential Relationship

You must determine whether defendant acquired the information through a confidential relationship with plaintiff.

To determine whether the trade secret was disclosed to defendant through a confidential relationship you may consider whether, based on the dealings between the parties, defendant knew or should have known that plaintiff expected the information to be kept secret and whether plaintiff's expectation was reasonable.

At times an agreement about confidentiality will be express, as when there is a written agreement between the parties specifying that defendants will not disclose or use the information unless authorized to do so. At other times an agreement about confidentiality will be implicit from the circumstances of the parties' dealings. You may find a confidential relationship existed between the parties based either on an express agreement between the parties or one implied from the circumstances of their dealings.

### Comment

The above instruction, or portions of it, would be used if there is an issue about whether an express or implied-in-fact confidential relationship exists (often not disputed by the parties). In such cases, the relevant inquiry would involve classic jury issues, such as what the parties subjectively believed about the nature of their relationship and what a reasonable person would have believed under the circumstances.

However, some confidential relationships are commonly implied as a matter of law (except when the parties expressly contract otherwise), including employer-employee relationships, joint venture or partnership relationships, or prospective licensee-licensor relationships. *See generally* 1 *Milgrim*, *supra*, at §§ 5.00–.03. Whether a confidential relationship is to be implied as a matter of law is typically a question of law for the court and not the jury.

*Uniform Act*

*See Surgidev Corp v. Eye Technology, Inc.*, 648 F Supp. 661, 694–95 (D Minn. 1986), *aff'd*, 828 F 2d 452 (8th Cir 1987) (plaintiff can prove confidential relationship by presenting proof of express contract or continuous trusting relationship that gives rise to duty not to disclose); *United Centrifugal Pumps v Cusimano*, 708 F. Supp 1038 (W.D. Ark. 1988); *Vacco Indus., Inc. v. Van Den Berg*, 6 Cal Rptr. 2d 602 (Cal. Ct. App. 1992) (1992) (essence of misappropriation claim is breach of faith or confidence).

### 8.04[3] Other Circumstances Giving Rise to Duty

A person may come into possession of a trade secret in a manner that does not, at that time, impose an obligation running to the owner but if circumstances change, a duty not to use or disclose the information would arise. One such situation occurs when a person acquires the trade secret by mistake or accident, not having reason to believe it belongs to another. Another occurs when a person innocently buys the information from another, not having reason to know that it is stolen information. In such situations, defendant is not liable for its use or disclosure of the trade secret as long as defendant does not know or has not been put on notice of facts that would otherwise make its use or disclosure wrongful.

Nonetheless, a duty may later arise regarding use or disclosure of another's trade secret that was first acquired in good faith and without knowledge of plaintiff's rights in the information; that is, once the innocent party is put on notice of the mistake or theft.

Thus, you must decide whether defendant acquired plaintiff's trade secret by mistake, accident, or in good faith without knowledge that the information came from a third person who had obtained the information through improper means or through a confidential relationship. If you determine that defendant initially acquired plaintiff's trade secret through one of these innocent means, you must next decide whether defendant ever learned or was put on notice that its acquisition of the trade secret occurred through mistake, accident, or through a third party's use of improper means or breach of a confidential relationship. If you determine that defendant later acquired such actual or constructive notice, then defendant's duty to plaintiff would begin only on the date when defendant first acquired such knowledge.

Case 8:00-cv-01026-JDW Document 186 Filed 11/30/01 Page 81 of 87 PageID 2344

## Comment

### Restatement

Note that this instruction does not address one situation recognized in the *Restatement*; that is, when a defendant has, in good faith, paid fair value for the secret, or has so changed its position before receiving notice that to subject it to liability would be unfair. In that circumstance, a defendant is not liable for past or future use of the information. *See Restatement* § 758.

A defendant who acquires trade secret information by mistake, accident, or in good faith, without notice that its acquisition derived from a third person who was in breach of a duty to plaintiff, is not liable for using or disclosing the trade secret, as long as defendant does not know and is not on notice of circumstances that otherwise would have made its acquisition of the information improper.

