UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT
GROUP, INC. and
LOCHMERE REALTY, INC.,

Plaintiffs,

v.

EIGER FUND I, L.P., et al.

Defendants.

_____/

FILED
12/13/02
IN OPEN COURT

Case No.: 8:00-CV-1026-T-27B.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW BY DEFENDANTS EIGER, INC., H.D. ASSOCIATES, L.P., DUNES OPERATING COMPANY, L.P., AND 2M DUNES, L.L.C.

## I.    INTRODUCTION

Defendants Eiger, Inc., H.D. Associates, L.P. ("H.D. Associates"), Dunes Operating Company, L.P. ("Dunes") (collectively, for purposes of this motion, "Eiger Entities"), are entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a)(1). Plaintiffs failed to present a legally sufficient evidentiary basis for a reasonable jury to enter a verdict against the Eiger Entities. The Court should therefore enter judgment as a matter of law in favor of the Eiger Entities on all counts.

## II.    ARGUMENT

### A.    The Standard of Review of a Motion for Judgment as a Matter of Law

Federal Rules of Civil Procedure 50(a)(1) provides:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the

11293.1



> issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The Eleventh Circuit has set forth the standard for district courts to apply in ruling upon motions for judgment as a matter of law. This Court should "consider all of the evidence -- **not just that evidence which supports the non-mover's case** -- but in light and with all **reasonable** inferences most favorable to the party opposed to the motion." <u>Walls v. Armour Pharm. Co.</u>, 832 F. Supp. 1467, 1470 (M.D. Fla. 1993) (emphasis added) (citation omitted). A mere scintilla of evidence is not sufficient to avoid a judgment as a matter of law. <u>Watts v. Great Atlantic & Pacific Tea Co.</u>, 842 F.2d 307, 310 (11th Cir. 1988) (citation omitted). Rather, the non-moving party must produce "**substantial evidence**" in order to survive a motion for judgment as a matter of law. <u>Walls</u>, 832 F. Supp. at 1470 (emphasis added). Absent "substantial evidence," a judgment as a matter of law is proper.

## B.    Defendants are Entitled to Judgment on the Claims of Plaintiff Lochmere Realty.

Plaintiff Lochmere Realty is a party to all of the claims in this case. Plaintiffs have presented no evidence that Lochmere Realty is entitled to recovery on any of the claims. In particular, there is no evidence that Lochmere Realty was a party to the purported oral joint venture agreement with Defendant H.D. Associates. Likewise, the unsigned written compensation agreement is purportedly between H.D. Associates and Lochmere Development.

The only evidence of any agreement with Lochmere Realty is the unsigned Marketing and Listing Agreement with H.D. Associates. There is no evidence that Defendants ever agreed to enter into this agreement. To the contrary, Mr. Evans' testimony demonstrates that the parties never agreed to enter into this agreement.

Lochmere Realty also has no claims for misappropriation of trade secrets. The Master Development Budget is the only document Plaintiffs are claiming to be a trade secret. Mr. Evans testified that the budget was the sole property of Plaintiff Lochmere Development Group as is stated on the legend of the budget. There is simply no evidence that Plaintiff Lochmere Realty produced or "owned" any of the claimed trade secrets in this case.

Finally, there is no evidence that Lochmere Realty was promised any compensation by Defendants or that Lochmere Realty agreed to accept compensation from the Eiger Entities that was lower than any agreement it had with the Lane Defendants. As a result, Defendants are entitled to judgment on the promissory estoppel and tortious interference claims.

**C.    Defendants are Entitled to Judgment on Plaintiffs' Uniform Partnership Act Claims.**

**1.    There Was No Valid or Enforceable Joint Venture or Partnership Agreement.**

Plaintiffs allege that Defendants violated the Florida Uniform Partnership Act by wrongful dissociation and usurpation of partnership opportunity. In order to prevail, Plaintiffs must show the existence of a valid and enforceable partnership or joint venture agreement. See Section 620.8602(2)(a), Fla. Stat. The evidence presented by Plaintiffs establishes that there was no signed partnership agreement between Plaintiffs and any of the Defendants. Instead, Plaintiffs claim that there was an oral agreement to establish a joint venture with the Defendants.

The only term of the joint venture agreement that Plaintiff could indentify was that Mr. Evans, Mr. Lane and Eiger were going to join together to pursue the acquisition and development of Hammock Dunes. The evidence adduced at trial shows, however, that essential terms were never agreed upon by the parties. These terms include: (1) compensation, (2) division profits, and (3) responsibility for the obligations of the venture.

