

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOCHMERE DEVELOPMENT GROUP,
INC.,

        Plaintiff,

vs.

    CASE NO.: 8:00-CV-1026-TGW

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C., a Texas
limited liability company; DAVID LANE, an
individual; BARNETT LANE
INVESTMENTS, INC., a Texas corporation;
JTL CAPITAL, L.L.C., a Texas limited
liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
and PAUL E. ROWSEY, III, an individual,

        Defendants.

_____/

## NOTICE OF SUBMISSION OF PROPOSED FORM OF JUDGMENT

Defendant Fleet Bank, N.A., f/k/a BankBoston, N.A. ("Fleet"), by and through its

undersigned counsel and, in response to the Court's direction pursuant to Rule 58 of the Federal

Rules of Civil Procedure, submits the attached proposed form of Judgment in this matter together

with a computer disk containing a copy of same.

As to the issue of the entitlement of the Plaintiff Lochmere Development Group, Inc. to

an award of prejudgment interest (which Lochmere Development Group, Inc. seeks), Fleet

further attaches a copy of the recent decision by the Florida Second District Court of Appeal in

11686.1

231

Purdue Farms Inc. v. Hook, 777 So.2d 1047 (Fla. 2d DCA 2001), which at pages 1053 through 1054 of the opinion, addresses the issue of whether a plaintiff is entitled to prejudgment interest in an action for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act.

Pursuant to Local Rule 3.01(g), M.D. Fla. Rules, the undersigned has attempted to contact counsel for the other parties to review the attached form of Judgment, but because of the holidays has been unable to reach them.

Respectfully submitted,

James B. Murphy, Jr.
Florida Bar No. 287598
Paul W. Rebein
Florida Bar No. 488003
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
(813) 202-7100
(813) 221-8837 - Facsimile

and

Dora Kaufman
Florida Bar No. 771244
HALLEY, SINAGRA & PEREZ
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394
(954) 467-1300
(954) 467-1372 - Facsimile

Attorneys for FLEET NATIONAL BANK, N.A.
f/k/a BANKBOSTON, N.A.

11686.1                                    -2-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by facsimile and U.S. Mail to all parties on the attached Service List this 28th day of December, 2001.

ATTORNEY

## SERVICE LIST

Gregory J. Orcutt
Florida Bar No. 230855
BRICKLEMYER SMOLKER & BOLVES
500 E. Kennedy Boulevard
Suite 200
Tampa, Florida 33602
(813) 223-3888
(813) 228-6422 - Facsimile

Attorneys for LOCHMERE DEVELOPMENT GROUP, INC. and
LOCHMERE REALTY, INC.

Alan S. Loewinsohn, Esquire
Carol E. Farquhar, Esquire
Jo E. Hartwick, Esquire
Pezzulli & Loewinsohn, L.L.P.
18383 Preston Road
Suite 110
Dallas, Texas 75252

(Attorneys for H.D. ASSOCIATES, L.P., DUNES
OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C,.., EIGER FUND 1, L.P.,
PAUL E. ROWSEY, III, C. TODD MILLER,
DAVID M. JACOBS, WILLIAM S. BUCHANAN
and FLEET NATIONAL BANK,
NA., f/k/a BANKBOSTON, N.A.)

Dora Kaufman, Esquire
HALEY, SINAGRA & PEREZ
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Co-Counsel: FLEET NATIONAL BANK, N.A. f/k/a
 BANKBOSTON, N.A.

Alan M. Gerlach, Esquire
BROAD & CASSEL
390 North Orange Avenue
Suite 1100

11686 1                                    **-4-**

Orlando, FL 32801

John W. Greene, Esquire
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013
(Attys. for DAVID LANE, BARNETT LANE
INVESTMENTS, INC. and JTL CAPITAL, L.L.C.

11686 1                                    -5-

Recd
FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LOCHMERE DEVELOPMENT GROUP,
INC.,

Plaintiff,

vs.

CASE NO.: 8:00-CV-1026-TGW

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general partner
DUNES OPERATING COMPANY, L.P., a
Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C., a Texas
limited liability company; DAVID LANE, an
individual; BARNETT LANE
INVESTMENTS, INC., a Texas corporation;
JTL CAPITAL, L.L.C., a Texas limited
liability company; FLEET NATIONAL
BANK, N.A., a national banking association;
and PAUL E. ROWSEY, III, an individual,

Defendants.

