

UNITED STATES DISTRICT COURT
Middle District of Florida

LOCHMERE DEVELOPMENT GROUP, INC.,
and LOCHMERE REALTY, INC.,

     Plaintiffs,

vs.

CASE NO.: 8:00-CV-1026-T-27GW
State Court No.: 00-02525/Div. I

H.D. ASSOCIATES, L.P. a Delaware limited
partnership by and through its general
partner DUNES OPERATING COMPANY, L.P.,
a Delaware limited partnership by and through
its general partners, EIGER, INC., a Delaware
corporation and 2M DUNES, L.L.C. ,a Texas
limited liability company; EIGER FUND 1, L.P.,
a Delaware limited partnership; EIGER
PARTNERS, L.P., a Delaware limited partnership;
DAVID LANE, an individual; BARNETT LANE
INVESTMENTS, INC., a Texas corporation;
JTL CAPITAL, L.L.C., a Texas limited liability
company; FLEET NATIONAL BANK, N. A.,
a national banking association; PAUL E.
ROWSEY, III, an individual; C. TODD MILLER,
an individual; DAVID M. JACOBS, an individual;
and, WILLIAM S. BUCHANAN, an individual,

     Defendants.

_____/

## PLAINTIFFS' RESPONSE TO H. D. ASSOCIATES, ET AL. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiffs, LOCHMERE DEVELOPMENT GROUP, INC. and LOCHMERE REALTY,

INC. (hereinafter collectively referred to as "Plaintiffs" or "Lochmere"), hereby respond

to the Renewed Motion for Judgment As a Matter of Law filed on behalf of H.D.

ASSOCIATES, L.P., DUNES OPERATING COMPANY, L.P., EIGER, INC., and 2M DUNES,

L.L.C. (collectively, the "Eiger Entities").

257

## FACTS

Beginning in the fall of 1997, Robert Dale Evans ("Evans"), sole officer, director and shareholder of Plaintiff, Lochmere Development Group, Inc. and Lochmere Realty, Inc. (collectively "Lochmere") began investigation of a real estate development project known as Hammock Dunes, located in Palm Coast, Florida.  Over the course of the succeeding  years, Evans invested his time, energy and money in analyzing the Hammock Dunes property and its development potential.    Certain portions of this information was discussed with other members of the development team.   By March 1999, the development group included the Eiger Entities, led by Paul Edward Rowsey ("Rowsey"), the Lane Defendants, and Lochmere.  Beginning in approximately mid-April 1999, Lochmere began the development of the master development budget ("Master Development Budget") for the Hammock Dunes property.  This budget was created on a computer spreadsheet program and became a road map for the development of the project.  These master development budgets were marked:  "This document is the exclusive proprietary property of Lochmere Development Group, Inc.  Do not duplicate or disburse without prior written consent."  These Master Development Budgets were distributed within the development group and were also given to a prospective lender, BankBoston, N.A. (now Fleet National Bank, N.A.) in order to secure funding for the acquisition and development of the Hammock Dunes development.  Mr. Evans testified that this information was supplied by Lochmere under the understanding that Lochmere's previously distributed compensation package was accepted by the Defendants.

After Lochmere's Master Development Budget had been completed and explained to the prospective players, and all of Lochmere's other information was delivered to Eiger, Lane and Fleet, Rowsey offered Lochmere a significantly smaller compensation package, and Lochmere indicated that the reduced compensation was unacceptable. Thereafter, Lochmere forwarded letters to, *inter alia,* the Eiger Entities, Lane and Fleet, demanding the return of all of its information, including the Master Development Budget. Rowsey responded in writing, stating in his July 13, 1999 letter: "...we are happy to cease using the program and to remove it from all our computer hard drives. Additionally, we will send you any disks that contain the software or destroy them at your option." Contrary to those statements, plaintiff's expert, Richard L. Brown, concluded that the Eiger Entities and Fleet continued to use the Master Development Budgets prepared by Lochmere. Specifically, the "approved budget" attached as Exhibit "A" to the "Senior Secured Credit Agreement" used by Fleet and Eiger to finance the Hammock Dunes development for its November 1999 closing is the same budget developed by Lochmere. Contrary to Rowsey's July 13, 1999 letter, Eiger and Fleet acquired the Hammock Dunes development and relied upon Lochmere's information. A simple comparison of the "approved budget" attached to the loan documents for the Hammock Dunes acquisition and Lochmere's Master Development Budget dated June 22, 1999 shows them to be identical.