The *Restatement* differs from the UTSA in that the latter explicitly allows for plaintiff to recover for defendant's future use of plaintiff's trade secret, even when the defendant has already materially changed defendant's position in reliance on such information. *See* UTSA § 3 cmt.

### Uniform Act

The UTSA codifies the common law rule that one who acquires a trade secret by accident, mistake, or from a third party without knowledge that such person was under a duty not to use or disclose the information in dispute owes no duty to plaintiff until put on actual or constructive notice of plaintiff's rights.

The following state statutes differ slightly from the UTSA: Va. Code Ann. § 59 1-336 (1995), and Wis. Stat. § 134.90 (1995) (these acts impose liability if when defendant used or disclosed trade secret, defendant knew, or had reason to know, that it acquired its knowledge of trade secret by accident or mistake; irrelevant whether defendant's disclosure or use was before or after defendant materially changed defendant's position); Or. Rev. Stat. § 646.461(2) (1988) (Oregon statute does not discuss liability for disclosure or use of trade secret acquired by accident or mistake).

392 ■

## 8.05   Wrongful Use or Disclosure

You must determine whether defendant wrongfully used or wrongfully disclosed the trade secret in question.

A defendant who has acquired trade secret information by improper means has no right to use or to disclose the information in any way whatever. Thus, any use or disclosure by a defendant who has acquired a trade secret by improper means is wrongful.

A defendant who originally acquired information through a confidential relationship may not disclose such information in any way that goes beyond the scope of authorization it received from plaintiff regarding use and disclosure. That is, a person receiving trade secret information in confidence may use or disclose the information only in strict accordance with the understanding under which the information was given to the person. Any other use or disclosure is wrongful.

A person who comes into possession of trade secret information without realizing that it has been, for example, acquired through improper means, or who acquires the information by mistake or accident not having reason to believe that it belongs to another, is authorized to use that information only as long as the person does not know, and does not have reason to know, that the information in fact belongs to another. Hence a defendant who has acquired trade secret information in a manner that does not give rise to liability initially is nonetheless liable for the use or disclosure of that information *after* defendant is informed or is put on notice by other facts that it has acquired trade secret information that rightfully belongs to plaintiff.

## Comment

A defendant who has acquired plaintiff's trade secret information by mistake or accident, or without knowledge of a third party's use of improper means or breach of a confidential relationship, is not liable for any use or disclosure of a

■ 393

trade secret before receiving actual or constructive notice of plaintiff's rights in the information. As noted in comments to the preceding instruction, when defendant has already materially changed defendant's position in detrimental reliance before receiving such notice, to the extent that to subject defendant to liability would be inequitable, then defendant is also immune to liability for defendant's future use or disclosure. *See Restatement* § 758 *See also* § 8.04[3] cmt., *supra*. Because the questions of whether defendant changes its position in material reliance before receiving notice, and whether it would be inequitable to hold defendant liable for future use and disclosure under such circumstances are more appropriate for a judge than a jury, they have been excluded from these jury instructions.

### Restatement

In contrast to the UTSA, under which mere acquisition of a trade secret is actionable, the *Restatement* requires a finding of use or disclosure by defendant, or that defendant will likely use or disclose plaintiff's trade secret in the future, to impose liability on defendant. *See Hunter v. Fisons Corp.*, 776 F.2d 1 (5th Cir. 1985) (holding existence of trade secret or confidential relationship immaterial if defendant did not use information); *Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551 (S D.N.Y. 1984) (holding plaintiff must prove commercial use by defendant to establish liability), *aff'd*, 761 F.2d 93 (2d Cir. 1985); 2 *Milgrim, supra*, § 7.07[1], at 7-225 (noting that "even disclosure to defendant in a legally protectable relationship of an established trade secret, without more, is not grounds for relief," because plaintiff must still prove use or disclosure).