11293 1                                      - 3 -

Under Florida law, in order for a joint venture agreement to be binding and enforceable, "there must be a meeting of the minds on all essential terms of the contract." Browing v. Peyton, 918 F. 2d 1516, 1521 (11th Cir. 1990). If there is no agreement on essential terms, judgment as a matter of law is appropriate. Id. (summary judgment appropriate when alleged joint venturers did not agree upon specific assets which were to be acquired or bidding price for the assets); see also Suggs v. Defranco's, Inc., 626 So. 2d 1100 (Fla. 1st DCA 1993) ("Where essential terms of an agreement remain open, subject to future negotiations, there can be no enforceable contract."). Thus, because essential terms of the alleged joint venture were never agreed to by the parties, Defendants are entitled to judgment as a matter of law.

Moreover, there is no evidence that Defendants breached the alleged joint venture agreement. To the contrary, Mr. Evans testified that at the time he approached Starwood, the joint venture had "terminated" and "there was no further obligation" by either party. As a result, H.D. Associates was free to pursue the deal without breaching any duty to Plaintiffs.

Finally, under Florida law an essential element of a joint venture is a joint proprietary interest in the subject matter of the venture. Kislak v. Kreedian, 95 So. 2d 510, 515 (Fla. 1957). Here, Mr. Evans testified that he was not to be an owner of the property to be purchased by the venture. Thus, there can be no valid joint venture because there is no joint proprietary interest.

Plaintiffs also claim that Defendants breached an unsigned written "compensation agreement." A careful examination of the testimony of Mr. Evans reveals, however, that Defendants never agreed to the terms of the agreement. Specifically, Mr. Evans testified to the following:

- he presented the proposed compensation agreement to Mr. Rowsey at the meeting in Dallas on June 10, 1999;

- the proposed agreement would only be signed and go into effect if H.D. Associates purchased the property;

- Mr. Rowsey never agreed to all the terms at that meeting or thereafter; and

- Mr. Evans took the deal to Starwood before any agreement with Defendants was reached.

Under these facts, it is clear that there was never a meeting of the minds as to the compensation agreement. In any event, Plaintiffs have never alleged – either in their Amended Complaint or in the Pretrial Statement – a breach of contract claim. As a result, they are barred from asserting such a claim now. See Fed. R. Civ. P. 16(e) (Pretrial Order controls "subsequent course of action unless modified by a subsequent order.")

### 2.    Any Alleged Agreement is Barred by the Statute of Frauds.

Mr. Evans also testified that the intent of the parties – under both the oral joint venture and undersigned compensation agreement – was that the joint venture would take more than one year to complete. The proposed marketing agreement, which Mr. Evans testified reflected the terms of the accepted oral agreement with Lochmere Development provides a term of four years (See Plaintiffs' Ex. 88). As to Lochmere Realty, Mr. Evans testified the intent was to hire Lochmere Realty to sell real estate for a minimum of 3 - 4 years. Under well settled Florida law, the Statute of Frauds bars the enforcement of a contract when the parties intended and contemplated that the performance of the agreement would take longer than one year. See Section 725.01, Fla. Stat.; Dwight v. Tobin, 947 F.2d 445, 458 (11th Cir. 1991). Moreover, oral or unsigned partnership or joint venture agreements clearly are not immune from the reach of the Statute of Frauds. Id. (partnership agreement); see also Kay v. Katzen, 568 So. 2d 960, 961 (Fla. 3d DCA 1990) (partnership agreement); Futch v. Head, 511 So. 2d 314, 318, n. 1 (Fla. 1st DCA 1987) (holding that for purposes of the Statute of Frauds, any distinction between partnerships and joint ventures is meaningless).

As a result, Plaintiffs' partnership and/or joint venture claims are barred under the Statute of Frauds and Defendants are entitled to judgment as a matter of law on these claims.