_____/

## JUDGMENT

This action came on for trial before the Court and a jury, Honorable James D. Whittemore,

presiding, and the issues having been duly tried and the jury having duly rendered its verdict,

It is Ordered and Adjudged that:

1.      Pursuant to the verdict of the jury:

(a)      Plaintiff Lochmere Development Group, Inc. recover of Defendant H.D.

Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating

Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and

11669.2

2M Dunes, L.L.C., a Texas limited liability company), the sum of Two Hundred and Twenty Five Thousand ($225,000.00) Dollars with respect to Plaintiff Lochmere Development Group, Inc.'s claim for violation of Florida's Uniform Trade Secret Act under Count XXVII of the Second Amended Complaint, with prejudgment interest at the rate of eight percent (8%) per annum from December 20, 2001 (the date of the verdict) to the date of entry of this Judgment, together with interest thereon from the date of entry of this Judgment at the rate specified in, and in accordance with, 28 U.S.C. § 1961.

(b)    Plaintiff Lochmere Development Group, Inc. take nothing and Plaintiff Lochmere Development Group, Inc.'s claims for violation of Florida's Uniform Trade Secret Act under Counts XXIV, XXV, XXVI, XXIX, and XXX of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., Paul E. Rowsey, III, and Fleet National Bank, N.A., f/k/a BankBoston, N.A. be dismissed on the merits.

(c)    Plaintiff Lochmere Development Group, Inc. take nothing and Plaintiff Lochmere Development Group, Inc.'s claims for civil conspiracy under Counts XXXVIII of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., Paul E. Rowsey, III, H.D. Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company), and Fleet National Bank, N.A., f/k/a BankBoston, N.A. be dismissed on the merits.

2.    Pursuant to the Court's granting of motions for judgment as a matter of law in accordance with Rule 50 of the Federal Rules of Civil Procedure:

11669 2                                    -2-

(a)      Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for violation of Florida's Uniform Partnership Act under Counts I, II, and III of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., and H.D. Associates (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company) be dismissed on the merits.

(b)      Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for constructive fraud/breach of fiduciary duty under Counts XI, XII, XIII, and XIV of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C. and H.D. Associates, L.P. a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company) be dismissed on the merits.

(c)      Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for promissory estoppel under Count XXXIX of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C. and H.D. Associates, L.P. a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company) be dismissed on the merits.

11669.2                                   -3-

(d)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty Inc.'s claims for tortious interference under Count XL of the Second Amended Complaint against Defendants H.D. Associates, L.P. a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company) and Paul E. Rowsey be dismissed on the merits.

(e)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for violation of the Florida Uniform Partnership Act under Count III of the Second Amended Complaint, for constructive fraud/breach of fiduciary duty under Count XV of the Second Amended Complaint, for violation of Florida's Uniform Trade Secrets Act under Count XXVIII, and for civil conspiracy under Count XXXVIII of the Second Amended Complaint against Defendants Eiger Fund I, L.P. and Eiger Partners, L.P. be dismissed on the merits.

(f)     Plaintiff Lochmere Realty, Inc. take nothing and Plaintiff Lochmere Realty, Inc.'s claims for violation of Florida's Uniform Trade Secret Act under Counts XXIV, XXV, XXVI, XXVII, XXVIII, XXIX, and XXX of the Second Amended Complaint against Defendants H.D. Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company), David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., Paul E. Rowsey, III, and Fleet National Bank, N.A., f/k/a BankBoston, N.A. be dismissed on the merits.

11669.2                                     -4-

(g)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for violation of Florida's Uniform Partnership Act against Defendants C. Todd Miller, David M. Jacobs, and William S. Buchanan under Count IV of the Second Amended Complaint, for constructive fraud/breach of fiduciary duty under Count XVI of the Second Amended Complaint, for violation of Florida's Uniform Trade Secrets Act under Count XXIX of the Second Amended Complaint, for civil conspiracy under Count XXXVIII of the Second Amended Complaint, for promissory estoppel under Count XXXIX of the Second Amended Complaint, for tortious interference under Count XL of the Second Amended Complaint be dismissed on the merits.

(h)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Realty, Inc.'s claims for violation of Florida's Uniform Partnership Act against Defendant David Lane in Counts I and II of the Second Amended Complaint and against Defendants David Lane and Paul E. Rowsey, III,  for promissory estoppel under Count XXXIX of the Second Amended Complaint be dismissed on the merits.