Based upon this and other evidence, the jury returned a verdict specifically finding that Lochmere possessed a trade secret in the form of the Master Development Budget, and that the Eiger Entities has misappropriated those secrets.[1]

It should be noted that Eiger Entities have made this same argument on at least three (3) previous occasions. (Summary Judgment, Rule 50 Motion at close of Plaintiffs' case, and Rule 50 Motion prior to submission to the jury.) The court has denied this Motion at each opportunity.

## DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF MISAPPROPRIATION OF TRADE SECRETS

The Eiger Entities have attacked Lochmere's claims of misappropriation of trade secrets on two separate grounds. Defendants have variously claimed that (a) the information was not a "trade secret" because it either was based upon information available to others, and that it was therefore not a secret, and (b) that Lochmere did not adequately protect its secrets.

## (a) DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON THE GROUND THAT LOCHMERE DID NOT PROVE THE EXISTENCE OF A TRADE SECRET

The law of trade secrets has been codified by the *Uniform Trade Secrets Act (the "UTSA")*, which has been adopted by the State of Florida at *F.S. §688.01 et seq. (the "Florida Uniform Trade Secrets Act"* or *"FUTSA")* Florida Statutes *§688.02(4)* defines "trade secrets" as:

> "Information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent value, actual or potential, from not

---

[1] In their Motion, the Eiger Entities do not argue that the jury instructions were deficient in any fashion.

F \docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\Rsp HD Renewed Jdg.doc

4

> being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain the economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Florida has therefore adopted a two-part test in determining the existence *vel non* of a trade secret.

Reduced to its essence, the law requires the existence of a secret which is valuable.

> The criteria used by Florida courts to determine the existence of a trade secret includes proof that:

> > (a) the process is a secret; (b) the extent to which the information is known outside of the owner's business; (c) the extent to which it is known by employees and others involved in the owner's business; (d) the extent of measures taken by the owner to guard the secrecy of the information; (e) the value of the information to the owner and his competitors; (f) the amount of effort or money expended by the owner in developing the information; and (g) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Lovell Farms, Inc. v. Levy,* *641 So.2d 103, 104-05 (Fla. 3d DCA 1994)."*

In addition, the courts have repeatedly stated that the issue of whether or not a trade secret exists is a question of fact for the jury. *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1292 (S.D.Fla. 2001); *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corporation,* 139 Fed. 3rd 1396, 1410-11 (11th Cir. 1998) (citing Georgia version of UTSA); *Salsbury Laboratory v. Merieux Laboratory,* 908 F.2d 706, 712 (11th Cir. 1990); *Mangren Research and Development Corporation v. National Chemical Company, Inc.,* 87 F.3d 937, 943 (7th Cir. 1996) (applying Illinois version of

the UTSA); *All Pro Sports Camp v. Walt Disney Co.*, *727 So.2d 363, 368 (Fla. 5th DCA 1999)*.