394 ■

## 8.06 Compensatory Damages

If you find that defendant is liable to plaintiff for its conduct, then you should consider whether plaintiff has suffered monetary damages as a result. You should address the issue of damages, however, only if you first determine that defendant is liable to plaintiff on any of the bases we have discussed previously.

As with issues of liability, the plaintiff has the burden to prove to you that it has suffered harm due to the wrongful conduct of defendant. I will discuss with you three potential ways to approach such damages: (1) profits lost by plaintiff, (2) benefits gained by defendant, or (3) a reasonable royalty.

Let me now go over each of these alternatives.

■ 395

## 8.06[1]    Plaintiff's Lost Profits

Plaintiff claims that it has lost profits from misuse of trade secrets. If you find that plaintiff would have realized profits from employing trade secrets in its business that it has lost due to the wrongful conduct of defendant, then you may measure damages by the amount of such lost profits for the particular periods of time that I will cover with you in a moment.

### Comment

See comments following instructions relating to all damages instructions.

## 8.06[2]    Defendant's Benefit

You may also consider what benefit defendant has gained from misuse of plaintiff's trade secrets. Regardless of whether you find that plaintiff itself suffered losses, if you find that defendant benefited from using a trade secret belonging to plaintiff, then you may award the monetary value that you attribute to those benefits as the measure of plaintiff's damage.

### [*Restatement* Only]

Plaintiff is entitled to recover the greater of (1) plaintiff's own lost profits, or (2) defendant's gained profits.

These are, however, alternative approaches to damages, not cumulative measures of damages. Therefore, you may award damages, if you were to find damages, based on only one of these alternative approaches; that is, plaintiff's lost profits *or* defendant's gained benefits, but you may not award *both* types of damages.

### [Uniform Act Only]

These two approaches to damages are different in some respects but may also overlap. That is, it may be that defendant profited from particular sales that plaintiff would have made had defendant not competed using the trade secrets.

In that situation, the two ways of approaching damages that I have just described would measure the identical damages—whether viewed as plaintiff's loss or defendant's gain. The law does not permit a plaintiff to recover twice for the same damages. Thus you may include as damages *both* plaintiff's lost profits *and* defendant's gain *only* if and to the extent that they do not overlap in this way. Stated in other words, if you were to include lost sales in calculating plaintiff's lost profits because defendant made the sales, then the value of those same sales should be excluded from any calculation of defendant's gains that you may make.

### Comment

See comments following instructions relating to all damages instructions.

### 8.06[3]    Royalties

#### [*Restatement* Only]

There is a third way to measure damages, which you may use if you find that plaintiff has been or will likely be damaged but when you cannot fairly determine plaintiff's losses or defendant's gains. In that event, you may measure damages by assessing a reasonable royalty.

#### [Uniform Act Only]

Plaintiff is claiming damages in the form of a royalty.

You may measure damages in terms of a royalty, but only if you find that plaintiff has presented evidence of what a reasonable royalty would be. Furthermore, a royalty can be awarded only to cover the time period during which damages would accrue, which I will discuss with you in a moment.

Some of the factors you may consider in determining the amount of a reasonable royalty include such things as

(1) the price that past purchasers or licensees have paid for use of the trade secret;

(2) the total value of the secret to plaintiff, including its development costs, if any;

(3) the uses for the information that the defendant had in mind; and

(4) the time and effort that would have been required before the defendant or another competitor could have acquired or likely acquired the same or equivalent information through proper means.

#### Comment

See comments following instructions relating to all damages instructions.

398 ■

### 8.06[4]    Time Period for Damages

Plaintiff would be entitled to damages running only for as long as (1) you find that its trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that the trade secret afforded defendant a competitive advantage, such as providing defendant a head start in its business.

#### Comment Regarding Damage Instructions Generally

It is important to keep in mind that unlike the UTSA, the *Restatement* takes an either/or approach to measuring damages—either plaintiff's lost profits, or defendant's gains The *Restatement* treats royalty damages as an alternative to both measures, available only if neither plaintiff's lost profits nor defendant's gain can be shown. By contrast, the UTSA allows the plaintiff to choose royalty damages regardless of what else can be proved. Hence the actual types of proof offered at trial may well dictate modifications to these instructions.