Plaintiffs' partnership and/or joint venture claims are also barred under the doctrines of waiver and estoppel. The proposed Management Agreement–the very document that Mr. Evans claims contains the terms of the partnership–states that no partnership or joint venture relationship is created by the agreement. Courts have repeatedly held that such a provision precludes a finding of a partnership or joint venture. Anthony Distributors v. Miller Brewing Co., 882 F. Supp. 1024, 1031 (M.D. Fla. 1995); Florida Municipal Power Agency v. Ohio Cas. Ins. Co., 714 So. 2d 660, 661 (Fla. 5th DCA 1998); Schweitzer v. Seaman, 383 So. 2d 1175, 1177-78 (Fla. 4th DCA 1980); Savers Fed. Sav. & Loan Ass'n v. Amberley Huntsville, Ltd., 934 F.2d 1201, 1207-08 (11th Cir. 1991). Thus, even if the proposed Management Agreement were accepted and signed by the parties (which it was not), it would form no basis for a partnership. See also Resolution Trust Corp. v. Jet Stream, Ltd., 790 F. Supp. 1130, 1136 (M.D. Fla. 1992) (granting summary judgment against borrower based on defense alleging oral joint venture in light of express provision to the contrary in loan documents).

**D.     Defendants are Entitled to Judgment on Plaintiffs' Constructive Fraud Claims.**

Plaintiffs also assert a claim against Defendants for constructive fraud. Specifically, Plaintiffs allege that Defendants improperly disclosed confidential information created by the alleged partnership with Defendants. As demonstrated above, the parties did not have a valid partnership or joint venture agreement. Accordingly, if this Court grants Defendants judgment as a matter of law on the partnership or joint venture claim, then Defendants do not owe any fiduciary duty to Plaintiffs' and cannot be liable for constructive fraud. Additionally, there is no evidence that Defendants disclosed the Master Development Budget to any third party.

11293 1                                    - 6 -

**E.      Defendants are Entitled to Judgment on Plaintiffs' Misappropriation of Trade Secrets Claim.**

Plaintiffs assert that Defendants misappropriated the Master Development Budget which Plaintiffs claim are trade secrets.   To establish a claim, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy.  American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998) (citing Lee v. Cercoa, 433 So. 2d 1, 2 (Fla. 4th DCA 1983)).

Plaintiffs contend that the purported "trade secrets" they gave to the Eiger Defendants consisted primarily of a "Master Development Budget" which they prepared for the Hammock Dunes project.  The Master Development Budget was a computer-generated spread sheet of rows and columns containing various income and expense items projected for the Hammock Dunes Project.  The budget was inputted on "Lotus" or "Excel" software -- common off-the-shelf computer programs which are commercially available to anyone who wants to purchase them.

The information in the budget was assembled from the seller, ITT,  from consultants whom Lane had hired and whose fees were ultimately paid by Lane or by the Eiger Entities (and not by Lochmere Development), and from publicly available documents. The information was not secret or confidential, but was available to the prior prospective purchaser or to the Defendants as well as to Lochmere Development.  See Public Systems, Inc. v. Towry, 587 So. 2d 969, 971-72 (Ala. 1991).

Furthermore, setting aside for the moment that the data from which the budgets were compiled were indisputably not secret – but were either public information or information from consultants whom defendants had hired and paid for, Plaintiffs still produced no competent substantial evidence that they maintained or safeguarded the secrecy of the budgets themselves. Plaintiffs failed to present any evidence that it entered into confidential agreements with their

11293.1                                    - 7 -

employees who helped to compile the budgets, that they had any security systems in place with respect to the computers on which the spreadsheets were compiled, or that they maintained the hard copies of the budgets in locked file cabinets or other secure locations. See Lee v. Cercoa, 433 So. 2d. at 2.

Additionally, Plaintiffs distributed the budgets to Defendants and other third parties with no confidentiality agreements and with no written or oral restriction on use or disclosure of the documents other than a legend appearing on the first page of the documents stating that the documents were "proprietary." Clearly, this is insufficient to establish that the documents were trade secrets. Courts have uniformly held that merely labeling information as confidential does not elevate it to the level of a trade secret. Eaton Corp. v. Appliance Valves Corp., 526 F. Supp. 1172, 1178 (N.D. Ind. 1981), aff'd, 688 F.2d 842 (7th Cir. 1982); Utilase, Inc. v. Williamson, 188 F.3d 510, 1999 WL 71769, *7 (6th Cir. 1999); Ecologix, Inc. v. Fansteel, Inc., 676 F. Supp. 1374, 1381 (N.D. Ill. 1998).

Moreover, Plaintiffs' failed to preserve or waived any claim of trade secrets by disclosing the alleged trade secrets to Starwood. In attempting to interest Starwood in Hammock Dunes after Eiger refused to agree to his proposed Compensation Agreement, Evans gave Starwood representatives a copy of the Master Development Budget which Starwood evaluated and used in making its own offer to purchase the property. Evans disclosed this information to Starwood without any confidentiality agreement and without any contract for his or Lochmere Development's services. Furthermore, Evans conceded that he has never asked for Starwood to return the budgets after ITT rejected its proposed contract.