3.      Pursuant to the Court's Order on Defendants' Motions for Summary Judgment dated November 21, 2001 (Dkt. 154):

(a)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for intentional fraud under Counts V, VI, VII, VIII, and IX of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., H.D. Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes,

11669.2                                    -5-

L.L.C., a Texas limited liability company), Eiger, Inc., Eiger Fund 1, L.P., Eiger Partners, L.P., Paul E. Rowsey, III, C. Todd Miller, David M. Jacobs, and William S. Buchanan, be dismissed on the merits.

(b)     Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing and Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for conversion under Counts XXXI, XXXII, XXXIII, XXXIV, XXXV, XXXVI, and XXXVII of the Second Amended Complaint against Defendants David Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., H.D. Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company), Eiger, Inc., Eiger Fund 1, L.P. and Eiger Partners, L.P., Paul E. Rowsey, III, C. Todd Miller, David M. Jacobs, William S. Buchanan, and Fleet National Bank, N.A., formerly known as BankBoston, N.A., be dismissed on the merits.

(c)     As modified by the Court's ruling on the record during the trial granting in part Plaintiff's Motion for Reconsideration (Dkt. 192) of that aspect of the Court's Order on Defendant's Motions for Summary Judgment addressing Plaintiffs' claims for quantum meruit or unjust enrichment, to the extent that Plaintiffs Lochmere Development Group, Inc.'s and Lochmere Realty, Inc.'s claims for quantum meruit/unjust enrichment in Counts XVII, XVIII, XIX, XX, XXI are factually intertwined with or cannot be meaningfully distinguished from their claims for misappropriation of trade secrets, they are preempted by the Florida Uniform Trade Secrets Act, Section 688.008, Florida Statutes; accordingly, Plaintiffs Lochmere Development Group, Inc. and Lochmere Realty, Inc. take nothing as to these claims and these claims against Defendants David

116692                                    -6-

Lane, Barnett Lane Investments, Inc., JTL Capital, L.L.C., H.D. Associates, L.P. (a Delaware limited partnership by and through its general partner Dunes Operating Company, L.P., a Delaware limited partnership, by and through its general partners, Eiger, Inc., and 2M Dunes, L.L.C., a Texas limited liability company), Eiger, Inc., Eiger Fund 1, L.P. and Eiger Partners, L.P. be dismissed on the merits.

4.    The Court reserves jurisdiction to determine awards of costs, expenses, or attorney's fees, if any, in favor of or against any of the parties.

Dated at Tampa, Florida, this _____ day of December, 2001.


_____
**JAMES D. WHITTEMORE**
**United States District Judge**


Copies to:
Counsel of Record

11669.2                                          -7-

777 So.2d 1047
26 Fla. L. Weekly D132
(Cite as: 777 So.2d 1047)
< KeyCite Citations >

Page   1

District Court of Appeal of Florida,
Second District.

PERDUE FARMS INCORPORATED, a
foreign corporation, Appellant,
v.
Dennis P. HOOK, an individual, and H &
N Foods, Inc., a Florida corporation,
Appellees.

No. 2D99-2310.

Jan. 5, 2001.

Inventor of process for cooking chicken brought action against company, alleging violations of Uniform Trade Secrets Act. The Circuit Court, Hillsborough County, Robert H. Bonanno, J., awarded inventor $25,000,000 in actual damages, $2,000,000 in damages for unjust enrichment, and $6,750,000 in punitive damages, and assessed $14,896,602.74 in prejudgment interest. Company appealed. The District Court of Appeal, Patterson, C.J., held that: (1) evidence supported compensatory and unjust enrichment damage awards; (2) as a matter of apparent first impression, company's conduct was not so egregious as to support award of exemplary damages; and (3) awarding inventor prejudgment interest was an abuse of discretion.

Affirmed in part, reversed in part, and remanded.

West Headnotes

[1] Damages ☞ 137
115k137 Most Cited Cases

Testimony of food service marketing consultant, who had considerable experience in projecting value of new food products for major food service providers, that inventor's process for cooking chicken could have generated $8,000,000 in royalties per year over a five-year life expectancy for product sales, but that availability of competing product reduced royalty value of inventor's product to zero supported $25,000,000 damage award in favor of inventor for misappropriation of trade secret; although competitor's expert on food technology and marketing testified invention was not a trade secret, she offered no testimony of any consequence on issues of value and damages.

[2] Damages ☞ 188(.5)
115k188(.5) Most Cited Cases

In misappropriation of trade secret cases, when some damage is proven and the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

[3] Patents ☞ 319(1)
291k319(1) Most Cited Cases

"Reasonable royalty" is simply that amount which the trier of facts estimates a person desiring to use a patent right would be willing to pay for its use and a patent owner desiring to license the patent would be willing to accept.