In order to meet this challenge, Plaintiff elicited testimony and documents proving or inferring that Lochmere's president and chief employee, Robert Evans, spent more than a year gathering and reviewing documents and other physical evidence regarding the physical characteristics and legal requirements associated with the land to be purchased. No compensation was paid to Lochmere for this work. This information included, *inter alia,* the various state, county and water management district approvals and requirements associated with the property. Based upon this information, and Mr. Evans' expertise in land development, Lochmere designed a complete marketing and product plan, calculated the number of marketable units and different product types which could be placed upon the property to be purchased, developed costs associated with creating the development, and otherwise created an entire marketing and development plan for the Hammocks Dunes property. A great deal of this information was used in order to create the Master Development Budget, which was clearly marked as containing trade secret information owned by Lochmere [2]. Mr. Evans' knowledge and experience in Florida land development and the use of his judgment is critical to the creation of this analysis, as the defendants in this case had no experience in land development in Florida and could not have even anticipated the issues which were analyzed in depth and presented in the Lochmere analysis.

---

[2] All copies of the master development budgets were marked: "This document is the exclusive proprietary property of Lochmere Development Group, Inc. Do not duplicate or disburse without prior written consent."

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\Rsp HD Renewed Jdg.doc

Lochmere's analysis was used not only to negotiate for a lower purchase price of the Hammock Dunes development, but was used to project both the cash flow and ultimate possible profits from the development of the subject property. The legal requirements and development possibilities and constraints of the Hammock Dunes were so complicated that other sophisticated Florida developers had refused to negotiate for the purchase of the property and ITT had previously been unable to sell the property.

The defendants recognized Mr. Evans' expertise and his expert status with respect to the subject property, and in fact Mr. Rowsey introduced him as their "developer" in the course of meeting with other capital investors, including the defendant Bank Boston, n/k/a Fleet Bank. Furthermore, plaintiff's expert opined that the Master Development Budget and due diligence research were proprietary in nature to Lochmere.

The label on these budget documents, stating that the information was "proprietary" to Lochmere and along with a requirement not to duplicate, is additional proof that the information contains trade secrets:

> "While labeling information "trade secret" or "confidential information" does not conclusively establish that the information fits this description, it is nonetheless an important factor in establishing the value which was placed on the information and that it could not be readily derived from publicly-available sources. The evidence referenced above is more than sufficient to merit the court's finding that the information used by [the Defendant] had independent economic value to [the Plaintiff] and [the Defendant], and was not generally known to the public in satisfaction of the first prong of the statutory definition of a "trade secret."

_Morlife v. Perry,_ 66 Cal. Rptr. 2d 731, 736, 56 Cal. App. 4th 1514, 1522-23 (1st Dist. 1997). (Citations omitted.)

In addition to marking the Master Development Budget as trade secret owned by Lochmere, Plaintiffs only distributed the information to those in the development group and to a single other prospective purchaser of the Hammock Dunes development (Starwood) and only with the proprietary legend. All versions produced by the parties herein bear that legend.

Furthermore, Defendants' internal memoranda, introduced into evidence at trial, admitted that Lochmere was the owner of valuable information by virtue of their offer to pay Lochmere $225,000 for the information. Accordingly, plaintiffs have demonstrated sufficient facts to show that there was a trade secret or trade secrets which were developed by plaintiffs in this matter, and that the plaintiffs took reasonable steps in order to preserve its secrecy. Defendants' Renewed Motion for Judgment must therefore be denied.

### (b) DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON THE GROUNDS THAT THE LOCHMERE TRADE SECRETS WERE BASED UPON PUBLIC INFORMATION

Defendants Eiger Entities argue that the information contained in the Master Development Budget was either not assembled by plaintiffs or was available to the public. This argument is a gross misstatement of the facts. While it is true that a portion of the information originated from public records, a significant amount of the information was never available to the public in general, and other components of the analysis were developed by or at the direction of Lochmere. Even Rowsey's July 13, 1999 letter, introduced into evidence at the trial herein, at page 3, admits

that…"some…[information in the Master Development Budgets] is based upon [Lochmere's] information." Mr. Evans testified that the Master Development Budget is a reflection of Lochmere's research, application of judgments and work product. Therefore, the facts do not support Defendants' legal argument.