Many cases refer to damages suffered by plaintiff in terms of lost profits, and that phrase is used in these instructions. However, in some jurisdictions, plaintiff's damages might better be described in terms of "losses," to calculate not only lost profits but also detriments such as loss of direct overhead and general and administrative expenses resulting from defendant's misappropriation. 2 *Milgrim, supra,* § 7.08[3], at 7-386 (citations omitted). Likewise, as for defendant's illicit gains, many cases speak in terms of "unjust enrichment," and some speak of "profits." The model instructions describe these concepts as "gains" or "benefits," terms more likely to be meaningful to a juror.

Similarly, the measure of a reasonable royalty will vary from jurisdiction to jurisdiction, and practitioners are advised to review the standards adopted by their jurisdictions. The list of factors cited in the instruction on a reasonable royalty is not meant to be comprehensive; rather, it is a collection of the more common measures of a reasonable royalty that courts have approved.

■ 399

Of course, lost profits, unjust enrichment, gains, or other benefits are not consistently applied concepts from jurisdiction to jurisdiction, and may be subject to differing standards under various state laws. For example: What costs should be deducted from gross revenues to calculate lost profit damages? Who has the burden of proving the deductions from gross revenues that are appropriate to calculate defendants' gains? Care should be given to use terms that are accepted in the particular jurisdiction.

The generally less stringent burden imposed on a plaintiff when proving damages, as opposed to proving liability, will also vary by jurisdiction and has accordingly not been covered.

*Restatement*

For examples of cases discussing the *Restatement* approach, see the following: *Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co.*, 407 N.E.2d 319 (Mass. 1980) (holding that higher amount of plaintiff's profits or defendant's unjust enrichment is proper measure of damages); *Jet Spray Cooler, Inc. v. Crampton*, 385 N.E.2d 1349 (Mass. 1979) (plaintiff not entitled to both profits made by defendant and plaintiff's own profits); *Telex Corp. v. Int'l Business Mach. Corp.*, 510 F.2d 894, 893 (10th Cir.) (plaintiff entitled to its own lost profits or defendant's unjust enrichment), *cert. dismissed*, 423 U.S. 802 (1975); *Sperry Rand Corp. v. A-T-O, Inc.*, 447 F.2d 1387, 1392–93 (4th Cir. 1971) (plaintiff may recover either from lost profits or accounting of defendant's unjust enrichment); *Hayes-Albion v. Kuberski*, 311 N.W.2d 122 (Mich. Ct. App. 1981) (holding damages for misappropriation may be measured by profits lost by plaintiff or profits gained by defendant); *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 484 N.E.2d 280 (Ohio Ct. App. 1985) (either plaintiff's lost profits or defendant's unjust enrichment appropriate measure of damages); *Molex, Inc. v. Nolen*, 759 F.2d 474 (5th Cir. 1985) (reasonable royalty measure of damages remedy applied); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538–39 (5th Cir. 1974) (listing factors to be considered to determine reasonable royalty mea-

sure of damages); *see also* William F. Johnson, *Remedies in Trade Secret Litigation*, 72 Nw. U. L. Rev. 1004, 1023 (1978); 2 Milgrim, *supra*, § 7.08[3], at 7-155; 2 R. Callman, *Unfair Competition, Trademarks and Monopolies* § 59.3, at 496 (3d ed. 1968), M.A. Rosenhouse, *Proper Measure and Elements of Damages for Misappropriation of Trade Secret*, 11 A.L.R. 4th 12 (1982).

As mentioned in earlier comments, under section 758 of the *Restatement*, damages are not awardable when someone, acting in good faith, pays value for the information without knowledge of a misappropriation, or materially changes his or her position before receiving notice—an exception to the common law rule. When imposing liability under such circumstances would be inequitable, both past and future use of the trade secret is permitted, as no tortious misappropriation has taken place.