The United States Supreme Court has held that "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise

11293 1                                                       - 8 -

publicly discloses the secret, his property right is extinguished." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984). Thus, Lochmere's disclosure of the Master Development Budget to Starwood without adequate confidentiality arrangements extinguishes Lochmere's property rights in the document and precludes the claim for misappropriation of trade secrets.

**F.  Defendants Are Entitled to Judgment on Plaintiffs' Claims for Quantum Meruit/Unjust Enrichment.**

Defendants are also entitled to judgment on Plaintiffs' unjust enrichment claims which the Court allowed to be re-added to the case during the course of the trial.

In the first place, as Defendants argued, Plaintiffs' quantum meruit claims are inextricably intertwined with Plaintiffs' claims for misappropriation of the claimed trade secrets consisting of the Master Development Budgets. Thus, the quantum meruit claims are preempted by the Floirda Uniform Trade Secrets Act. See Fla. Stat. § 688.008(1); See GlassTech, Inc. v. TGL Tempering Systems, Inc., 50 F.Supp. 722, 730 (N.D. Ohio 1999); Hutchinson v. KFC Corp., 809 F. Supp. 68, 71 (N.D. Ill. 1995); Web Communications Group, Inc. v. Gateway 2000, 889 F.Supp. 316, 321 (N.D. Ill. 1995); Thomas & Betts Corp. v. Panduit Corp., 108 F.Supp. 2d 968, 973 (N.D. Ill. 2000); C&F Packing Co., Inc. v. IBP, Inc., 1994 WL 30540, at *7 (N.D. Ill. Feb 1, 1994), rev'd on other grounds, 224 F.3d 1296 (Fed.Cir. 2000).

Secondly, Plaintiffs' claims for unjust enrichment or quantum meruit are precluded because undisputed facts show that Plaintiffs provided the services in contemplation of a possible future contract with Defendants and not with the expectation at the time the services were performed of immediate payment. During the trial, Mr. Evans conceded that he kept no time records and has no idea about the costs or expenses he incurred in the work he did on the Hammock Dunes project because he did not expect to be paid a fee for the due diligence. Instead, according to Mr. Evans

11293 1

- 9 -

himself, it was all part-and-parcel of a total compensation package – as to which the undisputed facts show Defendants never agreed. It is well established that when services are conferred for business reasons without the anticipation that reimbursement will *directly* result, but, rather with the expectation of obtaining a hoped for contract and incidental to continuing negotiations relating thereto, recovery for unjust enrichment or quantum meruit is not warranted. Cherokee Oil Co. v. Union Oil Co., 706 F. Supp. 826, 830 (M.D. Fla. 1989); Peko Oil USA v. Evans, 800 S.W.2d 572, 576-77 (Tex. App. - Dallas 1990); North Am. Financial Group Inc. v. S.M.R. Enter., Inc., 583 F. Supp. 691 (N.D. Ill. 1984); Maple Island Farm, Inc. v. Bitterling, 209 F.2d 867, 871-72 (8th Cir. 1954).

Thirdly, Plaintiffs have presented no evidence which would allow the jury to distinguish between the amount of work, or the reasonable value of that work, which was furnished to the Eiger Entities, as distinguished from the Lane Defendants.

**G.  Defendants are Entitled to Judgment on Plaintiffs' Civil Conspiracy Claims.**

Plaintiffs assert a conspiracy claim against Defendants. Specifically, Plaintiffs allege that Defendants conspired to "usurp the partnership opportunity of the Project" and to "unlawfully misappropriate trade secrets of Lochmere to work on the Project, while knowing that they had no intention of compensating Lochmere." As demonstrated above, the claims underlying the purported conspiracies–violation of the Florida Uniform Partnership Act and misappropriation of trade secrets–are legally insufficient. Accordingly, Plaintiffs' claims for civil conspiracy must also fail. See Wright v. Yurko, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984); Griese-Traylor Corp. v. First Nat'l Bank of Birmingham, 572 F.2d 1039, 1045-46 (5th Cir. 1978).

**H.      Defendants are Entitled to Judgment on Plaintiffs' Promissory Estoppel Claim.**

Plaintiffs assert a claim for promissory estoppel against Defendants.  As demonstrated below, Plaintiffs' claim fails for a variety of reasons.