[4] Damages ☞ 114
115k114 Most Cited Cases

Economic value of a misappropriated trade secret can be actual or potential.

[5] Damages ☞ 188(.5)
115k188(.5) Most Cited Cases

Plaintiff fulfills its burden of proving damages by showing the misappropriation of a trade secret, the subsequent commercial use, and introduces evidence by which the jury can value the rights the defendant has obtained.

[6] Damages ☞ 94
115k94 Most Cited Cases

Company's decision to develop its own process for quickly preparing and serving a chicken product with the appearance of rotisserie chicken, despite recognizing that it had a possible infringement problem with inventor's

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



777 So.2d 1047
(Cite as: 777 So.2d 1047)

Page   2

process, was not so egregious as to support an award of $6,750,000 in exemplary damages to inventor; evidence established that company had previously developed products using processes similar to inventor's, except for seasonings which company had not used. West's F.S.A. § 688.004(2).

**[7] Damages** ⟨⟩ 94
115k94 Most Cited Cases

In exercising its discretion to award punitive damages in a misappropriation of trade secret case, the trial court must examine the conduct of the defendant in light of the established law governing the award of such damages. West's F.S.A. § 688.004(2).

**[8] Damages** ⟨⟩ 89(2)
115k89(2) Most Cited Cases

Exemplary damages are not recoverable unless the defendant's conduct constituting the breach of contract rises to the level of an independent tort showing actual malice, moral turpitude, wantonness, or outrageousness.

**[9] Interest** ⟨⟩ 39(2.20)
219k39(2.20) Most Cited Cases

Awarding inventor of process for cooking chickens prejudgment interest on awards for actual and unjust enrichment damages was an abuse of the trial court's discretion in action alleging misappropriation of trade secret; considering that jury could have found that inventor's process was not a trade secret, that competitor's process was an extension of one of its existing product lines, rather than a misappropriation, and that award of damages to inventor stretched to the outer limits of value potential of his process, it was grossly inequitable to assess prejudgment interest.

**[10] Interest** ⟨⟩ 31
219k31 Most Cited Cases

**[10] Interest** ⟨⟩ 39(2.15)
219k39(2.15) Most Cited Cases

When a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss.

**[11] Interest** ⟨⟩ 39(2.20)
219k39(2.20) Most Cited Cases

Impossibility in determining any specific date upon which inventor's ability to market his process for cooking chickens was lost, as a result of presence of competing product in the marketplace, precluded finding that inventor's damages were liquidated, as was required to award prejudgment interest.
*1049 Stephen H. Grimes, Stacy D. Blank, and Joseph H. Varner of Holland & Knight LLP, Tampa, and, Broughton M. Earnest and Quincy M. Crawford of Piper Marbury Rudnick & Wolfe LLP, Baltimore, MD, for Appellant.

Stuart C. Markman and Katherine Earle Yanes of Kynes, Markman & Felman, P.A., Tampa, and Mahlon H. Barlow, III, and Paul D. Watson of Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, for Appellees.

PATTERSON, Chief Judge.

Perdue Farms, Inc., appeals from a $48,646,602.75 final judgment in favor of Dennis Hook and H & N Foods, Inc. (Hook). Hook, the sole officer and shareholder of H & N Foods, Inc., was awarded damages under the Florida Uniform Trade Secrets Act (FUTSA), chapter 688, Florida Statutes (1993), for Perdue's wrongful use and disclosure of Hook's process for preparing chicken. We affirm in part and reverse in part.

Hook developed a unique process for cooking chicken which involved placing specially seasoned pieces of chicken in a vacuum-sealed bag (commonly referred to in the industry as "sous vide"), refrigerating the chicken after cooking, and then reheating the chicken using a microwave in combination with one of four other types of ovens:  a pizza oven, a deep fryer, a convection oven, or a conventional broiler oven. The principal advantage of this process was that a restaurant could prepare and serve a chicken product with the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



777 So.2d 1047
(Cite as: 777 So.2d 1047, *1049)

Page   3

appearance of rotisserie chicken in less than ten minutes.

In 1991 Hook, in concert with George Rice, a consultant in the food service industry, approached Pizza Hut, Inc., with the idea of marketing his product. Pizza Hut showed interest and on April 20, 1992, entered into a letter agreement (Project Feathers) with Hook, Rice, and their corporations to explore the possibility of selling the product in Pizza Hut Stores. The agreement contained a confidentiality provision.