Furthermore, the courts have consistently held as a matter of law, that under the *UTSA* a combination of publicly known information in a new or different way can be a trade secret. *See, Best Technologies v. Trident Environmental Systems, Inc., 681 So.2d 1175 (Fla. 2d DCA 1996)(A common process independently developed, but known and used by competitors can be a trade secret); Thermodyne Food Service Products, Inc. v. McDonald's Corp., 940 F.Supp. 1300, 1304-05 at N.4 (N.D. Illinois 1996) (Finding that trade secrets can consist of a combination of known information), Computer Care v. Service Systems Enterprises, Inc., 982 F.2d 1063, 1072 (7th Cir. 1992) (A trade secret can exist in a combination of characteristics and components, each of which by itself is in the public domain, but the unified process design and operation of which a unique combination affords competitive advantage and is a protectable trade secret.); Richardson vs. Suzuki Motor Co., Ltd., 868 F.2d 1226, 1243 (9th Cir. 1999) (Trade secrecy is not negated because defendant by an expenditure of effort might have collected same information from sources available to the public.); Lucas County Board of Commissioners v. Ohio Environmental Protection Agency, 724 N.E. 2d 411, 418 (Ohio 2000) (Where documents already in the public domain are combined to form a larger document, a trade secret may exist if the unified result would afford a party a competitive advantage).* Therefore, as a matter of law, a trade secret protectable

under the *FUTSA* can exist even where some of the base information was created and available in the public domain.  Defendants have never asserted that Lochmere's information was not at least a new or unique combination of known information, therefore, Defendants motions must be denied.

The defendants rely upon the case of *Public Systems, Inc. v. Towry, 587 So.2d 969 (Ala. 1991)* for the proposition that a spread sheet software data program such as the Master Development Budget, can never be a trade secret.  Alabama has not adopted the *Uniform Trade Secrets Act* and the *Towry* case was decided upon Alabama's unique statutory trade secrets law.  The Alabama Supreme Court stated that the determination of the existence of a trade secret is a question of fact for the trial court, and affirmed the trial court's determination that the off-the-shelf spread sheet computer program, which had rows and columns containing information directly input from public records, was not a protectable trade secret.  The information consisted of a map and data published by the Alabama Department of Economic and Community Affairs, some unpublished data provided by the same agency, and some census data.  Pursuant to the determinative Alabama statute, information readily ascertained or derived from public information cannot be a trade secret by definition.  *Alabama Code 1975, §8-27-2(1)(d)).*  The case at bar is governed by a different legal standard and the *Towry* case may have come out differently under the *FUTSA*.  Further, Lochmere's work product here cannot be compared in scope or extent to that of the Alabama plaintiff.  Prior to Lochmere's creation of the Master Development Budget, there was no document or group of documents available to the Defendants which would allow this

F \docs\dec\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\Rsp HD Renewed Jdg doc

10

level of in-depth overview of the development analysis of the Hammock Dunes property.

### (c)  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE OF LOCHMERE'S DISCLOSURE OF SECRETS TO STARWOOD

The Eiger Entities argue that the disclosure to Starwood (not a party to this litigation) of the master development budget was somehow fatal to the preservation of Lochmere's secrets as a matter of law.  They argue that once disclosed to Starwood, no trade secret existed which could be protected by Lochmere because it was no longer a "secret".  Again, the defendants distort the law's protection of trade secrets.  At most, Defendants arguments raise an issue of fact which the jury found against them.

Lochmere's disclosure to a different prospective investor does not somehow render its information no longer a trade secret.  Indeed, the Master Development Budget which was displayed to Starwood, and the discussions thereunder, were subject to the same trade secret requirement as are being asserted in this case and Starwood was under an obligation not to disclose the information.  *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475, 94 S.Ct. 1879, 1883. (1974)  *("This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in confidence and under an implied obligation not to use or disclose it.")* However, Starwood did not misappropriate those secrets as did the defendants.  Starwood did not use the trade secrets in order to gain a competitive advantage and cut Lochmere out of its share of the profits.