*Uniform Act*

The following states' statutes vary slightly from the UTSA or contain greater detail: Ala. Code § 8-27-4(1)(b), (c) (1993) provides for monetary damages equal to defendant's profits and any other benefits to defendant attributable to misappropriation *and* plaintiff's actual damages resulting from misappropriation, if actual damages not duplicative of defendant's profits; to prove defendant's profits, plaintiff must present proof of defendant's gross revenues; defendant then has burden of proving its deductible expenses and other elements of profit not attributable to misappropriation); *see also Alabama G.S.R. Co. v. Morrison*, 202 So. 2d 155 (Ala. 1967); *Telex Corp. v. Int'l Business Mach. Corp.*, 510 F.2d 894, (10th Cir.), *cert. dismissed*, 423 U.S. 802 (1975) (Alabama act follows common law precedent in these cases); Or. Rev. Stat. § 646.465(2) (1988) (provides for actual loss and unjust enrichment; however, total amount of damages shall not be less than amount of reasonable royalty); Wis. Stat. § 134.90(4) (1989 Supp. 1995) (court may award damages).

The *Restatement* instruction should be used for North Carolina. N.C. Gen. Stat. § 66-154(b), 66-154(a)(2) (1995) (damages

either plaintiff's losses or defendant's unjust enrichment, whichever is greater; if defendant acquired trade secret mistakenly but in good faith, these damages cannot be awarded for period of defendant's innocent disclosure or use, although injunction may be granted).

Under the UTSA, a good faith acquirer who did not know or have reason to know that it had acquired another's misappropriated trade secret, and who changed its position in material reliance on the "secret" information it received, may not be liable for monetary damages if the imposition of money damages would be inequitable. However, if the acquirer receives notice that the information was misappropriated and continues to misappropriate the information, the acquirer may be liable to the owner for damages occurring after notice was received. *But see* N.C. Gen. Stat. § 66-154(a)(2) (1995) (reasonable royalty may be awarded by court if defendant acquired trade secret in good faith or by mistake and used trade secret to defendant's benefit).

Under some statutes, reasonable royalty damages are awarded by the court and are available only if neither plaintiff's lost profits nor defendant's unjust enrichment can be proven. *See.* Cal. Civ. Code § 3426.3(b) (1996); Ga. Code Ann. § 10-1-763(a)(1995); Ill. Rev Stat. ch. 765, para. 4(a) (1996); Ind. Code § 24-2-3-4(b) (1996). *See also* Va. Code Ann. § 59.1-338 (1995) (allows for award of reasonable royalty if such amount greater than any other provable measure of damages); Wis. Stat. § 134.90(4) (1995) (provides for reasonable royalty award to be awarded by court, if this sum is greatest provable amount of damages).

The Alabama, Alaska, Arkansas, Connecticut, Delaware, Idaho, Louisiana, Minnesota, Montana, North Dakota, and Washington acts *do not* provide for a reasonable royalty measure of damages.