### 1.      The Doctrine of Promissory Estoppel Cannot Be Used to Circumvent the Statute of Frauds.

As demonstrated above, the Statute of Frauds bars the enforcement of the alleged partnership or joint venture agreement.   Under well settled Florida law, promissory estoppel cannot be used to circumvent the Statute of Frauds.  <u>W. L. Tannenbaum v. Biscayne Osteopathic Hosp.</u>, 190 So. 2d 777, 779 (Fla. 1966); <u>Allen v. Edwards & Sons, Inc.</u>, 606 F.2d 84, 85 (5th Cir. 1979).  Accordingly, if Defendants prevail on their Statute of Frauds defense, Plaintiffs claim for promissory estoppel must fail.

Finally, it is well-settled that "ordinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." <u>South Investment Corp. v. Norton</u>, 57 So. 2d 1, 3 (Fla. 1952).  Here, Mr. Evans admitted that, at best, his claim is that he was to be paid money in the future and that, at least with respect to the profits participation, the date on which it would be earned, if ever, was indefinite and uncertain.  As a result, defendants are entitled to judgment as a matter of law on Plaintiffs' promissory estoppel claim.

### 2.      Defendants Did Not Make an Affirmative Representation to Plaintiffs.

An essential element of Plaintiffs' claim for promissory estoppel is that Defendants made an affirmative representation to employ and compensate Plaintiffs.  <u>W.R. Grace & Co. v. Geodata Serv., Inc.</u>, 547 So. 2d 919, 924 (Fla. 1989).  Mere acquiescence or failure to act is insufficient.  <u>Travelers Indemnity Co. v. Billue</u>, 763 So. 2d 1204 (Fla. 1st DCA 2000); <u>Prudential Ins. Co. of Am. v. Clark</u>,

456 F.2d 932 (5th Cir. 1972). Mr. Evans' testimony establishes that Defendants did not make any affirmative representations to Plaintiffs that they would employ and compensate Plaintiffs. Rather, Plaintiffs' evidence, if believed, merely establishes that Defendants remained silent or acquiesced while Plaintiffs continued to work on the project. As a matter of law, Plaintiffs' promissory estoppel claim is barred because it is based solely on Defendants' alleged acquiescence and not upon affirmative representations.

### I.    Defendants are Entitled to Judgment on Plaintiffs' Tortious Interference Claims

Plaintiffs assert a claim against Defendants for tortious interference. Plaintiffs allege that H.D. Associates interfered with their alleged business relationship with the Lane and Barnett Lane by demanding that they accept different terms of employment and compensation which were substantially less favorable than those embodied in the proposed Management Agreement.

To establish the tort of an intentional interference with a business relationship, a plaintiff must show: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. Ethan Allen, Inc. v. Georgetown Manor, 647 So. 2d 812, 814 (Fla. 1994). Although the alleged business relationship need not be evidenced by an enforceable contract, "the alleged business relationship must afford the plaintiff existing or prospective legal rights." Id. (quoting Register v. Pierce, 530 So. 2d 990, 993 (Fla. 1st DCA 1988)). Moreover, it must be evidenced by an "actual and identifiable understanding or agreement which in all probability would have been completed if there had been no interference." Id. at 815.

In this instance, Plaintiffs have presented no competent substantial evidence that their alleged business relationship with Lane or Barnett Lane could or would have been performed if Defendants

11293.1                                              - 12 -

had not "interfered" with it.  Indeed, it is undisputed that at the time the Eiger Defendants entered the picture,  Lane and Barnett Lane's prospective arrangement with Farallon had ended as had the preliminary discussions with Basic Capital about serving as a source of capital.   A plaintiff must establish proximate causation between the defendant's actions and the plaintiff's damages by demonstrating that the parties' understanding would have been completed but for the defendant's interference.  Tietig v. Southeast Regional Constr. Corp., 557 So. 2d 98 (Fla. 3d DCA 1990); see generally 32 Fla. Jur.2d, Interference § 4. Even if one accepts that Plaintiffs had an agreement or understanding at some point in time with Lane or Barnett Lane which would have paid them the compensation Plaintiffs are seeking, there has been no showing whatsoever that the agreement or understanding would have been performed if the Eiger Defendants had not come along.