Pizza Hut and Hook then contacted Perdue as a company which could process and supply sufficient quantities of chicken to Pizza Hut if Project Feathers went forward. On March 30, 1993, Pizza Hut and Perdue entered into a confidentiality agreement pertaining to Hook's process. The agreement related to Pizza Hut's "Proprietary Information," including "without limitation, certain specifications and formulations for the purpose of Seasoning, process, and product development work related to the development of oven roasted chicken." The agreement specifically excluded information in the public domain, information already known to Perdue, or information that Perdue obtained from a third party. Hook claimed to be a third-party beneficiary of this agreement. In April 1993, Hook went to Perdue's plant in Bridgewater, Virginia, where he orally described the process. Perdue was never given a written description of the process and claims that the only information Hook described as confidential was the seasoning formula. In testing, Perdue was not able to reheat the cooked chicken in less *1050 than ten minutes using Hook's rethermalization methods. Perdue so informed Pizza Hut. In January 1994, Pizza Hut conducted a test market of the product and determined that the sale of pizza was more profitable than the sale of chicken. Thereafter, Pizza Hut terminated the agreement with Hook.

In January 1995, Hook executed an agreement with Pepsico Restaurants International (PRI), wherein Hook granted PRI the exclusive right to use his process in any of its restaurants outside the United States through March 1996, and the nonexclusive right to use the process thereafter anywhere in the world, all subject to the payment of royalties. In return for this agreement, Hook was to receive $300,000 in consulting fees through March 1996. PRI never used Hook's product in its restaurants, paid Hook no royalties, and elected not to continue the exclusive use portion of the agreement beyond March 1996. PRI paid Hook the consulting fees.

Hook attempted, unsuccessfully, to market his product through other companies within the United States. Shortly after March 1996, Hook entered into an agreement with the Doux Company, a company in the business of processing and supplying chicken in France. The agreement gave Doux the exclusive right to use Hook's process in Europe, Russia, the Middle East, and South Africa. Doux paid Hook between $50,000 and $100,000 in fees and then bought the process outright for $85,000.

Contemporaneous with these events, in October 1993, Perdue began development of a product which eventually became known as TenderReady. An internal Perdue memorandum described the product as an eight-piece cut chicken "marinated & seasoned with Perdue seasoning; utilizing the cook-in-the Bag process. .... to be similar to Pizza Hut or TenderSelect new formula but different so as not to jeopardize proprietary P.H. [Pizza Hut] formula." "TenderSelect" referred to a fully-cooked frozen chicken product Perdue previously marketed. The "proprietary P.H. formula" referred to Hook's seasoning. Perdue began advertising and selling the TenderReady chicken product in February 1995. The development and sale of this product forms the basis for this lawsuit.

In February 1997, Hook sued Perdue, asserting causes of action for violations of FUTSA, breach of the two confidentiality agreements, and an equitable accounting. Trial began on March 22, 1999. It was disputed as to whether Hook's process was previously known to Perdue in the 1980s.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



777 So.2d 1047
(Cite as: 777 So.2d 1047, *1050)

Page   4

Perdue offered testimony that the process was not new or unique and was within the public domain of information. Hook presented testimony to the contrary. The jury found that Hook's process was a trade secret which Perdue misappropriated. The jury determined that Hook was a third-party beneficiary of the Perdue-Pizza Hut confidentiality agreement and that Perdue breached the agreement. The jury further determined that the misappropriation was "willful and malicious" and that Hook's damages "accrued" on October 29, 1993, the date Perdue began development of TenderReady. It awarded $25,000,000 in actual damages together with $2,000,000 in damages for unjust enrichment (the amount of development costs the jury determined Perdue saved by using Hook's process).

In posttrial proceedings, the trial court awarded Hook $6,750,000 in punitive damages and assessed $14,896,602.74 in prejudgment interest.

### EVIDENTIARY ERRORS

Perdue challenges eleven of the trial court's evidentiary rulings. We have examined each of these issues and, although we consider some of these rulings to be "close calls," we conclude that they do not constitute an abuse of the trial court's discretion. *See Klose v. Coastal Emergency Servs. of Ft. Lauderdale, Inc.,* 673 So.2d 81 (Fla. 4th DCA 1996) (holding that a trial court's *1051 decision addressing the admissibility of evidence and the examination and cross-examination of witness are within the trial court's sound discretion).