As a matter of law, a trade secret need not be maintained in absolute secrecy.  The *FUTSA* requires only that "reasonable steps" be taken to maintain its secrecy.  *F.S.*

*§688.02(4)(b)*. Again, whether this requirement is satisfied is a question of fact, within the province of the jury. *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corporation*, 139 Fed. 3rd 1396, 1410-11 (11th Cir. 1998); *Salsbury Laboratory v. Merieux Laboratory*, 908 F.2d 706, 712 (11th Cir. 1990); *Mangren Research and Development Corporation v. National Chemical Company, Inc.*, 87 F.3d 937, 943 (7th Cir. 1996). *Kewannee Oil Co., supra*, 416 U.S. at 475, 94 S.Ct. at 1883. Trade secret information can be shared with others, as long as there are "reasonable" restrictions concerning the disclosure of such information. Therefore, such information can be disclosed to others in confidence, including an implied obligation not to use or disclose the information. The jury was instructed on this issue, and found against the Eiger Entities.

In this case, Lochmere took reasonable steps to protect the secrecy of this information. There is no allegation that this information was made available to the public in general. Until given to the Defendants, Mr. Evans was the only person who had access to the totality of the information, much of which was distilled into the Master Development Budget. It is undisputed that all versions of this document were clearly marked "This document is the exclusive proprietary property of Lochmere Development Group, Inc. Do not duplicate or disburse without prior written consent." Therefore, the Eiger Entities' Motion should be denied.

WHEREFORE, Lochmere respectfully requests that this Court deny the Eiger Entities' Renewed Motion for Judgment as a Matter of Law.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by Facsimile and U.S. Mail to all parties on the attached Service List this _____ _____ day of May, 2002.

Respectfully submitted,

BRICKLEMYER SMOLKER & BOLVES, P.A.

By: _____

Jay J. Bartlett
Florida Bar No. 875163
Gregory J. Orcutt
Florida Bar No. 230855
BRICKLEMYER SMOLKER & BOLVES, P.A.
500 E. Kennedy Boulevard, Suite 200
Tampa, Florida 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422
Attorneys for LOCHMERE DEVELOPMENT
GROUP, INC. and LOCHMERE REALTY, INC.

## SERVICE LIST

Alan S. Loewinsohn, Esq.
Carol E. Farquhar, Esq.
Loewinsohn & Flegle L.L.P.
18383 Preston Road, Suite 100
Dallas, TX  75252

Timothy A. Andreu, Jr.
Glenn Rasmussen & Fogarty
100 South Ashley Drive
Suite 1300
Tampa, FL  33602

(Attys. for H.D. ASSOCIATES, L.P. DUNES OPERATING COMPANY, L.P., EIGER, INC.,
2M DUNES, L.L.C., EIGER FUND 1 L.P., EIGER PARTNERS, L.P.,L.P., PAUL E. ROWSEY,
III, C. TODD MILLER, DAVID M. JACOBS,
WILLIAM S. BUCHANAN

Daniel F. Molony, Esq.
Shook, Hardy & Bacon, L.L.P.
100 North Tampa Street, Suite 3900
Tampa, FL  33602

Dora Kaufman, Esq.
Halley, Sinagra & Perez
100 S.E. 3rd Avenue, Suite 1900
Fort Lauderdale, FL 33394

Alan M. Gerlach, Esq.
Ford & Harrison LLP
Post Office Box 60
Orlando, FL 32802-0060

Co-Counsel: FLEET NATIONAL BANK f/k/a BANKBOSTON,N.A.

John W. Greene, Esq.
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, TX 76013

(Attys. for DAVID LANE, BARNETT LANE
INVESTMENTS, INC. AND JTL CAPITAL, L.L.C.)

Stuart C. Markman, Esq.

F:\docs\dsc\DOCS\LOCHMERE\PLDGS\FEDERAL.CT\PLDGS\Rsp HD Renewed Jdg.doc

14

15

Kynes, Markman & Felman, P.A.
Post Office Box 3396
Tampa, FL  33601-3396