## 8.07 Exemplary Damages [No model instructions provided.]

### Comment

Depending on whether plaintiff is pursuing a trade secrets claim based on a contract or tort theory of recovery, plaintiff may be able to recover exemplary or punitive damages. Although generally not awarded in contract actions, punitive damages are available in many states under tort theories. Often the standard for punitive damages under a tort theory of trade secret misappropriation will be whether the defendant acted willfully and maliciously in misappropriating plaintiff's trade secret. The measure of punitive damages available to plaintiff varies from state to state, and practitioners are advised to review the standard for the particular state involved. *See, e.g., Reinforced Molding Corp. v. Gen. Elec. Co.,* 592 F. Supp 1083 (W.D. Pa. 1984) (holding outrageous or egregious conduct required for punitive damages); *Molex, Inc. v. Nolen,* 759 F.2d 474 (5th Cir 1985) (exemplary damages appropriate when defendant's misappropriations maliciously, wantonly, or oppressively done); *Gen. Aniline & Film Corp v. Frantz,* 272 N.Y.S.2d 600 (N.Y. App. Div. 1966) (holding punitive damages justified for misappropriation of trade secrets when individual defendants committed willful and intentional breaches of confidence and acted in wanton disregard of plaintiff's property rights), *modification denied,* 274 N.Y.S 2d 634 (N.Y App Div 1966); *W. R. Grace & Co. v. Hargadine,* 392 F 2d 9 (6th Cir. 1968) (holding exemplary damages appropriate under Ohio law for sufficiently malicious misappropriation of trade secrets); *Hayes-Albion v. Kuberski,* 311 N.W 2d 122 (Mich Ct. App. 1981). *See generally* M.A. Rosenhouse, *Proper Measure and Elements of Damages for Misappropriation of Trade Secret,* 11 A.L.R.4th 12 § 36 (1982); 2 *Milgrim, supra,* § 7.08[3][c], at 7.401–05).

*Uniform Act*

Under the UTSA, the *court* may grant exemplary damages, not exceeding double the compensatory damages. UTSA § (b) Hence, there would be no jury instruction given None-

theless, some state statutes allow the jury to grant such damages. *See, e.g.,* Colo. Rev. Stat § 7-74-104(2) (1995) (court or *jury* may award exemplary damages, not to exceed monetary damages awarded); N.C. Gen. Stat. § 66-154(c) (1995) ("trier of fact" has discretion to award punitive damages). Two states, Alabama and Oregon, do not specify whether the court or the jury may award damages. Ala. Code § 8-27-4 (1993); Or. Rev. Stat. § 646.465(3) (1988). All state statutes provide for exemplary damages, except for Arkansas, Louisiana, and Nebraska.

The amount of exemplary damages that may be awarded may vary. *See, e.g.,* Ala. Code § 8-27-4 (1993) (exemplary damages cannot exceed amount awarded for lost profits or other monetary damages, but shall not be less than $5,000); Minn. Stat. § 325C.04 (1996) (court may award exemplary damages in amount it deems just and equitable); Miss. Code Ann. § 75-36-7(2) (1995) and Mont. Code Ann. § 30-14-404 (1995) (no limit on exemplary damages specified); N.C. Gen. Stat. § 66-153(c) (1995) (trier of fact has discretion to award exemplary damages).

# Jury Instructions Resource Bibliography

Amy Pavlik*

Most states have jury instructions that are generally accepted by the state courts. The form of title and the status of these instructions—whether that be official or unofficial approval by a judicial body, or even just widespread recognition—varies substantially. A few federal courts have also compiled jury instructions, and several compilations of specialty jury instructions exist as well. The following list includes the most recent editions of published jury instructions.

## A. States

### Alabama

*Alabama Pattern Jury Instructions, Civil—Second Edition* Alabama Pattern Jury Instructions Committee, Civil. Rochester, N.Y.: Lawyers Cooperative Publishing Co., 1993.

*Pattern Jury Instructions—Criminal—Third Edition.* Alabama Law Institute, edited by Judge Joseph A. Colquitt. Tuscaloosa: University of Alabama, Alabama Bar Institute for Continuing Legal Education, and Administrative Office of Courts, 1994 (supplemented).

### Alaska

*Alaska Pattern Civil Jury Instructions.* Harvey S. Perlman. Anchorage: Alaska Bar Association, 1984 (supplemented).

*Alaska Pattern Jury Instructions, Criminal—1987 Revisions.* Criminal Pattern Jury Instruction Committee. Anchorage: Alaska Bar Association, 1987.

### Arizona

*Recommended Arizona Jury Instructions, Civil—Second Edition.* Civil Jury Instructions Committee, Hon. E. G. Noyes Jr., chairman. Phoenix: State Bar of Arizona, 1991.

*Amy Pavlik is a librarian at the Chicago-Kent College of Law in Chicago, Illinois.