Furthermore, Plaintiffs apparently shifted their theory at trial to assert that, rather than interfering with their business relationship with Lane and Barnett Lane, HD Associates and the Eiger Defendants "stepped into the shoes" of Lane and Barnett Lane and therefore ostensibly assumed their obligations to compensate Plaintiffs in the manner which had allegedly been previously agreed. Assuming that Lane and Barnett Lane did have such obligations and that the Eiger Defendants assumed these obligations, however, this would not provide a basis for tortious interference.  It is well established that a party involved in a business relationship cannot interfere with its own business or contractual relationship.  Williams Electric Co. v. Honeywell, Inc., 772 F. Supp. 1225 (N.D. Fla. 1991); Genet Co. v. Annheuser-Busch, Inc., 498 So. 2d 683 (Fla. 4th DCA 1988).

> **J.      Defendants are Entitled to Judgment on Plaintiffs' Damages Claims.**
>
> > **1.      Plaintiffs' Claims for Lost Profits Are Too Speculative to Warrant Recovery.**

Generally, anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. Hodges v. Fries, 34 Fla. 63, 71-72, 15 So. 682, 684-85 (Fla. 1894) (mere speculative profits, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining even approximately the probable results, cannot under any circumstances be brought within the realm of recoverable damages); R.A. Jones & Sons, Inc. v. Holman, 470 So. 2d 60 (Fla. 3d DCA 1985). For a plaintiff to recover lost profits, the damages must be reasonably certain, even if not mathematically certain. Travelers Ins. Co. v. Wells, 633 So. 2d 457 (Fla. 5th DCA 1994).

Here, Plaintiffs' damages claims for future profits and future real estate commissions are based solely on projections. These projections were admitted for the limited purpose of showing that they were made and not for the truth of the matter asserted. Plaintiffs' expert has not made any review or analysis of the underlying data behind the projections and has no opinion as to the reliability or accuracy of the projections. As a result, Plaintiffs have no competent substantial evidence upon which to base their damages. Based on the foregoing, Plaintiffs' damages claims are too speculative and uncertain to warrant recovery.

2.    **Plaintiffs' Lost Profits Claims Do Not Account for and Deduct Expenses.**

Under Florida law, amount of lost profits resulting from contract breach must account for and deduct expenses from the gross profit amount. See, e.g., Southern Bell Tel. and Tel. Co. v. Kaminester, 400 So. 2d 804, 807 (Fla. 3d DCA 1981) (supervisory salary paid or reasonable value of same); Pahokee Housing Auth., Inc. v. South Florida Sanitation Co., 478 So. 2d 1107 (Fla. 4th DCA 1985), rev. denied, 491 So. 2d 230 (Fla. 1986) (overhead expenses). Plaintiffs' failed to

account for and deduct expenses for the lost profits they seek to recover.    As a result, Plaintiffs' damage claim fails as a matter of law.

### K.    Defendants Are Entitled to Judgment on Plaintiffs' Punitive Damage Claims.

In response to Plaintiffs' Motion in Limine regarding punitive damages, this Court ruled that punitive damages had not been pled.  For this reason, and because the evidence, taken as a whole, does not establish that Defendants acted wilfully and maliciously, Defendants are entitled to judgment as a matter of law on Plaintiffs' punitive damage claims.

## III.    CONCLUSION

For all of these reasons, the Eiger Entities respectfully request that the Court direct a verdict in their favor on all counts.

Respectfully submitted,

Alan S. Loewinsohn, Esq.
State Bar No. 12481600
Carol E. Farquhar, Esq.
State Bar No. 06828300
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road
Suite 110
Dallas, Texas 75252
(972) 713-1300
(972) 713-1313 - Facsimile

and

Timothy A. Andreu, Jr.
State Bar No. 443778
Glenn Rasmussen & Fogarty
100 South Ashley Drive, Suite 1300
Tampa, FL 33602
(813) 229-3333
(813) 229-5946 - Facsimile

ATTORNEYS FOR H.D. ASSOCIATES, L.P.,
DUNES OPERATING COMPANY, 2M DUNES,
L.L.C. and EIGER, INC.

11293 1

- 16 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery upon all of the following-named addressees this _13th_ day of December, 2001.

Gregory J. Orcutt, Esq.
Bricklemyer, Smolker & Bolves, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602

James B. Murphy, Jr., Esq.
Paul W. Rebein, Esq.
Shook, Hardy & Bacon L.L.P.
100 North Tampa Street, Suite 2900
Tampa, FL 33602

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Alan M. Gerlach, Esq.
Broad & Cassel
390 North Orange Avenue, Suite 1100
Orlando, FL 32801

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

ATTORNEY

11293 1                                    - 17 -