### ACTUAL DAMAGES

[1] The April 20, 1992, agreement between Hook and Pizza Hut provided for the payment of royalties to Hook based on Pizza Hut's sales of his product. The agreement included three phases. In phase one, the development phase, Pizza Hut agreed to pay Hook 3.6CENTS per pound of chicken it sold for up to eighteen months. During phase one, Pizza Hut could terminate the agreement by written notice. During phase two, the implementation phase,

Pizza Hut would continue to pay Hook 3.6 CENTS per pound for two years with a cap of $5,000,000 in royalties. Phase three, the earn-out phase, was to last for three years commencing on the termination of phase two. During this phase, Pizza Hut was to pay Hook a royalty of 2.7CENTS per pound for the first year, 1.8CENTS for the second, and .9CENTS per pound for the third and last year. The total of royalty payments for phase three was capped at $15,000,000. With Pizza Hut's permission, Hook entered into a similar companion agreement with Kentucky Fried Chicken (KFC), which was capped at $5,000,000 in royalties. Both agreements were terminated within phase one, and Hook received no royalty payment from either Pizza Hut or KFC.

These agreements provided the springboard for the testimony of Richard T. Good, Hook's expert on damages. Good is a food service marketing consultant with considerable experience in projecting the value of new food products for major food service providers. Using a percent of sales formula, he projected the value of Hook's product if sold through a number of fast food chains. He concluded that the product could generate $8,000,000 in royalties per year over a five-year life expectancy for product sales for a total royalty value of $40,000,000. He further opined that with the availability of Perdue's TenderReady product on the market that the royalty value of Hook's product would be zero. Good did not offer an opinion as to the precise value of the Hook trade secret on any given date.

Perdue presented the testimony of Sarah Palisi, an eminently qualified expert in the field of food technology and marketing. Ms. Palisi testified that Hook's process was duplicative of an existing patent, was a compound of procedures readily known in the public domain, and was not new or unique. In other words, it was not a trade secret. What was missing from Ms. Palisi's testimony was anything of consequence on the issue of value and damages. Ms. Palisi did say that she did not think that the presence of the TenderReady product in the marketplace inhibited Hook from attempting further

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



777 So.2d 1047
(Cite as: 777 So.2d 1047, *1051)

Page  5

marketing of his product.  On cross-examination, she testified that she disagreed with Good's opinion of value, but that she personally could not give a value as to the process.  Thus, the jury was provided with Hook's valuation of the process and was given no alternative values upon which to determine the amount of damages.

[2][3][4][5] Factual support for the damage award in this case can be found in the Pizza Hut agreement.  The royalty caps indicate the best of all possible results, but contrast with Hook's real life experience in attempting to market his product.  Hook explains this away with the assumption that the public dissemination of the TenderReady product destroyed his ability to market the process on a royalty basis.  The law of damages as applied in misappropriation of trade secret cases holds that when some damage is proven and "the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." *Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968).  A reasonable royalty is "simply that amount which the trier of facts estimates a person desiring *1052 to use a patent right would be willing to pay for its use and a patent owner desiring to license the patent would be willing to accept." *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 310 (Iowa 1998) [FN1] (quoting *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir.1974)).  Economic value can be actual or potential. *See Spottiswoode v. Levine*, 730 A.2d 166 (Me.1999).  A party who has suffered the misappropriation of a trade secret may present his best evidence of damages notwithstanding the difficulty in measurement. *See University Computing Co.*, 504 F.2d at 544.  "The plaintiff fulfills its burden of proving damages by showing the misappropriation, the subsequent commercial use, and introduces evidence by which the jury can value the rights the defendant has obtained." *Id.* at 545.  Hook met this liberal burden of proof.  The ultimate determination of the amount of damages was in the domain of the jury.  Thus, we affirm the $25,000,000 damage award.

FN1.  Both Florida and Iowa have adopted the "Uniform Trade Secret Act."  Section 550.4 of the Iowa Code is identical to section 688.004(2), Florida Statutes (1993).

Perdue also challenges the award of unjust enrichment damages and the denial of its motion for remittitur.  We affirm these issues without discussion.

### EXEMPLARY DAMAGES

[6][7] The jury determined that the misappropriation of Hook's trade secret by Perdue was "willful and malicious."  Pursuant to section 688.004(2), Florida Statutes (1993), the trial court awarded Hook $6,750,000 in exemplary damages.
(2) If willful and malicious misappropriation exists, the court *may* award exemplary damages in an amount not exceeding twice any award made under subsection (1). [FN2]

FN2.  Section 688.004(1), Florida Statutes (1993), states:
688.004 Damages.--
(1)  Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation.  Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.  In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

(Emphasis supplied.)  This is clearly a permissive provision. *See Fixel v. Clevenger*, 285 So.2d 687 (Fla. 3d DCA 1973);  *City of Miami v. Save Brickell Ave., Inc.*, 426 So.2d 1100 (Fla. 3d DCA 1983) (holding that, in statutory construction, the word "may" when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word "shall.").  In enacting this section, the legislature did two significant things.  First, it took from the jury the issue of exemplary

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



damages, leaving only the determination as to whether the misappropriation was "willful and malicious." It did not establish a right to such damages based on that determination but rather shifted the entire issue of entitlement and amount, if any, to the trial court's discretion. In exercising that discretion, the trial court must examine the conduct of the defendant in light of the established law governing the award of such damages. Our interpretation of section 688.004(2) is consistent with the result reached by the Iowa Supreme Court in *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299 (Iowa 1998). In that case, Olson developed an idea for "breakaway hazzard lights" for trailers. He took the idea to Nieman, who entered into a confidentiality agreement. Olson sued Nieman for breach of the agreement and misappropriation of trade secrets after Nieman displayed its version of Olson's device at a trade show. The jury found in Olson's favor and answered a special interrogatory that Nieman's misappropriation of Olson's *1053 trade secret was "willful and malicious." The trial court reviewed the evidence and declined to award Olson exemplary damages. On appeal, the Supreme Court of Iowa held that such denial was not an abuse of discretion. *See also Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112 (Fed.Cir.1996) (holding that an award of exemplary damages was an abuse of discretion).

[8] Our supreme court in *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So. 214, 221 (1936), defined exemplary or punitive damages:

Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Exemplary or punitive damages are therefore damages ultra compensation, and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the state, or consists of aggravated misconduct or a lawless act resulting in injury to plaintiff when sought to be redressed by a civil action for the tort.

In negligence, the degree of conduct required to sustain an award of such damages has been characterized as conduct necessary to sustain a conviction for manslaughter. *See White Constr. Co. v. Dupont*, 455 So.2d 1026 (Fla.1984), *receded from on other grounds, Murphy v. International Robotic Sys., Inc.*, 766 So.2d 1010 (Fla.2000); *Carraway v. Revell*, 116 So.2d 16 (Fla.1959). In contract, exemplary damages are not recoverable unless the defendant's conduct constituting the breach of contract rises to the level of an independent tort showing actual malice, moral turpitude, wantonness or outrageousness. *See Griffith v. Shamrock Village, Inc.*, 94 So.2d 854 (Fla.1957); *John Brown Automation, Inc. v. Nobles*, 537 So.2d 614 (Fla. 2d DCA 1988). We see no reason to set a different standard for the award of such damages pursuant to section 688.004(2).

No Florida cases have addressed the subject of exemplary damages under chapter 688. The evidence in this case established that Perdue had previously developed products using processes similar to Hook's. The evidence viewed in the light most favorable to Hook shows that Perdue recognized that it had a possible infringement problem with Hook's process and went ahead anyway. Viewed in Perdue's favor, the only thing secret about Hook's process was the seasoning which Perdue did not use. Under no interpretation, however, does the evidence of Perdue's conduct meet the test of egregiousness necessary to support an award of exemplary damages. The award of $6,750,000 of such damages to Hook is an abuse of discretion. We therefore reverse that award.

### PREJUDGMENT INTEREST

[9][10] "In short, when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla.1985). The jury determined that Hook's damages "accrued" on October 29, 1993, and the trial court awarded Hook prejudgment interest from that day forward, in the amount of $13,793,150.69 on the actual damages of $25,000,000 and

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



777 So.2d 1047
(Cite as: 777 So.2d 1047, *1053)

Page  7

$1,103,452.05 on the unjust enrichment damages of $2,000,000.

Although the above-quoted language in *Argonaut* appears absolute, it is not.  The supreme court in *Broward County v. Finlayson*, 555 So.2d 1211, 1213 (Fla.1990), explained:
In *Kissimmee Utility Authority v. Better Plastics, Inc.*, 526 So.2d 46 (Fla.1988), we reaffirmed our decision in *Argonaut Insurance Co. v. May Plumbing Co.*, 474 So.2d 212 (Fla.1985), and stated *1054 the general rule concerning the payment of prejudgment interest:  "[O]nce damages are liquidated, prejudgment interest is considered an element of those damages as a matter of law, and the plaintiff is to be made whole from the date of the loss."  526 So.2d at 47.  *See also Florida Steel Corp. v. Adaptable Devs. Inc.*, 503 So.2d 1232 (Fla.1986) .  This general rule is not absolute.  In *Flack v. Graham*, 461 So.2d 82 (Fla.1984), we refused to permit recovery of any prejudgment interest, stating:  " '[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness.  It is denied when its exaction would be inequitable.' "  *Id.* at 84 (quoting *Board of Commissioners v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)).  We did not recede from this principle in *Argonaut Insurance* or *Kissimmee Utility Authority*.  Further, in *Ball v. Public Health Trust*, 491 So.2d 608 (Fla. 3d DCA 1986), the Third District Court of Appeal allowed prejudgment interest but restricted the date it commenced to the date of demand or the commencement of the lawsuit, whichever occurred first.  The district court did so on equitable grounds, relying on our decision in *First State Bank v. Singletary*, 124 Fla. 770, 169 So. 407 (1936). As noted by these decisions, the law is not absolute and may depend on equitable considerations.
In *Volkswagen of America, Inc. v. Smith*, 690 So.2d 1328, 1331 (Fla. 1st DCA 1997), the court recognized the holding in *Finlayson* and stated:
The *Argonaut* decision did not establish an inflexible rule that requires trial judges to assess prejudgment interest in every case regardless of the circumstances.  Depending

on the equities of a given case, an award of prejudgment interest may be a windfall to the plaintiff and an unfair burden on the defendant.
*See also State v. Family Bank of Hallandale*, 623 So.2d 474 (Fla.1993).

Considering that the jury could have found that Hook's process was *not* a trade secret, that Perdue's TenderReady was not a misappropriation but rather an extension of one of its existing product lines, and that the award of damages to Hook stretches to the outer limits of the value potential of his process, it is grossly inequitable to assess prejudgment interest in this case.  To do so was an abuse of the trial court's discretion.  For this reason, we reverse both awards of prejudgment interest.

[11] In regard to the award of $13,793,150.69, we reverse on the additional ground that the underlying damage award of $25,000,000 is not one which can be liquidated to a date certain.  Hook's damages were not liquidated because the ascertainment of their exact sum required the taking of testimony to ascertain facts upon which to base a value judgment.  *See Asian Imports, Inc. v. Pepe*, 633 So.2d 551 (Fla. 1st DCA 1994).  Based on the evidence presented, those damages could not be liquidated to the date selected by the jury, October 29, 1993, or any other date certain.  The following dates are pertinent to this issue:

1. April 20, 1992--Pizza Hut agreement;
2. September 18, 1992--KFC agreement;
3. March 30, 1993--Pizza Hut/Perdue Agreement (jury determined Hook to be a third-party beneficiary);
4. April 1993--Hook reveals his process to Perdue;
5. October 29, 1993--Date of Perdue's internal memo stating decision to begin development of TenderReady product;
6. January 1994--Pizza Hut conducts test market of product;
7. July 1994--Pizza Hut terminates agreement;
*1055 8. September 1994--KFC terminates agreement;
9. January 5, 1995--Hook enters into royalty

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works



agreement with PRI;

10. February 1995--Perdue begins advertising and sale of TenderReady;

11. March 1996--Hook enters into royalty agreement with Doux Company;  and

12. December 1997--Hook sells foreign rights to his process to Doux Company for $85,000.

Hook's theory of liability was that Perdue's TenderReady product destroyed his ability to market his process.  As is reflected by the time line above, it is impossible to determine any date upon which Hook's ability to market his process was lost by reason of the presence of TenderReady in the marketplace. This record does not support the conclusion that Perdue misappropriated Hook's process on October 29, 1993, or any other specific date.  We determine that Hook's damages were liquidated by the jury's verdict on April 9, 1999. Therefore, Hook is entitled to prejudgment interest from that date to May 3, 1999, the date of the final judgment.    *See* *Amerace Corp. v. Stallings,* 753 So.2d 592 (Fla. 2d DCA 2000).

In sum, we affirm the awards for actual damages and for unjust enrichment. We reverse and vacate the awards of exemplary damages and prejudgment interest from October 29, 1993, and remand to the trial court to enter an award of prejudgment interest for Hook between the dates of the jury verdict and the final judgment.

Affirmed in part, reversed in part, and remanded.

WHATLEY and NORTHCUTT, JJ., concur.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

